**SPERTUS, LANDES & JOSEPHS, LLP**
JAMES W. SPERTUS (Cal Bar No. 159825)
jspertus@spertuslaw.com
LINDSEY HAY (Cal Bar No. 311463)
lhay@spertuslaw.com
MARIO HOANG NGUYEN (Cal Bar No. 355543)
mnguyen@spertuslaw.com
1990 South Bundy Drive, Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:24-cr-00456-TJH |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |
| ANDREW LEFT, | Date:     March 17, 2025<br>Time:     10:00 a.m.<br>Ctrm:     9C<br>Judge:    Hon. Terry J. Hatter, Jr. |
| Defendant. | |

*MEMORANDUM OF POINTS & AUTHORITIES*

1

### <u>TABLE OF CONTENTS</u>

2   **TABLE OF AUTHORITIES** .................................................................................. **IV**

3   **INTRODUCTION** ............................................................................................ **1**

4   **LEGAL STANDARD** ...................................................................................... **2**

5   **DISCUSSION** ................................................................................................ **3**

6   I.     **The Securities Fraud Charges Are Missing Essential Elements** .............. 3

7          *A.    **The Government Alleges a Scheme to Deprive
                  Readers of Information, Not Property.*** ...................................... **3**

8          *B.    **The Government Fails to Allege Actionable
9                 Misrepresentations, Omissions, or Half-Truths.*** ......................... **5**

10                1.   No Actionable Omissions ................................................ 5

11                2.   No Actionable Misrepresentations .................................. 6

12                3.   No Actionable Half-Truths ............................................. 7

                  4.   Additional Security-Specific Deficiencies ..................... 8

13                     a.    CRON ................................................................... 8

14                     b.    TSLA .................................................................... 9

15                     c.    ROKU .................................................................. 9

16                     d.    BYND .................................................................. 9

17                     e.    NVTA .................................................................. 10

18                     f.    Namaste .............................................................. 10

19                     g.    GE ........................................................................ 11

20                     h.    NVDA, TWTR, FB, AAL, PLTR, IGC, and XL .................... 12

21                     i.    PTE, LK, and NVAX ............................................ 12

22         *C.    **The Government Fails to Allege Materiality*** ............................ **12**

23         *D.    **The Government Fails to Allege Fraudulent Intent*** ................... **14**

24   II.    **The Government Applies Domestic Laws Extraterritorially** ............. **15**

     III.   **The Charges Violate Left's First Amendment Protections** .............. **17**
25
     IV.    **Enforcement Without Notice Violates Left's Due Process Rights** ..... **18**
26
     V.     **The False Statement Charge Is Fatally Flawed** ........................... **19**
27
            *A.    **Duplicity*** ........................................................................ **19**
28

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

*MEMORANDUM OF POINTS & AUTHORITIES*

**B.  *Fundamental Ambiguity*** ................................................................ **20**

    1.  First Question ........................................................................ 20

    2.  Second Question .................................................................... 22

**CONCLUSION** ...................................................................................... **23**

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

*MEMORANDUM OF POINTS & AUTHORITIES*

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
133 S. Ct. 2321 (2013) ....................................................... 17

*Allison v. Brooktree Corp.*,
999 F. Supp. 1342 (S.D. Cal. 1998) ..................................... 7

*Christopher v. SmithKline Beecham Corp.*,
567 U.S. 142 (2012) ........................................................... 19

*Ciminelli v. United States*,
598 U.S. 306 (2023) ..................................................... 1, 4, 5

*City of Chicago v. Morales*,
527 U.S. 41 (1999) ............................................................. 18

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align
Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017) ....................... 2, 6, 8

*In re Cornerstone Propane Partners, L.P.*,
355 F. Supp. 2d 1069 (N.D. Cal. 2005) ................................. 9

*GFL Advantage Fund, Ltd. v. Colkitt*,
272 F.3d 189 (3d Cir. 2001) ................................................. 6

*Kelly v. United States*,
590 U.S. 391 (2020) ..................................................... 1, 3, 4

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024) ............................................................. 7

*McNally v. United States*,
483 U.S. 350 (1987) ............................................................. 3

*Nat'l Ass'n of Mfrs. v. SEC*,
800 F.3d 518 (D.C. Cir. 2015) ............................................ 18

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) ........................................... 9, 10

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

*Ret. Sys. v. Align Tech., Inc.*,
    39 F.4th 1092 (9th Cir. 2022) .................................................................. 8, 9

*Riley v. Nat'l Fed'n of the Blind of No. Carolina, Inc.*,
    487 U.S. 781 (1988) ................................................................................. 17

*SEC v. Revelation Cap. Mgmt., Ltd.*,
    246 F. Supp. 3d 947 (S.D.N.Y. 2017) ..................................................... 16

*Stoyas v. Toshiba Corp.*,
    896 F.3d 933 (9th Cir. 2018) ............................................................. 15, 16

*Sullivan & Long, Inc. v. Scattered Corp.*,
    47 F.3d 857 (7th Cir. 1995) ....................................................................... 4

*United States v. Ali*,
    620 F.3d 1062 (9th Cir. 2010) ................................................................... 6

*United States v. Alladawi*,
    707 F. Supp. 3d 920 (C.D. Cal. 2023) ..................................................... 13

*United States v. Bonds*,
    No. 7-cr-732, 2008 WL 618911 (N.D. Cal. Mar. 4, 2008) ................. 19, 20

*United States v. Bonnar*,
    No. 8-cr-197, 2008 WL 4460267 (W.D. Wash. Oct. 1, 2008) ................. 19

*United States v. Boone*,
    951 F.2d 1526 (9th Cir. 1991) ................................................................. 20

*United States v. Boren*,
    278 F.3d 911 (9th Cir. 2002) ..................................................................... 3

*United States v. Constantinescu*,
    No. 4:22-cr-612, 2024 WL 1221579 (S.D. Tex. Mar. 20, 2024) ............... 5

*United States v. Cook*,
    497 F.2d 753 (9th Cir. 1972) ........................................................ 20, 21, 22

*United States v. Corona*,
    34 F.3d 876 (9th Cir. 1994) ..................................................................... 17

*United States v. Culliton*,
    328 F.3d 1074 (9th Cir. 2003) ................................................................. 20

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

v

*MEMORANDUM OF POINTS & AUTHORITIES*

*United States v. Davis*,
   905 F.2d 245 (9th Cir. 1990)..................................................................17

*United States v. Dedman*,
   527 F.3d 577 (6th Cir. 2008)..................................................................20

*United States v. Fry*,
   No. 11-cr-141, 2012 WL 13187109 (D. Minn. Feb. 13, 2012).....................20

*United States v. Gaines*,
   No. 21-cr-266, 2022 WL 204415 (D. Ariz. Jan. 24, 2022) .....................15, 16

*United States v. Greenlaw*,
   84 F.4th 325 (5th Cir. 2023).....................................................................3

*United States v. Harriss*,
   347 U.S. 612 (1954) ...............................................................................18

*United States v. Holmes*,
   No. 5:18-cr-258, 2020 WL 666563 (N.D. Cal. Feb. 11, 2020).....................15

*United States v. Jenkins*,
   633 F.3d 788 (9th Cir. 2011)..................................................................12

*United States v. Jesenik*,
   No. 3:20-cr-228, 2022 WL 11815826 (D. Or. Oct. 20, 2022) ...................19

*United States v. Jiang*,
   476 F.3d 1026 (9th Cir. 2007)............................................................21, 22

*United States v. Juan*,
   No. 2:20-CR-00134, 2021 WL 2188134 (E.D. Cal. May 28, 2021)..............20

*United States v. Keuylian*,
   23 F. Supp. 3d 1126 (C.D. Cal. 2014).....................................................12

*United States v. Lew*,
   875 F.2d 219 (9th Cir. 1989)..............................................................14, 15

*United States v. Medjuck*,
   156 F.3d 916 (9th Cir. 1998)..............................................................15, 17

*United States v. Milheiser*,
   98 F.4th 935 (9th Cir. 2024).........................................................2, 12, 13

vi

*MEMORANDUM OF POINTS & AUTHORITIES*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

*United States v. Miller*,
  953 F.3d 1095 (9th Cir. 2020) ................................................................. 14

*United States v. Qazi*,
  975 F.3d 989 (9th Cir. 2020) ................................................................ 1, 3

*United States v. Sainz*,
  772 F.2d 559 (9th Cir. 1985) ................................................................... 21

*United States v. Shortt Acct. Corp.*,
  785 F.2d 1448 (9th Cir. 1986) .................................................................. 2

*United States v. Skelly*,
  442 F.3d 94 (2d Cir. 2006) ..................................................................... 11

*United States v. Smith*,
  No. 1:17-cr-20, 2022 WL 2103063 (D. Guam June 3, 2022) ................. 5

*United States v. W.R. Grace*,
  429 F. Supp. 2d 1207 (D. Mont. 2006) ................................................. 19

*United States v. Yagman*,
  No. 6-cr-227-A-SVW, 2007 WL 9724388 (C.D. Cal. May 3, 2007) ......... 17, 19

*United States v. Yates*,
  16 F.4th 256 (9th Cir. 2021) .................................................................... 4

*Zhu v. Taronis Techs. Inc.*,
  No. 19-cv-4529, 2020 WL 1703680 (D. Ariz. Apr. 8, 2020) .................. 10

*Zlotnick v. TIE Commc'ns*,
  836 F.2d 818 (3d Cir. 1988) ..................................................................... 7

**Statutes & Regulations**

15 U.S.C. § 78f ......................................................................................... 16

15 U.S.C. § 78j ..................................................................................... 3, 16

18 U.S.C. § 1348 .................................................................................. 3, 16

17 C.F.R. § 240.10b-5 ............................................................................... 3

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

vii

*MEMORANDUM OF POINTS & AUTHORITIES*

**Other Authorities**

First Amendment to the U.S. Constitution ..................................................... 2, 17, 18

Sixth Amendment to the U.S. Constitution ........................................................ 17

CISA, *Enhanced Visibility and Hardening Guidance for Communications Infrastructure* (Dec. 4, 2024), https://tinyurl.com/2024-12-04-CISA ................................................ 15

Black's Law Dictionary (12th ed. 2024) ........................................................ 22

Federal Rule of Criminal Procedure 12 ........................................................ 3, 19

Federal Rule of Criminal Procedure 18 ........................................................ 17

*Petition for Rulemaking on Short and Distort*, SEC File No. 4-758 (Feb. 12, 2020), www.sec.gov/rules/petitions/2020/petn4-758.pdf............................................ 18

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

*MEMORANDUM OF POINTS & AUTHORITIES*

## **INTRODUCTION**

Andrew Left, "a securities analyst," "trader," and activist short seller, founded Citron Research to "disseminate[] commentary about publicly traded companies in which he asserted that the market incorrectly valued a company's stock [], advocating that the current price was too high or too low." (Indictment, ECF No. 1 ¶¶1, 5.) Left published his opinions in "reports, articles, and social media...." (*Id.* ¶6.) Although Left has been exposing corporate misconduct in this manner for decades, the government now charges him with securities fraud, alleging that he "established long or short positions in a Targeted Security," and then "made false and misleading representations about his and Citron's trading and concealed the fact that he intended to and did trade in a manner designed to exploit the temporary price volatility that Citron's commentary created." (*Id.* ¶19.) There are no allegations Left ever published false information *about* any company. Rather, the government alleges Left's personal trading—which he allegedly concealed from readers—rendered his stock price *opinions* false, and that Left made misrepresentations, omissions, and half-truths about his personal financial incentives and trading to create price volatility in response to his opinions. (*Id.*) The object of this alleged scheme was to "profit[] from his advance knowledge that he was about to trigger [price] movements in the market." (*Id.* ¶7.)

Concealing economic information necessary for others to make discretionary economic decisions is not fraud. "[F]ederal fraud statutes criminalize only schemes to deprive people of traditional property interests," and "[t]he right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest." (*Ciminelli v. U.S.*, 598 U.S. 306, 309, 316 (2023).) The government must allege "not only that defendants engaged in deception, but that an object of their fraud was property." (*Kelly v. U.S.*, 590 U.S. 391, 398 (2020).) By failing to allege a scheme to defraud readers of money or property, the Indictment is missing an essential element and "*must* be dismissed." (*U.S. v. Qazi*,

1

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

1  975 F.3d 989, 991 (9th Cir. 2020).).

2       The Indictment is also missing actionable misrepresentations, half-truths, or

3  omissions. The fraud charges are based on Left's statements of *opinion*, which

4  trigger additional pleading requirements. Fraud charges based on opinions must

5  include allegations that establish "the speaker did not hold the belief she professed"

6  and "the belief is *objectively untrue*[.]" (*City of Dearborn Heights Act 345 Police &*

7  *Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615–16 (9th Cir. 2017) (emphasis

8  added).) There are no such allegations in the Indictment. Instead, the government

9  alleges that by trading securities at prices different from his published opinions,

10 Left's trading activity *implies* falsity, but fraud allegations based on opinions

11 require more than inferences. Specific facts must be pled that establish *objective*

12 falsity—not *implied* falsity. Likewise, Left's fraud charges based on omissions are

13 missing allegations of a disclosure duty, and those based on half-truths are missing

14 allegations of affirmative statements that require additional disclosures to make

15 them not misleading. Further still, misrepresentations, half-truths, and omissions

16 are immaterial unless they deprived someone of "something *essential* to the

17 bargain." (*U.S. v. Milheiser*, 98 F.4th 935, 943–44 (9th Cir. 2024) (emphasis

18 added).) Because Left did not enter into bargains with readers, *Milheiser* holds his

19 statements were collateral and immaterial per se. Every reader who made a decision

20 to trade received the securities they purchased or money for the securities they sold.

21       The Indictment is also defective because the government improperly applies

22 domestic securities laws extraterritorially, and the nature of the charges violate

23 Left's First Amendment and Due Process rights. Finally, the false statement charge

24 is fatally flawed because it is duplicitous and based on non-actionable statements.

25 For these reasons, respectfully, the Indictment must be dismissed in its entirety.

26                            **LEGAL STANDARD**

27       A motion to dismiss can be decided before trial "if it involves questions of

28 law rather than fact." (*U.S. v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir.

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

2

*MEMORANDUM OF POINTS & AUTHORITIES*

1986).) "[A] defect in the indictment…including…[the] failure to state an offense…must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits[.]" (Fed. R. Crim. P. 12(b)(3)(B)(v).) "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." (*U.S. v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).) "[A]n indictment missing an essential element that is properly challenged before trial *must* be dismissed." (*Qazi*, 975 F.3d at 991.)

## DISCUSSION

**I.    The Securities Fraud Charges Are Missing Essential Elements**

Left is charged with one count under 18 U.S.C. § 1348(1), and seventeen counts under 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5. For purposes of this Motion, the elements of these statutes are essentially the same.

**A.    The Government Alleges a Scheme to Deprive Readers of *Information*, Not *Property*.**

Decades ago, in *McNally v. U.S.*, the Supreme Court ruled that federal statutes criminalizing schemes or artifices "to defraud" are "limited in scope to the protection of property rights." (483 U.S. 350, 360 (1987).[1]) In *Kelly v. U.S.*, the Court clarified that "a property fraud conviction cannot stand when the loss to the victim is only an incidental byproduct of the scheme," therefore, the government

---

[1] *McNally* holds that the phrase "to defraud" refers "to wronging one in his property rights by dishonest methods or schemes." (483 U.S. at 358.) This rule from *McNally* is not derived from statutory language such as the phrase "for obtaining money or property." Section 1348 makes it a crime "to defraud" a person in connection with any security, and Rule 10b-5 makes it a crime to employ a scheme or artifice "to defraud." Both statutes, therefore, refer "to wronging one in his property rights by dishonest methods or schemes" in connection with the purchase or sale of a security, because the securities fraud statutes "borrow[] key concepts from the mail and wire fraud statutes, and courts have given the terms similar treatment." (*U.S. v. Greenlaw*, 84 F.4th 325, 339 n.6 (5th Cir. 2023).)

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

3

*MEMORANDUM OF POINTS & AUTHORITIES*

must allege "not only that [a defendant] engaged in deception, but that an 'object of the[ir] fraud [was] property.'" (590 U.S. at 398, 402 (citation omitted).) Recently, in *Ciminelli v. U.S.*, the Court reversed the wire fraud conviction of a developer who paid bribes to deceive a municipality into believing the developer was the most qualified applicant for the award of construction contracts, because "[t]he right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest." (598 U.S. at 316.)

The Ninth Circuit has applied *McNally* and its progeny faithfully. In *U.S. v. Yates*, the court reversed the conspiracy and false bank entry convictions of bank executives who had conspired "to conceal the true financial condition of the bank" because "the ethereal right to accurate information" is not a "cognizable property interest." (16 F.4th 256, 265 (9th Cir. 2021).) "Recognizing accurate information as property would transform all deception into fraud," the court reasoned, because "[b]y definition, deception entails depriving the victim of accurate information about the subject of the deception." (*Id.*)

This precedent unequivocally rejects the theory of fraud charged here. The government alleges that Left not only made "false and misleading statements about [his] research staff, process, independence, external investors, and economic incentives," but also that Left "made false and misleading statements and half-truths to deceive investors to believe that he held a position" in a security "when, in fact, after using his influence…to manipulate stock prices…[he] closed his positions to capitalize on the temporary price movement caused by his public statements." (Indictment ¶¶7, 19(e)(iii).) The object of this alleged scheme was to "profit[] from his advance knowledge that he was about to trigger [price] movements in the market." (*Id.* ¶7.) First, "[t]here is nothing unlawful about trading on an information advantage, provided that it is not based on inside information." (*Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857, 860 (7th Cir. 1995).) But more importantly, the government does not allege Left schemed to take *property*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

4

from his readers. Anyone who made a discretionary trading decision based on Left's commentary received the securities they purchased or money for the securities they sold. The alleged scheme was to deprive readers of *information* about Left's personal trading, reputation, research process, and purported conflicts of interest. Under *Ciminelli*, depriving someone of information needed to make discretionary economic decisions is not fraud. (*See U.S. v. Smith*, No. 1:17-cr-20, 2022 WL 2103063, at *9 (D. Guam June 3, 2022).) For this reason, the Indictment is missing an essential element and must be dismissed. (*See U.S. v. Constantinescu*, No. 4:22-cr-612, 2024 WL 1221579, at *1–6 (S.D. Tex. Mar. 20, 2024) (dismissing securities fraud indictment for "using [social media] followers to 'artificially increase' the price of those securities and then selling their own shares in private" because the "conduct cannot amount to a 'scheme to defraud' as a matter of law" given that "the property right of the investors…harmed was their right to control their assets, or…to make an informed discretionary decision.").)

### B.    The Government Fails to Allege Actionable Misrepresentations, Omissions, or Half-Truths

Misrepresentations, omissions, and half-truths have different pleading requirements. The Indictment is missing required allegations, and that defect requires dismissal for this independent reason.

### 1.    <u>No Actionable Omissions</u>

The government alleges Left deceived readers by "conceal[ing] the contributions of third parties, including hedge funds, in the preparation of Citron's commentary," "maintain[ing] the false pretense that the content of the Citron's commentary was not tainted by any conflict of interest," "conceal[ing] his intention to trade a Targeted Security in a manner inconsistent with the content and conclusions of Citron's commentary," "conceal[ing] Citron's financial relationships with hedge funds," and "conceal[ing] his coordination with and compensation from one hedge fund" through false invoices. (Indictment ¶19(e)(i)–(ii), (i)(ii)–(iii).) But

5

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

1  "[a]bsent an independent duty, such as a fiduciary duty or an explicit statutory duty,

2  failure to disclose cannot be the basis of a fraudulent scheme." (*U.S. v. Ali*, 620

3  F.3d 1062, 1070 n.7 (9th Cir. 2010) (citation omitted).) An omissions-based fraud

4  theory therefore cannot survive dismissal without allegations of a duty to disclose

5  the concealed information. The Indictment here contains no such allegations.

### 2.    No Actionable Misrepresentations

7       The government also fails to allege any actionable misrepresentations

8  because the alleged misrepresentations are all opinion statements. To allege that a

9  statement of opinion is false, the government must meet special pleading

10 requirements. The "standards for pleading falsity of opinion statements" require

11 allegations that both "the speaker did not hold the belief she professed" and "the

12 belief is *objectively untrue*[.]" (*Dearborn*, 856 F.3d at 615–16 (citations omitted)

13 (emphasis added).) Here, the government alleges that Left published false opinions:

14 "To maintain the false pretense that Citron's recommendations and positions were

15 sincerely held, defendant LEFT made false and misleading representations…about

16 his…conviction in Citron's analyses, and valuations of Targeted Securities."

17 (Indictment ¶7.) Left never made "recommendations," but even if he did, the

18 government concedes Left's publications were "commentary." (*See, e.g.*, *id.* ¶5.)

19 "Commentary" is "an expression of opinion." (*Commentary*, Merriam Webster

20 (2024).)

21      To charge Left's opinions as misrepresentations requires more than

22 conclusory allegations Left did not believe them. *Dearborn* requires the Indictment

23 contain facts that, if true, establish the opinions were *objectively* false. The

24 government never alleges Left published objectively false information *about the*

25 *companies* he discussed. The only facts alleged that support the allegation Left's

26 opinions were false are the facts surrounding Left's personal trading, which are

27 allegedly inconsistent with his commentary. But the *inference* derived from Left's

28 personal trading does not make his opinions *objectively* false. (*GFL Advantage*

6

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

*Fund, Ltd. v. Colkitt*, 272 F.3d 189, 210 (3d Cir. 2001) ("To infer that these 'premature' short sales were executed to manipulate prices, however, would be an unreasonable leap.").) There are myriad reasons for trading securities at different prices and times, such as the fact that "there is no limit to the short seller's potential loss: if the price of the stock rises, so too does the short seller's loss, and since there is no cap to a stock's price, there is no limitation on the short seller's risk." (*Zlotnick v. TIE Commc'ns*, 836 F.2d 818, 820 (3d Cir. 1988).) Furthermore, the government concedes that the "target price" Left sometimes included in his publications was a "*projection* of the Targeted Security's *future* price." (Indictment ¶19(e)(iv) (emphasis added).) Published opinions of a stock's *future* price are not rendered *objectively* false based on an inference derived from Left's trades in the stock at a different *present* price. (*See Allison v. Brooktree Corp.*, 999 F. Supp. 1342, 1348 (S.D. Cal. 1998) (finding "vague projections of future performance" are "not actionable").) The Indictment is devoid of factual allegations that, if true, establish Left's opinions were *objectively* false.

### 3.    No Actionable Half-Truths

The government also fails to allege any actionable half-truths. Half-truths are "representations that state the truth only so far as it goes, while omitting critical qualifying information." (*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 263 (2024) (citation omitted).) The government alleges Left told "half-truths about his economic incentives, conviction in Citron's analyses, and valuations of Targeted Securities….to deceive investors to believe that he held a position when, in fact, after using his influence on the market to manipulate stock prices in a particular direction, defendant LEFT closed his positions to capitalize on the temporary price movement caused by his public statements." (Indictment ¶7.) Alleging fraud by half-truths "requires identifying affirmative assertions (i.e., 'statements made') before determining if other facts are needed to make those statements 'not misleading.'" (*Macquarie*, 601 U.S. at 263 (citations omitted).)

7

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

However, under *Dearborn*, inferences drawn from Left's personal trading are insufficient to make his opinions objectively misleading. (*See supra* § I(B)(2).) This leaves as potential half-truths only Left's statements about hedge fund collaboration, but neither supports this theory.

The government alleges Left shared his publications with hedge funds in exchange for a share of profits. (*See* Indictment ¶19(e)(i), (i)(i).) But there are only two statements Left made about hedge funds alleged in the Indictment, and neither necessitates disclosure of Left's hedge fund collaboration to prevent those statements from being misleading. The first statement is the only *published* statement, which appeared in Left's report about GE, where he stated he had never been paid "*to publish research.*" (*Id.* ¶90(b).) Even if a hedge fund shared "a portion of [] trading profits" in exchange for Left "sharing his planned announcements," it does not make his initial statement misleading because he was not paid "*to publish research.*" (*Infra* § I(B)(4)(g).) The second statement was Left's unpublished statement to a *federal agent* during the investigation, which cannot mislead Left's *readers*. (*Id.* ¶104.)

### 4.    Additional Security-Specific Deficiencies

While the global flaws above infect all the securities fraud charges, the allegations for each security suffer from the additional deficiencies below.

### a.    CRON

The government does not allege Left published misrepresentations *about CRON*. Stating that he covered a "small size" of his position is not false because vague, generic terms like "huge," "significant[]," and "tremendous" are not "objectively verifiable" or "the kind of precise information on which investors rely [w]hen valuing corporations." (*Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1099 (9th Cir. 2022).)

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

*MEMORANDUM OF POINTS & AUTHORITIES*

### b.    TSLA

The government does not allege Left published misrepresentations *about TSLA*. Nor did Left deny trading around Citron's reports, stating, "[b]y no means does Citron *only* trade on publishing stories." (Indictment ¶32 (emphasis added).) Left's statements were true when published, because he was long TSLA, "actively manage[d] a book that has been trading Tesla for five years," and suffered "a loss of almost $2 million" unrelated to trading around a report. (*Id.*)

### c.    ROKU

The government does not allege Left published misrepresentations *about ROKU*. Indeed, the government alleges Left's first tweet was "manipulative," not *false* (Indictment ¶52), because the term "uninvestable" in Left's tweet is vague, "not capable of objective verification," and "lack[s] a standard against which a reasonable investor could expect [it] to be pegged." (*In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005) (quoting *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997)).) Both of Left's tweeted opinions were true because Left called ROKU "uninvestable," exited his position, and then was indeed "*watching $ROKU from the side*." (Indictment ¶¶50–52.)

### d.    BYND

The government does not allege Left published misrepresentations *about BYND*. Telling CNBC that he "shorted some" BYND stock cannot be false because the term "some" is vague, "not capable of objective verification," and "lack[s] a standard against which a reasonable investor could expect [it] to be pegged." (*In re Cornerstone*, 355 F. Supp. 2d at 1087 (citation omitted)). Likewise, the qualifier "we expect" in his tweet precludes objective falsity. (*See Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606–07 (9th Cir. 2014).)

*MEMORANDUM OF POINTS & AUTHORITIES*

1

e.  **NVTA**

2    The government does not allege Left published misrepresentations *about*

3  *NVTA*. The qualifiers "we expect" and "we believe" in Left's publications also

4  preclude objective falsity. (*See id.*)

5    Furthermore, the government's allegation that Left's investor letters were

6  deceptive contradicts other allegations in the Indictment. The government alleges

7  Left "established Citron Capital, a purported hedge fund, to advance the false

8  pretense that he successfully managed third-party investors' funds and was a

9  credible investment adviser," while concealing that it "did not have any third-party

10  investors; it was entirely comprised of defendant LEFT's funds." (Indictment ¶¶71–

11  76.) But the government alleges Citron Capital was "registered as an investment

12  adviser in California," and it quotes communications Left sent that same month to

13  *Reuters*, stating, "after investing *only his own wealth* for roughly two decades, he

14  had launched a hedge fund, that he *planned to raise* 'a few hundred million dollars'

15  from investors, and that he would begin trading through the hedge fund in weeks."

16  (*Id.* ¶¶3, 72 (emphases added).) Therefore, by the government's own allegations,

17  Left did not "conceal" these facts—he told them to a media outlet. It is inconsistent

18  for the government to allege Left amplified his opinions using the media while also

19  alleging he concealed facts that *he told to the media*. Further, an unsuccessful

20  attempt to start a hedge fund does not transform statements referencing the fund

21  into fraudulent misrepresentations.

22

f.  **Namaste**

23    The government does not allege Left published misrepresentations *about*

24  *Namaste*. Stating he would short Namaste "until it goes to zero" is not actionable

25  because stocks are delisted before reaching "zero." (*See Zhu v. Taronis Techs. Inc.*,

26  No. 19-cv-4529, 2020 WL 1703680, at *1 (D. Ariz. Apr. 8, 2020).) Left's message

27  to Hedge Fund A's executive the following day asking if they should "cover

28  Namaste and wait or keep some," also demonstrates that Left's statement on BNN

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

10

1    was true because he did not have a preformed intent to trade Namaste when

2    expressing his stock price opinion on BNN the day before. Furthermore, the

3    government never alleges Hedge Fund A actually traded shares of Namaste.

### g.    GE

5    The government does not allege Left published misrepresentations *about GE*.

6    Instead, it alleges Left's publication was false because Left "concealed"

7    compensation from Hedge Funds A and B. (Indictment ¶¶89–102.) But Left's

8    statement that he has never been compensated by a third party "to publish research"

9    is not false. (*Id.* ¶90(b).) The government alleges Hedge Fund A's payments to Left

10   were for his "share" of "trading profits," not "to publish research," and Left's IGC

11   tweet demonstrates that he borrowed the shares from Hedge Fund A. (*Id.* ¶¶99(b)

12   ("Just praying for more *borrow* to open up." (emphasis added)), 102.) The

13   Indictment mentions "Hedge Fund B" but includes no allegations about it. There

14   are no allegations that Left's statement that he "ha[s] never been compensated by a

15   third party *to publish research*" was objectively false. The payments from Hedge

16   Fund A are alleged to have been for Left's "share" of "trading profits" after Hedge

17   Fund A "borrow[ed]" shares of Namaste and IGC for Left, not payments "to

18   publish research."

19   The Indictment also fails to allege a disclosure duty. "[N]either a seller nor a

20   middleman has an obligation to disclose his financial incentives for selling a

21   particular commodity." (*U.S. v. Skelly*, 442 F.3d 94, 97 (2d Cir. 2006).) Likewise,

22   "no SEC rule requires th[at] registered representatives who deal with [] customers

23   [] disclose their own compensation, whether pegged to a particular trade or

24   otherwise." (*Id.*) Thus, "otherwise truthful statements made by [Left] about the

25   merits of a particular investment are not transformed into misleading 'half-truths'

26   simply by [his] failure to reveal" his compensation. (*Id.*)

27

28

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

### h.    NVDA, TWTR, FB, AAL, PLTR, IGC, and XL

Although the government alleges Left made certain statements related to NVDA, TWTR, FB, AAL, PLTR, IGC, and XL, it neither alleges that Left published misrepresentations or half-truths *about those companies*, nor alleges that anything about Left's statements was false. Given that Left's statements were true when published, they cannot support a scheme to defraud. Further, the government fails to allege any shares of IGC were actually traded.

### i.    PTE, LK, and NVAX

The government charges three securities comprising Counts 5, 14, and 15 by listing them in a table in the Indictment: PTE, LK, and NVAX. (Indictment ¶111.) However, there are no allegations about these securities at all, let alone about Left's trades in them. Without allegations of misrepresentations, omissions, or half-truths, the counts fail to state an offense. (*See U.S. v. Keuylian*, 23 F. Supp. 3d 1126, 1128 (C.D. Cal. 2014).)

### C.    The Government Fails to Allege Materiality

"Materiality is an element of securities fraud" which "depends on the significance the reasonable investor would place on the withheld or misrepresented information." (*U.S. v. Jenkins*, 633 F.3d 788, 802 (9th Cir. 2011) (citation omitted).) The Ninth Circuit recently refined the contours of materiality in *U.S. v. Milheiser* when it rejected as "overbroad" the government's argument that a misrepresentation is material if it "had a natural tendency to influence, or w[as] capable of influencing, a person to part with money or property." (98 F.4th at 945 (alteration in original).) The court reversed Milheiser's mail fraud and conspiracy convictions for inducing purchasers to buy printer toner by having representatives "call a business, falsely imply that the sales company was the business's regular supplier of toner,…falsely state that the price of toner had increased[, and] then state that the business could lock in the old price by purchasing more toner that day." (*Id.* at 938.) "There was no evidence presented at trial suggesting that any

12

businesses did not receive the toner or that any of the toner had defects." (*Id.* at 939.) "Some purchasers testified that they would not have placed orders…if they had realized they were not dealing with their regular supplier[,] [and] [o]ne also testified that he would not have placed orders…had he known the price of toner was not increasing." (*Id.*) Nevertheless, the court held "a misrepresentation does not constitute fraud if the person was not deceived about something *essential to the bargain* itself….A misrepresentation will go to the nature of the bargain if it goes to price or quality, or otherwise to essential aspects of the transaction." (*Id.* at 943–44 (emphasis added).) This requirement "properly excludes from liability cases in which a defendant's misrepresentations about *collateral matters* may have led to the transaction but the buyer still got the product that she expected at the price she expected." (*Id.* (emphasis added).) *Milheiser* therefore limits materiality in fraud statutes to deception about something "essential to the bargain."

Because the government fails to allege misrepresentations, omissions, and half-truths by Left that "deceived [readers] about something *essential to the bargain* itself," namely that they did not get what they negotiated for in their own trades, no analysis of what reasonable investors would want to know is relevant to the materiality analysis. None of the alleged "false and misleading statements about [his] research staff, process, independence, external investors, and economic incentives," or even his personal trading, were *essential to the bargains* involving readers' own trades, which under *Milheiser* is a threshold issue, which here ends the materiality analysis. (Indictment ¶19(e)(iii).) The information Left allegedly deprived his readers of was "collateral" to each of their trades because every reader "still got the product that she expected at the price she expected." (*Milheiser*, 98 F.4th at 943–44; *see U.S. v. Alladawi*, 707 F. Supp. 3d 920, 930 (C.D. Cal. 2023).)

Any misrepresentations about Left's research staff, process, independence, external investors, or economic incentives would be no different than Milheiser's misrepresentation about being a business' regular toner supplier. Likewise, even if

13

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

Left published false stock price opinions to trigger price movements in the market, it would be no different than Milheiser misrepresenting that the price of toner increased to induce a sale. The only notable difference between Milheiser and Left is that Milheiser was a direct party to the transactions his misrepresentations induced, while Left was not a party to the trading transactions his misrepresentations allegedly induced. If Milheiser's misrepresentations to customers were not material because those customers received the toner they ordered, then Left's publications to readers cannot possibly be material either because every reader received the securities they purchased, or the proceeds from the securities they sold, which are the only essential aspects of those bargains.

### D.    The Government Fails to Allege Fraudulent Intent

Intent is another essential element the government fails to allege. The intent to defraud is "the intent to deceive *and* cheat—in other words, to deprive the victim of money or property by means of deception." (*U.S. v. Miller*, 953 F.3d 1095, 1101, 1103 (9th Cir. 2020).) "[T]he intent must be to obtain money or property from the one who is deceived[.]" (*U.S. v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989) (citation omitted).) The government alleges that Left intended to deceive readers, but it fails to allege that he also intended to cheat them of money or property. This failure to allege another essential element is an independent reason to dismiss the Indictment. The government alleges that Left schemed to "profit[] from his advance knowledge that he was about to trigger [price] movements in the market," not to cheat his readers of money or property. (Indictment ¶7.) The fraud alleged here is that Left "concealed his *intention to* trade a Targeted Security in a manner inconsistent with the content and conclusions of Citron's commentary…." (*Id.* ¶19(e)(ii) (emphasis added).)

The government alleges additional acts by Left to "prevent his deceptive practices from being *discovered*," but they have nothing to do with cheating readers. (*Id.* ¶20.) Left allegedly "us[ed] encrypted messaging apps," "[d]eleted

14

---

*MEMORANDUM OF POINTS & AUTHORITIES*

electronic communications," and "[m]ade false statements" during an interview with a government agent to avoid detection. (*Id.*) None of these allegations involve cheating *readers*. Deception to avoid detection from *the government* is not an intent to *deceive* by cheating readers of their *property*. Further, the implication that use of encrypted messaging evidences an intent to defraud is an outdated and unreasonable inference because CISA and the FBI recently advised all Americans to communicate using encrypted messaging. (*See* CISA, *Enhanced Visibility and Hardening Guidance for Communications Infrastructure* (Dec. 4, 2024), https://tinyurl.com/2024-12-04-CISA.)

There are no allegations of an intent to deceive and cheat others of property in the Indictment. That missing element warrants dismissal because an intent to defraud is an essential element of securities fraud. (*See U.S. v. Holmes*, No. 5:18-cr-258, 2020 WL 666563, at *17–19 (N.D. Cal. Feb. 11, 2020).)

## II.    The Government Applies Domestic Laws Extraterritorially

"Consistent with the general presumption against extraterritorial application of federal law, the Supreme Court has held that § 10(b) applies to only two types of transactions: (1) '[T]ransactions in securities listed on domestic exchanges,' and (2) 'domestic transactions in other securities.'" (*U.S. v. Gaines*, No. 21-cr-266, 2022 WL 204415, at *3 (D. Ariz. Jan. 24, 2022) (quoting *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010)).) "Deceptive domestic conduct or the presence of other, non-transactional domestic activity cannot substitute for *Morrison*'s requirement[s]…." (*Stoyas v. Toshiba Corp.*, 896 F.3d 933, 944 (9th Cir. 2018).) Extraterritoriality is "properly decided by the judge." (*U.S. v. Medjuck*, 156 F.3d 916, 918 (9th Cir. 1998).) The Namaste charges here are improperly extraterritorial.

First, the government alleges Namaste was "traded over-the-counter," but not that it was registered on a national securities exchange. (Indictment at 6:16–21, 29:7–8.) A national securities exchange is "a subset of 'exchanges' that are

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

15

*MEMORANDUM OF POINTS & AUTHORITIES*

registered with the [SEC] and that abide by the requirements set out in 15 U.S.C.
§ 78f and its regulations[,]" and "[n]o over-the-counter market is a 'national
security exchange[.]'" (*Stoyas*, 896 F.3d at 945.) Because 18 U.S.C. § 1348(1)
applies only to securities "registered" or "required to file reports" under Sections 12
and 15(d) of the Securities Exchange Act of 1934, Count 1 fails. Likewise, Count 4
fails because 15 U.S.C. § 78j(b) applies "in connection with" a "security registered
on a national securities exchange" only.

"For securities not listed on domestic exchanges (like in this case), the 'focus
of the Exchange Act is not upon the place where the deception originated,' but
whether the transaction at issue took place in the United States." (*Gaines*, 2022 WL
204415, at *3 (citation omitted).) A securities transaction is domestic if the
purchaser or seller "incurred irrevocable liability" within the U.S. (*Stoyas*, 896 F.3d
at 948–49 (citation omitted).) Here, the government alleges Left executed a short
campaign with "Hedge Fund A" by tweeting and making statements on "BNN
(Bloomberg TV's *Canadian* network)" about Namaste. (Indictment ¶¶94–97
(emphasis added).) However, the government not only conceals that "Hedge Fund
A" and Namaste are both *Canadian* companies, but it also strategically omits parts
of Left's tweet demonstrating that it was about Namaste's *Canadian* securities.
With emphasis added to the portions the government omitted, Left's tweet read:

> **Namaste $N Canada. Some cannabis stocks are overvalued, and**
> **some are** total jokes. **This is a joke** Drop it like its hot' after the
> **pledge party prohibits listing in US, downside: 80%. That .50**

The tweet refers to Namaste's ticker symbol "$N" on the Canadian Securities
Exchange—not "NXTTF" as the government misleadingly substitutes. Thus, the
charged conduct (i.e., an alleged agreement with a *Canadian* hedge fund related to
statements on a *Canadian* broadcast about *Canadian* securities of a *Canadian*
company), and its intended effects are all extraterritorial. (*See SEC v. Revelation
Cap. Mgmt., Ltd.*, 246 F. Supp. 3d 947, 953 (S.D.N.Y. 2017) ("[C]ross-listing on a
domestic exchange of foreign-issued shares that are purchased by a foreign entity

16

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

1    on a foreign exchange does not render the transaction 'domestic'").)

2    Extraterritoriality poses additional constitutional and venue concerns in

3    criminal actions. "[T]o apply extraterritorially a federal criminal

4    statute…consistently with due process, there must be a sufficient nexus between the

5    defendant and the United States, so that such application would not be arbitrary or

6    fundamentally unfair." (*U.S. v. Davis*, 905 F.2d 245, 248–49 (9th Cir. 1990)

7    (citation omitted).) A nexus exists "where an attempted transaction is aimed at

8    causing criminal acts within the United States." (*Medjuck*, 156 F.3d at 919 (citation

9    omitted).) The government bears this burden by a preponderance of the evidence,

10    which the Court—not the jury—must decide. (*Id.* at 918.) Relatedly, "Article III of

11    the Constitution, the Sixth Amendment, and Rule 18…all guarantee that a

12    defendant will be tried in the state where the crimes were committed." (*U.S. v.*

13    *Corona*, 34 F.3d 876, 878–79 (9th Cir. 1994).) "[V]enue must be proper for each

14    count." (*U.S. v. Yagman*, No. 6-cr-227-A-SVW, 2007 WL 9724388, at *15 (C.D.

15    Cal. May 3, 2007) (quoting *U.S. v. Pace*, 314 F.3d 344, 348 (9th Cir. 2002)).) The

16    government bears this burden by a preponderance of the evidence too. (*Id.*)

17    Accordingly, the government must resolve by a preponderance of the evidence

18    these constitutional and venue concerns before its Namaste charges proceed.

19    **III.    The Charges Violate Left's First Amendment Protections**

20    Because the government fails to allege that Left published misrepresentations

21    *about* any company, or that he had a duty to disclose things he allegedly omitted,

22    the government's theory of fraud violates the "First Amendment principle that

23    freedom of speech prohibits the government from telling people what they must

24    say." (*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 133 S. Ct. 2321,

25    2327 (2013) (citations omitted).) Compelled speech is subject to strict scrutiny.

26    (*See, e.g.*, *Riley v. Nat'l Fed'n of the Blind of No. Carolina, Inc.*, 487 U.S. 781, 798

27    (1988).) Other than advertising or point-of-sale disclosures, the First Amendment

28    "applies not only to expressions of value, opinion, or endorsement, but equally to

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

statements of fact the speaker would rather avoid." (*Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 523 (D.C. Cir. 2015) (citation omitted).)

The government seeks to compel Left to disclose his personal trading when publishing opinions about securities. Thus, strict scrutiny applies and the First Amendment requires dismissal to protect Left and his readers from the chilling effect this action will have on the flow of truthful information to the markets.

## IV. Enforcement Without Notice Violates Left's Due Process Rights

"The constitutional requirement of definiteness is violated when a criminal statute fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." (*U.S. v. Harriss*, 347 U.S. 612, 617 (1954).) Novel application of a law violates due process "if it is so vague and standardless that it leaves the public uncertain as to what conduct it prohibits." (*City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).)

No law or judicial precedent requires a publisher of truthful information to disclose their personal trading. The few academics that explored the viability of the government's theory here petitioned the SEC in 2020 "to engage in affirmative rulemaking" to "impose[] a duty to update promptly a voluntary short position disclosure which no longer reflects current holdings or trading intention" because "it is unresolved whether short sellers are subject to a duty under federal securities law to update a position disclosure which has been voluntarily initiated by the short seller but no longer reflects current holdings or trading intention." (*See* Joshua Mitts et al., *Petition for Rulemaking on Short and Distort*, SEC File No. 4-758 (Feb. 12, 2020), www.sec.gov/rules/petitions/2020/petn4-758.pdf ("[W]e are unaware of any scalping cases which have been brought by the Commission against short sellers to date.").) But this petition yielded no result. If law professors believed the government's theory was "unresolved," surely "persons of ordinary intelligence" did not have fair notice of it either. By rulemaking through

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

18

1    enforcement, the government violates Left's due process right to notice. (*See*

2    *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158–59 (2012).)

3    **V.    <u>The False Statement Charge Is Fatally Flawed</u>**

4        Left is charged with making a false statement. This count, too, is legally

5    defective.

6        **A.    Duplicity**

7        "Separate offenses should be charged in separate counts." (*Yagman*, 2007

8    WL 9724388, at *6 (citing Fed. R. Crim. P. 8(a)).) "'Duplicity' is the joining of two

9    or more separate offenses in a single count." (*U.S. v. Jesenik*, No. 3:20-cr-228, 2022

10    WL 11815826, at *7 (D. Or. Oct. 20, 2022).) "The test for determining whether a

11    single count improperly contains multiple, distinct offenses is 'whether identical

12    evidence will support each of them, and if any dissimilar facts must be proved,

13    there is more than one offense.'" (*U.S. v. Bonds*, No. 7-cr-732, 2008 WL 618911, at

14    *1 (N.D. Cal. Mar. 4, 2008).) "If duplicity is established, a trial court may (1) allow

15    election, provided the defendant is not prejudiced thereby and the election does not

16    alter the nature of the charge, or (2) dismiss the offending count" under Rule

17    12(b)(3)(B)(i). (*U.S. v. W.R. Grace*, 429 F. Supp. 2d 1207, 1219 (D. Mont. 2006).)

18        Count 19 is duplicitous because it bases a *single* false statement charge on

19    *two* statements, and "[e]ach of the separate alleged false statements in Count [19]

20    will require different evidence at trial." (*U.S. v. Bonnar*, No. 8-cr-197, 2008 WL

21    4460267, at *2 (W.D. Wash. Oct. 1, 2008).) The first statement requires evidence

22    Left "routinely shared the content of Citron reports with hedge fund managers in

23    advance of publication to afford them time to establish or adjust their trading

24    positions and thereby profit or minimize losses from price volatility caused by

25    Citron's publication." (Indictment ¶113(a).) The second statement requires

26    evidence demonstrating Left "received compensation from Hedge Fund A after

27    consulting with Hedge Fund A in advance of the issuance of Citron's commentary."

28    (*Id.* ¶113(b).) Therefore, the government could offer evidence Left "routinely

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

19

1    shared" Citron's reports with hedge funds without offering evidence that he

2    "received compensation from Hedge Fund A." Count 19 should be dismissed for

3    that reason. (*Bonds*, 2008 WL 618911, at *1; *see U.S. v. Dedman*, 527 F.3d 577,

4    600 n.10 (6th Cir. 2008); *U.S. v. Fry*, No. 11-cr-141, 2012 WL 13187109, at *2 (D.

5    Minn. Feb. 13, 2012).)

6        **B.    Fundamental Ambiguity**

7        "As a matter of law, a defendant may not be held criminally liable in a

8    perjury or false statement prosecution based upon a response to a 'fundamentally

9    ambiguous' question." (*U.S. v. Juan*, No. 2:20-CR-00134, 2021 WL 2188134, at *2

10   (E.D. Cal. May 28, 2021) (quoting *U.S. v. Culliton*, 328 F.3d 1074, 1078 (9th Cir.

11   2003) (per curiam)).) "A question is fundamentally ambiguous when it 'is not a

12   phrase with a meaning about which men of ordinary intelligence could agree, nor

13   one which could be used with mutual understanding by a questioner and answerer

14   unless it were defined at the time it were sought and offered as testimony.'" (*U.S. v.

15   Boone*, 951 F.2d 1526, 1534 (9th Cir. 1991) (citation omitted).) "In the face of

16   ambiguity, a court may decide as a matter of law to dismiss an indictment so long

17   as the defendant offers an innocent explanation for his testimony." (*Culliton*, 328

18   F.3d at 1080.) Both questions Left was asked were fundamentally ambiguous.

19       **1.    First Question**

20       The postal inspector's first question is hypothetical and phrased in the

21   *present* tense, asking: "**Do** you **share** your report before it goes public with [hedge

22   funds]?" (Indictment ¶104(b) (emphases added).) Although the Indictment's truth

23   paragraph focuses on Left's *past* practices, the question asks about Left's *present*

24   practices. This alone is fundamentally ambiguous. (*See U.S. v. Cook*, 497 F.2d 753,

25   767 (9th Cir. 1972) ("The use of the participial phrase 'being paid' in conjunction

26   with the verb 'have' reveals that the interrogator could only have been eliciting [the

27   defendant]'s knowledge concerning payments that were being made on or about

28

*MEMORANDUM OF POINTS & AUTHORITIES*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

[the interview date].") (Ely, J., dissenting), *recalled by* 489 F.2d 286, 287 (9th Cir. 1973) (adopting prior dissenting opinion).)

Asking if Left "share[s] [his] report before it *goes public with* [hedge funds]?" — i.e., before it is *published to* hedge funds. The government flips the grammatical structure of the question to ask if Left "share[s] [his] report [*with hedge funds*] before it *goes public*." Indeed, the government rearranges the question when paraphrasing it to read: "LEFT falsely stated that he did not share Citron's reports *with hedge funds* before those reports *became public* except to check the factual accuracy of the report." (Indictment ¶113(a) (emphases added).) The improper grammar and contorting of the question is exacerbated by referring to "report" in the singular form, which the government expands in the Indictment by adding the letter "s" to encapsulate Left's past practices across all "report**s**." (*See U.S. v. Jiang*, 476 F.3d 1026, 1029 (9th Cir. 2007) (reversing false statement conviction where agent "could not recall whether he used the singular form (i.e., 'amplifier') or the plural form (i.e., 'amplifiers')").) The question is therefore fundamentally ambiguous.

Separately, the government does not allege Left gave a false answer. The question asks whether Left shared his "report," but the Indictment claims his answer was false because Left "routinely shared the *content* of Citron's commentary with hedge fund managers…." (Indictment ¶¶104(b), 113(a).) Thus, the alleged truth (i.e., sharing the *content* of a report) does not contradict the question (i.e., sharing the *report* itself). Even if the question did ask whether Left shared "the content" of his report, Left's answer would be truthful because he admitted sharing the content of his report. (*Id.* ¶104(b) ("I might double check a spreadsheet.").) Therefore, Left gave a truthful, non-responsive answer. (*See U.S. v. Sainz*, 772 F.2d 559, 564 (9th Cir. 1985); *Cook*, 489 F.2d at 287.)

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

21

1

2.    **Second Question**

2    The second question is fundamentally ambiguous. It is hypothetical and

3    phrased in the *present* tense, asking: "**[w]hen** you **check** with other hedge funds

4    that specialize in the industry that you **are looking** at, **is** there compensation

5    between the two of you?" (Indictment ¶104(a) (emphases added).) Although the

6    Indictment focuses on *past* practices, the question asks about Left's *present*

7    practices. This is fundamentally ambiguous. (*See Cook*, 489 F.2d at 287; 497 F.2d

8    at 767.)

9    Furthermore, "compensation" means "remuneration and other benefits

10    received *in return for services rendered*; esp., salary or wages." (*Compensation*,

11    Black's Law Dictionary (12th ed. 2024) (emphasis added).) The question neither

12    defined "compensation," nor indicated the direction of any compensation inquired

13    about. As the question is phrased, Left is seeking a service (i.e., expertise in an

14    industry) *from* hedge funds. By asking about compensation "[w]hen you check with

15    other hedge funds that specialize in the industry that you are looking at," the

16    question asks whether Left compensates hedge funds in return for their expertise.

17    Indeed, the government adds "received" before and "from" after "compensation" in

18    the Indictment, because it is fundamentally ambiguous otherwise. (Indictment

19    ¶¶104(a) ("LEFT *received* compensation *from* Hedge Fund A after consulting"

20    (emphases added)), 113(b).) Therefore, the government's second question is also

21    fundamentally ambiguous. (*Jiang*, 476 F.3d at 1030.)

22

23

24

25

26

27

28

*MEMORANDUM OF POINTS & AUTHORITIES*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

## <u>CONCLUSION</u>

The Indictment is not only missing four different essential elements, but it also suffers from the additional defects described above. Left therefore respectfully requests that the Court grant this Motion and dismiss the Indictment.

Dated: January 27, 2025

Respectfully submitted,

SPERTUS, LANDES & JOSEPHS, LLP

By: _____

James W. Spertus
Lindsey Hay
Mario Hoang Nguyen

*Attorneys for Defendant Andrew Left*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

### <u>Certificate of Compliance</u>

The undersigned, counsel for Defendant Andrew Left, certifies this memorandum of points and authorities contains 6,949 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 27, 2025

_____

James W. Spertus

*MEMORANDUM OF POINTS & AUTHORITIES*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711