JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
BRETT A. SAGEL (Cal. Bar No. 243918)
Assistant United States Attorney
Chief, Corporate & Securities Fraud Strike Force
ALEXANDER B. SCHWAB
Assistant United States Attorney
Deputy Chief, Corporate & Securities Fraud Strike Force
LAUREN ARCHER
MATTHEW REILLY
Trial Attorneys
Department of Justice, Criminal Division, Fraud Section
        United States Courthouse
        411 West 4th Street, Suite 8000
        Santa Ana, California 92701
        Telephone: (714) 338-3598
        Facsimile: (714) 338-3561
        E-mail:    brett.sagel@usdoj.gov
                   alexander.schwab@usdoj.gov
                   lauren.archer@usdoj.gov
                   matthew.reilly2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>ANDREW LEFT,<br><br>          Defendant. | No. 2:24-CR-000456-TJH<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT ANDREW LEFT's MOTION TO DISMISS THE INDICTMENT<br><br>Hearing Date: March 24, 2025[1]<br>Hearing Time: 10:00 am<br>Ctrm: 9C<br>Judge: Hon. Terry J. Hatter Jr. |

     Plaintiff United States of America, by and through its counsel

of record, the Acting United States Attorney for the Central District

---

[1] The parties have entered into a stipulation requesting an
continuation of the hearing on defendant's motion to March 24, 2025.

of California and Assistant United States Attorneys Brett Sagel and Alexander B. Schwab, and Glenn S. Leon, Chief, Fraud Section, Criminal Division, and Trial Attorneys Lauren Archer and Matthew Reilly, hereby files its opposition to defendant Andrew Left's motion to dismiss the superseding indictment (Dkt. 34).

The Government's Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 18, 2025          Respectfully submitted,

                                  JOSEPH T. MCNALLY
                                  Acting United States Attorney

                                  LINDSEY GREER DOTSON
                                  Assistant United States Attorney
                                  Chief, Criminal Division

                                  GLENN S. LEON
                                  Chief, Fraud Section

                                  _____/s/_____
                                  LAUREN ARCHER
                                  MATTHEW REILLY
                                  ALEXANDER B. SCHWAB
                                  BRETT A. SAGEL

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES...................................................i

MEMORANDUM OF POINTS AND AUTHORITIES...................................1

I.    INTRODUCTION....................................................1

II.   LEGAL STANDARD.................................................3

III.  ARGUMENT.......................................................4

      A.    The Indictment's Securities Fraud Charges Sufficiently
            Pleaded All Essential Elements...........................4

            1.    The Scheme's Object was Investors' Money and
                  Stock..............................................4

            2.    The Indictment Alleges Actionable Misstatements......6

      B.    Indictment Properly Alleges Defendant Made False and
            Misleading Statements Regarding Targeted Securities......14

            1.    CRON..............................................16

            2.    NVTA..............................................16

            3.    GE................................................17

      C.    The Indictment Sufficiently Pleads Materiality..........18

      D.    The Indictment Sufficiently Pleads Fraudulent Intent.....20

      E.    The First Amendment Does Not Protect Defendant's
            Unlawful Conduct........................................21

      F.    Defendant Fails To Articulate a Due Process Claim.......22

      G.    The False Statement Charge Suffers from No Defects......23

            1.    Count Nineteen Is Not Duplicitous.................23

            2.    Count Nineteen States an Offense..................23

IV.   CONCLUSION.....................................................26

**TABLE OF AUTHORITIES**

**CASES**

Bronston v. United States,
    409 U.S. 352 (1973)..........................................23

Ciminelli v. United States,
    598 U.S. 306 (2023)......................................passim

City of Chicago v. Morales,
    527 U.S. 41 (1999)...........................................22

City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v.
    Align Tech., Inc.,
    856 F.3d 605 (9th Cir. 2017)...........................7, 9, 10

Fisher v. United States,
    231 F.2d 99 (9th Cir. 1956)..................................23

Giboney v. Empire Storage & Ice Co.,
    336 U.S. 490 (1949)..........................................21

In re Galena Biopharma, Inc. Sec. Litig.,
    117 F. Supp. 3d 1145 (D. Or. 2015)............................7

In re Glumetza Antitrust Litig.,
    611 F. Supp. 3d 848 (N.D. Cal. 2020).........................11

Kousisis v. United States,
    144 S. Ct. 2655 (June 17, 2024)..............................19

Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.,
    39 F.4th 1092 (9th Cir. 2022)................................14

Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension
    Fund, 575 U.S. 175 (2015)..............................9, 10, 13

Regent Office Supply Co.,
    421 F.2d 1174 (2d Cir. 1970).................................19

Rigel Pharms., Inc. Secs. Litig., Inter-Local Pension Fund
    GCC/IBT v. Deleage, 697 F.3d 869 (9th Cir. 2012).............15

SEC v. Beck,
    No. 2:22-CV-00812-FWS-JC, 2024 WL 1626280 (C.D. Cal. Mar.
    26, 2024).....................................................8

SEC v. Corp. Relations Grp., Inc.,
    CIV 99-1222 (ORL), 2003 WL 25570113 (M.D. Fla. Mar. 28,
    2003)........................................................18

SEC v. Fassari,
    No. SACV 21-403 JVS(ADSX), 2021 WL 2290576 (C.D. Cal. May
    5, 2021).................................................12, 18

i

SEC v. Gallagher,
    No. 21-CV-8739 (PKC), 2023 WL 6276688 (S.D.N.Y. Sept. 26,
    2023)..................................................12, 19

SEC v. Huttoe,
    No. CIV.A. 96-2543, 1998 WL 34078092 (D.D.C. Sept. 14,
    1998)......................................................2

SEC v. Lidingo Holdings, LLC,
    No. C17-1600 RSM, 2018 WL 2183999 (W.D. Wash. May 11, 2018).....8

SEC v. Stein,
    906 F.3d 823 (9th Cir. 2018)...............................6

SEC v. Thompson,
    238 F. Supp. 3d 575 (S.D.N.Y. 2017)...............10, 11, 17, 18

United States v. Buckley,
    689 F.2d 893 (9th Cir. 1982)...............................3

United States v. Camper,
    384 F.3d 1073 (9th Cir. 2004)........................23, 24, 25

United States v. Cannistraro,
    800 F. Supp. 30 (D.N.J. 1992)..............................18

United States v. Culliton,
    328 F.3d 1074 (9th Cir. 2003) (per curiam)...................24

United States v. Ely,
    142 F.3d 1113 (9th Cir. 1997)..............................3

United States v. Griffin,
    76 F.4th 724 (7th Cir. 2023)...............................5

United States v. Halbert,
    640 F.2d 1000 (9th Cir. 1981) (per curiam)...................22

United States v. Hansen,
    599 U.S. 762 (2023).......................................21

United States v. Jensen,
    93 F.3d 667 (9th Cir. 1996).......................3, 11, 15, 21

United States v. Laurienti,
    611 F.3d 530 (9th Cir. 2010)..............................22

United States v. Mahaffy,
    693 F.3d 113 (2d Cir. 2012)................................6

United States v. McKenna,
    327 F.3d 830 (9th Cir. 2003)..............................25

United States v. Milheiser,
    98 F.4th 935 (9th Cir. 2024)...........................passim

United States v. Morrison,
    536 F.2d 286 (9th Cir. 1976)................................3, 15

United States v. Musacchio,
    968 F.2d 782 (9th Cir. 1992)................................4, 9

United States v. Nordlicht,
    No. 16-cr-00640 (BMC), 2023 WL 4490615 (E.D.N.Y. July 12,
    2023)......................................................6

United States v. Nukida,
    8 F.3d 665 (9th Cir. 1993)................................11, 16

United States v. Rogers,
    321 F.3d 1226 (9th Cir. 2003)..............................20

United States v. Shortt Accountancy Corp.,
    785 F.2d 1448 (9th Cir. 1986)..............................3

United States v. Tarallo,
    380 F.3d 1174 (9th Cir. 2004)..............................20

United States v. UCO Oil Co.,
    546 F.2d 833 (9th Cir. 1976)...............................23

United States v. Wenger,
    427 F.3d 840 (10th Cir. 2005).........................13, 18, 22

United States v. Wey,
    No. 15-cr-611, 2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) .........5

United States v. Yates,
    16 F.4th 256 (9th Cir. 2021)...............................4

Zweig v. Hearst Corp.,
    594 F.2d 1261 (9th Cir. 1979).........................8, 14, 22

**STATUTES**

15 U.S.C. § 78j(b).............................................7

18 U.S.C. § 1348..........................................5, 6

**REGULATIONS**

17 C.F.R. § 240.10b-5.......................................7, 9

**RULES**

Fed. R. Crim. P. ..........................................passim

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Defendant Andrew Left engaged in a classic securities fraud scheme.  He provided false and misleading information to investors, while hiding his true intentions so he could profit at their expense. He did this to take investors' money by selling them stock or their property by buying stock at artificial and manipulated prices.

For his crimes, the indictment charges defendant with one count of engaging in a securities fraud scheme, seventeen substantive counts of securities fraud corresponding to the securities he targeted, and one count of lying to federal agents.  The indictment tracks the statutory language for each count and properly pleads each element of the crime, which is sufficient to overcome defendant's motion. But, the indictment goes far beyond on the minimum requirements outlining the essential pattern of defendant's scheme:

1. take out a large position in a stock,
2. prepare to close out that position following a public statement,
3. publicize false and misleading statements about the stock with inflammatory rhetoric and extreme target prices without disclosing his own intent to trade in the opposite direction and promptly close out his position, and
4. then nearly immediately close out that position on the ensuing market reaction inconsistent with the view in the public statement and at prices far from his published target prices.

Importantly, and tellingly, the pattern was the same whether Defendant traded in the long and short direction.  Such conduct has long been prohibited, in both directions.  See SEC v. Capital Gains Rsch. Bureau, Inc., 375 U.S. 180, 181, 202 (1963) (finding a "fraud

1

or deceit" on clients, within the meaning of the Advisers Act, including an occasion where defendant "sold short some shares of a security immediately before stating in their Report that the security was overpriced [and a]fter the publication of the Report, respondents covered their short sales"); SEC v. Huttoe, No. CIV.A. 96-2543, 1998 WL 34078092, at *7 (D.D.C. Sept. 14, 1998) (the "practice of selling when . . . recommending buying has long been understood to operate as a fraud or deceit upon investors.").

Defendant mischaracterizes case law to argue that his scheme does not fit under the fraud statutes. However, his scheme was squarely aimed at obtaining money and stock, which by definition is a property interest in a specific company. Defendant's deception concerned one of the most essential elements of a securities transaction -- the price. See United States v. Milheiser, 98 F.4th 935, 943 (9th Cir. 2024) (when misrepresentations "are directed to the quality, adequacy or price of the goods themselves, the fraudulent intent is apparent because the victim is made to bargain without facts obviously essential in deciding whether to enter the bargain"). Lastly, defendant ignores that his Ciminelli arguments do not even apply to Counts 2-18 charged under Title 15 securities fraud and provide no support for dismissing those counts.

The bulk of defendant's remaining arguments improperly raise factual disputes (guised as legal arguments), which do not provide support for a motion to dismiss an indictment and should be denied on this basis alone. Defendant's remaining legal arguments for dismissal also lack merit and should be summarily rejected. For these and the reasons below, the Court should deny defendant's motion to dismiss the indictment in its entirety.

2

## II.    LEGAL STANDARD

A motion to dismiss is generally "capable of determination" before trial "if it involves questions of law rather than fact." United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir. 1986). Although courts may make preliminary findings of fact necessary to decide the legal questions presented by the motion, they may not "invade the province of the ultimate finder of fact." Id. But there is no summary judgment procedure in criminal cases, nor do the rules provide for such pre-trial evaluation of competing evidence from the parties by the Court, as opposed to a jury. See United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996).

"An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." United States v. Buckley, 689 F.2d 893, 896 (9th Cir. 1982). The question for determining sufficiency is simply whether the "indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the Government can prove its case." Id. at 897. "[A]n indictment should be: (1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense." Id. at 899. "An indictment tracking the language of the statute is usually adequate because statutes usually denounce all the elements of the crime." United States v. Morrison, 536 F.2d 286, 288 (9th Cir. 1976). The Ninth Circuit has repeatedly recognized that an "indictment that sets forth the charged offense in the words of the statute itself is generally sufficient." United States v. Ely, 142 F.3d 1113, 1120 (9th Cir. 1997). Further, "the government [is] not required to allege its theory of the case or list

3

supporting evidence to prove the crime alleged." <u>United States v. Musacchio</u>, 968 F.2d 782, 787 (9th Cir. 1992) (citing <u>Buckley</u>, 689 F.2d at 897.)  In analyzing the indictment, the Court shall presume that the allegations of the indictment are true.  <u>Buckley</u>, 689 F.2d at 897.

**III. ARGUMENT**

   **A.   The Indictment's Securities Fraud Charges Sufficiently Pleaded All Essential Elements**

      1.   <u>The Scheme's Object was Investors' Money and Stock</u>

Defendant wrongly suggests that the indictment improperly alleges that the object of defendant's fraud was not a traditional property interest.  However, the indictment plainly articulates that the object of defendant's scheme was investors' money or property (stock).  These are classic property rights that do not trigger any of the concerns arising from <u>Ciminelli v. United States</u>, 598 U.S. 306 (2023), which exclusively addressed the "right-to-control" theory of wire fraud that is in no way involved in this case.  This case similarly bears no semblance to <u>United States v. Yates</u>, 16 F.4th 256, 265-66 (9th Cir. 2021), a bank fraud case in which the prosecution exclusively relied on the deprivation of accurate information alone as the object of the scheme.  Instead, here, a scheme is alleged – to which <u>Ciminelli</u> and <u>Yates</u> have no relevance – because the indictment charges both deceit of investors *and* depriving them of something of value.  <u>Cf.</u> <u>id.</u>

Specifically, the indictment alleges that defendant's object was to deprive victims of their money and stock, which are classical property interests.  ECF No. 1, Indictment ("Ind.") ¶ 7 ("Defendant Left knew that his recommendations influenced investors' decisions to

4

buy or sell stock and thereby empowered him to manipulate the price of a Targeted Security. . . . [D]efendant Left closed his position to capitalize on the temporary price movements caused by his public statements [and] used this deception and concealment to manipulate the market for his own financial gain"); ¶19a; ¶19c; ¶19e.v; ¶19f; ¶19g.

The indictment is clear: the entire purpose of the scheme is to manipulate the price that other investors would pay so that defendant could take their money or property.  See United States v. Wey, No. 15-cr-611, 2017 WL 237651, at *10 (S.D.N.Y. Jan. 18, 2017) (denying motion to dismiss § 1348 count alleging pump-and-dump scheme and explaining that "[t]hat sort of scheme is, by its very nature, designed to generate economic benefits at the expense of unwary consumers" (internal quotation marks omitted)).  In defendant's own words: his trades around Citron's reports and tweets were like taking "candy from a baby."  Ind. ¶ 27.  The candy was the investors' money and stock.

As in any fraud case, the deception was necessary for the success of the defendant's fraudulent scheme, but ultimate goal was to profit by taking money and stock taken from his victims.  Courts have distinguished Ciminelli on exactly this basis. See, e.g., United States v. Griffin, 76 F.4th 724, 738-39 (7th Cir. 2023) (rejecting argument that the Government pursued a right-to-control theory under Ciminelli, explaining that the allegations explicitly focused on depriving SBA of loan guarantees and the millions of dollars lost paying them out).  There is thus no basis to dismiss Count One.

Furthermore, Counts Two through Eighteen are charged under Title 15 securities fraud, which is a separate statutory regime from the

criminal fraud statutes at the heart of Ciminelli and related cases.
There is no analogous requirement that the object of the scheme be
money or property under Title 15.  United States v. Nordlicht, No.
16-cr-00640 (BMC), 2023 WL 4490615, at *5 (E.D.N.Y. July 12, 2023)
("Wire fraud, unlike securities fraud [under Title 15], does require
an intent to deprive the victim of money or property.").  This is
because "intent to harm" is not an element of such charges; instead,
it is enough that a defendant intends to "deceive" or "manipulate."
Id.  Defendant's attempts to expand the reach of Ciminelli are
meritless and inapplicable as to Counts Two through Eighteen and
should be rejected.

        2.   The Indictment Alleges Actionable Misstatements

           *a.   Specific False Representations or Material*
                *Omissions are Not Required for Count One*

As an initial matter, defendant's arguments concerning the
purported lack of actionable misstatements cannot and does not apply
to Count One, which charges a fraudulent scheme in violation of 18
U.S.C. § 1348(1). To properly charge a count under § 1348(1), the
indictment must allege: "(1) a scheme or artifice to defraud, (2)
with fraudulent intent, (3) in connection with any security." SEC v.
Stein, 906 F.3d 823, 830 (9th Cir. 2018).  Critically, false
representations or material omissions are not required for a
conviction under § 1348(1).  United States v. Mahaffy, 693 F.3d 113,
125 (2d Cir. 2012) ("[T]he jury could have convicted under § 1348
without considering false representations or material omissions.").
Accordingly, because the government adequately pled the statutory
elements required to allege a violation of § 1348, the motion should
be denied as to Count One.

b.  *Counts Two through Eighteen Allege Scheme Liability That Do Not Require a Material Misrepresentation*

Counts Two through Eighteen are not limited to material misstatement allegations, but also allege scheme liability under Rule 10b-5(a) and (c) under the Securities Exchange Act (15 U.S.C. § 78j(b)).  Under these provisions, typically referred to as "scheme liability," it is unlawful for any person in connection with the purchase or sales of securities "[t]o employ any device, scheme, or artifice to defraud," or "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person[.]"  17 C.F.R. § 240.10b-5(a), (c).[1]  Scheme liability claims are distinct from claims under Rule 10b-5(b). Rule 10b-5(b) claims are based solely on deceptive statements or omissions, whereas scheme liability claims involve deceptive conduct, which may include deceptive statements or omissions but must also include additional conduct."  In re Galena Biopharma, Inc. Sec. Litig., 117 F. Supp. 3d 1145, 1192 (D. Or. 2015).

The indictment is replete with allegations of defendant's deceptive conduct in connection with his securities trading.  See, e.g., Ind. ¶¶ 71-76 (falsely holding himself out as managing outside investor money in a hedge fund through the dissemination of investor letters); ¶¶ 86-101 (falsely holding Citron out as independent from outside third-party influence and bias); ¶¶ 102-103 (concealing his

---

[1] In considering the applicability of the Omnicare decision to Section 10(b), the Ninth Circuit focused on Rule 10b-5(b) but did not address the related subsections.  City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc., 856 F.3d 605, 616 (9th Cir. 2017).

relationship with a third-party hedge fund through false invoices and bank transfers); ¶ 104 (lying to agents); ¶ 106 (deleting his twitter account). Moreover, despite defendant's claims, there is no requirement for scheme liability that a defendant made false statements about the underlying company. Zweig v. Hearst Corp., 594 F.2d 1261, 1266-67 (9th Cir. 1979) (finding a "scheme to manipulate the market" where "withheld information did not relate directly to the company's value and expected performance, but it was necessary to avoid misleading [defendant]'s audience on the reliance they could place on the column"). This type of long-recognized illegal conduct – sometimes referred to as "scalping" – may be adequately charged when the indictment alleges a defendant: (i) acquires shares of a stock; (ii) recommends that others purchase the stock without disclosing his intention to sell; and (iii) subsequently sells the stock for his own benefit. See, e.g., SEC v. Beck, No. 2:22-CV-00812-FWS-JC, 2024 WL 1626280 (C.D. Cal. Mar. 26, 2024) (finding that defendant engaged in a fraudulent scheme by purchasing stock, promoting the stock on Twitter, and then selling his stock at a profit subsequent to his recommendations without disclosing his intent sell); see also SEC v. Lidingo Holdings, LLC, No. C17-1600 RSM, 2018 WL 2183999, at *8 (W.D. Wash. May 11, 2018) (defendant engaged in fraudulent scheme by purchasing "issuer stock just prior to publishing an article about the issuer, then sold the stock at a profit soon after his article was published, which was contrary to the advice he gave in his articles advocating holding for the long-term"). Moreover, defendant's use of misleading target prices – used by defendant only to get media attention before he made his own trades at distant prices (Ind. ¶ 19e.iv) – were deceptive devices within the

8

1    meaning of Rule 10b-5(a).  For these reasons, the government

2    adequately alleged scheme liability under Rule 10b-5(a) and (c) in

3    Counts Two through Eighteen separate and apart from any misstatement

4    liability.

5                    *c.*   *The Indictment Alleges Defendant Made False and*

6                          *Misleading Misrepresentations*

7         Even if defendant was only charged with violating Rule 10b-5(b),

8    which he was not, the indictment identified numerous actionable false

9    or misleading statements.  Defendant's argument wrongly suggests that

10   the result of the Omnicare, Inc. v. Laborers Dist. Council Constr.

11   Indus. Pension Fund, 575 U.S. 175 (2015), decision is to immunize

12   defendant from securities fraud liability for any statements he casts

13   as opinion.  This is not the law.  To the extent the alleged

14   misstatements are opinions, the indictment has properly pled that

15   they meet one of the three avenues of fraudulent opinion liability

16   under Omnicare and Dearborn.  As a starting point, there are three

17   grounds for opinions to constitute false opinion statements under

18   Rule 10b-5(b):[2]

19        *First*, for a misrepresentation, the allegations must be that "the

20        speaker did not hold the belief she professed and that the belief

21        is objectively untrue";

22

23

24   _____

     [2] Defendant wrongly suggests that to charge opinions as

25   misrepresentations "requires more than conclusory allegations."  In
     fact, it does not.  In weighing a motion to dismiss an indictment, a

26   court does not weight the strength of the evidence, but instead
     determines whether the elements have been sufficiently pled.

27   Musacchio, 968 F.2d at 787 ("[T]he government [is] not required to
     allege its theory of the case or list supporting evidence to prove

28   the crime alleged.").

                                    9

*Second*, when a fact within the opinion is materially misleading,
the indictment must allege that "the supporting fact the speaker
supplied is untrue"; or

*Third*, for an omission or half-truth, the charges must include
"facts going to the basis for the issuer's opinion whose omission
makes the opinion statement at issue misleading to a reasonable
person reading the statement fairly and in context."

Dearborn, 856 F.3d at 615-16 (cleaned up) (quoting Omnicare, 575 U.S.
at 194).

Putting aside the numerous allegations of clearly non-opinion
misrepresentations, see, e.g., Ind. ¶¶ 26, 31, 52, 56, 69, 74-76, 83,
90b, the indictment properly alleges misrepresentations where
defendant did not hold the purported belief in question and the
belief was objectively untrue.  The distance between defendant's
comments on a company and his subsequent trading behavior are
outlined throughout the indictment. See infra Section B.  This comes
into the sharpest relief where defendant featured target prices in
his public statements that did not reflect his honest belief about
the value of the security, but rather, were designed to induce panic
in the market.  See Ind. ¶ 19e.iv.  Such statements are actionable as
frauds.  SEC v. Thompson, 238 F. Supp. 3d 575, 601 n.12 (S.D.N.Y.
2017) (holding that the defendants' sales around their positive stock
predictions "suggests they did not reasonably believe the securities
independently had the touted value" and finding, under Omnicare, "the
projections are actionable" as either misrepresentations or by
providing untrue supporting facts).

Defendant argues that there were other reasons why defendant's
trading behavior did not match his publicly stated opinion.  But, the

10

false opinions are properly alleged in the indictment and a motion to dismiss the indictment is not the appropriate venue for defendant to dispute the alleged facts or raise affirmative defenses.  See Jensen, 93 F.3d at 669 ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence."); United States v. Nukida, 8 F.3d 665, 669 (9th Cir. 1993) (holding Rule 12(b) motion to dismiss is not the proper way to raise a factual defense).

Defendant's final argument that target price statements cannot be considered false based on his contemporaneous trading is fundamentally flawed.  In fact, defendant's immediate closing of positions at prices dramatically different from the target prices he publicly proclaimed directly demonstrates that he did not genuinely believe his own valuation claims.  Thompson, 238 F. Supp. 3d at 600 (defendants trading around the time of glowing stock prediction "suggests they did not reasonably believe that the securities independently had the touted value").  At best, this argument raises a question of fact for the jury, and does not provide a basis for a motion to dismiss.

> d.   The Indictment Charges Actionable Half-Truths

Defendant also states that the indictment fails to allege actionable half-truths.  Once an individual decides to speak, he is obligated to speak the whole truth and not withhold material information. See In re Glumetza Antitrust Litig., 611 F. Supp. 3d 848, 863 (N.D. Cal. 2020).  Actionable half-truths are explicitly alleged throughout the indictment: defendant made public statements online, in interviews, and on cable news about the positions he held in targeted securities while omitting that he intended to (and in many cases had already placed orders to) close out his positions

11

immediately after publication, once his story had positively or negatively impacted the market for the stock.  See Ind. ¶19f.  Courts have consistently found this type of bait and switch misleading. See, e.g., SEC v. Fassari, No. SACV 21-403 JVS(ADSX), 2021 WL 2290576, at *6 (C.D. Cal. May 5, 2021) ("The Court agrees that it was a material misrepresentation for [the defendant] to state that he was holding on to his shares when he was actually selling them, and that prudent investors would consider this information relevant in make their decisions regarding whether to invest.").

In SEC v. Gallagher, No. 21-CV-8739 (PKC), 2023 WL 6276688, at *1, 9 (S.D.N.Y. Sept. 26, 2023), the court examined a case involving a securities analyst who used his Twitter account to encourage followers to purchase stocks while concealing that he was selling or would imminently be selling his own shares during or immediately after these recommendations.  The court denied Gallagher's motion to dismiss, holding that by choosing to publicly recommend stocks on Twitter, he assumed a "duty to tell the whole truth."  Gallagher, 2023 WL 6276688, at *10 ("[A] failure to disclose a then-present intent to sell is sufficient to render the statements touting a stock misleading."); see also Capital Gains Rsch. Bureau, Inc., 375 U.S. at 181, 202 (Supreme Court applying the same concept in the short direction).  As in Gallagher, the indictment here sufficiently alleges that defendant's public statements created an affirmative duty to be accurate and complete about material issues, including that he was selling or would imminently be selling his own shares in those same issuers[.]  See Ind. ¶ 19e.ii.  That defendant offered his opinion to investors while intending to trade in the opposite direction is certainly the sort of fact that a reasonable person

would want to know to fairly and contextually understand defendant's opinion.  See United States v. Wenger, 427 F.3d 840, 854 (10th Cir. 2005) (defendant knew that, while touting a stock in his newsletter, "information concerning his own sale of PanWorld would materially affect the investment decisions of his listeners").

Defendant's conduct far exceeds the omitted disclosure scenarios explicitly contemplated by the Supreme Court in Omnicare.  In that case, the Court illustrated an actionable omission by hypothesizing a company stating, "We believe our conduct is lawful" without disclosing it had not consulted a lawyer – a scenario deemed potentially misleading because an investor would expect such a statement to rest on meaningful inquiry rather than mere intuition. Omnicare, Inc., 575 U.S. at 188-89.  The Court emphasized that investors expect "not just that the issuer believes the opinion (however irrationally), **but that it fairly aligns with the information in the issuer's possession at the time**."  Id. (emphasis added).  Unlike the hypothetical in Omnicare involving a potentially incomplete but sincere belief, the indictment alleges defendant's statements were calculated misrepresentations designed to generate market movements for his personal financial benefit, representing a far more sinister departure from the transparency and good faith required in market communications.

Given the body of well-established case law holding that when a defendant speaks about a stock, it is a materially misleading half-truth to omit information that he intends to trade in the opposite direction after speaking, defendant's motion to dismiss on this ground should be denied.

1       **B.    Indictment Properly Alleges Defendant Made False and**

2            **Misleading Statements Regarding Targeted Securities**

3       Defendant argues the indictment contains additional security-

4  specific deficiencies that warrant dismissal.  First, for CRON, TSLA,

5  ROKU, BYND, NVTA, Namaste, GE, NVDA, TWTR, FB, AAL, PLTR, IGC, and

6  XL, defendant argues the government failed to allege

7  misrepresentations *about* the securities.  Defendant's argument is not

8  cause for dismissal because none of the securities offenses charged

9  require that defendant made a false statement about the securities

10 themselves.[3]  See <u>Zweig</u>, 594 F.2d at 1265-66.

11      Second, for CRON, ROKU, BYND, NVTA, defendant argues that his

12 statements about his trading positions and valuations are too vague

13 (e.g., "small size," "some") or too qualified (e.g., "we expect," "we

14 believe") to be objectively false.  The cases on which defendant

15 relies address only the heightened pleading standards that a private

16 plaintiff must meet in other to plead a civil Section 10(b) claim

17 with sufficient particularity pursuant to Federal Rule of Civil

18 Procedure 9(b) and the Private Securities Litigation Reform Act

19 ("PSLRA").[4]  For example, in <u>Macomb Cnty. Emps. Ret. Sys. v. Align</u>

20 <u>Tech., Inc.</u>, 39 F.4th 1092, 1099 (9th Cir. 2022), the Ninth Circuit

21

22      [3] In order to convict the defendant of violating Rule 10b-5(b),
23 the government must prove the defendant "made an untrue statement of
   a material fact or omitted to state a material fact that made what
   was said, under the circumstances, misleading."

24      [4] These heightened pleading standards do not apply in criminal
25 cases.  Civil federal securities fraud claims are also different from
   criminal federal securities fraud claims in a number of other key
26 respects.  For example, private plaintiffs are required to plead and
   prove different additional elements in order to recover under the
27 federal securities anti-fraud provisions, namely reliance, causation
   and loss.  In addition, private plaintiffs are limited to seeking
28 recover from "primary" violators; private plaintiffs are foreclosed
   from recovering under aiding and abetting or conspiracy-based
   theories.

                                    14

1  affirmed the dismissal of the federal securities class action

2  complaint because the private plaintiff failed to plead sufficient

3  facts to establish material misrepresentations or omissions.  The

4  court did not address or discuss the viability of the legal theories

5  underlying the private plaintiff's claims, let alone foreclose them

6  as a matter of law in criminal cases.

7      Third, for TSLA, ROKU, Namaste, NVDA, TWTR, FB, AAL, PLTR, IGC,

8  and XL, defendant argues that his statements were true when

9  published.  See Rigel Pharms., Inc. Secs. Litig., Inter-Local Pension

10  Fund GCC/IBT v. Deleage, 697 F.3d 869, 876 (9th Cir. 2012) (applying

11  the PSLRA in the civil context).  Again, defendant's arguments are

12  inapplicable in the criminal context.  The indictment alleges

13  defendant's statements were false and misleading when made, and in

14  reviewing a motion to dismiss, the Court must presume the truth of

15  the allegations in the indictment.  See Jensen, 93 F.3d at 669.

16      For PTE, LK, and NVAX, defendant objects to the government's use

17  of a table listing additional executions in furtherance of the

18  securities fraud scheme.  Defendant fails to grapple with the fact

19  that the charge corresponding to each ticker tracks the statutory

20  language while giving defendant more than sufficient notice of the

21  nature of the scheme and charges against him.  Ind. ¶¶ 109-111.

22  Alone, charging the statutory language would be sufficient to

23  overcome the motion, but with the additional detail included in the

24  indictment, it exceeds the pleading requirements.  As the indictment

25  tracks the language of Section 10(b) and alleges each element of the

26  offense, it is sufficient on Counts 5, 14, and 15.  Morrison, 536

27  F.2d at 288.

28

The government's securities fraud charges are properly alleged for each count.  We address representative examples below.

### 1.   CRON

As alleged in the indictment, on August 30, 2018, defendant published a deceptive report and tweet about CRON and made false and misleading statements to the media about his trading in CRON.  To fraudulently induce retail investors to sell shares and cause an artificial decline in the stock price, defendant accused CRON of engaging in fraud and said the stock price would drop from $11.50 to $3.50 per share.  Ind. ¶¶ 21-28.  The indictment alleged defendant attempted to conceal the scheme from regulators by falsely denying that he targeted stocks that had large retail bases, while privately, he discussed targeting stocks that were "alll retail," which he described as "taking candy from a baby."  Ind. ¶¶ 21, 27, 28.

The indictment further alleges defendant falsely stated that he only covered a "small size" of his short position in CRON earlier in the day when he had already closed more than 60% percent of his pre-tweet position.  Id. ¶ 25.  While defendant contends his statement was not false, this invitation to resolve competing factual inferences is improper on a motion to dismiss.  See Nukida, 8 F.3d at 669.

### 2.   NVTA

The indictment alleges that on July 17, 2019, defendant disseminated an investor letter as a deceptive device to manipulate the price of NVTA to benefit defendant's trading position.  Ind. ¶¶ 77-78.  Specifically, defendant claimed Citron Capital would "continue to add to our position at current levels" to fraudulently induce retail investors to buy shares and cause an artificial

16

increase in the stock price, when in fact defendant was reducing the fund's position.  Ind. ¶ 78-79.

The indictment also alleges that on July 31, 2019, defendant published a deceptive report and tweet about NVTA to "juice it" and "get stock to 30."  Ind. ¶ 80.  Specifically, defendant claimed Citron Capital "will continue to stay long until the stock hits at least $65," to fraudulently induce retail investors to buy shares and cause an artificial increase in the stock price, when in fact defendant was selling the fund's shares when NVTA was trading at less than $30 per share.  Ind. ¶¶ 83-85.  Such statements are actionable frauds.  See Thompson, 238 F. Supp. 3d at 600 (concluding that trades trading around the time of glowing stock prediction "suggests [defendants] did not reasonably believe that the securities independently had the touted value").

The indictment properly alleges that defendant's statements about NVTA were not truly held beliefs but rather deceptive devices. See Ind. ¶¶ 7, 19, 80-85.

3.    GE

The indictment properly alleges defendant made false and misleading representations in Citron's GE report to manipulate the price of GE's stock and benefit his own trading positions. Specifically, defendant represented that "Citron took the opportunity to buy stock as well."  In truth, at the time defendant made the statement, he had already placed an order to sell his shares.  Ind. ¶ 89.  Defendant also falsely stated that he had never been received compensation from a third party to publish research or tied to the success of a trade.  Ind. ¶¶ 90-93.  The indictment sufficiently alleges that this statement is false and material to investors, and

that defendant's concealment of this information was deceptive.  See Thompson, 238 F. Supp. 3d at 600 (finding that "SEC asserts that acting in concert with other newsletter publishers is itself deceptive conduct that violates Section 10(b) and Rule 10b-5(a) and (c)" in denying motion to dismiss).  Again, defendant's argument to the contrary is one he can make at trial, not in a motion to dismiss.

**C.    The Indictment Sufficiently Pleads Materiality**

The indictment alleges defendant engaged in a scheme designed to manipulate markets and deceive investors.  At the core of the allegations are defendant's materially misleading statements to the investing public about his stock valuations and trading.  See Fassari, 2021 WL 2290576, at *6; Wenger, 427 F.3d at 854; United States v. Cannistraro, 800 F. Supp. 30, 84 (D.N.J. 1992); SEC v. Corp. Relations Grp., Inc., CIV 99-1222 (ORL), 2003 WL 25570113, at *8 (M.D. Fla. Mar. 28, 2003).  As plainly and repeatedly alleged in the indictment, defendant made materially misleading statements about a stock's value and his trading in that security in order to generate market reactions that would benefit his trading positions.  Ind. ¶ 19e.v.  In the case of CRON (Ind. ¶¶ 21-26), the indictment alleges defendant built a short position and then published tweets claiming the stock was fraudulent, while simultaneously selling his positions.  See also Ind. ¶¶ 29-33, ¶¶ 34-37 (NVDA), and ¶¶ 38-43.

The indictment also properly alleges defendant made other materially false and misleading statements.  For example, the indictment alleges defendant made materially false and misleading statements about Citron's research staff, process, independence, external investors, and economic incentives in order to create a false perception of Citron's objectivity and reliability.  Ind.

¶ 19e.iii.   The indictment further alleges defendant made material misrepresentations in fictional investor letters he disseminated to the public to create the false pretense that defendant had third party investors and extraordinary returns and bolster his credibility.   Ind. ¶¶ 71-76.   In addition, the indictment alleges defendant made materially false and misleading statements regarding his false claims of independence from hedge funds.   Ind. ¶¶ 94-104.

Defendant argues that the government fails to establish materiality under the standard set forth in Milheiser, contending that his misrepresentations were not "essential to the bargain itself."[5]   Milheiser involved deceptive yet immaterial sales tactics for printer toner where the customers ultimately got the toner they paid for.   The court contrasted this situation with misrepresentations "directed to the quality, adequacy or price of the goods themselves [where] the victim is made to bargain without facts obviously essential in deciding whether to enter the bargain."   98 F.4th at 943.

The misrepresentations alleged in the indictment squarely fall in the latter bucket focusing on the price and value of various securities.   Thus, this case diverges entirely from the facts in Milheiser[6] and more closely aligns with the principles articulated in SEC v. Gallagher, which emphasized that the critical question is whether omitted facts would contradict a reasonable investor's

---

[5] While the indictment already complies with Milheiser, its holding may be limited depending on the Supreme Court's decision in Kousisis v. United States, 144 S. Ct. 2655 (June 17, 2024).

[6] Both Milheiser and Regent Office Supply Co., 421 F.2d 1174 (2d Cir. 1970), dealt with products, where those goods themselves formed the basis of the transactions, where here the transactions at issue here are securities, where price is the key aspect of the transactions.

1    understanding of the statement itself.  In this case, defendant's

2    misrepresentations gave investors a materially different perception

3    of the targeted security.  These were not mere peripheral tactics or

4    collateral statements like those in <u>Milheiser</u>.  Rather, victim

5    investors were deprived of money when defendant fraudulently induced

6    them to purchase securities at artificially inflated or deflated

7    prices through his deceptive conduct.  Rather than peripheral sales

8    tactics, defendant's scheme went to the heart of stock trading.

9        **D.   The Indictment Sufficiently Pleads Fraudulent Intent**

10       Because intent in securities fraud cases turns on the "specific

11   intent to defraud, mislead, or deceive" <u>United States v. Tarallo</u>, 380

12   F.3d 1174, 1181 (9th Cir. 2004), defendant's argument that the

13   indictment fails to plead intent should be rejected for the reasons

14   detailed above in Section III.A(1).

15       Defendant next contends his use of encrypted messaging, deleting

16   communications, and making false statements to government agents are

17   not evidence of his intent to cheat readers.  Again, defendant

18   improperly attempts to shoehorn a trial defense into a motion to

19   dismiss.  Defendant can argue that his serial obfuscation was

20   innocent, but it will be up to the jury to decide how to weigh

21   circumstantial evidence.  <u>See</u> <u>United States v. Rogers</u>, 321 F.3d 1226,

22   1230 (9th Cir. 2003).

23       It is unclear what defendant thinks is required beyond an

24   explicit allegation of criminal intent, but the indictment does so

25   here.  Defendant's repeated attempts to improperly dispute the

26   factual allegations set forth do not alter the facts alleged in the

27   indictment, which are more than sufficient to establish that

28   defendant acted willfully, knowingly, and with the intent to defraud

investors.  Defendant wrongly attempts to use this motion to fight his factual battles, but this not the vehicle for such disputes.  See Jensen, 93 F.3d at 669.  Because defendant's arguments concerning the failure to allege intent are purely and improperly factual arguments, they do not provide a basis for dismissing the indictment.

### E.    The First Amendment Does Not Protect Defendant's Unlawful Conduct

In raising his First Amendment challenge, defendant cites no criminal cases.  And for good reason: "[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."  Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 502 (1949).  As the Supreme Court has repeatedly articulated, "[s]peech intended to bring about a particular unlawful act has no social value; therefore, it is unprotected.  We have applied this principle many times, including to the promotion of a particular piece of contraband, solicitation of unlawful employment, and picketing with the sole, unlawful [and] immediate objective of induc[ing] a target to violate the law."  United States v. Hansen, 599 U.S. 762, 783 (2023) (internal citations and quotation marks omitted).  The charges here violate freedom of speech principles no more than charging a conspiracy in which the defendants verbally agreed to traffic illegal narcotics.

Additionally, defendant's argument mischaracterizes the charges against him.  Defendant's investment reports were not issued in a vacuum, but in the context of his broader market manipulation and stock scalping scheme.  Read in their appropriate context,

1  defendant's tweets and reports were not acts of purely honest speech,

2  since "even in the absence of a trust relationship," a defendant

3  "cannot affirmatively tell a misleading half-truth about a material

4  fact to a potential investor." United States v. Laurienti, 611 F.3d

5  530, 541 (9th Cir. 2010); see also United States v. Halbert, 640 F.2d

6  1000, 1007 (9th Cir. 1981) (per curiam) ("A defendant's activities

7  can be a scheme or artifice to defraud whether or not any specific

8  misrepresentations are involved."_.

9      **F.**   **Defendant Fails To Articulate a Due Process Claim**

10      Defendant's invocation of the Fifth Amendment's Due Process

11  Clause similarly fails. Defendant cites the caselaw regarding

12  unconstitutional vagueness, but those cases are orthogonal to the

13  argument he raises here. City of Chicago v. Morales, 527 U.S. 41

14  (1999), for example, articulated the (rare) circumstances under which

15  a facial vagueness challenge could be brought to a criminal law.[7]

16  Yet neither Morales nor any other case stands for the proposition

17  that application of the criminal law to a novel factual circumstance

18  is constitutionally suspect. By that logic, without new legislation

19  the government would be powerless to prosecute wrongdoers who use new

20  technologies or devise innovative schemes. Defendant does not assail

21  the securities fraud statutes and regulations themselves, and so it

22  must be up to a jury to decide whether defendant violated them.

23      In any event, defendant's assertion that this case blazes

24  entirely new trails is incorrect. As already stated, the

25  prohibitions on scalping are well established in the caselaw. See,

26  e.g., Wenger, 427 F.3d at 854; Zweig, 594 F.2d at 1265-66.

27  _____

28      [7] Morales was a plurality opinion, and its broader applicability
is questionable.

1

      **G.   The False Statement Charge Suffers from No Defects**

2

      1.   Count Nineteen Is Not Duplicitous

3

Defendant's false statement charge is not duplicitous.

4

Tellingly, none of defendant's citations pertains to § 1001.  This is

5

for good reason; the law in this circuit and others holds that the

6

unit of prosecution for a § 1001 violation is the vehicle through

7

which the false statements were made, not each individual false

8

statement.  See, e.g., Fisher v. United States, 231 F.2d 99, 103 (9th

9

Cir. 1956) (criticizing multiplicity of prosecuting separate § 1001

10

counts for each false statement in a single document rather than all

11

the false statements in that document).  Indeed, the rule is intended

12

to benefit criminal defendants and arises from the rule of lenity and

13

the notion that "it is difficult to assume Congress intended that a

14

defendant found guilty of falsifying one document be exposed to two

15

or more sentences."  United States v. UCO Oil Co., 546 F.2d 833, 838

16

(9th Cir. 1976).

17

      2.   Count Nineteen States an Offense

18

A perjury conviction may not be predicated on a statement that

19

is "literally true but not responsive to the question asked."

20

Bronston v. United States, 409 U.S. 352, 353 (1973).  Defendant is

21

right on the general principle but wrong in its application.

22

"Bronston's rule is limited to cases in which the statement is

23

indisputably true, though misleading because it was unresponsive to

24

the question asked."  United States v. Camper, 384 F.3d 1073, 1076

25

(9th Cir. 2004).  But "[d]ifferent rules govern statements that are

26

ambiguous, in which the statement may be true according to one

27

interpretation and false according to another."  Id.  Defendant's

28

23

arguments with respect to Count Nineteen fall, at best, into this
latter category.

"[T]he existence of some ambiguity in a falsely answered
question will not shield the respondent from a perjury or false
statement prosecution."  Id.  Beyond those extreme cases where
ambiguity is fundamental to the question,[8] "[i]t is for the jury to
decide in such cases which construction the defendant placed on a
question."  Id.  That is the case here under the most generous
reading of defendant's argument.  Defendant's contortion of the
obvious meaning of the two questions at issue rivals the most
seasoned yoga gurus.

When asked, "Do you share your report before it goes public with
[hedge funds]?" defendant falsely stated, "No, no, no, the only thing
I might do . . . I might double check a spreadsheet . . . . [I]t's
always done to make sure it's factually right."  Defendant's belated
attempt to interpret the question to refer only to reports in their
final form and not earlier drafts is untenable.  Defendant's own
answer, which refers to "double check[ing] a spreadsheet" only makes
sense if he understood the question to refer to drafts before the
final product.  Likewise, defendant's efforts to characterize this
question to refer to sharing the reports before they were published
to hedge funds is completely inconsistent with the context, which
pertained to defendant's direct communications with hedge funds.  Nor
would it make sense to discuss his publication of reports to hedge

_____

    [8] A "question is fundamentally ambiguous" where "'men of
ordinary intelligence' cannot arrive at a mutual understanding of its
meaning."  United States v. Culliton, 328 F.3d 1074, 1078 (9th Cir.
2003) (per curiam) (citation omitted).  That is a far cry from the
circumstances of this case.

1   funds, since he issued his reports publicly through his website and

2   Twitter account.  Ind. ¶ 2.  "The context of the question and other

3   extrinsic evidence relevant to the defendant's understanding of the

4   question may allow the finder of fact to conclude that the defendant

5   understood the question as the government did and, so understanding,

6   answered falsely."  Camper, 384 F.3d at 1076.  This reliance on

7   context and extrinsic evidence is precisely why the determination of

8   falsity is the province of the jury.  See United States v. McKenna,

9   327 F.3d 830, 841 (9th Cir. 2003).

10      With respect to his second lie -- that, in response to the

11  question, "When you check with other hedge funds that specialize in

12  the industry that you are looking at, is there compensation between

13  the two of you?" defendant responded "[n]ever . . . never, never,

14  never" -- defendant raises two unpersuasive points.  First, he claims

15  that use of the word "is" temporally limits the question so as not to

16  cover past conduct.  But that reading ignores the first clause of the

17  question, which through the use of "when" posits that the defendant

18  had checked with hedge funds at various times in the past.  And the

19  defendant's answer of "never" to this question confirms his

20  understanding that it applied to past conduct; his unambiguous and

21  repeated response "never" suggests he, as any reasonable listener,

22  understood the question to be general.  Second, though the question

23  described "compensation between the two of you," defendant now

24  asserts this can only mean benefits he paid to hedge funds.  Yet this

25  runs directly counter to the premise of the question: that defendant

26  received a benefit by providing advance notice to third parties of

27  his market-making behavior in exchange for a benefit.  Again,

28

defendant may renew his factual claims and arguments at trial, but they are patently improper bases to dismiss the indictment.

**IV.   CONCLUSION**

For the above reasons, this Court should deny defendant's motion to dismiss charges in the indictment in its entirety.

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel for the United States, certifies this memorandum of points and authorities contains 6,932 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 18, 2025

_____/s/_____
ALEXANDER B. SCHWAB
Assistant United States Attorney