EXIBIT A

1  JOSEPH T. MCNALLY
   Acting United States Attorney
2  LINDSEY GREER DOTSON
   Assistant United States Attorney
3  Chief, Criminal Division
   BRETT A. SAGEL (Cal. Bar No. 243918)
4  Assistant United States Attorney
   Chief, Corporate & Securities Fraud Strike Force
5  ALEXANDER B. SCHWAB
   Assistant United States Attorney
6  Deputy Chief, Corporate & Securities Fraud Strike Force
   LAUREN ARCHER
7  MATTHEW REILLY
   Trial Attorneys
8  Department of Justice, Criminal Division, Fraud Section
        United States Courthouse
9       411 West 4th Street, Suite 8000
        Santa Ana, California 92701
10      Telephone: (714) 338-3598
        Facsimile: (714) 338-3561
11      E-mail:    brett.sagel@usdoj.gov
                   alexander.schwab@usdoj.gov
12                 lauren.archer@usdoj.gov
                   matthew.reilly2@usdoj.gov
13

14 Attorneys for Plaintiff
   UNITED STATES OF AMERICA
15

16                    UNITED STATES DISTRICT COURT

17              FOR THE CENTRAL DISTRICT OF CALIFORNIA

18 UNITED STATES OF AMERICA,          No. 2:24-CR-000456-TJH

19         Plaintiff,                 GOVERNMENT'S *CORRECTED* OPPOSITION
                                      TO DEFENDANT ANDREW LEFT's MOTION
                v.                    TO DISMISS THE INDICTMENT
20
   ANDREW LEFT,                       Hearing Date: April 28, 2025
21                                    Hearing Time: 10:00 am
           Defendant.                 Ctrm: 9C
22                                    Judge: Hon. Terry J. Hatter Jr.

23

24

25      Plaintiff United States of America, by and through its counsel

26 of record, the Acting United States Attorney for the Central District

27 of California and Assistant United States Attorneys Brett Sagel and

28 Alexander B. Schwab, and Glenn S. Leon, Chief, Fraud Section,

Criminal Division, and Trial Attorneys Lauren Archer and Matthew
Reilly, hereby files its corrected opposition to defendant Andrew
Left's motion to dismiss the superseding indictment (ECF No. 34).
This filing supplants and replaces ECF No. 41.

The Government's Opposition is based upon the attached
memorandum of points and authorities, the files and records in this
case, and such further evidence and argument as the Court may permit.

Dated: February 18, 2025          Respectfully submitted,

                                  JOSEPH T. MCNALLY
                                  Acting United States Attorney

                                  LINDSEY GREER DOTSON
                                  Assistant United States Attorney
                                  Chief, Criminal Division

                                  GLENN S. LEON
                                  Chief, Fraud Section


                                       /s/
                                  _____
                                  LAUREN ARCHER
                                  MATTHEW REILLY
                                  ALEXANDER B. SCHWAB
                                  BRETT A. SAGEL

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES..................................................i

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   LEGAL STANDARD.................................................2

III.  ARGUMENT.......................................................4

    A.    The Indictment's Securities Fraud Charges Sufficiently
       Pleaded All Essential Elements...........................4

       1.    The Scheme's Object was Investors' Money and
           Stock..............................................4

       2.    The Indictment Alleges Actionable Misstatements......6

    B.    Indictment Properly Alleges Defendant Made False and
       Misleading Statements Regarding Targeted Securities......13

       1.    CRON...............................................15

       2.    NVTA...............................................15

       3.    GE.................................................16

    C.    The Indictment Sufficiently Pleads Materiality..........17

    D.    The Indictment Sufficiently Pleads Fraudulent Intent.....19

    E.    The Indictment Charges Domestic Conduct.................20

    F.    The First Amendment Does Not Protect Defendant's
       Unlawful Conduct........................................21

    G.    Defendant Fails To Articulate a Due Process Claim.......22

    H.    The False Statement Charge Suffers from No Defects......23

       1.    Count Nineteen Is Not Duplicitous..................23

       2.    Count Nineteen States an Offense...................24

IV.   CONCLUSION....................................................26

1

<u>**TABLE OF AUTHORITIES**</u>

2

<u>**CASES**</u>

3

<u>Bronston v. United States</u>,
    409 U.S. 352 (1973)..........................................24

4

<u>Ciminelli v. United States</u>,
    598 U.S. 306 (2023).......................................4, 5

5

6

<u>City of Chicago v. Morales</u>,
    527 U.S. 41 (1999)..........................................22

7

<u>City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v.</u>
    <u>Align Tech., Inc.</u>,
    856 F.3d 605 (9th Cir. 2017)..............................7, 9

8

9

<u>Giboney v. Empire Storage & Ice Co.</u>,
    336 U.S. 490 (1949).........................................21

10

11

<u>Fisher v. United States</u>,
    231 F.2d 99 (9th Cir. 1956).................................23

12

<u>In re Galena Biopharma, Inc. Sec. Litig.</u>,
    117 F. Supp. 3d 1145 (D. Or. 2015)...........................7

13

14

<u>In re Glumetza Antitrust Litig.</u>,
    611 F. Supp. 3d 848 (N.D. Cal. 2020)........................11

15

<u>Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.</u>,
    39 F.4th 1092 (9th Cir. 2022)...............................14

16

17

<u>Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension</u>
    <u>Fund</u>,
    575 U.S. 175 (2015)....................................8, 9, 12

18

19

<u>Regent Office Supply Co.</u>,
    421 F.2d 1174 (2d Cir. 1970)................................18

20

<u>Rigel Pharms., Inc. Secs. Litig., Inter-Local Pension Fund</u>
    <u>GCC/IBT v. Deleage</u>,
    697 F.3d 869 (9th Cir. 2012)................................14

21

22

<u>SEC v. Beck</u>, No. 2:22-CV-00812-FWS-JC,
    2024 WL 1626280 (C.D. Cal. Mar. 26, 2024)....................8

23

24

<u>SEC v. Corp. Relations Grp., Inc.</u>, CIV 99-1222 (ORL),
    2003 WL 25570113 (M.D. Fla. Mar. 28, 2003)..................17

25

<u>SEC v. Fassari</u>, No. SACV 21-403 JVS(ADSX),
    2021 WL 2290576 (C.D. Cal. May 5, 2021).................11, 17

26

27

<u>SEC v. Gallagher</u>, No. 21-CV-8739 (PKC),
    2023 WL 6276688 (S.D.N.Y. Sept. 26, 2023)............11, 12, 18

28

i

SEC v. Huttoe, No. CIV.A. 96-2543,
    1998 WL 34078092 (D.D.C. Sept. 14, 1998)........................2

SEC v. Lidingo Holdings, LLC, No. C17-1600 RSM,
    2018 WL 2183999 (W.D. Wash. May 11, 2018).......................8

SEC v. Stein,
    906 F.3d 823, 830 (9th Cir. 2018)...............................6

SEC v. Thompson,
    238 F. Supp. 3d 575 (S.D.N.Y. 2017)...................10, 16, 17

United States v. Buckley,
    689 F.2d 893 (9th Cir. 1982)....................................3

United States v. Camper,
    384 F.3d 1073 (9th Cir. 2004).............................24, 25

United States v. Cannistraro,
    800 F. Supp. 30 (D.N.J. 1992)..................................17

United States v. Culliton,
    328 F.3d 1074 (9th Cir. 2003) (per curiam).....................24

United States v. Ely,
    142 F.3d 1113 (9th Cir. 1997)...................................3

United States v. Griffin,
    76 F.4th 724 (7th Cir. 2023)....................................5

United States v. Hansen,
    599 U.S. 762 (2023)............................................22

United States v. Jensen,
    93 F.3d 667 (9th Cir. 1996).....................3, 10, 14, 20

United States v. Laurienti,
    611 F.3d 530 (9th Cir. 2010)...................................22

United States v. Mahaffy,
    693 F.3d 113 (2d Cir. 2012).....................................6

United States v. McKenna,
    327 F.3d 830 (9th Cir. 2003)...................................25

United States v. Milheiser,
    98 F.4th 935 (9th Cir. 2024)....................................2

United States v. Morrison,
    536 F.2d 286 (9th Cir. 1976)................................3, 15

United States v. Musacchio,
    968 F.2d 782 (9th Cir. 1992).................................3, 9

United States v. Nordlicht, No. 16-cr-00640 (BMC),
        2023 WL 4490615 (E.D.N.Y. July 12, 2023)......................5

United States v. Nukida,
        8 F.3d 665 (9th Cir. 1993)................................10, 15

United States v. Rogers,
        321 F.3d 1226 (9th Cir. 2003)................................19

United States v. Shortt Accountancy Corp.,
        785 F.2d 1448 (9th Cir. 1986).................................3

United States v. Tarallo,
        380 F.3d 1174 (9th Cir. 2004)................................19

United States v. UCO Oil Co.,
        546 F.2d 833 (9th Cir. 1976).................................23

United States v. Wenger,
        427 F.3d 840 (10th Cir. 2005).......................12, 17, 23

United States v. Wey, No. 15-cr-611,
        2017 WL 237651 (S.D.N.Y. Jan. 18, 2017)......................5

United States v. Yates,
        16 F.4th 256 (9th Cir. 2021).................................4

Zweig v. Hearst Corp.,
        594 F.2d 1261 (9th Cir. 1979).......................7, 13, 23

**STATUTES**

15 U.S.C. § 78j(b)........................................6, 20

18 U.S.C. § 1348...........................................5, 6

**REGULATIONS**

17 C.F.R. § 240.10b-5.....................................passim

**RULES**

Fed. R. Crim. P. 12 ......................................passim

iii

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.    INTRODUCTION**

Defendant Andrew Left engaged in a classic securities fraud scheme.  He provided false and misleading information to investors, while hiding his true intentions so he could profit at their expense. He did this to take investors' money by selling them stock or their property by buying stock at artificial and manipulated prices.

For his crimes, the indictment charges defendant with one count of engaging in a securities fraud scheme, seventeen substantive counts of securities fraud corresponding to the securities he targeted, and one count of lying to federal agents.  The indictment tracks the statutory language for each count and properly pleads each element of the crime, which is sufficient to overcome defendant's motion. But, the indictment goes far beyond on the minimum requirements outlining the essential pattern of defendant's scheme:

1. take out a large position in a stock,

2. prepare to close out that position following a public statement,

3. publicize false and misleading statements about the stock with inflammatory rhetoric and extreme target prices without disclosing his own intent to trade in the opposite direction and promptly close out his position, and

4. then nearly immediately close out that position on the ensuing market reaction inconsistent with the view in the public statement and at prices far from his published target prices.

Importantly, and tellingly, the pattern was the same whether Defendant traded in the long and short direction.  Such conduct has long been prohibited, in both directions.  <u>See</u> <u>SEC v. Capital Gains Rsch. Bureau, Inc.</u>, 375 U.S. 180, 181, 202 (1963) (finding a "fraud

1

or deceit" on clients, within the meaning of the Advisers Act, including an occasion where defendant "sold short some shares of a security immediately before stating in their Report that the security was overpriced [and a]fter the publication of the Report, respondents covered their short sales"); SEC v. Huttoe, No. CIV.A. 96-2543, 1998 WL 34078092, at *7 (D.D.C. Sept. 14, 1998) (the "practice of selling when . . . recommending buying has long been understood to operate as a fraud or deceit upon investors.").

Defendant mischaracterizes case law to argue that his scheme does not fit under the fraud statutes.  However, his scheme was squarely aimed at obtaining money and stock, which is a property interest in a specific company.  Defendant's deception concerned one of the most essential elements of a securities transaction -- the price.  See United States v. Milheiser, 98 F.4th 935, 943 (9th Cir. 2024) (when misrepresentations "are directed to the ... price of the goods themselves ... the victim is made to bargain without facts obviously essential in deciding whether to enter the bargain").  Lastly, defendant ignores that his Ciminelli arguments do not apply to Title 15 securities fraud and provide no support for dismissing Counts Two through Eighteen.

Defendant's remaining arguments improperly raise factual disputes (guised as legal arguments), which do not provide support for a motion to dismiss an indictment, or legal arguments that lack merit. For these reasons, the Court should deny defendant's motion in its entirety.

## II.  LEGAL STANDARD

A motion to dismiss is generally "capable of determination" before trial "if it involves questions of law rather than fact."

2

United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir. 1986).  Although courts may make preliminary findings of fact necessary to decide the legal questions presented by the motion, they may not "invade the province of the ultimate finder of fact." Id. But there is no summary judgment procedure in criminal cases, nor do the rules provide for such pre-trial evaluation of competing evidence from the parties by the Court, as opposed to a jury. See United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996).

"An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." United States v. Buckley, 689 F.2d 893, 896 (9th Cir. 1982).  The question is whether the "indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the Government can prove its case." Id. at 897.  "[A]n indictment should be: (1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense." Id. at 899.  "An indictment tracking the language of the statute is usually adequate because statutes usually denounce all the elements of the crime." United States v. Morrison, 536 F.2d 286, 288 (9th Cir. 1976).  The Ninth Circuit has repeatedly recognized that an "indictment that sets forth the charged offense in the words of the statute itself is generally sufficient." United States v. Ely, 142 F.3d 1113, 1120 (9th Cir. 1997).  Further, "the government [is] not required to allege its theory of the case or list supporting evidence to prove the crime alleged." United States v. Musacchio, 968 F.2d 782, 787 (9th Cir. 1992).  In analyzing the indictment, the Court

3

1  shall presume that the allegations of the indictment are true.

2  Buckley, 689 F.2d at 897.

3  **III. ARGUMENT**

4     **A.    The Indictment's Securities Fraud Charges Sufficiently**

5          **Pleaded All Essential Elements**

6          1.    The Scheme's Object was Investors' Money and Stock

7          Defendant wrongly suggests that the indictment improperly

8  alleges the object of defendant's fraud was not a traditional

9  property interest.  However, the indictment plainly articulates that

10 the object of defendant's scheme was investors' money or stock.

11 These are classic property rights that do not trigger the concerns

12 raised in Ciminelli v. United States, 598 U.S. 306 (2023), which

13 addressed the "right-to-control" theory of wire fraud that is in no

14 way involved in this case.  This case similarly bears no semblance to

15 United States v. Yates, 16 F.4th 256, 265-66 (9th Cir. 2021), a bank

16 fraud case in which the prosecution alleged the deprivation of

17 accurate information was the sole object of the scheme.  Instead,

18 here, a viable scheme is alleged because the indictment charges both

19 deceit of investors *and* depriving them of property.  Cf. id.

20 Specifically, the indictment alleges defendant disseminated deceptive

21 tweets and reports to fraudulently induce investors to buy or sell

22 stock as defendant "capitalize[d] on the temporary price movements

23 caused by his public statements [and] used this deception and

24 concealment to manipulate the market for his own financial gain").

25 ECF No. 1, Indictment ("Ind.") ¶¶7; 19a; 19c; 19e.v; 19f; 19g.

26      The indictment is clear: the entire purpose of the scheme is to

27 manipulate the price of the securities so that defendant could cause

28 investors to buy or sell stock.  See United States v. Wey, No. 15-cr-

                                    4

611, 2017 WL 237651, at *10 (S.D.N.Y. Jan. 18, 2017) (denying motion to dismiss § 1348 count alleging pump-and-dump scheme, explaining "[t]hat sort of scheme is, by its very nature, designed to generate economic benefits at the expense of unwary consumers") (internal quotation marks omitted).  In defendant's own words: his trades around Citron's reports and tweets were like taking "candy from a baby."  Ind. ¶27. The candy was the investors' money and stock.

As in any fraud case, deception was necessary for the success of defendant's scheme, but the ultimate goal was to profit by taking money and stock from investors.  Courts have distinguished Ciminelli on exactly this basis.  See, e.g., United States v. Griffin, 76 F.4th 724, 738-39 (7th Cir. 2023) (rejecting argument Government pursued a right-to-control theory under Ciminelli, explaining allegations explicitly focused on depriving SBA of loan guarantees and the millions of dollars lost paying them out).  There is thus no basis to dismiss Count One.

Furthermore, Counts Two through Eighteen are charged under Title 15 securities fraud, which is a separate statutory regime from the criminal fraud statutes at the heart of Ciminelli and related cases. There is no analogous requirement that the object of the scheme be money or property under Title 15.  United States v. Nordlicht, No. 16-cr-00640 (BMC), 2023 WL 4490615, at *5 (E.D.N.Y. July 12, 2023) ("Wire fraud, unlike securities fraud [under Title 15], does require an intent to deprive the victim of money or property.").  "Intent to harm" is not an element of such charges; instead, it is enough that defendant intends to "deceive" or "manipulate."  Id.  Defendant's attempts to expand the reach of Ciminelli are meritless, inapplicable as to Counts Two through Eighteen, and should be rejected.

5

2.    <u>The Indictment Alleges Actionable Misstatements</u>

     a.    *Specific False Representations or Material Omissions are Not Required for Count One*

Defendant's arguments concerning the purported lack of actionable misstatements does not apply to Count One, which charges a fraudulent scheme in violation of 18 U.S.C. § 1348(1). To properly charge a count under § 1348(1), the indictment must allege: "(1) a scheme or artifice to defraud, (2) with fraudulent intent, (3) in connection with any security." <u>SEC v. Stein</u>, 906 F.3d 823, 830 (9th Cir. 2018). Critically, false representations or material omissions are not required for a conviction under § 1348(1). <u>United States v. Mahaffy</u>, 693 F.3d 113, 125 (2d Cir. 2012). Accordingly, because the government adequately pled the statutory elements required to allege a violation of § 1348, the motion should be denied as to Count One.

     b.    *Counts Two through Eighteen Allege Scheme Liability That Do Not Require a Material Misrepresentation*

Counts Two through Eighteen are not limited to material misstatement allegations, but also allege scheme liability under Rule 10b-5(a) and (c) under the Securities Exchange Act (15 U.S.C. § 78j(b)). Under these provisions, typically referred to as "scheme liability," it is unlawful for any person in connection with the purchase or sales of securities "[t]o employ any device, scheme, or artifice to defraud," or "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon

any person[.]"  17 C.F.R. § 240.10b-5(a), (c).[1]  Scheme liability claims are distinct from claims under Rule 10b-5(b), which are based solely on misleading statements or omissions. In re Galena Biopharma, Inc. Sec. Litig., 117 F. Supp. 3d 1145, 1192 (D. Or. 2015). "[S]cheme liability claims involve deceptive conduct, which may include deceptive statements or omissions but must also include additional conduct."  Id.  Tracking the language of Rule 10b-5(a) and (c), the indictment is replete with allegations of defendant's deceptive conduct in connection with his securities trading.  See, e.g., Ind. ¶¶71-76 (falsely holding himself out as managing outside investor money in a hedge fund through the dissemination of investor letters); ¶¶86-101 (falsely holding Citron out as independent from outside third-party influence and bias); ¶¶102-103 (concealing his relationship with a third-party hedge fund through false invoices and bank transfers); ¶104 (lying to agents); ¶106 (deleting his twitter account).

There is no requirement for scheme liability that a defendant made false statements about the underlying company.  Zweig v. Hearst Corp., 594 F.2d 1261, 1266-67 (9th Cir. 1979) (finding a "scheme to manipulate the market" where "withheld information did not relate directly to the company's value and expected performance, but it was necessary to avoid misleading [defendant]'s audience on the reliance they could place on the column").  This type of long-recognized illegal conduct – sometimes referred to as "scalping" – may be

---

[1] In considering the applicability of the Omnicare decision to Section 10(b), the Ninth Circuit focused on Rule 10b-5(b) but did not address the related subsections.  City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc., 856 F.3d 605, 616 (9th Cir. 2017).

adequately charged when the indictment alleges a defendant: (i)
acquires shares of a stock; (ii) recommends that others purchase the
stock without disclosing his intention to sell; and (iii)
subsequently sells the stock for his own benefit.   See, e.g., SEC v.
Beck, No. 2:22-CV-00812-FWS-JC, 2024 WL 1626280 (C.D. Cal. Mar. 26,
2024) (finding that defendant engaged in a fraudulent scheme by
purchasing stock, promoting the stock on Twitter, and then selling
his stock at a profit subsequent to his recommendations without
disclosing his intent sell); see also SEC v. Lidingo Holdings, LLC,
No. C17-1600 RSM, 2018 WL 2183999, at *8 (W.D. Wash. May 11, 2018)
(defendant engaged in fraudulent scheme by purchasing "issuer stock
just prior to publishing an article about the issuer, then sold the
stock at a profit soon after his article was published, which was
contrary to the advice he gave in his articles advocating holding for
the long-term").  Moreover, defendant's use of misleading target
prices – used by defendant only to get media attention before he made
his own trades at distant prices (Ind. ¶19e.iv) – were deceptive
devices within the meaning of Rule 10b-5(a).  For these reasons, the
government adequately alleged scheme liability under Rule 10b-5(a)
and (c) in Counts Two through Eighteen separate and apart from any
misstatement liability.

   *c.  The Indictment Alleges Defendant Made False and
Misleading Misrepresentations*

  Even if defendant was only charged with violating Rule 10b-5(b),
which he was not, the indictment identified numerous actionable false
or misleading statements.  Defendant's argument wrongly suggests that
the result of the Omnicare, Inc. v. Laborers Dist. Council Constr.
Indus. Pension Fund, 575 U.S. 175 (2015), decision is to immunize

defendant from securities fraud liability for any statements he casts as opinion. This is not the law. To the extent the alleged misstatements are opinions, the indictment has properly pled that they meet one of the three avenues of fraudulent opinion liability under Omnicare and Dearborn. As a starting point, there are three grounds for opinions to constitute false opinion statements under Rule 10b-5(b):[2]

> *First*, for a misrepresentation, the allegations must be that "the speaker did not hold the belief she professed and that the belief is objectively untrue";
>
> *Second*, when a fact within the opinion is materially misleading, the indictment must allege that "the supporting fact the speaker supplied is untrue"; or
>
> *Third*, for an omission or half-truth, the charges must include "facts going to the basis for the issuer's opinion whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context."

Dearborn, 856 F.3d at 615-16 (cleaned up) (quoting Omnicare, 575 U.S. at 194).

Putting aside the numerous allegations of clearly non-opinion misrepresentations, see, e.g., Ind. ¶¶ 26, 31, 52, 56, 69, 74-76, 83, 90b, the indictment properly alleges misrepresentations where defendant did not hold the purported belief in question and the

---

[2] Defendant wrongly suggests that to charge opinions as misrepresentations "requires more than conclusory allegations." In fact, it does not. In weighing a motion to dismiss an indictment, a court does not weight the strength of the evidence, but instead determines whether the elements have been sufficiently pled. Musacchio, 968 F.2d at 787 ("[T]he government [is] not required to allege its theory of the case or list supporting evidence to prove the crime alleged.").

belief was objectively untrue.  The distance between defendant's comments on a company and his subsequent trading behavior are outlined throughout the indictment. See infra Section B.  This comes into the sharpest relief where defendant featured target prices in his public statements that did not reflect his honest belief about the value of the security, but rather, were designed to induce panic in the market.  See Ind. ¶19e.iv.  Such statements are actionable as frauds.  SEC v. Thompson, 238 F. Supp. 3d 575, 601 n.12 (S.D.N.Y. 2017) (holding that the defendants' sales around their positive stock predictions "suggests they did not reasonably believe the securities independently had the touted value" and finding, under Omnicare, "the projections are actionable" as either misrepresentations or by providing untrue supporting facts).

Defendant argues that there were other reasons why defendant's trading behavior did not match his publicly stated opinion.  But, the false opinions are properly alleged in the indictment and a motion to dismiss the indictment is not the appropriate venue for defendant to dispute the alleged facts or raise affirmative defenses.  See Jensen, 93 F.3d at 669 ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence."); United States v. Nukida, 8 F.3d 665, 669 (9th Cir. 1993) (holding Rule 12(b) motion to dismiss is not the proper way to raise a factual defense).

Defendant's final argument that target price statements cannot be considered false based on his contemporaneous trading is fundamentally flawed.  In fact, defendant's immediate closing of positions at prices dramatically different from the target prices he publicly proclaimed directly demonstrates that he did not genuinely believe his own valuation claims.  Thompson, 238 F. Supp. 3d at 600

10

1    (defendants trading around the time of glowing stock prediction

2    "suggests they did not reasonably believe that the securities

3    independently had the touted value").  At best, this argument raises

4    a question of fact for the jury, and does not provide a basis for a

5    motion to dismiss.

6                    *d.*   *The Indictment Charges Actionable Half-Truths*

7         Defendant also states that the indictment fails to allege

8    actionable half-truths.  Once an individual decides to speak, he is

9    obligated to speak the whole truth and not withhold material

10   information. See In re Glumetza Antitrust Litig., 611 F. Supp. 3d

11   848, 863 (N.D. Cal. 2020).  Actionable half-truths are explicitly

12   alleged throughout the indictment: defendant made public statements

13   online, in interviews, and on cable news about the positions he held

14   in targeted securities while omitting that he intended to (and in

15   many cases had already placed orders to) close out his positions

16   immediately after publication, once his story had positively or

17   negatively impacted the market for the stock.  See Ind. ¶19f.  Courts

18   have consistently found this type of bait and switch misleading.

19   See, e.g., SEC v. Fassari, No. SACV 21-403 JVS(ADSX), 2021 WL

20   2290576, at *6 (C.D. Cal. May 5, 2021) ("The Court agrees that it was

21   a material misrepresentation for [the defendant] to state that he was

22   holding on to his shares when he was actually selling them, and that

23   prudent investors would consider this information relevant in make

24   their decisions regarding whether to invest.").

25        In SEC v. Gallagher, No. 21-CV-8739 (PKC), 2023 WL 6276688, at

26   *1, 9 (S.D.N.Y. Sept. 26, 2023), the court examined a case involving

27   a securities analyst who used his Twitter account to encourage

28   followers to purchase stocks while concealing that he was selling or

                                    11

would imminently be selling his own shares during or immediately after these recommendations.  The court denied Gallagher's motion to dismiss, holding that by choosing to publicly recommend stocks on Twitter, he assumed a "duty to tell the whole truth." Gallagher, 2023 WL 6276688, at *10 ("[A] failure to disclose a then-present intent to sell is sufficient to render the statements touting a stock misleading."); see also Capital Gains Rsch. Bureau, Inc., 375 U.S. at 181, 202 (Supreme Court applying the same concept in the short direction).  As in Gallagher, the indictment here sufficiently alleges that defendant's public statements created an affirmative duty to be accurate and complete about material issues, including that he was selling or would imminently be selling his own shares in those same issuers[.] See Ind. ¶19e.ii.  That defendant offered his opinion to investors while intending to trade in the opposite direction is certainly the sort of fact that a reasonable person would want to know to fairly and contextually understand defendant's opinion.  See United States v. Wenger, 427 F.3d 840, 854 (10th Cir. 2005) (defendant knew that, while touting a stock in his newsletter, "information concerning his own sale of PanWorld would materially affect the investment decisions of his listeners").

Defendant's conduct far exceeds the omitted disclosure scenarios explicitly contemplated by the Supreme Court in Omnicare.  The Court emphasized that investors expect "not just that the issuer believes the opinion (however irrationally), **but that it fairly aligns with the information in the issuer's possession at the time**." Id. (emphasis added).  Unlike Omnicare's contemplation of an incomplete but sincere belief, the indictment alleges defendant's statements were calculated misrepresentations designed to generate market

12

movements for his personal financial benefit, representing a far more sinister departure from the transparency and good faith required in market communications.  Given the body of well-established case law holding that when a defendant speaks about a stock, it is a materially misleading half-truth to omit information that he intends to trade in the opposite direction after speaking, defendant's motion to dismiss on this ground should be denied.

**B.   Indictment Properly Alleges Defendant Made False and Misleading Statements Regarding Targeted Securities**

Defendant argues the indictment contains additional security-specific deficiencies that warrant dismissal.  First, for CRON, TSLA, ROKU, BYND, NVTA, Namaste, GE, NVDA, TWTR, FB, AAL, PLTR, IGC, and XL, defendant argues the government failed to allege misrepresentations *about* the securities.  Defendant's argument is not cause for dismissal because none of the securities offenses charged require that defendant made a false statement about the securities themselves.[3]   See Zweig, 594 F.2d at 1265-66.

Second, for CRON, ROKU, BYND, NVTA, defendant argues that his statements about his trading positions and valuations are too vague (e.g., "small size," "some") or too qualified (e.g., "we expect," "we believe") to be objectively false.  The cases on which defendant relies address only the heightened pleading standards that a private plaintiff must meet in other to plead a civil Section 10(b) claim with sufficient particularity pursuant to Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act

---

[3] In order to convict the defendant of violating Rule 10b-5(b), the government must prove the defendant "made an untrue statement of a material fact or omitted to state a material fact that made what was said, under the circumstances, misleading."

("PSLRA").[4]  For example, in <u>Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.</u>, 39 F.4th 1092, 1099 (9th Cir. 2022), the Ninth Circuit affirmed the dismissal of the federal securities class action complaint because the private plaintiff failed to plead sufficient facts to establish material misrepresentations or omissions.  The court did not address or discuss the viability of the legal theories underlying the private plaintiff's claims, let alone foreclose them as a matter of law in criminal cases.

Third, for TSLA, ROKU, Namaste, NVDA, TWTR, FB, AAL, PLTR, IGC, and XL, defendant argues that his statements were true when published.  <u>See</u> <u>Rigel Pharms., Inc. Secs. Litig., Inter-Local Pension Fund GCC/IBT v. Deleage</u>, 697 F.3d 869, 876 (9th Cir. 2012) (applying the PSLRA in the civil context).  Again, defendant's arguments are inapplicable in the criminal context.  The indictment alleges defendant's statements were false and misleading when made, and in reviewing a motion to dismiss, the Court must presume the truth of the allegations in the indictment.  <u>See</u> <u>Jensen</u>, 93 F.3d at 669.

For PTE, LK, and NVAX, defendant objects to the government's use of a table listing additional executions in furtherance of the securities fraud scheme.  Defendant fails to grapple with the fact that the charge corresponding to each ticker tracks the statutory language while giving defendant more than sufficient notice of the nature of the scheme and charges against him.  Ind. ¶¶109-111.  Alone, charging the statutory language would be sufficient to overcome the motion, but with the additional detail included in the

---

[4] These heightened pleading standards do not apply in criminal cases.  Similarly, the government need not allege reliance or loss causation.

1   indictment, it exceeds the pleading requirements.  As the indictment

2   tracks the language of Section 10(b) and alleges each element of the

3   offense, it is sufficient on Counts 5, 14, and 15.  Morrison, 536

4   F.2d at 288.

5       The government's securities fraud charges are properly alleged

6   for each count.  We address representative examples below.

7           1.   CRON

8       As alleged in the indictment, on August 30, 2018, defendant

9   published a deceptive report and tweet about CRON and made false and

10  misleading statements to the media about his trading in CRON.  To

11  fraudulently induce retail investors to sell shares and cause an

12  artificial decline in the stock price, defendant accused CRON of

13  engaging in fraud and said the stock price would drop from $11.50 to

14  $3.50 per share.  Ind. ¶¶21-28.  The indictment alleged defendant

15  attempted to conceal the scheme from regulators by falsely denying

16  that he targeted stocks that had large retail bases, while privately,

17  he discussed targeting stocks that were "alll retail," which he

18  described as "taking candy from a baby."  Ind. ¶¶21, 27, 28.

19      The indictment further alleges defendant falsely stated that he

20  only covered a "small size" of his short position in CRON earlier in

21  the day when he had already closed more than 60% percent of his pre-

22  tweet position.  Id. ¶ 25.  While defendant contends his statement

23  was not false, this invitation to resolve competing factual

24  inferences is improper on a motion to dismiss.  See Nukida, 8 F.3d at

25  669.

26          2.   NVTA

27      The indictment alleges that on July 17, 2019, defendant

28  disseminated an investor letter as a deceptive device to manipulate

15

the price of NVTA to benefit defendant's trading position.  Ind. ¶¶77-78.  Specifically, defendant claimed Citron Capital would "continue to add to our position at current levels" to fraudulently induce retail investors to buy shares and cause an artificial increase in the stock price, when in fact defendant was reducing the fund's position.  Ind. ¶78-79.

The indictment also alleges that on July 31, 2019, defendant published a deceptive report and tweet about NVTA to "juice it" and "get stock to 30."  Ind. ¶80.  Specifically, defendant claimed Citron Capital "will continue to stay long until the stock hits at least $65," to fraudulently induce retail investors to buy shares and cause an artificial increase in the stock price, when in fact defendant was selling the fund's shares when NVTA was trading at less than $30 per share.  Ind. ¶¶83-85.  Such statements are actionable frauds.  <u>See</u> <u>Thompson</u>, 238 F. Supp. 3d at 600.  The indictment properly alleges that defendant's statements about NVTA were not truly held beliefs but rather deceptive devices.  <u>See</u> Ind. ¶¶7, 19, 80-85.

       3.   <u>GE</u>

The indictment properly alleges defendant made false and misleading representations in Citron's GE report to manipulate the price of GE's stock and benefit his own trading positions. Specifically, defendant represented that "Citron took the opportunity to buy stock as well."  In truth, at the time defendant made the statement, he had already placed an order to sell his shares.  Ind. ¶89.  Defendant also falsely stated that he had never been received compensation from a third party to publish research or tied to the success of a trade.  Ind. ¶¶90-93.  The indictment sufficiently alleges that this statement is false and material to investors, and

16

1   that defendant's concealment of this information was deceptive.  <u>See</u>

2   <u>Thompson</u>, 238 F. Supp. 3d at 600 (finding that "SEC asserts that

3   acting in concert with other newsletter publishers is itself

4   deceptive conduct that violates Section 10(b) and Rule 10b-5(a) and

5   (c)" in denying motion to dismiss).  Again, defendant's argument to

6   the contrary is one he can make at trial, not in a motion to dismiss.

7       **C.    The Indictment Sufficiently Pleads Materiality**

8       The indictment alleges defendant engaged in a scheme designed to

9   manipulate markets and deceive investors.  At the core of the

10  allegations are defendant's materially misleading statements to the

11  investing public about his stock valuations and trading.  <u>See</u>

12  <u>Fassari</u>, 2021 WL 2290576, at *6; <u>Wenger</u>, 427 F.3d at 854; <u>United</u>

13  <u>States v. Cannistraro</u>, 800 F. Supp. 30, 84 (D.N.J. 1992); <u>SEC v.</u>

14  <u>Corp. Relations Grp., Inc.</u>, 99-cv-1222, 2003 WL 25570113, at *8 (M.D.

15  Fla. Mar. 28, 2003).  As plainly and repeatedly alleged in the

16  indictment, defendant made materially misleading statements about a

17  stock's value and his trading in that security in order to generate

18  market reactions that would benefit his trading positions.  Ind.

19  ¶19e.v.  In the case of CRON (Ind. ¶¶21-26), the indictment alleges

20  defendant built a short position and then published tweets claiming

21  the stock was fraudulent, while simultaneously selling his positions.

22  <u>See also</u> Ind. ¶¶29-33, 4-37, and 38-43.

23      The indictment also properly alleges defendant made other

24  materially false and misleading statements.  For example, the

25  indictment alleges defendant made materially false and misleading

26  statements about Citron's research staff, process, independence,

27  external investors, and economic incentives in order to create a

28  false perception of Citron's objectivity and reliability.  Ind.

¶19e.iii.  The indictment further alleges defendant made material misrepresentations in fictional investor letters he disseminated to the public to create the false pretense that defendant had third party investors and extraordinary returns and bolster his credibility.  Ind. ¶¶71-76.  In addition, the indictment alleges defendant made materially false and misleading statements regarding his false claims of independence from hedge funds.  Ind. ¶¶94-104.

Defendant argues that the government fails to establish materiality under the standard set forth in Milheiser, contending that his misrepresentations were not "essential to the bargain itself." Milheiser involved deceptive yet immaterial sales tactics for printer toner where the customers ultimately got the toner they paid for.  The court contrasted this situation with misrepresentations "directed to the quality, adequacy or price of the goods themselves [where] the victim is made to bargain without facts obviously essential in deciding whether to enter the bargain."  98 F.4th at 943.

The misrepresentations alleged in the indictment squarely fall in the latter bucket focusing on the price and value of various securities.  Thus, this case diverges entirely from the facts in Milheiser[5] and more closely aligns with SEC v. Gallagher, which emphasized that the critical question is whether omitted facts would contradict a reasonable investor's understanding of the statement itself.  In this case, defendant's misrepresentations gave investors a materially different perception of the targeted security.  These

_____

[5] Both Milheiser and Regent Office Supply Co., 421 F.2d 1174 (2d Cir. 1970), dealt with products, where those goods themselves formed the basis of the transactions, where here the transactions at issue here are securities, where price is the key aspect of the transactions.

18

1  were not mere peripheral tactics or collateral statements like those

2  in Milheiser.  Rather, victim investors were deprived of money when

3  defendant fraudulently induced them to purchase securities at

4  artificially inflated or deflated prices through his deceptive

5  conduct.  Rather than peripheral sales tactics, defendant's scheme

6  went to the heart of stock trading.

7      **D.   The Indictment Sufficiently Pleads Fraudulent Intent**

8      Because intent in securities fraud cases turns on the "specific

9  intent to defraud, mislead, or deceive" United States v. Tarallo, 380

10  F.3d 1174, 1181 (9th Cir. 2004), defendant's argument that the

11  indictment fails to plead intent should be rejected for the reasons

12  detailed above in Section III.A(1).

13      Defendant next contends his use of encrypted messaging, deleting

14  communications, and making false statements to government agents are

15  not evidence of his intent to cheat readers.  Again, defendant

16  improperly attempts to shoehorn a trial defense into a motion to

17  dismiss.  Defendant can argue that his serial obfuscation was

18  innocent, but it will be up to the jury to decide how to weigh

19  circumstantial evidence.  See United States v. Rogers, 321 F.3d 1226,

20  1230 (9th Cir. 2003).

21      It is unclear what defendant thinks is required beyond an

22  explicit allegation of criminal intent, but the indictment does so

23  here.  Defendant's repeated attempts to improperly dispute the

24  factual allegations set forth do not alter the facts alleged in the

25  indictment, which are more than sufficient to establish that

26  defendant acted willfully, knowingly, and with the intent to defraud

27  investors.  Defendant wrongly attempts to use this motion to fight

28

1  his factual battles, but this not the vehicle for such disputes.  See

2  Jensen, 93 F.3d at 669.

3      **E.    The Indictment Charges Domestic Conduct**

4      Defendant's extraterritoriality arguments are meritless because

5  the charged conduct is domestic.  Defendant mistakes the conduct

6  underlying Count 1 for that predicating other counts and the law

7  governing cases brought by the government for those brought by civil

8  litigants.

9      Count One of the indictment makes clear that it is not relying

10  on Namaste ("NXTTF") as one of the statutory securities.  Ind. ¶¶15,

11  18.  The conduct is included in Count One to show intent, the falsity

12  of other statements (such as the statements in the GE report), and

13  defendant's attempts to conceal the scheme.  Ind. ¶¶92-93.  Charged

14  in this fashion, the inclusion of this conduct raises no

15  extraterritoriality concerns.

16      Count 4 of the indictment is charged under 18 U.S.C. § 78j and

17  Rule 10b-5.  Defendant is wrong that the statute applies only for

18  securities registered on a national security exchange.  The statute

19  applies both to securities traded on an exchange or transactions

20  utilizing "the means and instrumentalities of interstate commerce[.]"

21  18 U.S.C. § 78j.  For Namaste, the indictment properly relies on the

22  latter.  Defendant also ignores the allegations in the indictment

23  where defendant explicitly stated he was "going to keep shorting

24  NXTTF until it goes to zero" and a tweet stating "Citron proves

25  without a doubt the fraud being committed at . . . . . #nxttf[.]" Ind.

26  ¶97 (emphasis added).  NXTTF is the ticker for the US-traded

27  security.  Ind. ¶94.  Moreover, the indictment alleges that Hedge

28  Fund A shorted NXTTF, the U.S. security, not the Canadian-listed

stock.  Ind. ¶95.  Lastly, the appropriate test for whether the indictment has established U.S. jurisdiction is the "conducts or effects" test,[6] not the test outlined by defendant.  The indictment establishes both significant and substantial effects within the United States including (i) the arrangement between Left, a California resident, and Hedge Fund A; (ii) tweets concerning NXTTF sent within the United States; (iii) public media statements directed at NXTTF, the U.S. security; (iv) NXTTF being a U.S. over-the-counter stock; and (iv) a series of sham invoices sent through the United States with the use of American bank accounts to the benefit of defendant in the United States.  Ind. ¶¶1, 3, 94-103.

Accordingly, none of defendant's claims concerning extraterritoriality warrant dismissal.

### F.    The First Amendment Does Not Protect Defendant's Unlawful Conduct

In raising his First Amendment challenge, defendant cites no criminal cases.  And for good reason: "[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."  Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 502 (1949).  As the Supreme Court has repeatedly articulated, "[s]peech intended to bring about a particular unlawful act has no social

---

[6] The 2010 Dodd-Frank Act restored "expanded jurisdiction for extraterritorial conduct" in actions brought by the United States, such as this one.  See Melvin v. Brayshaw, No. EDCV19712JGBSPX, 2019 WL 6482220, at *4 (C.D. Cal. Oct. 3, 2019) (citing 15 U.S.C. § 77v(c)).  Defendant's reliance on Stoyas v. Toshiba Corp., 896 F.3d 933 (9th Cir. 2018), misses the crucial distinction after Dodd Frank between government-brought and private litigant actions.

1  value; therefore, it is unprotected.  We have applied this principle

2  many times, including to the promotion of a particular piece of

3  contraband, solicitation of unlawful employment, and picketing with

4  the sole, unlawful [and] immediate objective of induc[ing] a target

5  to violate the law." United States v. Hansen, 599 U.S. 762, 783

6  (2023) (internal citations and quotation marks omitted).  The charges

7  here violate freedom of speech principles no more than charging a

8  conspiracy in which the defendants verbally agreed to traffic illegal

9  narcotics.

10    Additionally, defendant's argument mischaracterizes the charges

11  against him.  Defendant's investment reports were not issued in a

12  vacuum, but in the context of his broader market manipulation and

13  stock scalping scheme.  Read in their appropriate context,

14  defendant's tweets and reports were not acts of purely honest speech,

15  since "even in the absence of a trust relationship," a defendant

16  "cannot affirmatively tell a misleading half-truth about a material

17  fact to a potential investor." United States v. Laurienti, 611 F.3d

18  530, 541 (9th Cir. 2010).

19    **G.    Defendant Fails To Articulate a Due Process Claim**

20    Defendant's invocation of the Fifth Amendment's Due Process

21  Clause similarly fails.  Defendant cites the caselaw regarding

22  unconstitutional vagueness, but those cases are orthogonal to the

23  argument he raises here. City of Chicago v. Morales, 527 U.S. 41

24  (1999), for example, articulated the (rare) circumstances under which

25  a facial vagueness challenge could be brought to a criminal law.[7]

26  Yet neither Morales nor any other case stands for the proposition

27

28    [7] Morales was a plurality opinion, and its broader applicability
    is questionable.

22

1  that application of the criminal law to a novel <u>factual</u> circumstance

2  is constitutionally suspect.  By that logic, without new legislation

3  the government would be powerless to prosecute wrongdoers who use new

4  technologies or devise innovative schemes.  Defendant does not assail

5  the securities fraud statutes and regulations themselves, and so it

6  must be up to a jury to decide whether defendant violated them.

7       In any event, defendant's assertion that this case blazes

8  entirely new trails is incorrect.  As already stated, the

9  prohibitions on scalping are well established in the caselaw.  <u>See,</u>

10  <u>e.g.,</u> <u>Wenger,</u> 427 F.3d at 854; <u>Zweig</u>, 594 F.2d at 1265-66.

11       **H.    The False Statement Charge Suffers from No Defects**

12            1.    <u>Count Nineteen Is Not Duplicitous</u>

13       Defendant's false statement charge is not duplicitous.

14  Tellingly, none of defendant's citations pertains to § 1001.  This is

15  for good reason; the law in this circuit and others holds that the

16  unit of prosecution for a § 1001 violation is the vehicle through

17  which the false statements were made, not each individual false

18  statement.  <u>See, e.g.,</u> <u>Fisher v. United States</u>, 231 F.2d 99, 103 (9th

19  Cir. 1956) (criticizing multiplicity of prosecuting separate § 1001

20  counts for each false statement in a single document rather than all

21  the false statements in that document).  Indeed, the rule is intended

22  to benefit criminal defendants and arises from the rule of lenity and

23  the notion that "it is difficult to assume Congress intended that a

24  defendant found guilty of falsifying one document be exposed to two

25  or more sentences."  <u>United States v. UCO Oil Co.</u>, 546 F.2d 833, 838

26  (9th Cir. 1976).

27

28

1

2.   <u>Count Nineteen States an Offense</u>

2      A perjury conviction may not be predicated on a statement that

3   is "literally true but not responsive to the question asked."

4   <u>Bronston v. United States</u>, 409 U.S. 352, 353 (1973).  Defendant is

5   right on the general principle but wrong in its application.

6      "<u>Bronston</u>'s rule is limited to cases in which the statement is

7   indisputably true, though misleading because it was unresponsive to

8   the question asked."  <u>United States v. Camper</u>, 384 F.3d 1073, 1076

9   (9th Cir. 2004).  But "[d]ifferent rules govern statements that are

10  ambiguous, in which the statement may be true according to one

11  interpretation and false according to another."  <u>Id.</u>  Defendant's

12  arguments with respect to Count Nineteen fall, at best, into this

13  latter category.

14     "[T]he existence of some ambiguity in a falsely answered

15  question will not shield the respondent from a perjury or false

16  statement prosecution."  <u>Id.</u>  Beyond those extreme cases where

17  ambiguity is fundamental to the question,[8] "[i]t is for the jury to

18  decide in such cases which construction the defendant placed on a

19  question."  <u>Id.</u>  That is the case here under the most generous

20  reading of defendant's argument.  Defendant's contortion of the

21  obvious meaning of the two questions at issue rivals the most

22  seasoned yoga gurus.

23     When asked, "Do you share your report before it goes public with

24  [hedge funds]?" defendant falsely stated, "No, no, no, the only thing

25

26  _____

27     [8] A "question is fundamentally ambiguous" where "'men of
    ordinary intelligence' cannot arrive at a mutual understanding of its
    meaning."  <u>United States v. Culliton</u>, 328 F.3d 1074, 1078 (9th Cir.

28  2003) (per curiam) (citation omitted).  That is a far cry from the
    circumstances of this case.

I might do . . . I might double check a spreadsheet . . . . [I]t's always done to make sure it's factually right."  Defendant's belated attempt to interpret the question to refer only to reports in their final form and not earlier drafts is untenable.  Defendant's own answer, which refers to "double check[ing] a spreadsheet" only makes sense if he understood the question to refer to drafts before the final product.  Likewise, defendant's efforts to characterize this question to refer to sharing the reports before they were published to hedge funds is completely inconsistent with the context, which pertained to defendant's direct communications with hedge funds.  Nor would it make sense to discuss his publication of reports to hedge funds, since he issued his reports publicly through his website and Twitter account.  Ind. ¶2.  "The context of the question and other extrinsic evidence relevant to the defendant's understanding of the question may allow the finder of fact to conclude that the defendant understood the question as the government did and, so understanding, answered falsely."  Camper, 384 F.3d at 1076.  This reliance on context and extrinsic evidence is precisely why the determination of falsity is the province of the jury.  See United States v. McKenna, 327 F.3d 830, 841 (9th Cir. 2003).

With respect to his second lie -- that, in response to the question, "When you check with other hedge funds that specialize in the industry that you are looking at, is there compensation between the two of you?" defendant responded "[n]ever . . . never, never, never" -- defendant raises two unpersuasive points.  First, he claims that use of the word "is" temporally limits the question so as not to cover past conduct.  But that reading ignores the first clause of the question, which through the use of "when" posits that the defendant

25

1   had checked with hedge funds at various times in the past.  And the

2   defendant's answer of "never" to this question confirms his

3   understanding that it applied to past conduct; his unambiguous and

4   repeated response "never" suggests he, as any reasonable listener,

5   understood the question to be general.  Second, though the question

6   described "compensation between the two of you," defendant now

7   asserts this can only mean benefits he paid to hedge funds.  Yet this

8   runs directly counter to the premise of the question: that defendant

9   received a benefit by providing advance notice to third parties of

10  his market-making behavior in exchange for a benefit.  Again,

11  defendant may renew his factual claims and arguments at trial, but

12  they are patently improper bases to dismiss the indictment.

13  **IV.   CONCLUSION**

14      For the above reasons, this Court should deny defendant's motion

15  to dismiss charges in the indictment in its entirety.

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel for the United States, certifies this memorandum of points and authorities contains 6,941 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 24, 2025

_____/s/_____
ALEXANDER B. SCHWAB
Assistant United States Attorney