BILAL A. ESSAYLI
United States Attorney
CHRISTINA SHAY
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
Assistant United States Attorney
Deputy Chief, Criminal Division
HAOXIAOHAN CAI (Cal. Bar No. 331131)
Assistant United States Attorney
Major Frauds Section
LAUREN ARCHER
MATTHEW REILLY
Trial Attorneys
Criminal Division, Fraud Section
    1200/1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-1259/0762
    E-mail:    alexander.schwab@usdoj.gov
               haoxiaohan.cai@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:24-cr-00456-TJH |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| ANDREW LEFT, | |
| Defendant. | Hearing Date: August 18, 2025 Hearing Time: 10:00 a.m. Location: Courtroom 9C |

The United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, the Acting Chief of the Fraud Section of the Criminal Division of the U.S. Department of Justice, Assistant United States Attorneys Alexander B. Schwab and Haoxiaohan Cai and Trial Attorneys

Lauren Archer and Matthew Reilly, hereby file its opposition to

defendant Andrew Left's motion to compel discovery (ECF No. 69).

This opposition is based on the attached memorandum of points

and authorities, the files and records in this case, the exhibits

hereto, and such further evidence and argument as the Court may

permit.


Dated: July 28, 2025                Respectfully submitted,

                                    BILAL A. ESSAYLI
                                    United States Attorney

                                    LORINDA I. LARYEA
                                    Acting Chief, Fraud Section
                                    Criminal Division of DOJ

                                         /s/
                                    LAUREN ARCHER
                                    MATTHEW REILLY
                                    ALEXANDER B. SCHWAB
                                    HAOXIAOHAN CAI

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

I.    INTRODUCTION.................................................1

II.   BACKGROUND...................................................3

      A.   The SEC Access Request Process.........................3

      B.   The SEC Parallel Investigation Materials...............6

      C.   Defendant's Motion to Compel Discovery from SEC........8

           1.   *The Speculated SEC Investigations*..............9

           2.   *The Unrelated SEC Investigations*..............10

           3.   *Defendant's Other Requests from the SEC's Files*.....12

III.  LEGAL STANDARD..............................................13

IV.   ARGUMENT....................................................15

V.    CONCLUSION..................................................18

1

## **TABLE OF AUTHORITIES**

2

3 *Cases*

4
In re Cronos Group Inc.,
5    Exch. Act Rel. No. 96137 (S.E.C. October 24, 2022). . . . . . . 10

6 In re General Electric Company,
     Exch. Act. Rel. No. 90620 (S.E.C. Dec. 9, 2020). . . . . . . . . 9
7

8 In re India Globalization Capital, Inc., Securities Act of 1933
Release No. 10908 (S.E.C. December 21, 2020) . . . . . . . . . . 11

9 In re Spruce Power Holding Corp.,
     Exch. Act. Rel. No. 98612 (S.E.C. Sept. 28, 2023). . . . . . . . 11
10

11 Sanchez v. United States,
     50 F.3d 1448 (9th Cir. 1995). . . . . . . . . . . . . . . . . 13
12

SEC v. Left,
13    2:24-cv-6311-SPG (C.D. Cal. 2024). . . . . . . . . . . . . . . 6

14 United States v. Alahmedalabdaloklah,
     94 F.4th 782 (9th Cir. 2024). . . . . . . . . . . . . . . passim
15

16 United States v. Bryan,
     868 F.2d 1032 (9th Cir. 1989) . . . . . . . . . . . . . . . 14

17 United States v. Boustani, No. 18-CR-681, ECF No. 232 (Order Den.
Def. Disc. Mot.)(E.D.N.Y. filed Oct. 3, 2019). . . . . . . . . . 16
18

19 United States v. Cano,
     934 F.3d 1002 (9th Cir. 2019). . . . . . . . . . . . . . . passim
20

21 United States v. Finnerty,
     411 F. Supp. 2d 428 (S.D.N.Y. 2006). . . . . . . . . . . . . . 16
22

United States v. Kabilafkas, No. 24-cr-270-MRA-1, ECF No. 139 (C.D.
23 Cal. May 13, 2025). . . . . . . . . . . . . . . . . . . . . passim

24 United States v. Stringer,
     535 F.3d 929 (9th Cir. 2008). . . . . . . . . . . . . . . 6, 14
25

26 United States v. Tournant
     2023 WL 5001186 (S.D.N.Y. Aug. 4, 2023). . . . . . . . . . 18-19

27

28

<u>United States v. Zuno-Arce,</u>
    44 F.3d 1420 (9th Cir. 1995). . . . . . . . . . . . . . . . . . 15


**_Regulations_**

SEC Enforcement Manual §5.1.. . . . . . . . . . . . . . . . . . 4-5

SEC Enforcement Manual § 2.3 . . . . . . . . . . . . . . . . . 4

SEC Enforcement Manual § 2.3.4 . . . . . . . . . . . . . . . . 4

SEC Enforcement Manual § 3.2.9 . . . . . . . . . . . . . . . . 4

SEC Enforcement Manual § 3.2.10 . . . . . . . . . . . . . . . . 4

Securities Exchange Act of 1934, 15 U.S.C. § 78x(b). . . . . . . . 5

Securities Exchange Act of 1934, 17 CFR § 240.24c-1(b). . . . . . . 5

SEC Enforcement Manual § 5.6.1 . . . . . . . . . . . . . . . . 5

SEC Enforcement Manual § 5.1 . . . . . . . . . . . . . . . . . 4- 5

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3       Defendant Andrew Left's motion to compel expansive discovery

4  from the U.S. Securities and Exchange Commission ("SEC") is an

5  premised on a bait and switch.  Defendant focuses extensively on the

6  SEC's civil investigation of and ultimate complaint against defendant

7  in asserting that the prosecution team worked "arm-in-arm" with the

8  SEC.  However, defendant fails to highlight for the Court a number of

9  key facts.  First, the prosecution team has already provided all of

10  the record productions it received from the SEC Los Angeles Regional

11  Office's parallel investigation into defendant (the "SEC Parallel

12  Investigation").[1]  Second, ███████████████████████████████████

13  ████████████████████████████████████████████████████████████████

14  ████████████████████[2]  Third, defendant now seeks – but obfuscates from the

15  Court – two impermissible categories of material: records from other,

16  unrelated SEC investigation files ("Unrelated SEC Investigations")

17  and also materials from hypothesized SEC investigations that

18  defendant admits that he does know whether they exist ("Speculated

19  SEC Investigations").  For both of these categories, there is no

20  basis to assert that the prosecution team has access to or knowledge

21  of, which defendant must establish to succeed on his motion.

22

23

24

_____

25       [1] The government is in the process of making a small follow-on
   production of materials that it received from the SEC Parallel
26   Investigation and anticipates making that production in advance of
   the hearing on defendant's motion to compel.
27

28       [2] See, infra, Section II.B.

These key facts doom defendant's Motion.  This prosecution team[3] has no involvement in the Unrelated SEC Investigations or Speculated SEC Investigations, and utterly no access to the SEC's corresponding investigative files (to the extent such investigations and files even exist).  While the SEC has granted an "access request" to the prosecution team for the Parallel SEC Investigation, the prosecution team has never submitted, nor has the SEC ever granted, any such requests for the Unrelated SEC Investigations or the Speculated SEC Investigations.  Unsurprisingly, the prosecution team therefore has no ability to review, produce, or exercise any control over any of those matters.  This is precisely the sort of overbroad discovery request for records from another agency that the Ninth Circuit recently foreclosed.  See United States v. Alahmedalabdaloklah, 94 F.4th 782, 845 (9th Cir. 2024) (even when one component of an agency participated in a criminal investigation, that does not result in the prosecution team having access to or knowledge of the rest of the records held by other components of that same agency for purposes of Brady).

Moreover, the nature of the files sought reflects that defendant is on a fishing expedition for records that the prosecution team would not have an obligation to produce, even if they were held by another component of the Department of Justice (they are not). See United States v. Cano, 934 F.3d 1002, 1024-25 (9th Cir. 2019)

_____

[3] In this case, the prosecution team is the U.S. Attorney's Office for the Central District of California, the Fraud Section of the U.S. Department of Justice's Criminal Division, the U.S. Postal Inspectors' Fraud Section team, and the Federal Bureau of Investigation's Los Angeles Field Office.

1  (government did not have an obligation to "comb the files" of two

2  components within DOJ who did not participate in the criminal

3  investigation for <u>Brady</u>).  Here, defendant goes even further by

4  seeking SEC files from matters investigated by completely different

5  SEC offices than the office that conducted the SEC Parallel

6  Investigation of defendant.  Tellingly, defendant provides no basis

7  for his assertion there is actual exculpatory evidence in such files.

8       In essence, defendant's theory is that if another component of

9  another agency might have materials that he wants, he is entitled to

10 them even if the prosecution team has no access to, no knowledge of,

11 and no control of the material.  Confusingly, defendant seeks these

12 purportedly expansive records while simultaneously claiming in

13 another motion that the government produced too extensive discovery.

14 Nonetheless, defendant's proposed rule transforms the prosecution

15 team's discovery obligations well beyond any recognized principal to

16 reach into every crevice of an agency even when it did not

17 participate in the criminal investigation.  That is not the law.

18      The prosecution team has produced the records that it has and

19 will produce those that it has access to.  Defendant's motion to

20 compel the production of records from unrelated SEC investigations

21 conducted by wholly uninvolved SEC offices that the prosecution team

22 has absolutely no access to, must be denied.

23 **II.   BACKGROUND**

24      **A.   The SEC Access Request Process**

25      Defendant fundamentally misunderstands an SEC access request

26 letter and attempts to paint a nuanced process with an overly broad

27 brush.  As a baseline matter, materials gathered in SEC

28                                    3

investigations are nonpublic and confidential.[4]  The SEC Division of
Enforcement, which conducts the Commission's nonpublic investigations
of civil violations of the federal securities laws, is spread among
ten regional offices[5] and the Home Office in Washington, DC.
Investigations within the SEC Division of Enforcement are formally
segregated by matter numbers (designating the investigating office
and unique number to the specific matter) and there is a formal
process for opening an investigation, which is limited to specific
facts, conduct, or individuals.  See SEC Enforcement Manual § 2.3.
When there is a formal order of investigation, the SEC itself issues
an order that is limited to specifically designated staff members to
act as officers of the Commission for purposes of that specific
investigation.  Id. at § 2.3.4.  The files for different
investigations are segregated by matter number, housed separately,
see id. at § 3.2.9 (Maintaining Investigation Files) and § 3.2.10
(Document Control), and not accessible across the entire SEC or even
within the Division of Enforcement.  Statutory authority and SEC
rules and policies govern when and how the SEC can share information
with criminal investigative authorities.[6]  If a criminal agency, such

---

[4] "All information obtained or generated by SEC staff during
investigations or examinations  should be presumed confidential and
nonpublic unless disclosure has been specifically authorized."  SEC
Enforcement Manual §5.1 (available at https://www.sec.gov/divisions/
enforce/enforcementmanual.pdf).

[5] https://www.sec.gov/about/regional-offices (*last visited* July
24, 2025).

[6] Section 24(a) of the Securities Exchange Act of 1934 states
that "[i]t shall be unlawful for any member, officer, or employee of
the Commission to disclose to any person other than a member,
*(footnote cont'd on next page)*

4

as DOJ, has a need for information, they may seek from the SEC an "access request" letter into a specific matter that the SEC Division of Enforcement is investigating.[7]  There are three important limitations on this process: (1) the SEC has discretion whether or not to grant the access request; (2) if access is granted, the SEC staff retains discretion as to what materials from within a specific investigation file it will share pursuant to an access request grant;[8] and, most importantly for the present motion, (3) an access

_____

officer, or employee of the Commission, . . . any information contained in any [document] obtained by the Commission . . . in circumstances where the Commission has determined pursuant to such rules to accord confidential treatment to such information."  15 U.S.C. § 78x(b).  Under the statute, a process was created by regulation to permit providing access to certain records to, among other entities, an agency of the federal government.  17 CFR § 240.24c-1(b).

    [7] "The Commission may, in its discretion and upon a showing that such information is needed, provide nonpublic information in its possession to [another federal government agency] if the person receiving such nonpublic information provides such assurances of confidentiality as the Commission deems appropriate."  17 CFR § 240.24c-1(b)(1) (emphasis added).

    [8] The regulation does not undermine the "[t]he Commission's authority or discretion to provide or refuse to provide access to, or copies of, nonpublic information in its possession in accordance with such other authority or discretion as the Commission possesses by statute, rule or regulation[.]"  Id. (c)(1).  Even when an access request in a particular matter is granted the SEC staff retains discretion as to what materials are in fact shared with criminal authorities.  See SEC Enforcement Manual § 5.6.1 ("When the access request has been approved, staff may share documents from the investigative file."); § 5.1 ("work product and other privileged information is rarely disclosed, even when third-parties are granted access to the other materials in nonpublic files" and limiting disclosure of materials obtained from other agencies).  And, of course, the ability to provide materials to criminal authorities is limited to those matters for which there is a valid access request.  See id. ("All information obtained or generated by SEC staff during
*(footnote cont'd on next page)*

5

1    request grant is strictly limited to the specific matter number

2    referenced in the criminal agency's access request letter (*i.e.*

3    access granted in one matter does not open up the entirety of the

4    SEC's files to another investigative agency).[9]  In sum, an access

5    request is a threshold step to a criminal agency receiving certain

6    SEC files, but it does not provide the other agency with control of,

7    or legal or practical access to, the entire SEC files for the

8    specific matter – and it certainly does not provide control, access,

9    or knowledge of all of the SEC's other case files.

10           **B.    The SEC Parallel Investigation Materials**

11           Defendant is correct that there are factual overlaps between the

12   criminal securities fraud charges for which he was indicted in this

13   case and the SEC's civil complaint.  Beyond that, defendant misses

14   the mark on numerous fronts.

15           The SEC conducted a separate, parallel investigation from DOJ.

16   *See United States v. Stringer*, 535 F.3d 929, 936–39 (9th Cir. 2008)

17   (recognizing separate parallel criminal and SEC civil investigations

18   as appropriate).  The SEC Parallel Investigation resulted in the

19   filing of a complaint against defendant (with a different, more

20   expansive set of conduct and stock tickers than charged in the

21   government's criminal case). See <u>SEC v. Left</u>, 2:24-cv-6311-SPG (C.D.

22   _____

23   investigations or examinations should be presumed confidential and
     nonpublic unless disclosure has been specifically authorized.").

24          [9] See Ex. 3 █████████████████████████████████████████

25   ████████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████

28                                      6

Cal. 2024).  The SEC also filed settled charges against other related

individuals and entities, including Citron Capital ███████████

███████████████ [10] The prosecution team submitted an access request

to the SEC Parallel Investigation for information in the SEC Parallel

Investigation file.[11]  In connection with that request, the staff

assigned to the SEC Parallel Investigation in the SEC's Los Angeles

Regional Office provided the prosecution team certain materials

obtained during their investigation.

Defendant has been provided with substantial material from the

SEC Parallel Investigation file.  First, defendant was provided with

all productions of records that the SEC Parallel Investigation team

provided to the prosecution team pursuant to the access request.

Next, the prosecution team agreed to request from the SEC and provide

defendant with additional records not previously provided to the

---

[10] ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████ See Ex. 3.

[11] ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████

1   prosecution team.[12]  The irony is that defendant is making this overly

2   broad request for records, seemingly envisioning a vast array of

3   records to be produced, while he simultaneously complains in another

4   motion that the prosecution team has produced too much discovery and

5   it has purportedly prevented him from discerning the nature of the

6   charges against him.  See ECF No. 62 at 9.

7

8

9

10

11

12

13

14

15

16      **C.    Defendant's Motion to Compel Discovery from SEC**

17      Defendant's present motion concerns his requests for discovery

18   from numerous other SEC investigation files (the Unrelated SEC

19   Investigations) that the prosecution team has never had any access

20   to, never submitted an access

21

22   _____

23   [12] This included materials

24

25

26

27   See Ex. 3.

28                                      8

involvement with these investigations. Based on the public filings,
the Unrelated SEC Investigations were not conducted by the SEC's Los
Angeles Regional Office.  In sum, the prosecution team does not have
any form of access to, let alone possession, custody, or control over
any materials from these other matters.

Defendant requests discovery from at least six SEC investigation
files related to the following tickers: Cronos Group ("CRON"); XL
Fleet ("XL"); General Electric ("GE"); Namaste Technologies
("NXTTF"); India Globalization Capital Inc. ("IGC"); and Beyond Meat,
Inc. ("BYND").

### 1.  *The Speculated SEC Investigations*

For GE,[13] NXTTF, and BYND, defendant asserts no knowledge of
either an investigation into those entities or any public SEC action

---

[13] Defendant does not reference any investigation into GE in his
motion, but appears to ignore the SEC's no-admit, no-deny settlement
with GE for non-scienter disclosure fraud on December 9, 2020.  In re
General Electric Company, Exch. Act. Rel. No. 90620 (S.E.C. Dec. 9,
2020).  This investigation, which was conducted by the SEC's Boston
Regional Office (see https://www.sec.gov/newsroom/press-
releases/2020-312) resulted in a $200 million fine for GE for failing
to disclose failures in its power and insurance businesses.  This
omission may be because defendant's GE report (in the long direction)
focused on discrediting another short seller who had alleged GE was
engaging in accounting fraud and asserting that this was not the
case.  See Ex. 4 at 1 (Citron GE Long Report).  In the positive
report and accompanying tweet, defendant misled the market by stating
that "Citron took the opportunity to buy stock as well" without
disclosing that he had already placed limit orders to sell his
position if the price rose by approximately 30 cents from his
purchase price and intended to sell all of his shares shortly after
publishing the report.  (Indictment ¶¶ 86 -89); Ex. 4.  Accordingly,
it is nonsensical that any potential records gathered by the Boston
Regional Office – in an investigation that demonstrated defendant's
commentary was wrong — would be evidence that he is entitled to under
a Brady theory.  And, if this is the GE investigation defendant has
in mind, the prosecution team clearly has no access to or knowledge
*(footnote cont'd on next page)*

against those entities.  Defendant even admits his request is based on pure speculation: "The multiple companies ... are most likely under investigation by the SEC[.]"  Mot. at 4 (emphasis added). Defendant's lack of any basis to believe the SEC even has files involving investigations into these entities reveals his motion for the fishing expedition that it is. ███████████████████████

████████████████████████████████████████████████████████████

██████████████████████████

### 2.   *The Unrelated SEC Investigations*

Defendant's motion to compel discovery from SEC investigation files and civil settlements with CRON, XL, and IGC (the Unrelated SEC Investigations) is also problematic.  As threshold matter, the SEC's settlements with CRON and XL do not reference defendant, Citron, or anything about internet-based stock promoters/activist short sellers, like defendant.  For CRON, the timing of the charged public statements by defendant in the indictment does <u>not</u> even align with the conduct covered in the SEC's matter.  For example, publicly available information indicates that the CRON matter concerns conduct that <u>began</u> more than six months <u>after</u> defendant's manipulative tweet, report, and TV appearance regarding CRON in August 2018.  <u>See</u> <u>In the Matter of Cronos Group Inc.</u>, Exch. Act Rel. No. 96137 (S.E.C. October 24, 2022) (concerning conduct that began in the first quarter of 2019).

---

of a wholly unrelated SEC Boston Regional Office investigation that does not even reference defendant or short sellers.  <u>See</u> Exch. Act. Rel. No. 90620.

For XL, defendant's theory of potential exculpatory information makes no sense.  Defendant put out a misleading tweet on December 23, 2020: "Citron long $XL tgt $60" and, within one trading day, defendant sold all of the XL shares he had just purchased at prices substantially below $60.  (Indictment ¶¶ 67-70.)  The SEC later settled with XL for non-scienter fraud violations of the securities laws for misleading statements concerning its sales pipeline and conversion rate.  See In the Matter of Spruce Power Holding Corp., Exch. Act. Rel. No. 98612 (S.E.C. Sept. 28, 2023).  In other words, while defendant's 2020 long tweet on XL predicted positive future news, the SEC's settlement with XL was a negative revelation about the company.  It, therefore, does not follow that the SEC's files in the XL matter would indicate that defendant's tweet was correct, part of a truly held opinion when issued, or that he did not withhold critical information about his own trading intentions when publicly touting the stock.  In fact, it appears that these files would only further support that defendant recommended to the public a stock that turned out to have made misleading statements.

With regard to IGC, defendant similarly fails to provide any basis or indication that the SEC investigation of IGC had anything to do with him.  As an initial matter, the SEC's settlement focused on a March 2018 press release and defendant's public statement about IGC occurred in October 2018.  Compare In the Matter of India Globalization Capital, Inc., Securities Act of 1933 Release No. 10908 (S.E.C. December 21, 2020) and Indictment ¶ 99.  There is no reference to defendant in the SEC's public filings about the IGC case. To the extent defendant believes that the findings of this or

11

1  any of the SEC's cases are relevant to his defense theory, he has all

2  the relevant information in the SEC's multi-page order addressing the

3  SEC's findings (on a neither admit nor deny basis) concerning the

4  non-scienter fraud charges about the March press release and April-

5  June equity raise. In re IGC, ¶¶ 1, 9-20.

6      For all of these matters, there is no basis to believe that

7  there is anything material or exculpatory concerning defendant in the

8  SEC's investigation files.  Of course, the prosecution team has no

9  insight as it does not have any form of access to (and certainly no

10  control or knowledge of) the case files in these matters conducted by

11  the separate SEC Home Office staff that apparently worked on these

12  matters (as compared to the Los Angeles Regional Office that worked

13  on the SEC Parallel Investigation).

14          3.  ***Defendant's Other Requests from the SEC's Files***

15      Defendant also requests "any evidence of wash, match, or

16  coordinated trading in any of the stocks at issue in the Indictment"

17  from the SEC.  Defendant does not articulate how such information

18  could be Brady or explain how this information is otherwise

19  discoverable given that there are not any allegations of such trading

20  in the Indictment by defendant or others.  Despite the prosecution

21  team's request for additional information about this request during

22  the meet-and-confer process, defendant failed to articulate what form

23  of evidence he is seeking, in what SEC investigation files he

24  believes such evidence exists, and how there is any discovery

25  obligation over such information.

26      Lastly, defendant makes a catch all request for "any other Brady

27  material in the SEC's possession."  Seemingly, defendant's request

28                                  12

implies that, in his view, not only does the prosecution team have a discovery obligation over materials beyond the SEC Parallel Investigation, but the entirety of the SEC's files.  Such a sweeping obligation and untenable scope does not exist for the government's obligations over files throughout the Department of Justice,[14] but defendant suggests that the prosecution team somehow has access, control, and knowledge of the entirety of another agency's materials. This is simply not the law.

As discussed further below, the facts reveal two fundamental flaws with defendant's motion to compel: (1) he claims "there is significant exculpatory evidence" in the SEC's files, but reveals that his claim is based on wholesale speculation; and (2) he ignores that the prosecution team does not have access, control, or knowledge of the SEC's files beyond what has been provided, and suggests an unfounded standard where the prosecution and the entire SEC are co-extensive.

**III. LEGAL STANDARD**

"Under both Brady and Rule 16, the government 'has no obligation to produce information which it does not possess or of which it is unaware.'" Cano, 934 F.3d at 1023 (quoting Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995)).  The government's obligations on this front are cabined by the requirement that the materials must be

---

[14] Cano, 934 F.3d at 1023 (concluding that that the FBI and DEA's files were not required to be searched for Brady despite that those entities were also components of DOJ and that defendant is not entitled to require the government to conduct a broad and expansive search for speculative information that is outside of the government's possession, custody, and control, if it exists at all).

1    in the government's "possession." Id. As relevant here,

2    "[d]ocuments held by another executive branch agency are deemed to be

3    'in the possession of the government' if the prosecutor has

4    'knowledge of and access to' the documents." Id. (quoting United

5    States v. Bryan, 868 F.2d 1032, 1036 (9th Cir. 1989)). "The

6    prosecutor will be deemed to have knowledge of and access to anything

7    in the possession, custody or control of any federal agency

8    participating in the same investigation of the defendant." Bryan,

9    868 F.2d at 1036 (emphasis added). The same investigation is not a

10   parallel one. See Stringer, 535 F.3d at 936-39 (recognizing separate

11   parallel investigations between a DOJ criminal investigation and an

12   SEC civil investigation).[15]  Additionally, even when an agency is part

13   of the same investigation, the government's discovery obligations do

14   not extend to entirety of that agency's files, but only to the files

15   of agency components actually "participating" in the investigation

16   and those components that the government actually has "access to" the

17   records of.  United States v. Alahmedalabdaloklah, 94 F.4th 782, 844-

18   45 (9th Cir. 2024) ("we hold that the government did not have 'access

19   to' the entirety of DoD merely because it had the ability to send

20   queries to [one component]"). "As to those agencies that are not

21

22   ───────────────────
     [15] There is no serious argument that the government and SEC
     engaged in a joint investigation here. See, infra, fn. 16. In his

23   motion defendant devotes three sentences to his argument and does not
     grapple with any of the cases or factors necessary to find two entire

24   investigations by separate civil and criminal agencies joint. And,
     even the sole outlier Central District of California he relies on

25   acknowledges that the SEC was not part of the prosecution team there.
     See United States v. Kabilafkas, No. 24-cr-270-MRA-1, ECF No. 139, at

26   *15-16 (C.D. Cal. May 13, 2025) (the SEC is "not a part of the
     prosecution team in this case[,]" but wrongly finding that the SEC

27   had acted on the government's behalf).

28                                      14

1  involved in the investigation, the prosecutor need not comb the files

2  of every federal agency which might have documents; rather, the

3  obligation to disclose turns on the extent to which the prosecutor

4  has knowledge of and access to the documents." Id. (quoting United

5  States v. Zuno-Arce, 44 F.3d 1420, 1427 (9th Cir. 1995)) (internal

6  punctuation omitted).

7  **IV.  ARGUMENT**

8      Turning to the "knowledge of and access to" test here,

9  defendant's motion to compel can be summarily denied.  The

10 prosecution team has neither knowledge of nor access to any SEC case

11 files for the Unrelated SEC Investigations or the Speculated SEC

12 Investigations.

13     Defendant's heavy reliance on Kabilafkas (in fact, the only case

14 cited in the argument section of his brief) is misplaced. 2:24-cr-

15 270-MRA, ECF No. 139 (C.D. Cal. May 13, 2025).  As an initial matter,

16 defendant ignores that in Kabilafkas, the court denied the motion to

17 compel.  Id. at 16.  More importantly,  defendant's argument rests on

18 a false equivalency because Kabilafkas did not raise "exact same

19 issue," as defendant claims.  Whereas defendant seeks files from

20 entirely unrelated SEC Investigations concerning other companies,

21 Kabilafkas's request was a much narrower one, seeking discovery from

22 the prosecution team for SEC files of the SEC's parallel

23 investigation into Kabilafkas himself.  Id. at 14-15.  Kabilafkas

24 does not provide any authority for a fishing expedition into the

25 SEC's files for unrelated or hypothetical investigations that the

26 prosecution team has neither access to nor control over.

27

28                              15

Here, instead, the issue is directly comparable to that faced by
the Ninth Circuit in Alahmedalabdaloklah where the court made clear
that defendant's arguments "conflate the [agency] components that
participated in the investigation with the entirety of [the agency]."
94 F.4th at 844.  Worse, in this case, the SEC component for which
the prosecution team has provided extensive files was itself not even
part of the criminal investigation, but engaged in a separate
parallel civil investigation.[16]  Nonetheless, the prosecution team's
extensive provision of the materials provided from the SEC Parallel
Investigation moots the issue.  See, supra, fn. 12.

---

[16] In the SEC Parallel Investigation, the SEC conducted numerous
investigative testimony sessions and interviews that the government
did not participate in and, similarly, the government and its agents
conducted numerous interviews that the SEC did not participate in.
While there were interviews conducted with both the DOJ and SEC
present, criminal law enforcement took the notes and memorialized the
interview (and such reports have already been produced to defendant).
Notably, the SEC took three days of sworn testimony from defendant,
but the government did not participate.  And when the U.S. Postal
Inspectors interviewed defendant, the SEC was not present.
Additionally, the SEC took no part in any grand jury testimony or
presenting the case to the grand jury, and has not accompanied the
government in court proceedings on this case.  The SEC did not
participate in the preparation or execution of the search warrants in
the matter.  The SEC charged additional securities in its complaint
that the government did not include in the indictment, and the SEC
settled three related cases with other parties that did not involve
the government.  While the government and SEC shared certain
documents with one another, neither shared all of the records
collected.  And it is recognized that "[a]lthough the SEC granted the
Government access to certain material, '[t]he mere fact that the
Government may have requested and received documents from [another
agency] in the course of its investigation does not convert the
investigation into a joint one.'" United States v. Boustani, No. 18-
CR-681, ECF No. 232 (Order Den. Def. Disc. Mot.) at 4 (E.D.N.Y. filed
Oct. 3, 2019)(quoting United States v. Finnerty, 411 F. Supp. 2d 428,
433 (S.D.N.Y. 2006)).

1    What remains is defendant's argument that the prosecution team
2  has an obligation to search files that it has no access to.  The
3  Ninth Circuit foreclosed such a standard in Alahmedalabdaloklah.
4  There, the defendant asserted that while the government could and did
5  query the "DoD databases to which the U.S. Attorney's Office had
6  access" and had contacted U.S. Central Command (CENTCOM) to get
7  certain information, Brady required additional searches that would
8  require additional approval and "would require a search of all DoD
9  holdings[.]"  94 F.4th at 843-44.  The Ninth Circuit rejected this
10 position and affirmed the district court's denial of the motion to
11 compel holding that one component of a federal agency's participation
12 in an investigation does not transform the entire agency into a
13 participant in the investigation.  Id. at 845 (defendant's
14 "suggestion that DoD, as a whole, was a 'participating agency' cannot
15 be squared with our conclusion in Cano."); see also Cano, 934 F.3d at
16 1024 (holding that the DOJ did not have an obligation to search the
17 files of other DOJ components that did not participate in the
18 investigation).  The Ninth Circuit's decision turned in part, on the
19 fact that the government "had access only to those databases directly
20 related to [the defendant's] prosecution, that DoD did not
21 affirmatively grant the government access to the many databases and
22 sources of information that [the defendant] wanted the government to
23 search[.]"  Id.  at 845.
24    Just as the government in Alahmedalabdaloklah had no access to
25 the other databases and DOD files beyond those related to the
26 defendant's prosecution, the prosecution team has no access to the
27 SEC's files for the Unrelated SEC Investigations or the Speculated

28                                  17

1  SEC Investigations.  There are no access requests in place with those

2  teams, the prosecution team has not interacted with those case teams,

3  and – based on the prosecution team's review of the public settlement

4  documents – those matters do not even concern defendant.

5       Putting aside that the SEC's Los Angeles Regional Office was not

6  a participating agency in the DOJ's criminal investigation,

7  Alahmedalabdaloklah's teaching is clear: just as access to certain

8  DOD databases did not transform the rest of the DOD into a

9  participating agency, the SEC Parallel Investigation does not create

10  knowledge of and access to unrelated investigations conducted by

11  other SEC offices and staff members.  And it certainly does not

12  create knowledge or access to potential non-public SEC investigations

13  that defendant only speculates exist.  Defendant's proposed rule –

14  whereby an access request to one SEC investigation renders the entire

15  SEC within the prosecution team's knowledge and access – would sweep

16  broader than the government's obligations over DOJ's own records,

17  which are limited to those agencies or offices that participate in

18  the investigation.  See Cano, 934 F.3d at 1024-25 (finding the

19  government did not have an obligation to "comb the files" of the FBI

20  and DEA (two components within DOJ) for Brady because it did not have

21  access to those files).

22  **V.   CONCLUSION**

23       The district court in United States v. Tournant, in rejecting a

24  claim that the government and SEC conducted a joint investigation,

25  observed that "courts have treated with skepticism broad requests for

26  orders requiring the government to search the entire case file of

27  another agency for Brady materials," and disapproved particularly of

28                                     18

defense's "exceedingly broad request——asking the court to compel the government to search all files of the SEC for any potentially exculpatory evidence pertaining to [defendant]." 2023 WL 5001186, at **6-7 (S.D.N.Y. Aug. 4, 2023).  As the Ninth Circuit has explicitly recognized: "non-participating agencies may have valid concerns over revealing sensitive information in cases wholly unrelated to the agencies' own area of expertise, and the agencies may be reluctant to cooperate in a particular investigation if it means opening their files in other investigations." Alahmedalabdaloklah, 94 F.4th at 845 (quoting Cano, 934 F.3d at 1025).  These policies considerations only further bolster the need to deny defendant's attempted fishing expedition.

Defendant's motion to compel, which essentially asks the prosecution team to "search all files of the SEC for any potentially exculpatory evidence[,]" is beyond overly broad and "is simply not supported by current law".  Tournant at *6-7 (collecting cases). Here, as in Tournant, defendant has "not cite[d] any case in which a court has granted a such a sweeping, untailored Brady request, compliance with which would be highly onerous for the government, and which would involve searching databases, reviewing terabytes of documents, and parsing through attorney work product." Id. at *7 (internal punctuation omitted).  Absent a legal basis for these requests, defendant's motion to compel is unsupported by law and does not allow for the extraordinary remedy he seeks.

Accordingly, the Court should deny defendant's motion to compel in its entirety.

### CERTIFICATE OF COMPLIANCE

The undersigned, counsel for the United States, certifies this memorandum of points and authorities contains 6,841 words, which complies with the 7,000 word limit of L.R. 11-6.1.

Dated: July 28, 2025

/s/
_____
MATTHEW REILLY
Trial Attorney