**DYNAMIS LLP**

ERIC S. ROSEN (*pro hac vice*)
erosen@dynamisllp.com
MICHAEL B. HOMER (*pro hac vice*)
mhomer@dynamisllp.com
EMILY J. SCARISBRICK (*pro hac vice*)
escarisbrick@dynamisllp.com
175 Federal Street, Suite 1200
Boston, Massachusetts 02110
(617) 802-9157

YUSEF AL-JARANI (Cal. Bar No. 351575)
yaljarani@dynamisllp.com
1100 Glendon Ave., 17th Floor
Los Angeles, California 90024
(213) 283-0685

AARON KATZ (*pro hac vice*)
akatz@aaronkatzlaw.com
399 Boylston Street, 6th Floor
Boston, MA 02116
(617) 915-6305

*Attorneys for Defendant Andrew Left*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ANDREW LEFT,<br><br>Defendant. | Case No. 2:24-cr-00456-VAP<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR DEFENSE-WITNESS IMMUNITY**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL.**<br><br>Date:     April 27, 2026<br>Time:     10:00 a.m.<br>Ctrm:    6A<br>Judge:    Hon. Victoria A. Phillips |

## NOTICE OF MOTION AND MOTION

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 27, 2026, or as soon after as the matter may be heard, in Courtroom 6A of the above-captioned Court, located at 350 West 1st Street, Los Angeles, CA 90012, Defendant Andrew Left moves for an Order of defense-witness immunity.

The Motion is based on this Notice of Motion and Motion, the incorporated Memorandum of Points and Authorities, and any other evidence or argument that the Court may consider at the hearing on this motion. For the reasons in the accompanying Memorandum of Points and Authorities, Mr. Left respectfully requests that the Court grant this Motion.

This Motion is made after the conference of counsel under L.R. 7-3.

Dated: March 23, 2026

Respectfully submitted,

DYNAMIS LLP

*/s/ Eric S. Rosen*
Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Emily J. Scarisbrick (*pro hac vice*)
Aaron Katz (*pro hac vice*)

*Attorneys for Defendant Andrew Left*

- i -

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND ...............................................................................2

A. The Government's Novel Theory of Fraud ....................................................2

B. The Government's Nine-Year Investigation Into Activist Short-Selling Has Produced Charges Against a Single Individual ................................3

C. ███████████████████████ ..........................................................5

D. January 2026 ███████████ ...................................................10

LEGAL STANDARD............................................................................................11

ARGUMENT ........................................................................................................13

A. ████████ Testimony is Relevant ...............................................13

B. The Government Has Intentionally Placed ████ in Legal Peril to Provoke Him to Invoke the Fifth Amendment.......... ...................................16

C. Failure to Immunize ████ Will Distort the Fact-Finding Process...............18

D. The Government Cannot Justify Withholding Immunity by Citing an "Ongoing Investigation." .................................................................................20

CONCLUSION....................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*United States v. Straub*,
  538 F. 3d 1147 (9th Cir. 2008).................................................................. *Passim*

*United States v. Westerdahl*,
  945 F.2d 1083 (9th Cir. 1991)..................................................................13

*United States v. Wilkes*,
  662 F.3d 524 (9th Cir. 2011)....................................................................11

*Villarreal v. Texas*,
  146 S. Ct. 756 (2026) ..............................................................................18

*United States v. Nicholas et al.*, No. SACR 08-139-CJC (C.D. Cal. Dec. 15,
  2009)....................................................................................................19, 20

## Statutes

18 U.S.C. § 6001 ..........................................................................................1

18 U.S.C. § 6002 ........................................................................................21

## Rules

Fed. R. Evid. 401 ......................................................................................13

Fed. R. Evid. 804(b)(6) ....................................................................2, 12, 18

2:24-CR-00456-VAP
DEFENDANT'S MOTION FOR DEFENSE-WITNESS IMMUNITY

## INTRODUCTION

Following a more than six-year investigation into activist short sellers, the Government has elected to prosecute Andrew Left on an unprecedented theory of securities fraud. *See* First Superseding Indictment ("FSI"). Andrew Left now seeks an order directing the Government to grant use immunity to his associate ███████, who would offer critical exculpatory testimony at trial. *See United States v. Straub*, 538 F. 3d 1147, 1162 (9th Cir. 2008), 18 U.S.C. § 6001, et seq. The import of ███ ███ testimony cannot be overstated. ███ was the only individual who worked alongside Mr. Left on a daily basis in developing the research, analysis, and investment theses that the Government now claims constituted fraud. As Mr. Left's research partner and co-founder of Citron Capital, ███████ possesses uniquely probative, firsthand knowledge of Mr. Left's contemporaneous state of mind, research methodology, and trading practices. We need not speculate about the significance of ███████ testimony, █████████████████████████████████ █████████████████████.

Despite the centrality of ███████ testimony, the Government has taken affirmative steps to ensure that he will be unavailable to testify at trial. ███████ has been subjected to yearslong scrutiny by the DOJ. The DOJ has had ample opportunity to charge █████████████████████—but has failed to formally resolve his status or otherwise permit him to testify without invoking the Fifth Amendment. At the same time, the Government has superseded the indictment without naming ███ (or even alleging a conspiracy between Left and ███) and he appears to face a dwindling likelihood of prosecution. Yet, the DOJ has still declined to grant the immunity that would make ███████ available as a witness to Mr. Left. This is because, as illustrated below, ███████ would offer highly exculpatory testimony. The Government wants to keep this testimony out of the minds of the jurors

- 1 -

and has concocted an ongoing investigation into ███████████████ ██████████████████████████████████████████████████, to force ███████ to take the Fifth and be unavailable for trial.

The trial court has the power to direct the Government to grant use immunity, or to dismiss the indictment if the Government fails to do so, where the absence of a witness's testimony would distort the fact-finding process. Without ███████ testimony, the jury will be missing critical context on Mr. Left's state of mind on research, risk-management, and other central topics. This Court should exercise its authority to direct the Government to grant use immunity to ███████ or, if the Government declines to do so, dismiss the indictment. In the alternative, this Court should admit ████████████████████████ into evidence at trial under Fed. R. Evidence 804(b)(6).

## FACTUAL BACKGROUND

### A. The Government's Novel Theory of Fraud

The FSI charges Andrew Left with 18 counts of securities fraud based on his public statements about 21 publicly traded securities. *See* FSI. At the core of this prosecution is the Government's claim that Left's public opinions were not "sincerely held" at the time he tweeted them out. FSI ¶ 7. The Government theorizes that Left "deceive[d] investors to believe that he held a position when, in fact, after using his influence on the market to manipulate stock prices in a particular direction, [he] closed positions to capitalize on the temporary price movement caused by his public statements." *Id*. Yet Left had no duty to publicly disclose his trading intentions. The prosecution thus rests on the premise that Left acted contrary to his "sincerely held" beliefs because he bought or sold positions in those securities before reaching the "target price" identified in his research. To bolster its theory, the Government has injected details unrelated to the core fraud charges and designed to malign Left —

such as his deletion of his Twitter account two years after receiving a subpoena from the SEC, and his use of encrypted messaging. *Id.* ¶ 129. To defend against these accusations, Mr. Left will show his own good-faith belief in his opinions, which were the product of extensive research and proved to be overwhelmingly correct. He will also show that his trading activities were grounded in sound risk management.

Central to this defense is the testimony of Mr. Left's longtime associate, ███████ ███████, who founded Citron Capital with Left in 2018, worked closely with Mr. Left for years performing research on the securities at issue in the indictment and learning the intricacies of Citron's catalyst-driven trading model. ███████ may be the only (and is certainty the best) contemporaneous witness as to how Mr. Left processed research for Citron reports and Tweets, and the centrality of risk management to Mr. Left's trading activities.

### B. The Government's Nine-Year Investigation Into Activist Short-Selling Has Produced Charges Against a Single Individual.

In approximately 2018, the SEC began an investigation known as the "Short and Distort investigation." This investigation was based partly on suggestions from a Columbia Law professor, Joshua Mitts, who theorized that activist short-sellers were colluding to artificially drive down stock prices through coordinated trading and the publishing of false information about the companies. The investigation swept up almost 30 short-selling firms and associates,[1] and initially focused on a short campaign instigated by Quinton Mathews against Farmland Partners.[2] As part of this sprawling investigation, ███████████████████████████████████████████████

---

[1] Sam Klebanov, *The Big Short Seller Probe: Who Are the Investors on the DOJ's List?*, THE BUSINESS OF BUSINESS (Mar. 3, 2022), https://www.businessofbusiness.com/articles/the-big-short-seller-probe-who-are-the-investors-on-the-dojs-list/.

[2] *See* Justin Baer, *Short Sellers Upended a Small Farm-Real-Estate Company. This Is What It Looked Like.*, WALL ST. J. (Sept. 25, 2022), https://www.wsj.com/articles/short-sellers-upended-a-small-farm-real-estate-company-this-is-what-it-looked-like-11664076506.

- 3 -



█████ claiming that he conspired with short-selling firm Muddy Waters. As the Government now recognizes, this was not true. The Government's massive investigation has largely been a failure. Professor Mitts' thesis, ████████████ ████████████████████ has long-since been discredited. The Government scrutinized the conduct of dozens of individuals and institutions for years, yet the DOJ took until 2024 to bring charges and has singled-out just one person for prosecution: Mr. Left. Meanwhile, Professor Mitts has enjoyed a lucrative side hustle of advising businesses allegedly under short and distort attacks.

████████ has been subjected to the full force of the Government's investigation. ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████

Yet, despite the eight years since the investigation began, the DOJ has refused to formally notify ██████ whether he remains a target for prosecution or to resolve the potential charges against him. ██████ was not named in the original July 2024 indictment. He was not added to the February 2026 superseding indictment. The SEC resolved its charges with ██████ in October 2024 without his admission of responsibility. ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████. This leaves ██████ unable (and unwilling) to testify

- 4 -

without risking his own prosecution: a situation engineered by the Government because his testimony, outlined below, would be devastating to the Government's case.

is among the most detailed records in this case and directly undermines many of the Government's central claims.

2:24-CR-00456-VAP
DEFENDANT'S MOTION FOR DEFENSE-WITNESS IMMUNITY

The Government has heard and read all of this. ████████████████ ████████████████ Every one of these statements bears directly on the charges in the First Superseding Indictment. And it is for this reason, to prevent ████ devastating testimony, that the Government has concocted an eight-year continuing investigation into ████ whom it has no intention of actually charging.

If immunized, ████ is expected to offer testimony on the following topics:

### 1. *Sincerity of Left's Opinions*

The Government alleges that Left's published opinions were not "sincerely held." FSI ¶ 7. ████ testimony would prove otherwise.

No other witness could offer comparable testimony on the sincerity of Left's opinions, and his own opinions as the only other member of Citron Capital. █ testimony will thus introduce essential evidence refuting the Government's scienter theory.

### 2. Rigor of Citron's Research

The Government is expected to call witnesses who will testify to alleged "errors" in Citron's research process. *See, e.g.,* Ex. C █████████ ████████ testimony would provide the only firsthand account of that process and undermine any claims of its illegitimacy.

### 3. *Price Targets Reflected Intrinsic Value*

The Government alleges that Left included "extreme target prices to attract media attention and provoke an immediate change" in securities prices. FSI ¶ 19(e)(iv). ████ who calculated many of those targets, ████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████ Without ████ testimony, the Government's misleading characterization of price targets may go unrebutted by anyone with firsthand knowledge of how those numbers were derived.

### 4. *Risk Management*

A central theory of the Government's case is that Left's rapid post-publication trading proves his fraudulent intent, but ████████████████

████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

2:24-CR-00456-VAP
DEFENDANT'S MOTION FOR DEFENSE-WITNESS IMMUNITY



**5.** *Advice of Counsel*

2:24-CR-00456-VAP

DEFENDANT'S MOTION FOR DEFENSE-WITNESS IMMUNITY



Only ▮ can bridge this gap and testify that this advice was communicated to Left, who traded on reliance on this advice.

### 6. Consciousness of Innocence

The Government alleges that Left acted to conceal his conduct from law enforcement. FSI ¶ 20.

### D. January 2026

The Government's own investigative record demonstrates that it is deliberately keeping ▮ in legal jeopardy. In January 2026, the same month the Government filed the First Superseding Indictment against Left without naming ▮



The history of

## LEGAL STANDARD

The government may not withhold immunization from a witness "in a manner which denies the defendant the due process guaranteed by the Fifth Amendment." *United States v. Alessio,* 528, F.2d 1079, 1081-2 (9th Cir. 1976). Courts have the power to direct the government to grant use-immunity to a prospective defense witness who would offer relevant testimony in two situations: if "either (a) the prosecution intentionally [would] cause[] the defense witness to invoke the Fifth Amendment right against self-incrimination with the purpose of distorting the fact-finding process; or (b) the prosecution granted immunity to a government witness in order to obtain that witness's testimony, but denied immunity to a defense witness whose testimony would have directly contradicted that of the government witness,

with the effect of so distorting the fact-finding process that the defendant was denied his due process right to a fundamentally fair trial." *United States v. Straub*, 538 F.3d 1147, 1162 (9th Cir. 2008) (emphasis added). The relevance requirement is "minimal" and a defendant "need not show that the testimony sought was either clearly exculpatory or essential to the defense." *United States v. Wilkes*, 662 F.3d 524, 534 (9th Cir. 2011) (internal citations omitted).

The second *Straub* prong contains two alternatives: a defendant must show that the prosecution employed a deliberate strategy to disrupt the fact-finding process, or that the prosecution's actions had the functional *effect* of distorting the fact-finding process. *Straub*, 538 F. 3d at 1162. Both are relevant here. Under the first alternative, the defendant must show that "the prosecution intentionally caused a defense witness to invoke the Fifth Amendment right against self-incrimination" meaning that the prosecution took "affirmative steps" to prevent testimony. *Id*. at 1157-8. That is satisfied here. � has been under DOJ investigation for at approximately eight years. The DOJ has never charged � and has instead kept him in legal jeopardy, ▉ This strategy has forced ▉ to exercise his Fifth Amendment rights.

Under the second *Straub* alternative, courts look to the *effect* of state action and analyze whether state action in withholding formal immunity stacked the deck against the defendant so as to "distort the fact-finding process at trial." *Id*. at 1160. *Straub* found this test to be met where the prosecution had granted immunity to a Government witness but denied immunity to a defense witness who would have offered contradictory testimony. *Id*. at 1163-4.   If the Court finds that the Government intentionally caused a defense witness to invoke their privilege against self-incrimination to district the fact-finding process, the Government must grant use-immunity or the court will dismiss the indictment, after which, the Government may

re-indict and proceed without the witness or witnesses would have been contradicted by the defense witness. *Id.* at 1161. This factor too is met, as failing to allow █████ to testify to rebut the weaknesses in the Government's misguided case will profoundly distort the fact-finding process.

Finally, given that ████████████████████████████, this Court has the power to admit his testimony under Fed. R. Evidence 804(b)(6) ("A statement offered against a party that wrongfully caused — or acquiesced in wrongfully causing — the declarant's unavailability as a witness, and did so intending that result" is not excluded as hearsay).

## ARGUMENT

█████ has uniquely relevant and exculpatory testimony to offer in defense of Mr. Left. However, the Government has intentionally caused █████ to invoke his Fifth Amendment right against self-incrimination by refusing to formally decline to prosecute him or otherwise resolve the potential charges against his despite the years-long passage of time since the inception of the federal Government's investigation. Under *Straub*, the court can direct the Government to grant use immunity if it finds the Government's actions have either the purpose or the effect of distorting the fact-finding process. *Straub*, 538 F.3d at 1162. Given the Government's actions and the critical nature of █████ testimony, immunity is warranted under both avenues proposed in *Straub*.

### A.   █████ Testimony Is Relevant

To satisfy the relevancy requirement, a defendant need not show that the testimony sought is "clearly exculpatory" or "essential to the defense." *United States v. Westerdahl*, 945 F.2d 1083, 1086 (9th Cir. 1991). Rather, the testimony need be only relevant. *Id.* This low threshold is a "'minimal" requirement. *Straub*, 538 F.3d at 1157. Here, Mr. █████ would offer testimony at trial that is undoubtedly relevant and

- 13 -

uniquely exculpatory. *See* F.R.E. 401 (Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probably than it would be without the evidence.") ███████ was only member of Citron Capital other that Mr. Left. He performed extensive research for Left that formed the backbone of much of Citron Research's research and Left's public statements that are at-issue here. He was in constant dialog with Left about research and his views on specific securities and was witness to Left's candid, real-time views on the securities he is now charged with manipulating and opinions he alleged fabricated.

The information possessed by ███ as a result of his relationship with Left is central to Mr. Left's defense. ███ would offer relevant testimony that undermines the Government's core theories of the case, including:

(1) ███ would testify that ████████████████



███████ This is directly relevant to the allegation that Citron's public opinions on securities were not "sincerely held." FSI at ¶7.

(2) Similarly, ███ would testify that ████████████



2:24-CR-00456-VAP
DEFENDANT'S MOTION FOR DEFENSE-WITNESS IMMUNITY

███████████████████████████████████████████

████████████████████████ This too is directly relevant to the allegation that Citron's recommendations were not "sincerely held." FSI at ¶7. This will also rebut the testimony of potential Government witnesses who seem poised to testify to errors in Citron's research methodologies. *See* Ex. C ██████████████

(3) ████ would testify that the price targets published by Citron ██████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████ This testimony is directly relevant to the Government's allegation that Left included "extreme target prices to attract media attention and provoke an immediate change" to the prices of securities. FSI at ¶19(e) (iv).

(4) ████ would testify that Left contemporaneously explained his trading activities as risk management. ████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████ This testimony is

directly relevant to the Government's allegation that Left closed positions after issuing misleading public statements in order to capitalize on short-term price movements. FSI at ¶7.

(5) ███ would also testify that ████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ █████████████████████████████████

(6) ███ would testify that Left █████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████ This is directly relevant to the Government's allegations that Left acted to conceal his actions from law enforcement, and that he intended to defraud investors through his public statements. FSI at ¶20.

In short, given that ███ worked with Mr. Left at Citron day-in-and-day-out for years, it would grossly distort the fact-finding process to try this case without ███ highly relevant testimony.

**B. The Government Has Intentionally Placed ███ in Legal Peril to Provoke Him to Invoke the Fifth Amendment**

The Government's course of conduct over eight years constitutes a sustained campaign to keep ███ in legal jeopardy. That campaign includes the following affirmative acts:

*First*, in January 2021, the Government ████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████



*Second*, in December 2022, the Government

*Third*, the DOJ

*Fourth*, in February 2024, the Government

*Fifth*, the Government

*Sixth*, in January 2026,

*Seventh*, throughout this period, the Government declined to indict ▓ in the original July 2024 indictment or in the February 2026 superseding indictment. ▓ is not even named as a co-conspirator. FSI § 6. The statute of limitations is rapidly approaching its expiration.

The inference from this record is inescapable. The Government has spent eight years (from 2018 to 2026) investigating ▓ searching his accounts, seizing and

cracking his phone, presenting its case to his counsel, and describing him as a co-equal participant in every warrant affidavit it has filed, while refusing either to charge him or to clear him. There is no legitimate prosecutorial reason for this posture. ████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████ If eight years of investigation, ████████████████████ ████████████████████ have not yielded a basis to charge ████ the reason is that no such basis exists.

And the Government clearly has no actual intent of indicting ████████ ████ was not included on the initial indictment. In February 2026, the Government superseded its indictment and did not add ████ Given the extraordinary length and depth of the Government's investigation, the SEC's resolution with ████, and the DOJ's apparent disinterest in indicting him, it is logical to conclude that the Government is keeping ████ in legal peril to dissuade him from offering testimony at trial. Thus, immunity for ████ is warranted under the first avenue in *Straub. See Straub*, 538 F. 3d at 1157-8.

For these same reasons, ████████████ is admissible under Fed. R. Evidence 804(b)(6). The Government has made him unavailable by still investigating him years after the Government developed sufficient evidence to charge him. The Government has also done this intentionally. While trials are supposed to be about finding the truth, *see, e.g., Villarreal v. Texas*, 146 S. Ct. 756, 766 (2026) the Government's conduct throughout this case—investigating 30 people for the same conduct but charging only one—has been aimed at finding everything but the truth. As an example, ████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████ As another example, Government has charged Mr. Left with not sincerely holding opinions about future stock performance and analysis, but has told the defense that it intends to move *in limine* to prevent the jury from learning how those stocks he was allegedly lying about actually performed. And as a final example, the Government has hired an expert, Dr. Cain, who is prepared to testify that Mr. Left's tweets caused price movements hours before those tweets were even made. This is not truth-seeking; it is the opposite.

**C. Failure to Immunize ███ Will Distort the Fact-Finding Process**

Regardless of the intent behind the Government's refusal to immunize ███ this choice undoubtedly threatens to distort the fact-finding process and thus warrants a grant of use-immunity under the second alternative route in *Straub* also. *See Straub*, 538 F. 3d at 1162. Although *Straub* contemplates that the fact-finding process is distorted when a government witness is offered immunity but a defense witness with contradictory testimony is not, the court reached that conclusion because the *effect* of the grant of immunity on the fact-finding process. *Id*. at 1162. Failure to grant ███ immunity threatens a similar effect.

As discussed above, ███ testimony is critical. █████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████, and other subjectivities that only individuals who worked with Left day-in, day-out would be equipped to testify to.

Further, district courts have granted use-immunity to testifying witnesses outside of the strict *Straub* fact pattern where the witness would offer testimony essential to the case and the Government failed to clarify a witnesses status. In *Nicholas*, the defendants faced charges of conspiracy and mail and wire fraud, and the district court noted that defendant William Ruehle's "primary defense [was] that he had no criminal intent to violate the securities laws." *See* Ex. E, Tr. of Proceedings at 5195, *United States v. Nicholas et al.*, No. SACR 08-139-CJC (C.D. Cal. Dec. 15, 2009) . The prosecution offered an alleged co-conspirator a favorable plea deal to obstruction; thereafter, she testified against Ruehle. Def.'s Mot. For Witness Immunity, *United States v. Nicholas et al.*, No. SACR 08-139-CJC (C.D. Cal. 2009) (Dkt. No. 720). The defense moved for use-immunity for a witness who would offer testimony that directly rebutted the testimony of the plea-deal witness on several core points, including whether Ruehle instructed individuals not to make certain statements in writing, which was relevant to defendant's state of mind. *Id.* The court granted use-immunity to the defense witness "to avoid distorting the fact-finding process." *See* Order Granting Dull Use Immunity, *United States v. Nicholas et al.*, No. SACR 08-139-CJC (C.D. Cal. 2009) (Dkt. No. 739). In explaining that ruling, the court later noted that "the Government believed that [witness] was a coconspirator, yet it decided not to seek charges against him for securities fraud. In effect, the Government left [witness] hanging in the wind and uncertain of his fate for almost two years." *See* Ex. E at 5195.

███████ has similarly been "hanging in the wind" and uncertain of his fate for years. Without ██████ testimony, the Government's witnesses will offer evidence on Left's trading patterns and research process without the essential context provided by the person who worked closest with Left: ████████. Like in *Nicholas*, ██████ testimony would go to Left's state of mind and he would testify not only to Left's

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████. This will rebut Government witnesses to the contrary. ████ is likely the only witness who can meet the Government's evidence on these key areas, and a trial without full and complete live testimony on these topics would gravely distort the fact-finding process.

### D. The Government Cannot Justify Withholding Immunity by Citing an "Ongoing Investigation."

The Government will likely argue that its refusal to immunize ████ reflects a legitimate prosecutorial interest in preserving an open investigation. That argument fails for two reasons. *First*, the investigation has been open for eight years. The Government ████████████████████████████████ ████████████████████████████. If this mountain of evidence has not produced a basis for charges, the investigation is open in name only—and the continued refusal to resolve ████ status is not a prosecutorial judgment but a litigation tactic. *Second*, the immunity sought here is use immunity, not transactional immunity. 18 U.S.C. § 6002. A grant of use immunity would not prevent the Government from prosecuting ████ based on independently obtained evidence. It would merely prevent the Government from using ████ trial testimony against him—testimony the Government does not need, ████████████████████████ ██████████████. The Government sacrifices nothing by granting use immunity except the tactical advantage of keeping ████ silent.

### CONCLUSION

████████ is not a peripheral figure in this case. He is the only person other than Andrew Left who participated in the daily work of Citron Capital—the research, the analysis, the trading decisions, the risk management. He is the only witness who can testify, from firsthand observation, that Left's published opinions reflected genuine

- 21 -

conviction, that Citron's research was rigorous, that Left's trading was driven by risk management rather than manipulation, and that Left encouraged honesty in the face of the Government's investigation. ████████████████████████████ ████████████████████████████. Yet the Government has charged only Left—and has taken every step necessary to ensure that ████ cannot testify in Left's defense. The Court should grant Mr. Left's motion and direct the Government to grant use immunity to ████████ pursuant to 18 U.S.C. § 6002 or, in the alternative, ████████████████████████ If the Government refuses, the Court should dismiss the indictment.

Dated: March 23, 2026

Respectfully submitted,

DYNAMIS LLP

/s/ Eric S. Rosen
Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Emily J. Scarisbrick (*pro hac vice*)
Aaron Katz (*pro hac vice*)

*Attorneys for Defendant Andrew Left*

2:24-CR-00456-VAP
DEFENDANT'S MOTION FOR DEFENSE-WITNESS IMMUNITY

## CERTIFICATE OF COMPLIANCE

No. 2:24-cr-00456- VAP

I certify, as counsel for Defendant Andrew Left, that this memorandum of points and authorities contains 6,640 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 23, 2026                    /s/ *Yusef Al-Jarani*
                                         Yusef Al-Jarani

2:24-CR-00456-VAP
DEFENDANT'S MOTION FOR DEFENSE-WITNESS IMMUNITY