**DYNAMIS LLP**

ERIC S. ROSEN (*pro hac vice*)
erosen@dynamisllp.com
MICHAEL B. HOMER (*pro hac vice*)
mhomer@dynamisllp.com
EMILY J. SCARISBRICK (*pro hac vice*)
escarisbrick@dynamisllp.com
175 Federal Street, Suite 1200
Boston, Massachusetts 02110
(617) 802-9157

YUSEF AL-JARANI (Cal. Bar No. 351575)
yaljarani@dynamisllp.com
1100 Glendon Ave., 17th Floor
Los Angeles, California 90024
(213) 283-0685

AARON KATZ (*pro hac vice*)
akatz@aaronkatzlaw.com
399 Boylston Street, 6th Floor
Boston, MA 02116
(617) 915-6305

*Attorneys for Defendant Andrew Left*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ANDREW LEFT,<br><br>Defendant. | Case No. 2:24-cr-00456-VAP<br><br>**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF HEDGE FUND B RELATIONSHIP AND "COMPENSATION" AS IRRELEVANT AND UNFAIRLY PREJUDICIAL**<br><br><span style="color:red">**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL.**</span><br><br>Date:    April 27, 2026<br>Time:    10:00 a.m.<br>Ctrm:    6A<br>Judge:    Hon. Victoria A. Phillips |

## NOTICE OF MOTION AND MOTION

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 27, 2026, or as soon after as the matter may be heard, in Courtroom 6A of the above-captioned Court, located at 350 West 1st Street, Los Angeles, CA 90012, Defendant Andrew Left moves for an Order to exclude evidence and argument concerning the hedge fund ▮▮▮ on the grounds that such evidence is irrelevant and unfairly prejudicial. In the alternative, Mr. Left seeks a Rule 104 hearing and limiting instruction on this evidence.

The Motion is based on this Notice of Motion and Motion, the incorporated Memorandum of Points and Authorities, and any other evidence or argument that the Court may consider at the hearing on this motion. For the reasons in the accompanying Memorandum of Points and Authorities, Defendant respectfully requests that the Court grant this Motion.

This Motion is made after the conference of counsel under L.R. 7-3.

Dated: March 23, 2026

Respectfully submitted,

DYNAMIS LLP

*/s/ Eric S. Rosen*
Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Emily J. Scarisbrick (*pro hac vice*)
Aaron Katz (*pro hac vice*)

*Attorneys for Defendant Andrew Left*

- i -

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 1

LEGAL STANDARD ................................................................................................ 5

ARGUMENT .............................................................................................................. 6

   I.   Evidence of Citron's Relationship with ████ Is Not Relevant to Prove Any Alleged Falsities in Left's GE Report. ........... .................................................. 6

   II.  The Government Must Be Precluded from Arg____ or Insinuating that Citron Had Some Duty to Disclose His Relationship with ████ ...................................... 8

   III.   The Court Should Preclude the Gove____nt from Arguing that Citron "Shared" or "Pre-Shared" Citron Reports with ████ Before Publication. ........... 10

CONCLUSION .......................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

## Rules

Fed. R. Evid. 104 ................................................................................5, 7, 10, 11

Fed. R. Evid. 401 ..........................................................................................5, 6, 9

Fed. R. Evid. 402 ...............................................................................................5

Fed. R. Evid. 403 ......................................................................................5, 7, 8, 9

## INTRODUCTION

████ referred to in the Indictment as "Hedge Fund B," is a hedge fund based in Texas. Citron, Andrew Left's fund, had a ████████████████████ ██████████████ relationship with ████████████████████ ████████████████████████████████████████████ retained full discretion as to whether to do so. In exchange for these █████████████, Citron was ███████████████ "alpha," which is performance above the applicable benchmark, *i.e.*, the S&P 500 index. Citron was not paid for research reports released to the public, Citron was not paid per-tweet, and Citron was not paid for any publications. The relationship, moreover, was not secret. The relationship was ██████ ████████████████████████████████████████ ████████████████████

The DOJ has twisted this innocuous relationship to find something nefarious. The DOJ has alleged, at times, that ████████████████████████████ (it was not). While the DOJ has apparently conceded that there is nothing illegal about being paid to publish research, the DOJ now attempts to use this information to claim that certain tweets or reports by Left—namely, a brief report about General Electric published on August 16, 2019 in *defense of the company*—were somehow rendered false by Citron's relationship with ██████ This is nonsense. ██████ ████████████████████████████, has nothing to do with an individual being paid by a hedge fund to put out research. But the Government still insists that Citron's relationship with ██████ proves *something* about this case. As such, this motion to exclude evidence related to ██████ now follows.

## FACTUAL BACKGROUND

The Government alleges that Mr. Left "coordinated with hedge funds to disseminate short reports and information to be posted on Twitter" in advance of their

- 1 -

publication, which "enabled the hedge funds to trade in the Targeted Securities before the reports were disseminated." First Superseding Indictment ("FSI") ¶19(i). In exchange for this alleged *quid pro quo*, the Government theorizes that certain "hedge funds paid defendant Left a portion of their trading profits." *Id*. The Indictment further alleges that Mr. Left concealed his "financial relationships with hedge funds" to "maintain the illusion of Citron's independence." *Id*.

The Indictment does not identify why this would be illegal. Mr. Left is trading on his own opinions and research, and not on material non-public information. However, the Indictment attempts to link Mr. Left's work with hedge funds to *unrelated* statements he made about General Electric in 2019. Specifically, on August 15, 2019, General Electric was subject to a short-attack by an individual named Harry Markopolos. FSI ¶109-11. This short-report, which drove down the price of GE by approximately 11%, has been widely discredited. However, rather than charge Mr. Markopolos with fraud, the DOJ has indicted Andrew Left for his *truthful defense of GE*.

The day after Mr. Markopolos published materially false information about GE, Mr. Left responded with a brief report of his own. In this report, Citron: described how Markopolos falsely stated that "General Electric" was a "larger fraud than Enron or WorldCom" and had been "going on for more than 20 years"; stated that "stock of General Electric is a cornerstone of the industry in the United States"; and further explained that "aggressive accounting and fraud are two different animals" and that a "grand conspiracy" involving GE was a complete fiction. *See* Ex. A (Aug. 16, 2019 Citron GE Report). The DOJ does *not* allege that those statements about Markopolos' false short-report were untrue.

However, the DOJ has honed in on Left's additional comments contrasting Citron's operations with those of Markopolos. Markopolos admitted that he received

- 2 -
2:24-CR-00456-VAP
DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE HEDGE FUND B EVIDENCE

payment from a hedge fund in exchange for publishing his grossly inaccurate short report about GE. Left believed that receiving a percentage of a hedge fund's compensation in exchange for publishing research was unethical. In response to this admission from Markopolos, Left stated that: "Citron would like to state that in 18 years of publishing, we have never been compensated by a third party to publish research. More important, compensation tied to the 'success of a trade' would not pass internal compliance nor would it pass compliance of any fund that Citron would collaborate with on ideas." *See* Ex. A.

Left's report went on to detail that Markopolos had entered into a *quid pro quo* relationship with an "unnamed hedge fund." *Id*. Under this agreement, Markopolos would receive compensation from a hedge fund in exchange for allowing the fund "to review an advanced copy" of the short-report. *Id*. Markopolos was paid based on how much the hedge fund profited from the trade. The Government appears to claim that Left committed securities fraud by offering this commentary on Markopolos' *quid pro quo* arrangement. The DOJ contends that it was materially false and misleading for Left to represent that he engaged in no such *quid pro quo* with hedge funds to publish research, such that his statements amount to criminal fraud.

To prove this allegation, the Indictment cites ███████████████████ ██████████████. The Indictment does not definitively state that ████ engaged in a *quid pro quo* with Left whereby Left published research and ████ paid Left a percentage of its profits. Rather, the Indictment claims that Left "had, in fact, been compensated by unnamed hedge funds that held short positions in the securities targeted in Citron's commentary, and Citron had no 'internal compliance' limiting defendant Left's collaboration with hedge funds." *Id*. ¶112. ██████ allegedly, paid Left more than $1 million and Left purportedly "concealed his coordination with and compensation from … [████ from Citron's followers, members of the media,



regulators and law enforcement, among others, to further his scheme to manipulate the market and defraud the investing public by perpetuating the false pretense that his investment recommendations were credible and unbiased." *Id.* at ¶¶113-14. The Indictment does not allege that Left had any duty or obligation to disclose any relationship with ████.

Discovery has now shown that Left's relationship with ████ was not only *not* sinister, as the DOJ likes to pretend, but it was ███████████████████ ████████████████████████████████. *See, e.g.,* Ex. B (June 2019 emails between ██████████████████████████). ████ and Citron entered into a ████████████████████████████ ██████████████████████████████████ ████████████. *Id.*; Ex. C (June 2019 emails discussing ██████████ ████████████ was in no way ███████████████████ Ex. D (Deposition Transcript) at 304. It kept full discretion over whether to execute, how big to trade, how quickly to trade, and whether to trade in and out of positions. This relationship was governed by ████████████████████ ████████████████████. Ex. C (June 2019 emails between █████████ ███████████████ discussing how to disclose the ████/Citron relationship). ████████████████████████████ ██████████████ Ex. D at 304. ████ did not pay Left based on him publishing a particular report or tweet. Rather, ███████████████████ ██████████████ Not one person, either from ████ or Citron or anywhere else, has testified or otherwise told the Government that ████ engaged in a *quid pro quo* by paying Citron to publish research.

Nor did Citron attempt to keep this relationship secret. Rather, ███████████ ████████████████████████████████████████████████████████

█████████████████████████████████████ to reflect Citron's relationship with ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████████████████████ Ex. C (June 2019 emails between ███████████████████████████████). In short, ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████████████████████ *Id.* Forms were then filed with the SEC. *See* Ex. E (ADV Form).

Despite these documents, which the DOJ has had in their possession for years, the DOJ's indictment falsely alleges that ████████████████████ "to further his scheme to manipulate the market and defraud the investing public by perpetuating the false pretense that his investment recommendations were credible and unbiased." FSI ¶114. This allegation is absurd on its face and certainly not supported by any evidence related to ██████.

## LEGAL STANDARD

Evidence that does not tend to make any fact of consequence more or less likely is irrelevant and inadmissible at trial. Fed. R. Evid. 401, 402. A court may exclude relevant evidence "if its probative value is substantially outweighed by a danger" of

"unfair prejudice, confusing the issues, misleading the jury, wasting time" or "needlessly presenting cumulative evidence." Fed. R. Evid. 403. Further, under Fed. R. Evid. 104, the court must decide the preliminary question as to whether evidence is admissible. Fed. R. Evid. 104(a). Any preliminary questions on admissibility can be answered in a hearing outside of the presence of the jury. Fed. R. Evid. 104(c).

## ARGUMENT

**I.      Evidence of Citron's Relationship with ███ Is Not Relevant to Prove Any Alleged Falsities in Left's GE Report.**

Citron's relationship with ███ is irrelevant to the statements in the GE report as it has no tendency to make any fact of consequence more or less likely. Fed. R. Evid. 401. The court should preclude the Government from arguing that Left's ███████████████████ relationship with ███ somehow rendered his statements in the GE report to be false.

Left's statements in the GE report relate only to *quid pro quo* relationships between short-sellers and hedge funds concerning payment for research such as Markopolos' relationship with the hedge fund that paid him to publish research. *See* Ex. A. ███ and Citron had no such relationship, so it has no relevance to Left's commentary.

Left very plainly stated in his GE report that he had "never been compensated by a third party *to publish research.*" Ex. A at 1 (emphasis added). And the next sentence after that—"compensation tied to the success of the trade would not pass internal compliance"—clearly refers to the *quid pro quo* relationship between Markopolos and the hedge fund. This is obvious because Markopolos disclosed that he was being compensated for his research based on the "success of the trade." Left did not say that he never received any payments from hedge funds or that he did not manage money for hedge funds. To the contrary, the GE report clearly acknowledged that he *did* collaborate with hedge funds. *See* Ex. A at 1.

The Government's Indictment is a textbook case of misinformation and distortion. The Indictment twists Left's straightforward statements, and from those statements, implies that Left was saying that he never received payment from hedge funds at all. The Indictment claims, after describing Left's comment that he had never been compensated by a hedge fund "to publish research," that "Left had, in fact, been compensated by unnamed hedge funds…" *See* Ex. A; FSI ¶112. These allegations misrepresent the actual words in the GE report. Considering what Left actually said (as opposed to what the Government wishes he said), Citron's relationship with ▮▮ is irrelevant as to the veracity or falsity of the statements made in Left's GE report. This is made clear because the Indictment does not actually allege that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* FSI ¶112. And most importantly, ▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. D at 304.

Put simply, Citron's relationship with ▮▮ would not tend to prove that Left's statements regarding GE were true or false because Left did not write that he never received any compensation from hedge funds. If the Government insists on advancing this argument, it must be prepared to present evidence, out of the hearing of the jury, as contemplated by Federal Rule of Evidence 104, as to exactly how Left's relationship with ▮▮ rendered Left's statements in his GE Report to be incorrect. Specifically, the DOJ should not be able to argue or elicit testimony that ▮▮ "paid Left to publish," "paid for research," "pay-to-play," "*quid pro quo* publication payments," or similar without first obtaining a Rule 104 ruling outside the jury's presence.

To the extent that this Court does find Left's relationship with ▮▮ relevant under Rule 401, this Court should still exclude the evidence under Rule 403 because any such evidence confuses the issues, misleads the jury, and wastes valuable court and jury time. Proving what Left's relationship with ▮▮ actually was will eat up

2:24-CR-00456-VAP
DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE HEDGE FUND B EVIDENCE

hours of trial time, with little bearing on the charges. Moreover, the jury could be led to think that simply having a relationship with a hedge fund is criminal, when it is not.

**II.    The Government Must Be Precluded from Arguing or _____ating that Citron Had Some Duty to Disclose His Relationship with** ▮

This Court should preclude the Government from presenting evidence or argument that Left had a duty to disclose his relationship with ▮ No law or rule imposes this duty and any speculation to the contrary from the Government would have no probative value. Argument suggesting that Left should, for some unspecified reason, have disclosed the details of his dealings with ▮ to the public does, however, risk profoundly prejudicing Mr. Left and confusing the jury. *See* Fed. R. Evid. 403.

The Indictment alleges that Mr. Left had "been compensated by unnamed hedge funds that held short positions in the securities targeted in Citron's commentary …". FSI ¶112. Further, it claims that Left "concealed his coordination with and compensation from … [ ▮ to "further his scheme to manipulate the market and defraud the investing public by perpetuating the false pretense that his investment recommendations were credible and unbiased." FSI ¶114. This argument makes no sense. As noted, the very GE Report cited by the Government specifically provides that Citron collaborates with hedge funds on ideas. *See* Ex. A ("compensation tied to the 'success of a trade' would not pass internal compliance nor would it pass compliance of any fund *that Citron would collaborate with on ideas*."). Thus, it is unclear what the Government's point even is.

Further, to improperly "conceal" a relationship, as the Indictment suggests, a person must first be subject to a requirement or duty to disclose that relationship. The Indictment here does not allege that Left had any duty to disclose his relationships with hedge funds with "members of the media" or "law enforcement" as the Indictment appears to allege. That is because he had none. Certainly, if a person was

- 8 -

required to disclose their business relationships with the media and law enforcement, there would be some law or rule telling them that they had to do it. Indeed, multiple ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████ in SEC filings. *See* Ex. F (████████████████████████████████); Ex. G (Sept. 2019 emails including counsel regarding the ███████████████); Ex. C (June 2019 emails including legal counsel regarding the ██████████████████████). The DOJ should be precluded from insinuating that Citron had some duty to disclose his relationship with ████ when it is evident that this is not the case.

In addition, it is entirely unclear why entering into a ████ with a hedge fund would render someone's "investment recommendation" not "credible and unbiased" as the Indictment alleges. FSI ¶114. As an initial matter, Left's credibility was built on his years of success in investing and uncovering fraud; not whether he had a relationship with a fund. Moreover, had the public learned that a multi-billion dollar fund was entrusting Left with its money, surely, that would have made his "investment recommendations" *more* "credible." People would have seen that a large fund trusts Left with tens of millions of dollars. The Government's allegations make little sense and demonstrate a complete unfamiliarity with how markets and investors work. Nor does the Government explain what the term "unbiased" means. Mr. Left was a stock picker who traded stocks for a living. He is not a judge, and he is not an investment advisor. He works for himself. His *bias* is to pick stocks that would make him money, as the stock market is supposed to operate.

Even the slightest allusion to this non-existent duty would profoundly prejudice Mr. Left. If jurors were to infer any impropriety in this non-disclosure, they would naturally think that Mr. Left is generally a bad actor or a "rule-breaker" with bad character or intent. These are the exact suggestions that Rule 403 is designed to guard

against. It would also taint any reference to any other parties that Left did business with, and raise questions of whether Left acted to improperly "conceal" those relationships, even when Left was under no disclosure obligations. Any such suggestion also risks confusing jurors about the legal principals central to the case. Given this risk, the jury should be affirmatively instructed that it is entirely lawful to collaborate with hedge funds, and that there is no SEC rule requiring individuals such as Left to disclose their relationships with funds such as ███████

**III. The Court Should Preclude the Government from Arguing that Citron "Shared" or "Pre-Shared" Citron Reports with ███████ Before Publication.**

The Government has suggested it will offer evidence that Mr. Left shared draft reports with ███████ (or ███████ personnel) before publication. The Court should exclude any such evidence because it is irrelevant and has substantial risk of prejudicing Mr. Left. *See* Fed. R. Evid. 401-403. A court may exclude relevant evidence "if its probative value is substantially outweighed by a danger" of "unfair prejudice, confusing the issues, misleading the jury," or "needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Evidence that Left "shared" or "pre-shared" Citron reports with ███████ is irrelevant to the charged conduct. Left's sharing of Citron reports has no bearing on the elements of the charged offenses, much less on any of the alleged misstatements regarding his positions in securities. The charged scheme is about public dissemination of material falsehoods; the private sharing of research has, by definition, nothing to do with this. Nor is the sharing of research reports with ███████ relevant to Left's statements in the GE reports. ██████████████████ ████████████████████████████████████ █████████████████████████████████. Left's statements in the GE Report, as discussed above, were *only* related to *quid pro quo* arrangements between short-sellers and hedge funds, whereby short-sellers like

- 10 -

Markopolos would receive a percentage of a fund's profits on a trade in exchange for publishing research. That is not what happened here, and the sharing of research reports has no connection to Left's representations about his relationships with hedge funds. The reports did not contain inside information; the reports contained Mr. Left's own opinions about the value of the stocks.

Any minimal probative value of this evidence is significantly outweighed by the risk of undue prejudice to Mr. Left and juror confusion. Introduction of evidence regarding "sharing" or "pre-sharing" drafts of Citron Reports—especially in combination with any other suggestions by the Government about the impropriety of Left's associations with hedge funds—could prejudice Mr. Left by suggesting to the jury that Left was somehow colluding with hedge funds inappropriately or trading on illicit "inside information." In particular, introducing evidence of "pre-sharing" connotes associations of "tipping" or "front-running," both of which require a duty to keep information confidential, to a lay jury. That is not true, of course, and the Government does not claim that sharing research with a hedge fund is in itself illegal. But explaining the nuance of the relationship between ███ and Citron enough to establish there was nothing nefarious about their sharing of information would distract the jury from the central issues of the case and waste time. Furthermore, to the extent that the Government seeks to admit drafts of Citron reports in non-final form, this will further confuse the jurors and raise superfluous questions about the variations between research report drafts.

At a minimum, this Court should require a Rule 104 proffer from the Government to explain its theory of relevance to the charges outside of the GE report. Absent that proffer, the Government should not be permitted to introduce the evidence or argue any inference from it. And if the Court allows limited evidence of research-sharing, it should bar any "loaded" characterizations in front of the jury, including

"pay-to-play," "paid to publish," *quid pro quo*, "bought research," "front-running," "insider trading," or "collusion," as unduly prejudicial unless and until the Government first establishes an admissible evidentiary foundation for those labels outside the jury's presence. *See* Fed. R. Evid. 104.

## CONCLUSION

For the foregoing reasons, Left respectfully requests that the Court grant this motion and issue an Order to exclude evidence and argument concerning ███ as irrelevant and unfairly prejudicial, or, in the alternative, for a Rule 104 hearing and limiting instruction on this evidence.

Dated: March 23, 2026

Respectfully submitted,

DYNAMIS LLP

/s/ Eric S. Rosen
Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Emily J. Scarisbrick (*pro hac vice*)
Aaron Katz (*pro hac vice*)

*Attorneys for Defendant Andrew Left*

2:24-CR-00456-VAP
DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE HEDGE FUND B EVIDENCE

# CERTIFICATE OF COMPLIANCE

No. 2:24-cr-00456- VAP

I certify, as counsel for Defendant Andrew Left, that this memorandum of points and authorities contains 3,680 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 23, 2026                    */s/ Yusef Al-Jarani*
                                         Yusef Al-Jarani

- 13 -