# Exhibit C

FD-302 (Rev. 5-8-10)

- 1 of 2 -

**FEDERAL BUREAU OF INVESTIGATION**



Date of entry ___01/29/2026___

    MIKE GORENSTEIN (GORENSTEIN) was interviewed by Department of Justice Trial Attorney Matthew Reilly, Assistant United States Attorney David Pi, FBI Special Agent (SA) Emile Ohanyan, and US Postal Inspection Service Special Investigator Kristin Walunas. Also present on the call were CRONOS GROUP (CRONOS) In-House Counsel, Terry Doucet and Michael Akavan. After being advised of the identities of the interviewers and the nature of the interview, GORENSTEIN provided the following information:

[Agent note: A prior interview with GORENSTEIN was conducted on January 23, 2025. This interview report contains only new information provided by GORENSTEIN.]

    ALPHABET PARTNERS (ALPHABET) was a global volatility firm. GORENSTEIN was in an investment finance role at ALPHABET. GORENSTEIN handled some of the legal work because ALPHABET was a small company at the time.

    Receiving institutional capital in the cannabis industry was difficult. GORENSTEIN invested in CRONOS personally and not through the fund. Other individuals from the fund also invested. GORENSTEIN took a board seat around October 2015. CRONOS ran out of funds by around May 2016. No one wanted to invest in CRONOS unless CRONOS had a management change.

    CRONOS' predecessor, PHARMACAN was the first cannabis company that looked to have potential. CRONOS later invested in another company, PHARMACANN, BUT PHARMACAN and PHARMACANN were unrelated companies.

    The biggest movement of CRONOS stock was from external events impacting the stock price.

    Partnering with a Fortune 500 company provided legitimacy to cannabis companies. Demonstrating you can win licenses, or work with governments added value to cannabis companies. CRONOS partnered with another company in Australia and was able to win a cannabis license without having to purchase a license. Many other cannabis companies purchased licenses.

    A company listed on the Toronto Stock Exchange (TSX) must make a

---

Investigation on ___01/22/2026___ at ___Los Angeles, California, United States (Video Teleconferencing)___

File # ___318C-LA-6762283___                 Date drafted ___01/26/2026___

by ___OHANYAN EMILE YERVAND___

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

DOJ-SPROD-0000038925

FD-302a (Rev. 5-8-10)

318C-LA-6762283

Continuation of FD-302 of  (U) Interview of Mike Gorenstein 1/22/2026  , On  01/22/2026  , Page  2 of 2

statement or comment of material information if a circuit breaker triggered. The NASDAQ did not require a statement or comment if a circuit breaker triggered and trading can continue after a certain period.

Commitments of supply published by other cannabis companies were not purchase agreements between the cannabis companies and the provinces. It was only a quantify of cannabis a company could supply a province with. LOIs and MOUs weren't typically released by CRONOS because they were non-binding.

The recall of CRONOS cannabis was related to deviation between Canadian testing results and German testing results. The result wasn't necessarily a bad result, but a different result. The difference could have been due to different methods or equipment used by each testing facility. ORGANIGRAM had a recall due to pesticides which led CRONOS investors to fear the CRONOS recall may have been related to pesticides. The prior management had issues with cannabis THC content being higher than the labeled amount. It didn't appear consumers had any issues with the higher THC content as CRONOS didn't have many returns of the product.

CRONOS did sell R&D product. This allowed CRONOS to classify the product as cost of goods sold (COGS) instead of R&D.

If someone covered a small position of their holdings in a specific stock, GORENSTEIN believed it would be about 5% to 15% of holdings.

DOJ-SPROD-0000038926

Mike Gorenstein

Michael Akavan

Kristin Walunas

Terry Doucet

Matt Reilly

David Pi

Truthful statements, not recorded, voluntary

Alphabet Partners global volatility firm, investment finance role, but did some of the legal work because it was a small shop

Getting institutional capital was difficult in cannabis

Fund didn't invest

Through work discovered cannabis and invested personally.

Personal investors, Gorenstein and few other individuals from the fund

CRONOS predecessor PharmaCan was the first that looked potential

Another company called PharmaCann with two "n" s and years later CRONOS invested in it later

Completely separate company

When invested individually took a board seat October 2015, by May 2016 company was completely out of money

No one wanted to fund the company, only way anyone would fund it is if there was a management change

Biggest movements of stock are from external events

A large partner like a fortunate 500 provided legitimacy to the cannabis companies

Showing you can win licenses, or work with governments added value to the company

Australia they partnered 50/50 and won a license without having to buy licenses like other companies do

DOJ-SPROD-0000038927

Stock halted on Toronto stock exchange not sure if NASDAQ trading halted

> In Canada when a stock is halted you typically must make a statement/comment about it if there is anything material information that should be disclosed.

> NASDAQ is different when it comes to circuit break where it's just a pause then trading continues later.

Commitments of supply by other companies were numbers a company said they could commit to a province and wasn't what a province had agreed to buy

LOI/MOU don't generally release these because non binding

Deviation from Canadian tests which were passed with the German system.

Not bad results but different testing methods and equipment

But the word recall made investors think of pesticides

Prior management THC was higher than what was on the package which people didn't return product.

CRON could sell the R&D product and did sell R&D product. That's why they could categorize it as COGS instead of R&D.

Small position covered would mean to Gorenstein 5% to 15%.

DOJ-SPROD-0000038928