**DYNAMIS LLP**

ERIC S. ROSEN (*pro hac vice*)
erosen@dynamisllp.com
MICHAEL B. HOMER (*pro hac vice*)
mhomer@dynamisllp.com
EMILY J. SCARISBRICK (*pro hac vice*)
escarisbrick@dynamisllp.com
175 Federal Street, Suite 1200
Boston, Massachusetts 02110
(617) 802-9157

YUSEF AL-JARANI (Cal. Bar No. 351575)
yaljarani@dynamisllp.com
1100 Glendon Ave., 17th Floor
Los Angeles, California 90024
(213) 283-0685

**AARON KATZ LAW LLC**

AARON KATZ (*pro hac vice*)
akatz@aaronkatzlaw.com
399 Boylston Street, 6th Floor
Boston, MA 02116
(617) 915-6305

**WEIL, GOTSHAL & MANGES LLP**

ADAM FEE (Cal. Bar No. 345075)
adamfee@weil.com
1999 Avenue of the Stars, Suite 1800
Los Angeles, CA 90067
(213) 667-5100

*Attorneys for Defendant Andrew Left*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANDREW LEFT,<br><br>Defendant. | Case No. 2:24-cr-00456-VAP<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT EIGHTEEN OF THE FIRST SUPERSEDING INDICTMENT FOR IMPROPER VENUE**<br><br>Date:   April 27, 2026<br>Time:   10:00 a.m.<br>Ctrm:   6A<br>Judge:   Hon. Virginia A. Phillips |

# NOTICE OF MOTION AND MOTION

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 27, 2026, at 10:00 a.m., or as soon as the matter may be heard, in Courtroom 6A of the above-captioned Court, located at 350 West 1st Street, Los Angeles, CA 90012, before the Honorable Virginia A. Phillips, Defendant Andrew Left moves for an Order dismissing Count Eighteen of the First Superseding Indictment for improper venue. The defense respectfully requests expedited briefing on this discreet issue, given that trial is imminent. The defense asks that this Motion be heard at the upcoming pre-trial conference and that the Court order a briefing schedule commensurate with the April 27, 2026 date. The government opposes this Motion and opposes the request for expedited briefing.

The Motion is based on this Notice of Motion and Motion, the incorporated Memorandum of Points and Authorities, and any other evidence or argument that the Court may consider at the hearing on this Motion. For the reasons in the accompanying Memorandum of Points and Authorities, Mr. Left respectfully asks the Court to grant this Motion.

Counsel for the parties communicated about the substance and potential resolution of the Motion but could not reach agreement. Rosen Decl. ¶ 2.

Dated: April 16, 2026

Respectfully submitted,

DYNAMIS LLP

*/s/ Eric S. Rosen*
Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Emily J. Scarisbrick (*pro hac vice*)
Aaron Katz (*pro hac vice*)
Adam Fee

*Attorneys for Defendant Andrew Left*

## **INTRODUCTION**

Count Eighteen of the First Superseding Indictment (FSI) charges Andrew Left with a single violation of 18 U.S.C. § 1001(a)(2), based on two allegedly false statements he made "in Los Angeles County, within the Central District of California." FSI ¶ 136. The undisputed facts, which will be adduced at trial, are that Mr. Left made these two statements during a telephone call while at his home in Florida. From Florida, he spoke on the phone with a federal agent who happened to be in Los Angeles County. The government does not contend otherwise.

The Ninth Circuit's decision in *United States v. Fortenberry*, 89 F.4th 702 (9th Cir. 2023), forecloses venue in this District. *Fortenberry* holds that the "essential conduct" of a Section 1001 offense is the "making" of the false statement, and that "the location of the crime must be understood to be the place where the defendant makes the statement"—not where the agents are located, not where the investigation is headquartered, and not where the statement is received. *Id.* at 707, 712. Because Mr. Left undisputedly made the statements charged in Count Eighteen from Florida, the Central District of California is not a proper venue. And because Mr. Left timely raises this defect in advance of trial, Count Eighteen must be dismissed pursuant to Fed. R. Crim. P. 12(b)(3)(A)(i).

## **BACKGROUND**

Count Eighteen alleges that on January 29, 2021, Mr. Left "knowingly and willfully made . . . materially false statements and representations to USPIS." FSI ¶ 136. The Indictment identifies two purportedly false statements, each allegedly made during a telephonic interview conducted that day. *Id.* ¶ 136(a)–(b). It alleges that those statements were made "in Los Angeles County, within the Central District of California, and affecting the Federal Investigation in the Central District of California." *Id.* ¶ 136.

2:24-CR-00456-VAP
DEFENDANT'S MOTION TO DISMISS COUNT EIGHTEEN FOR IMPROPER VENUE

The FSI's allegations as to where the alleged false statements were made is false, and the government knows that they are false. The undisputed facts are as follows: on January 29, 2021 at 6:16 a.m., federal agents visited Ryan Choi—then a minority partner at Citron Research—at his home in California. Choi was not home and was not, in fact, in the country. Choi briefly spoke with agents on the phone after they called him to ascertain his location. The call ended at 6:32 a.m. *See* Dkt. 295-3 (Ex. 2) at 5–8 (transcript of calls with Choi and Left).

After that visit, Mr. Choi telephoned Mr. Left, who was at his home in Florida, and relayed the agents' contact information. Mr. Left, *from Florida*, then placed a telephone call to the agents, who were located at the time in the Central District of California. The allegedly false statements that form the basis of Count Eighteen were made by Mr. Left during that telephone call while Mr. Left was at his home in Florida, speaking by phone to agents in this District. At no time was Mr. Left in the Central District of California when he made the statements to the agents. The government does not dispute these facts. It is unclear why the FSI states that the statements were made "in the Central District of California" (and nowhere else), when the government well knows that Mr. Left was in Florida when he called the agents.

## ARGUMENT

A criminal defendant has a constitutional right to be tried in the district where the charged crime was committed. U.S. Const. art. III, § 2, cl. 3; *id.* amend. VI. Federal Rule of Criminal Procedure 18 likewise requires the government to "prosecute an offense in a district where the offense was committed." A pretrial motion to dismiss for improper venue "must be made" before trial, Fed. R. Crim. P. 12(b)(3)(A)(i), and where, as here, the venue facts are undisputed, the question is one of law appropriate for resolution on the pleadings. *See United States v. Fortenberry*, 89 F.4th 702 (9th

Cir. 2023) (reviewing pretrial venue ruling). Under *Fortenberry*, it is clear that venue does not lie in this District for Count Eighteen.

**I.     Under *Fortenberry*, Venue for a Section 1001 Offense Lies Only Where the Defendant Himself Made the Alleged False Statement; the Location of the Agents Is Irrelevant.**

It cannot be disputed that the Ninth Circuit's decision in *Fortenberry* squarely controls the circumstances here. In *Fortenberry*, the government prosecuted the defendant (a congressman representing Nebraska's First Congressional District) in the Central District of California under Section 1001 based on two interviews in which he allegedly made false statements to federal agents from the Los Angeles field office—the first interview occurred at Fortenberry's home in Nebraska, and the second took place at his attorney's office in Washington, D.C. 89 F.4th at 704. The government argued that venue was proper in this District because the investigation was "run by the FBI's Los Angeles field office," *id.*, and because the statements had effects on the investigation in this District, *id.* at 707–09. The Ninth Circuit rejected every argument the government made and reversed the conviction. *Id.* at 712.

The Ninth Circuit's analysis began with first principles. The Constitution commands that venue lie where the crime was committed, and to identify that place, a court must "look to the essential conduct elements of the offense." *Id.* at 705 (quoting *United States v. Lukashov*, 694 F.3d 1107, 1120 (9th Cir. 2012)). "Circumstance elements"—those necessary for conviction but not themselves the proscribed conduct—do not control the venue inquiry. *Id.* at 705–06. Applying that framework, the court held that Section 1001(a)(2) "plainly" has one essential conduct element: the "making" of the false statement. *Id.* at 706.

> The upshot of our prior holdings is that the false statement offense is complete when the statement is made. It does not depend on subsequent events or circumstances, or whether the recipient of the false statement was in fact affected by it in any way.

2:24-cr-00456-VAP
DEFENDANT'S MOTION TO DISMISS COUNT EIGHTEEN FOR IMPROPER VENUE

*Id.* at 707. The court's holding was clear: "[T]he location of the crime," the court concluded, "must be understood to be *the place where the defendant makes the statement*." *Id.* at 712 (emphasis added). Venue therefore was inappropriate in the Central District of California.

*Fortenberry* also expressly considered and rejected each of the alternative venue theories the government advanced there—and that the government may be expected to advance here.

First, the court rejected any "effects test" under which venue would follow the district in which the investigation is based or in which the false statement is received. *Id.* at 707–10. Section 1001, the court explained, does not have an effects element; materiality is a circumstance element, not an essential conduct element, and it requires only that the statement have "the capacity to influence" a federal agency, not that it actually do so, and not that any such influence occur in any particular place. *Id.* at 707. Allowing venue to follow the district where investigators happen to be present, the court warned, would yield "outlandish" results. *Id.* at 709.

For example, if agents from both Los Angeles *and* Oklahoma had visited Fortenberry in Nebraska, the government's "effects test" would allow prosecution in Oklahoma simply because an Oklahoma-based agent happened to hear the statement. *Id.* at 709. Likewise, "[w]hat if an investigating agent simply moved from Los Angeles to Hawaii for personal reasons but maintained a lead role in prosecuting the case?" *Id.* The government's effect test would say that venue could shift on the whim of an agent's location when he receives a phone call, irrespective of where the false statement was actually made: if the agent had moved to North Carolina when he received the call, venue would lie in North Carolina; if the agent was vacationing in Hawaii, venue would lie in Hawaii. "This would be an odd and troubling result for an offense that does not require an actual effect on the investigators." *Id.*

And yet, this is precisely the theory the government appears to advance here. Prior to filing this Motion, the defense and government communicated, and the government explained to the defense that their venue theory was as follows: "Left made the call into CD Cal. and was aware that the agent with whom he was speaking was in Los Angeles and had just been at Choi's house in Beverly Hills." *Fortenberry* obviously forecloses this theory of venue, having expressly rejected the notion that venue could be based in a district other than the one where the defendant made the statements.

Second, the government argued in *Fortenberry* that Section 1001 was a "continuing-offense" statute, such that venue could lie in the district conducting the investigation under 18 U.S.C. § 3237(a). 89 F.4th at 710. This argument too was rejected. Section 3237, the court explained, "says nothing about where a Section 1001 defendant like Fortenberry began or completed the offense," but "merely invites the next step of determining the essential conduct of a Section 1001 crime." *Id.* Because the essential conduct is the "making" of the statement, and because the offense is "complete when the statement is made," *id.* at 707, there is no separate "beginning" and "completion" in different districts that could supply continuing-offense venue. That analysis applies in full to a telephonic statement, such as the one made by Mr. Left: the statement is "made" at the moment—and in the place—the speaker utters it. The essential conduct remains the utterance, not the receipt. The fact that the audio thereafter travels by wire to a different district does not bifurcate a unitary offense into a continuing one.

Third, the court rejected a "temporal element" theory under which a defendant's knowledge that his statements would be evaluated in a particular district might anchor venue there, which is also an argument that the government appears to advance here. *Id.* at 710. "We are not at liberty," the court held, "to create a new temporal element

- 5 -

for Section 1001—tied to defendant's awareness at the time the statement at issue was made—that is not evident in the plain text of the statute." *Id.* The defendant's state of mind as to where the statement will be heard, processed, or acted upon is irrelevant to venue; the only relevant fact is where the statement was made. "To take again the Los Angeles and Oklahoma scenario, adding a temporal element would still have permitted Fortenberry to be tried in Oklahoma simply because an investigator based there happened to be sitting in Fortenberry's living room in Nebraska when he spoke to the agents." *Id.*

The court grounded its holding in a long historical tradition, noting that "history confirms what the Constitution commands." *Id.* at 712. Drawing on the common-law rule that "perjury in an affidavit is complete the moment the oath is taken with the necessary intent," the court embraced the 1797 observations of Sir Lloyd Kenyon, Lord Chief Justice of the King's Bench:

> The affidavit, on which the perjury is assigned, might have been sworn in a distant part of the kingdom [and] sent up by the post [to another person] . . . [b]ut surely the guilt of the party cannot depend on the act of another person, when all that he had to do has been already consummated . . . . [T]he party is not to be indicted here where the affidavit may happen to be used, but in the county where the offence was complete by making the false oath.

*Id.* at 712 (quoting *R v. Crossley* (1797) 101 Eng. Rep. 994, 996). The court thus concluded that, "[b]ecause a Section 1001 offense is complete at the time the false statement is uttered . . . the location of the crime must be understood to be the place where the defendant makes the statement." *Id.* Here too, the fact that an investigation was occurring in Los Angeles or that the agents were located in Los Angeles (or even that Mr. Left knew the agents were in Los Angeles) is irrelevant to where the offense can be charged.

Since *Fortenberry* was decided in 2023, the Ninth Circuit has reaffirmed its holding and distinguished the venue analysis for a Section 1001 offense from the

venue analysis for other, similar statutes, such as 18 U.S.C. §1519. In *United States v. Abouammo*, 122 F.4th 1072, 1091–92 (9th Cir. 2024), the court explained that Section 1519 *was* a continuing offense, making the "effects" test applicable. Specifically, the court grappled with the following situation:

> Abouammo's § 1519 charge was based on the fake invoice for social media consulting services that he created during his October 2018 interview with the FBI at his home in Seattle. As we described above, the federal investigators who came to Abouammo's residence identified themselves as "FBI agents from the San Francisco office." When they asked Abouammo if he had documentation supporting his consulting work for Binasaker, Abouammo went upstairs and created a falsified invoice that *he then emailed to the agents who were in his home*. The district court concluded that venue on the § 1519 charge was proper in the Northern District of California because "the crime is tied to the potentially adverse effect upon a specific (pending or contemplated) proceeding, transaction, etc., and venue may properly be based on the location of that effect."

*Id*. at 1089 (emphasis added). The Ninth Circuit held that the Section 1519 obstruction statute differed from the Section 1001 statute at issue in *Fortenberry*, in that Section 1519 expressly contemplated impeding the actions of an ongoing investigation, thereby making prosecution in the district where the investigation was occurring appropriate. In so ruling, the Ninth Circuit expressly distinguished (and reaffirmed) *Fortenberry*'s holding that the Section 1001 crime was complete where the statement was made (*i.e.*, in the location of the defendant). *Id*. at 1091–93. Notably, *Abouammo* concerned an email that was sent to agents; clearly, if the Ninth Circuit believed that there was some type of email or telephone call exception to *Fortenberry*'s Section 1001 holding, *Abouammo* would have been the perfect case to articulate that exception. The Ninth Circuit did not do so.

## II.   Left Made the Alleged False Statements in Florida, Not in This District.

Applying *Fortenberry* to the undisputed facts here, venue does not lie in the Central District of California for Count Eighteen.

On January 29, 2021, Mr. Left was at his home in Florida. He placed a telephone call to federal agents—agents who happened to be located in this District—and, during that call, allegedly made the false statements that form the basis of Count Eighteen. Those statements were "uttered" from Florida. 89 F.4th at 712. They were "made" in Florida. *Id.* at 705. The offense charged in Count Eighteen was "complete when the statement[s] [were] made," *id.* at 707, and they were made where Mr. Left was sitting when he spoke. The Central District of California—the district in which Mr. Left's words happened to be heard—is not where the crime "was committed." U.S. Const. art. III, § 2, cl. 3.

The government cannot avoid *Fortenberry* by arguing that Mr. Left's statements were "received" in this District, or that the investigation was headquartered here, or that USPIS agents were based here. Those are precisely the "effects-based" theories that *Fortenberry* foreclosed. 89 F.4th at 707–12. Indeed, if the government's argument is credited, that would mean that venue would lie in any district in which an agent happened to be located when he received a telephone call from a potential defendant. *Fortenberry* expressly rejected such an outcome. *Id.* at 709 (rejecting notion that venue could lie in Hawaii if an agent relocated to Hawaii and also rejecting idea that venue could lie in DC if the government decided to base all 1001 prosecutions out of DC).

Nor can the government anchor venue to Mr. Left's knowledge that the investigation was based in this District; *Fortenberry* rejected that "temporal element" theory as well. *Id.* at 710. And the government cannot rely on the continuing offense theory articulated by *Angotti*, which *Fortenberry* distinguished as resting on the distinct statutory language of Section 1014, *id.*, an outcome reinforced and reconfirmed by the more recent decision in *Abouammo*.

Lord Kenyon's observation is as applicable now as it was more than 200 years ago, or as it was when the Ninth Circuit decided *Fortenberry* less than three years ago—just as venue lies for perjury where the party makes the false affidavit, and not where the affidavit is received, so too does venue lie for a Section 1001 violation where the party makes the false statement, and not where the statement is received.

The constitutional right to be tried where the crime was allegedly committed "may not be disregarded simply because it suits the convenience of federal prosecutors." *Fortenberry*, 89 F.4th at 709. On the undisputed facts of this case, and pursuant to the binding precedent of *Fortenberry*, the Constitution does not permit Count Eighteen to be tried in this District. That count must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Count Eighteen of the First Superseding Indictment for improper venue.

Dated: April 16, 2026

Respectfully submitted,

DYNAMIS LLP

*/s/ Eric S. Rosen*

Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Aaron Katz (*pro hac vice*)
Emily J. Scarisbrick (*pro hac vice*)
Aaron Katz (*pro hac vice*)
Adam Fee

*Attorneys for Defendant Andrew Left*

## CERTIFICATE OF COMPLIANCE

I certify, as counsel for Defendant Andrew Left, that this memorandum of points and authorities contains 2,841 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 16, 2026                    /s/ Yusef Al-Jarani
                                          Yusef Al-Jarani

2:24-CR-00456-VAP
DEFENDANT'S MOTION TO DISMISS COUNT EIGHTEEN FOR IMPROPER VENUE