**DYNAMIS LLP**

ERIC S. ROSEN (*pro hac vice*)
erosen@dynamisllp.com
MICHAEL B. HOMER (*pro hac vice*)
mhomer@dynamisllp.com
EMILY J. SCARISBRICK (*pro hac vice*)
escarisbrick@dynamisllp.com
175 Federal Street, Suite 1200
Boston, Massachusetts 02110
(617) 802-9157

YUSEF AL-JARANI (Cal. Bar No. 351575)
yaljarani@dynamisllp.com
1100 Glendon Ave., 17ᵗʰ Floor
Los Angeles, California 90024
(213) 283-0685

**AARON KATZ LAW LLC**

AARON KATZ (*pro hac vice*)
akatz@aaronkatzlaw.com
399 Boylston Street, 6ᵗʰ Floor
Boston, MA 02116
(617) 915-6305

**WEIL, GOTSHAL & MANGES LLP**

ADAM FEE (Cal. Bar No. 345075)
adamfee@weil.com
BEN NICHOLSON (Cal. Bar No. 317970)
ben.nicholson@weil.com
1999 Avenue of the Stars, Suite 1800
Los Angeles, CA 90067
(213) 667-5100

*Attorneys for Defendant Andrew Left*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANDREW LEFT,<br><br>Defendant. | Case No. 2:24-cr-00456-VAP<br><br>**ANDREW LEFT'S MOTION TO ENFORCE THE COURT'S MAY 8, 2026 *IN LIMINE* RULING**<br><br>Date: May 13, 2026<br>Time: 8:00 a.m.<br>Ctrm: 8C<br>Judge: Hon. Virginia A. Phillips |

## NOTICE OF MOTION AND MOTION

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 13, 2026 at 8:00 a.m., the defense moves for the enforcement of this Court's ruling at Dkt. 353, which prohibits lay witnesses from opining on causation. Specifically, as set forth below, Mr. Gorenstein, in contravention of this Court's prior opinion and over defense objection, testified that traders engaged in "panic selling" after Mr. Left's report was released. In addition, two witnesses scheduled to testify on May 13, 2026—Mr. Anmuth and Mr. Landry— are being prepped to also opine on "panic selling," causation, and how the market would have reacted if the market knew of Mr. Left's trading plans. This is improper.

Dated: May 12, 2026

Respectfully submitted,

DYNAMIS LLP

*/s/ Eric S. Rosen*
Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Emily J. Scarisbrick (*pro hac vice*)

AARON KATZ LAW LLC
Aaron Katz (*pro hac vice*)

WEIL, GOTSHAL & MANGES LLP
Adam Fee
Ben Nicholson

*Attorneys for Andrew Left*

An opinion that Mr. Left's speech caused a particular reaction in the market is clearly "expert testimony," and thus is subject to Rule of Evidence 702's gatekeeping requirements and Federal Rule of Criminal Procedure 16(a)(1)(G)'s disclosure requirements. Accordingly, in its *in limine* ruling dated May 8, 2026 (ECF No. 353), the Court correctly ruled that witnesses for whom the prosecution did not provide a timely Rule 16(a)(1)(G) disclosure may not "testify to the general effect of Defendant's alleged conduct on the market or opine on the causal impact that the alleged conduct had on the rise or fall of a stock price. Nor can the witness testify to the impact of Defendant's alleged conduct on general investor behavior." ECF No. 353, at 2–3. Such testimony would be quintessential expert testimony, as this Court has already ruled.

Today, however, over the defense's objection, the prosecution elicited from Cronos Group CEO Michael Gorenstein that Andrew Left's August 30, 2018 tweet and short report on CRON caused "panic selling" among CRON's retail shareholders. Mr. Gorenstein's testimony was not supported by any personal knowledge; retail shareholders did not, for example, call him up and tell him that they had "panic sold" their shares. Nor was Mr. Gorenstein's testimony supported by any sound methodology.

Nor was Mr. Gorenstein's "panic selling" opinion the sole—or even most natural—inference to draw from the elevated trading volume and 28% price decline (from ~$12 to ~$9) in CRON's stock on August 30, 2018. Especially considering that CRON's stock price had increased 100% (*i.e.*, doubled) between August 13 and August 29, 2018, there are actually *four* potential explanations for CRON's price and volume action on August 30, 2018: (1) "panic selling" by retail shareholders; (2) strategic profit taking by long traders who purchased shares between mid-March

and mid-August 2018, when the stock traded range-bound between $5 and $8[1]; (3) strategic profit taking and portfolio re-balancing by institutional shareholders; and (4) short sellers and algorithmic traders initiating or increasing short positions, which would have driven down the price of the stock even if *none* of CRON's long shareholders exited their positions that day.  Indeed, that fourth explanation arguably is the most likely one given the circumstances.  At best, Mr. Gorenstein's testimony about "panic selling" was rank speculation that he knew would prejudice Mr. Left.

The defense already has been harmed by the government being allowed to elicit Mr. Gorenstein's unfounded speculation that Mr. Left's speech induced "panic selling" in CRON's retail investor base.  It was the headliner for news coverage of the first day of trial,[2] and no doubt resonated with jurors.  The defense respectfully requests significant leeway on cross examination to demonstrate that Mr. Gorenstein's "panic selling" testimony ignored the other explanations for CRON's price and volume action on August 30, 2018.  Given the severity of the violation, the defense further requests that the government not be permitted to re-direct Mr. Gorenstein.

The Court should also, however, enforce its May 8, 2018 order and not permit the government to introduce similar opinion testimony from its lay witnesses.  This evening, the government disclosed memoranda of interview for its most recent prep sessions with lay witnesses Martin Landry and Doug Anmuth, investment bank analysts who will testify regarding CRON, TWTR, and potentially FB stock.[3]  The

---

[1] Even at the lows of the day on August 30, 2018, all of these traders still would have been at a healthy profit on their positions.

[2] Kelsey Vlamis, *CEO Testifies that Short-Seller Andrew Left Triggered Investor Panic and Threw Him Into Damage Control*, BUSINESS INSIDER (May 12, 2026), https://www.businessinsider.com/short-seller-andrew-left-trial-opening-statements-2026-5.

[3] Mr. Anmuth was JP Morgan's analyst for FB stock during the relevant time period, and his FB reports may be relevant to impeach or explain testimony that the government apparently intends to elicit from him regarding TWTR.

- 2 -

2:24-CR-00456-VAP
ANDREW LEFT'S MOTION TO ENFORCE THE COURT'S MAY 8, 2026 *IN LIMINE* RULING

government's interview memoranda strongly suggest that the government intends to elicit from Mr. Landry and Mr. Anmuth lay opinions about how Mr. Left's bearish commentary on CRON and TWTR impacted investors holding long positions in those stocks, including retail investors.

Indeed, in what appears to be coached testimony, Mr. Landry is quoted, in the witness prep report dated May 12, 2026 at 2:40 p.m. (just minutes after court ended for the day), stating that the "[r]eaction to report appeared to be panic selling." This is the first time in all of Mr. Landry's reports that the term "panic selling" was used. Likewise, the defense received notes from Mr. Anmuth's preparation on May 12, 2026 at 3:40 p.m. (shortly after Mr. Landry was prepped). In the notes, Mr. Anmuth remarked that the "[m]arket would have known and stock wouldn't have moved that way if market knew" that Mr. Left had a short position in Twitter (TWTR). *See* Ex. A [05/12/2026 Notes]. Again, Mr. Anmuth is being prepared to testify as to his expert opinion on how Mr. Left's tweets impacted the market and what the market would have done if Mr. Left had revealed his trading plans or intentions. This is in direct contravention of Dkt. 353 and black-letter law. *See* Ex. B [05/13/2026 Notes].

This Court should not permit such speculative testimony. Any such causation testimony should come only from a witness whose opinion has been disclosed pursuant to Rule 16(a)(1)(G) and whose methodology satisfies the requirements of Rule 702. Moreover, with respect to the term "panic selling" having already been used by the prosecution, the defense asks this Court to instruct the jury that all testimony regarding this term or Mr. Gorenstein's opinion be stricken from the record and disregarded, and that any opinion on causation uttered by Mr. Gorenstein is unsupported and speculative.

Dated: May 12, 2026

Respectfully submitted,

DYNAMIS LLP

*/s/ Eric S. Rosen*
Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Emily J. Scarisbrick (*pro hac vice*)

AARON KATZ LAW LLC
Aaron Katz (*pro hac vice*)

WEIL, GOTSHAL & MANGES LLP
Adam Fee
Ben Nicholson

*Attorneys for Andrew Left*

- 4 -

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify, as counsel for Andrew Left, that this memorandum of points and authorities contains 937 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 12, 2026                             *s/ Yusef Al-Jarani*
                                                Yusef Al-Jarani

2:24-CR-00456-VAP
ANDREW LEFT'S MOTION TO ENFORCE THE COURT'S MAY 8, 2026 *IN LIMINE* RULING