**DYNAMIS LLP**

ERIC S. ROSEN (*pro hac vice*)
erosen@dynamisllp.com
MICHAEL B. HOMER (*pro hac vice*)
mhomer@dynamisllp.com
EMILY J. SCARISBRICK (*pro hac vice*)
escarisbrick@dynamisllp.com
175 Federal Street, Suite 1200
Boston, Massachusetts 02110
(617) 802-9157

YUSEF AL-JARANI (Cal. Bar No. 351575)
yaljarani@dynamisllp.com
1100 Glendon Ave., 17th Floor
Los Angeles, California 90024
(213) 283-0685

**AARON KATZ LAW LLC**

AARON KATZ (*pro hac vice*)
akatz@aaronkatzlaw.com
399 Boylston Street, 6th Floor
Boston, MA 02116
(617) 915-6305

**WEIL, GOTSHAL & MANGES LLP**

ADAM FEE (Cal. Bar No. 345075)
adamfee@weil.com
BEN NICHOLSON (Cal. Bar No. 317970)
ben.nicholson@weil.com
1999 Avenue of the Stars, Suite 1800
Los Angeles, CA 90067
(213) 667-5100

*Attorneys for Defendant Andrew Left*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANDREW LEFT,<br><br>Defendant. | Case No. 2:24-cr-00456-VAP<br><br>**DEFENDANT ANDREW LEFT'S RENEWED MOTION FOR A MISTRIAL**<br><br>Date: May 26, 2026<br>Time: 8:00 a.m.<br>Ctrm: 8C<br>Judge: Hon. Virginia A. Phillips |

**<u>NOTICE OF MOTION AND MOTION</u>**

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 26, 2026 at 8:00 a.m., in Courtroom 8C of the First Street United States Courthouse, 350 West 1st Street, Los Angeles, California 90012, before the Honorable Virginia A. Phillips, Defendant Andrew Left moves for an order declaring a mistrial and dismissing this case with prejudice.

Dated: May 25, 2026

Respectfully submitted,

DYNAMIS LLP

*/s/ Eric S. Rosen*

Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Emily J. Scarisbrick (*pro hac vice*)

AARON KATZ LAW LLC
Aaron Katz (*pro hac vice*)

WEIL, GOTSHAL & MANGES LLP
Adam Fee
Ben Nicholson

*Attorneys for Defendant Andrew Left*

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

LEGAL STANDARD...........................................................................................3

ARGUMENT .........................................................................................................3

I.   THE GOVERNMENT VIOLATED THE CONFRONTATION CLAUSE WHEN IT PLACED MR. CHOI'S OUT-OF-COURT STATEMENT BEFORE THE JURY THROUGH A QUESTION TO MR. MARTEL. ...............................................................................................3

   A.   The Government's Question Violated the Confrontation Clause. ...............3

   B.   The Government's Question Elicited Inadmissible False Testimony, Was Unduly Prejudicial, and Amounts to Misconduct. ...............................................6

II.  THE GOVERNMENT HAS REPEATEDLY PLACED THE "DELETION" OF DOCUMENTS BEFORE THIS JURY, LEAVING THE IMPROPER IMPRESSION THAT MR. LEFT DIRECTED OR PARTICIPATED IN DESTROYING EVIDENCE. .............................9

III. THE GOVERNMENT'S SELECTIVE WITHHOLDING OF IMMUNITY MAGNIFIES THE CONSTITUTIONAL HARM..........................................................................12

IV.  NO REMEDY SHORT OF A MISTRIAL AND DISMISSAL WITH PREJUDICE WILL SUFFICE. .........................................................................................................14

V.   IN THE ALTERNATIVE, THE COURT SHOULD ORDER A FACTUAL STIPULATION ADOPTING MR. CHOI'S SWORN TESTIMONY AND DELIVER NINTH CIRCUIT MODEL CRIMINAL JURY INSTRUCTION 4.13 ...................................................................15

   A.   Mr. Choi's SEC Testimony Is Admissible Under Rules 804(b)(6) and 807. 15

   B.   Mr. Choi's SEC Testimony Is Exculpatory on the Advice-of-Counsel Defense.................................................................................................................16

   C.   A Missing-Witness Instruction Is Warranted.............................................19

CONCLUSION ...................................................................................................19

CERTIFICATE OF COMPLIANCE ................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Berger v. United States*,
  295 U.S. 78 (1935) ................................................................................................ 13

*Crawford v. Washington*,
  541 U.S. 36 (2004) ......................................................................................... 2, 3, 4

*Douglas v. Alabama*,
  380 U.S. 415 (1965) ....................................................................................... 2, 4, 5

*Mattox v. United States*,
  156 U.S. 237 (1895) ............................................................................................... 4

*United States v. Ackerly*,
  981 F.3d 70 (1st Cir. 2020) ................................................................................ 5, 6

*United States v. Blueford*,
  312 F.3d 962 (9th Cir. 2002) .................................................................................. 7

*United States v. Bundy*,
  968 F.3d 1019 (9th Cir. 2020) ........................................................................ 14, 15

*United States v. Chapman*,
  524 F.3d 1073 (9th Cir. 2008) .................................................................... 3, 14, 15

*United States v. Davenport*,
  753 F.2d 1460 (9th Cir. 1985) ................................................................................ 8

*United States v. Escalante*,
  637 F.2d 1197 (9th Cir. 1980) ................................................................................ 3

*United States v. Kearns*,
  5 F.3d 1251 (9th Cir. 1993) .................................................................................. 14

2:24-CR-00456-VAP
DEFENDANT ANDREW LEFT'S RENEWED MOTION FOR A MISTRIAL

*United States v. Kizzee,*
  877 F.3d 650 (5th Cir. 2017)................................................................5

*United States v. Kojayan,*
  8 F.3d 1315 (9th Cir. 1993)................................................................7

*United States v. Leal-Del Carmen,*
  697 F.3d 964 (9th Cir. 2012)...............................................13, 15, 16

*United States v. Mix,*
  791 F.3d 603 (5th Cir. 2015)..........................................................11, 12

*United States v. Perez,*
  22 U.S. (9 Wheat.) 579 (1824) ...........................................................3

*United States v. Richter,*
  826 F.2d 206 (2d Cir. 1987)................................................................8

*United States v. Rios,*
  636 F.3d 168 (5th Cir. 2011)..............................................................19

*United States v. Sanchez,*
  176 F.3d 1214 (9th Cir. 1999)............................................................8

*United States v. Sanchez-Lima,*
  161 F.3d 545 (9th Cir. 1998)............................................................16

*United States v. Struckman,*
  611 F.3d 560 (9th Cir. 2010)............................................................14

*United States v. Sullivan,*
  85 F.3d 743 (1st Cir. 1996) ...............................................................8

*United States v. Wells,*
  879 F.3d 900 (9th Cir. 2018)..............................................................7

*United States v. Westerdahl,*
  945 F.2d 1083 (9th Cir. 1991)......................................................12, 13

**Statutes**

18 U.S.C. § 6003 ................................................................................... 13, 14, 15

**Rules**

Fed. R. Evid. 803 ....................................................................................... 15

Fed. R. Evid. 804 ....................................................................................... 15

Fed. R. Evid. 807 ....................................................................................... 15

2:24-CR-00456-VAP
DEFENDANT ANDREW LEFT'S RENEWED MOTION FOR A MISTRIAL

## **INTRODUCTION**

The Sixth Amendment guarantees every defendant in this Court "the right … to be confronted with the witnesses against him." U.S. Const. amend. VI. It is one of the oldest and most fundamental safeguards in American criminal law. It does not bend to convenience. It does not yield to trial strategy. It cannot be sidestepped by careful phrasing. On Friday afternoon, in this courtroom, the government violated Andrew Left's rights under the Constitution in an act of prosecutorial misconduct. Mr. Left has been incurably prejudiced. The only remedy is a mistrial and dismissal with prejudice. In the alternative, Mr. Choi's relevant SEC testimony (as chosen by the defense) must be read into the record and a missing witness instruction against the government should be provided to the jury.

After six years of investigation, a superseding indictment, and two weeks of trial, the government has presented its case-in-chief. It chose its witnesses. It chose its evidence. And the government chose, deliberately, to keep one critical witness off the stand: Ryan Choi, Citron Capital's day-to-day operating principal and the central conduit through which Mr. Left contends he received the legal advice on which his good-faith defense depends. The government refused to immunize Mr. Choi. It did not call him. It opposed the defense's efforts to put his prior sworn testimony before the jury. *See* Gov't Opp. to Mot. for Defense-Witness Immunity (Dkt. 265).

But while Mr. Choi did not make an appearance during the trial, his testimony did. On the afternoon of May 22, 2026, during cross-examination of Mr. Left's securities counsel John Martel, Assistant United States Attorney Andrew Roach put the following question to the witness: "Sir, would it surprise you to know Mr. Choi said he never provided your legal advice to Mr. Left?" (Trial Tr. 118:7–8 (May 22, 2026) (rough).) That single sentence accomplished what the Confrontation Clause exists to prevent. It placed before this jury, in unmistakable form, the testimonial

accusation of an absent declarant whom the defense has never had any opportunity to cross-examine, and whose unavailability the government itself insisted upon. Making matters much worse, the government did not even correctly characterize Choi's testimony before the SEC—instead the government made it appear (falsely) that Choi never communicated legal advice to Mr. Left.

The Supreme Court foresaw this maneuver six decades ago. In *Douglas v. Alabama*, 380 U.S. 415 (1965), the Court held the Confrontation Clause is violated when the prosecution communicates a non-testifying declarant's accusatory statement to the jury through questions posed to another witness—and that the witness's answer (whether of "surprise," denial, or silence) does not cure the violation. *Id.* at 419–20. *Crawford v. Washington*, 541 U.S. 36 (2004), reaffirmed that testimonial statements of an absent declarant are inadmissible against a criminal defendant unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. *Id.* at 59. Neither precondition is met here. There has been no prior opportunity. There never will be. The government has seen to that.

The harm is irreparable and severe. Mr. Choi was Mr. Martel's primary point of contact at Citron—the bridge between counsel and client. By forcing Mr. Martel to express "surprise" at Mr. Choi's purported statement, and then by forcing him to concede on the next breath that he had no independent knowledge of Mr. Choi's communications with Mr. Left, the government inserted into this trial—in the form of an absent declarant's accusation—the precise factual proposition that, if credited, could highly prejudice Mr. Left's advice-of-counsel defense. There is no juror who can put that question out of mind. There is no instruction that can un-ring that bell.

Nor was the "surprise" question the only attempt to put Mr. Choi's out-of-court conduct before this jury through other witnesses. Through three different witnesses, the government placed before the jury the improper impression that the deletion of

evidence *by Mr. Choi* is part of this case.  It is not.  There is no evidence that Mr. Left deleted anything other than tweets years after producing them to the government, and no evidence that Mr. Left directed, requested, or participated in Mr. Choi's unilateral decision to clear his Telegram history.  The cumulative prejudice from those repeated, court-barred exposures compounds the Confrontation Clause violation.

The remedy that remains, and the only remedy that preserves the constitutional integrity of these proceedings, is a mistrial and dismissal of the indictment with prejudice.  Mr. Left hereby moves for one.

**LEGAL STANDARD**

A district court has discretion to declare a mistrial "whenever, in [its] opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated."  *United States v. Escalante*, 637 F.2d 1197, 1202 (9th Cir. 1980) (quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824)).  A mistrial is required where "there has been so much prejudice that an instruction is unlikely to cure it."  *Id.* at 1203. An indictment may be dismissed with prejudice "on the ground of outrageous government conduct if the conduct amounts to a due process violation. [or, i]f the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers." *See United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008).

**ARGUMENT**

I.  **The Government Violated the Confrontation Clause When It Placed Mr. Choi's Out-of-Court Statement Before the Jury Through a Question to Mr. Martel.**

A.  **The Government's Question Violated the Confrontation Clause.**

The Sixth Amendment guarantees every defendant "the right … to be confronted with the witnesses against him."  U.S. Const. amend. VI.  In *Crawford*,

- 3 -

2:24-CR-00456-VAP
DEFENDANT ANDREW LEFT'S RENEWED MOTION FOR A MISTRIAL

the Supreme Court held that this guarantee bars the use of "[t]estimonial statements of witnesses absent from trial" unless "the declarant is unavailable, and … the defendant has had a prior opportunity to cross-examine." 541 U.S. at 59. Neither prerequisite was met as to Mr. Choi.

*The statement was testimonial.* The statement Mr. Roach repeated to the jury—that Mr. Choi "said he never provided [Mr. Martel's] legal advice to Mr. Left"—was, on the government's own representations, drawn from Mr. Choi's prior sworn proceedings: his testimony before the SEC, which the government has affirmatively relied upon in its papers. *See, e.g.*, Govt's Opp. to Def.'s Mot. for Defense-Witness Immunity (Dkt. 265) at 10. Statements made in that setting are paradigmatic testimonial statements. *See Douglas*, 380 U.S. at 418–19 ("The primary object of the constitutional provision in question was to prevent depositions … being used against the prisoner in lieu of a personal examination and cross-examination of the witness") (quoting *Mattox v. United States*, 156 U.S. 237, 242 (1895)).

*The defense has not—and will not—have an opportunity to cross-examine Mr. Choi.* Mr. Choi has invoked his Fifth Amendment privilege and refused to testify without a grant of immunity—which is precisely why the defense moved this Court months ago to compel the government to immunize him. (Dkt. 223.) The government opposed (Dkt. 265) and the Court denied that motion. (Dkt. 328 at 14–16.) Mr. Choi's unavailability is the product of his Fifth Amendment invocation and the government's refusal to clear it.

*The "would it surprise you" formulation does not cure the violation.* The government argued at sidebar that Mr. Roach didn't "use[] the word testify," and that asking a witness whether it would "surprise" him to learn of an absent declarant's statement is not the introduction of that statement. (Trial Tr. 120:9–11 (May 22, 2026) (rough).) This question has already been asked and answered by the Supreme Court.

- 4 -

Six decades before *Crawford*, *Douglas* considered this exact maneuver: a prosecutor read a non-testifying co-defendant's confession to the jury in the form of questions to a witness who refused to answer. 380 U.S. at 416–17. The Court held that the questions themselves violated the Confrontation Clause: "petitioner's inability to cross-examine [the absent declarant] as to the alleged confession plainly denied him the right of cross-examination secured by the Confrontation Clause." *Id.* at 419. Although the prosecutor's reading of the co-defendant's testimony in the form of a question "was not technically testimony," the Court determined that it "may well have been the equivalent in the jury's mind of testimony that [the declarant] in fact made the statement," creating "a situation in which the jury might improperly infer both that the statement had been made and that it was true." *Id.*

Modern federal courts have applied the same principle to reverse convictions where the prosecution communicated an absent declarant's testimonial statement through questions to another witness. The Fifth Circuit in *United States v. Kizzee*, 877 F.3d 650 (5th Cir. 2017), vacated a conviction where the prosecutor's questions to a detective—*e.g.*, "Did you ask [the informant] whether or not he obtained the narcotics … from [the defendant]?"—conveyed the substance of a non-testifying informant's accusation, reasoning that "a prosecutor's questioning may introduce a testimonial statement by a nontestifying witness, thus implicating the Confrontation Clause." *Id.* at 655–60.

The First Circuit reached the same conclusion in *United States v. Ackerly*, 981 F.3d 70 (1st Cir. 2020), affirming a district court's grant of a new trial where a prosecutor's redirect question communicated to the jury that a non-testifying co-conspirator had pleaded guilty. There, as here, the government argued "that a single unanswered question presenting an unconfronted testimonial statement was an infraction too minimal to rise to the level of a constitutional violation" (although,

- 5 -

unlike here, "curative instructions followed the question"). *Id.* at 80. The First Circuit rejected the notion that the Confrontation Clause is "implicated only where testimonial evidence is actually <u>admitted</u> against the accused at trial," explaining that "pre-*Crawford* case law suggests that statements not in evidence sometimes can trigger a violation of a defendant's right to confrontation," and that *Douglas* is not abrogated by *Crawford*. *Id.* at 76–78 (emphasis in original). The court further held that a single question can suffice: "the Supreme Court's watershed decision in *Crawford* does not turn in any way on the number of times that a prosecutor insults a defendant's Confrontation Clause rights." *Id.* at 80 (collecting authorities).

The same logic compels the same result here. Mr. Roach's question communicated Mr. Choi's purported statement to the jury whole; Mr. Martel's "That would surprise me" did not erase what the jury heard; and the government then forced Mr. Martel to concede he had no independent knowledge of Mr. Choi's communications with Mr. Left, framing the entire advice-of-counsel defense as resting on the untested word of a man who never took the stand. (Trial Tr. 118:18–25 (May 22, 2026) (rough).) That is an egregious *Crawford* violation.

### B. The Government's Question Elicited Inadmissible False Testimony, Was Unduly Prejudicial, and Amounts to Misconduct.

Defense counsel objected contemporaneously to Mr. Roach's question on "facts not in evidence" grounds. (Trial Tr. 118:9 (May 22, 2026) (rough).) The Court overruled. (*Id.* at 118:10.) Mr. Martel answered that it "would surprise" him. (*Id.* at 118:11.) The question rested on a premise that Mr. Choi's actual sworn testimony does not support. Mr. Choi never testified, anywhere or in any forum, that he "never provided [Mr. Martel's] legal advice to Mr. Left."

To the contrary, what Mr. Choi testified to in his SEC deposition was the opposite: that he did not update Mr. Left on counsel's advice on a day-to-day basis, but that Mr. Left "knew I was talking to counsel in all aspects of the business and

asking him if all aspects of the business were fully compliant with securities laws," "knew I was talking to Mr. Martel about the strategy," and "generally knew I was talking with counsel all the time." Rosen Decl., Ex. A (Choi Dep. Vol. III) at 599:5–8, 599:13–14, 600:10–11. The gap between the prosecutor's question and what Mr. Choi actually said is not a quibble. The prosecutor took Mr. Choi's narrow, factually accurate statement that he did not provide daily updates and rebranded it as a categorical denial that Mr. Martel's advice ever reached Mr. Left. That cannot be reconciled with Mr. Choi's sworn testimony, and it cannot be reconciled with the Federal Rules of Evidence. Thus, not only did the prosecutor introduce obvious testimonial evidence into the record, but the prosecutor's characterization of the evidence at issue was false. Mr. Left has been subjected to double prejudice because of this, prejudice that has not yet been cured.

A prosecutor "commit[s] misconduct" when his question "mischaracterize[s]" the substance of a witness's prior statement. *United States v. Wells*, 879 F.3d 900, 936 (9th Cir. 2018). The government chose, with full knowledge of what Mr. Choi actually said under oath, to put before this jury a précis of Mr. Choi's testimony that Mr. Choi did not give. The Ninth Circuit has held that this conduct requires a new trial. In *United States v. Blueford*, 312 F.3d 962, 968 (9th Cir. 2002), the Circuit explained: "[I]t is decidedly improper for the government to propound inferences that it knows to be false, or has very strong reason to doubt, particularly when it refuses to acknowledge the error afterwards…." As the Circuit emphasized, the line between "a lawyer 'ask[ing] the jury to infer only things that he believed in good faith *might* be true' and making 'factual assertions he well knew were untrue' is 'the difference between fair advocacy and misconduct.'" *Id.* (emphasis in original) (quoting *United States v. Kojayan*, 8 F.3d 1315, 1321 (9th Cir. 1993)). The government crossed that line. *Blueford* reversed and remanded for a new trial. A mistrial is warranted here.

- 7 -

2:24-CR-00456-VAP
DEFENDANT ANDREW LEFT'S RENEWED MOTION FOR A MISTRIAL

The surprise question also violated a separate Ninth Circuit rule on cross-examination tactics.  In *United States v. Sanchez*, 176 F.3d 1214 (9th Cir. 1999), the Circuit reversed a conviction and found the prosecution's cross-examination erroneously compelled the defendant to take a position on another witness's out-of-court statement.  *Id.* at 1219–20.  The Ninth Circuit adopted the reasoning of sister circuits holding that "counsel should not ask one witness to comment on the veracity of the testimony of another witness," because "[d]eterminations of credibility are for the jury, not for witnesses."  *Id.* at 1219–20 (first quoting *United States v. Sullivan*, 85 F.3d 743, 750 (1st Cir. 1996)); second quoting *United States v. Richter*, 826 F.2d 206, 208 (2d Cir. 1987)).  Mr. Roach's "would it surprise you" question forced Mr. Martel into precisely that position: if he affirmed surprise, he was branding Mr. Choi untruthful; if he denied surprise, he was conceding that his own direct testimony was misleading.  Either way, the question compelled an opinion on Mr. Choi's veracity that only the jury was entitled to form.

The Ninth Circuit also condemns this tactic as "waft[ing] an unwarranted innuendo into the jury box." *United States v. Davenport*, 753 F.2d 1460, 1463 (9th Cir. 1985).  *Davenport* reversed and remanded for a new trial where a prosecutor asked an alibi witness whether the defendant had asked her to help rob a bank, explaining that "the prejudice to the defendant was [ ] created by the question itself rather than by the testimony given in response," because the question allowed the prosecution to "waft an unwarranted innuendo into the jury box, knowing that the witness' denial will only serve to defend her credibility, while leaving uncontradicted the reference to the defendant's prior bad conduct." *Id.*  *Davenport* further held that "[a] limiting instruction would be ineffective in preventing an unjustified innuendo from coming to the attention of the jury." *Id.*  Each of *Davenport*'s elements is present here: the prejudice is in the question itself; no limiting instruction was given (and

none could erase the innuendo); and the actual sworn record contradicts the question's premise.

## II.   The Government Has Repeatedly Placed the "Deletion" of Documents Before This Jury, Leaving the Improper Impression That Mr. Left Directed or Participated in Destroying Evidence.

The "would it surprise you" question did not arise out of nowhere. It was the culmination of a sustained effort by the government across multiple witnesses—from the case agent, to a paid causation expert, to a defense witness on cross-examination—to put before this jury the impression that the deletion of documents is part of this case against Mr. Left. The result, as of today, is a record in which the jury has heard the word "deletion" associated with Mr. Left repeatedly, even though there is no evidence that Mr. Left deleted anything other than tweets *years* after producing them to the government, and no evidence that Mr. Left directed, requested, or participated in Mr. Choi's unilateral decision to clear his Telegram history.

The first chapter occurred on May 14, 2026. During Inspector Hallstrom's direct examination, the government displayed Exhibit 102A (Rosen Decl., Ex. B) and walked the case agent through a Telegram entry under Mr. Choi's name reading "history cleared" on the day after the FBI first approached Mr. Choi. (Trial Tr. 156:18–157:6 (May 14, 2026).) The Court had to intervene at sidebar after the defense objected as "highly prejudicial" that jurors were "going to think my client had something to do with the erasure of those messages." (*Id.* at 155:13–15.) The Court permitted the question *only* on the condition that the government make clear the deletion was Mr. Choi's, not Mr. Left's. (*Id.* at 156:5–9.) Even with the limiting follow-up, the jury was given an indelible image: Mr. Choi's Telegram history with Mr. Left, blanked out, the day after the government came knocking. We know this jury is particularly attuned to whether conduct occurred before or after the investigation commenced from a juror note.

- 9 -

The second chapter occurred on May 21, 2026.  Dr. Matthew Cain repeatedly volunteered references to "deleted" evidence, stating that he had no "direct access to the Tweets and the reports" because "all of these things were deleted" (Trial Tr. 122:24–25 (May 21, 2026)), and that he could not "review the actual reports" because "many of those were deleted."  (*Id.* at 125:8–10).  Those references violated this Court's pre-trial in limine ruling barring evidence of Citron's deleted tweets and use of encrypted messaging.  (Order on Mots. *in Limine* (Dkt. 328) at 17–18.)  At sidebar, the Court admonished Dr. Cain on the record.  (Trial Tr. 147:21–148:2 (May 21, 2026).)  That this admonition was needed at all confirms that the government had not instructed its witness to comply with the Court's orders barring deletion evidence.

The third chapter occurred on May 22, 2026.  The government pressed deletion-related questioning of Mr. Martel in three steps.  First, it asked Mr. Martel whether he had ever told Mr. Choi "he could delete documents."  (Trial Tr. 137:20 (May 22, 2026) (rough).)  The defense objected on prior-ruling grounds; the Court overruled; Mr. Martel answered, "No."  (*Id.* at 137:21–24.)  Second, even though Exhibit 102A had been admitted earlier subject to the May 14 limiting conditions, the government attempted to publish it again during the cross of a defense witness who had nothing to do with its preparation.  The defense objected on prior-ruling grounds.  This time the Court sustained. (*Id.* at 137:25–138:3.)  Third, despite the sustained objection, the government immediately asked Mr. Martel: "Sir did Mr. Choi ever tell you that he had deleted documents?"  Mr. Martel answered "No," and the defense was forced to demand a sidebar.  (*Id.* at 138:5–9.)

At the sidebar that followed, the Court confirmed the scope of its pre-trial ruling: the government could not "refer to use Telegram [or] draw any inference about Telegram as secret or platform where messages kept secret," and acknowledged that any Choi deletion "took place after" the period charged in the Indictment.  (Trial Tr.

- 10 -

138:17–22 (May 22, 2026) (rough).) Defense counsel explained that nothing he had elicited on direct "indicates Telegram messages between Mr. Left and Mr. Choi to be preserved [or] any obligation [Mr. Martel] advised at all on destruction of documents," and the government's "refus[al] to give immunity didn't open [the] door to any of this." (*Id.* at 139:24–140:5). The Court sustained the renewed objection on Rule 403 grounds. (*Id.* at 142:9–11.)

Defense counsel moved for a mistrial with prejudice at the sidebar. (*Id.* at 141:6–11.) The Court reserved on that motion. (*Id.* at 141:12.) The Court subsequently denied the motion in chambers. This motion is the renewed presentation of that request.

The questioning was also independently irrelevant. The Indictment charges conduct from 2018 through 2021. Mr. Choi's alleged deletion—whatever its precise contours—occurred after Mr. Choi came under government investigation, which was after the period charged. The advice-of-counsel defense in this trial concerns Mr. Left's good-faith reliance on Mr. Martel's advice *during* the charged period regarding Citron's catalyst-based trading strategy, its disclaimers, its investor letters, and related matters. Whatever Mr. Choi did with documents after the government began investigating him—and there is no evidence that Mr. Left directed, requested, or participated in any deletion, because he didn't—has no probative value on whether Mr. Left harbored a good-faith belief during the charged conduct that Citron's practices were lawful. That is precisely why this Court excluded the deletion evidence *in limine* on Rule 403 grounds. (Dkt. 328 at 17–18.)

The Fifth Circuit's decision in *United States v. Mix*, 791 F.3d 603 (5th Cir. 2015), is directly on point. *Mix* was a prosecution centered on document deletion, in which the district court had specifically barred the government from putting evidence of deletion by the defendant's supervisor before the jury. *Id.* at 609. A juror

overheard that others were being prosecuted for deleting documents, and the Fifth Circuit affirmed a new trial—holding that the implicit suggestion of a "scheme" to delete documents was "just the kind of information that could affect a juror," that the resulting prejudice was "not cured by generic instructions to disregard extrinsic information," and that being "part of [an] organization that perpetrated allegedly criminal acts[ ] could lead the jury to find [the defendant] guilty by association." *Id.* at 609–11. As in *Mix*, there is no evidence Mr. Left directed Mr. Choi's clearing of their Telegram history, and yet, after three separate exposures across three separate witnesses, the jury has been left with the firm impression that deletion is part of this case—and that Mr. Left is part of the deletion. That is the precise "guilt by association" risk this Court flagged at the very first sidebar on May 14.

The government has repeatedly placed deletion before the jury—through Exhibit 102A, through a case agent, through an expert who disregarded a Court order, and through a question pressed after a sustained objection—knowing Mr. Left did not direct, request, or participate in any deletion by Mr. Choi. The cumulative impression of consciousness of guilt by deletion has become a thread woven through this trial, and it cannot be unwoven by a curative instruction four days later.

## III. The Government's Selective Withholding of Immunity Magnifies the Constitutional Harm.

A defendant ordinarily cannot compel the government to immunize a witness. *United States v. Westerdahl*, 945 F.2d 1083, 1086 (9th Cir. 1991). But that rule has constitutional limits: "where the fact-finding process is intentionally distorted by prosecutorial misconduct, and the defendant is thereby denied a fair trial." *Id.* at 1086–87. *Westerdahl* reversed where the government declined to immunize a defense witness whose testimony might have contradicted testimony by a government witness, which "may have distorted the fact-finding process" and "denied [the defendant] his due process rights." *Id.* at 1087.

- 12 -
2:24-CR-00456-VAP
DEFENDANT ANDREW LEFT'S RENEWED MOTION FOR A MISTRIAL

The principle reflected in *Westerdahl* is one of basic fairness. The government alone holds the power to confer use immunity under 18 U.S.C. § 6003. When the government uses that power as a shield to keep a key defense witness off the stand—and then exploits that absence as a sword against the defendant—the prosecution has stepped outside the role assigned to it in our adversarial system.

This Court previously declined to compel immunity for Mr. Choi. But the conduct that now requires this Court's attention is qualitatively different from what the prior order addressed. The government has not merely withheld immunity from Mr. Choi. It has, in addition, placed Mr. Choi's testimonial accusation against Mr. Left before the jury, knowing full well that the defense cannot answer it because the government has refused to permit Mr. Choi to take the stand. That is the precise fact-finding distortion *Westerdahl* identifies as constitutionally intolerable. The government cannot have it both ways. It cannot make Mr. Choi unavailable and then weaponize Mr. Choi's out-of-court statement—in a highly misleading manner—to defeat a defense.

The Ninth Circuit confronted a closely analogous problem in *United States v. Leal-Del Carmen*, 697 F.3d 964 (9th Cir. 2012). There, the government used its unique sovereign authority—the power to deport an alien—to put a witness it knew had given exculpatory testimony "outside the reach of defense counsel and the district court." *Id.* at 971. Chief Judge Kozinski held that this violated the defendant's constitutional right to present a defense: "The government is uniquely empowered to [render witnesses unavailable].… It may not use that power to give itself an unfair advantage." *Id.* The government's "duty of evenhandedness and fair play … allows it to 'strike hard blows' but not 'foul ones.'" *Id.* (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

- 13 -

The same principle controls here.  Use immunity under 18 U.S.C. § 6003 is exactly the "unique sovereign authority" *Leal-Del Carmen* addressed: only the government can grant it; only the government can clear Mr. Choi's Fifth Amendment invocation; and only the government can decide whether to make him available to be confronted.  The government has exercised that authority by refusing to immunize Mr. Choi—and has then used Mr. Choi's resulting unavailability as a sword, smuggling in his purported out-of-court statements through witnesses incapable of being cross-examined on them.  That is the precise "unfair advantage" *Leal-Del Carmen* forbids—and the "foul blow" *Berger* rules out.

### IV.   <u>No Remedy Short of a Mistrial and Dismissal with Prejudice Will Suffice.</u>

Where, as here, the constitutional violation is targeted, severe, and central to the defense, only a mistrial can restore Mr. Left's right to confront the witnesses against him.  Because no lesser remedy will fully address the damage, the appropriate sanction is dismissal with prejudice.  A district court may dismiss an indictment under its inherent supervisory powers "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020) (quoting *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010)).  Under those powers, a court may dismiss with prejudice for prosecutorial misconduct upon a showing of "(1) flagrant misbehavior and (2) substantial prejudice," and a conclusion that "no lesser remedial action" will fully address the damage. *Id.* at 1031 (first quoting *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993); second quoting *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008)).  Both prongs are satisfied here.  The government's misconduct was flagrant: it violated the Confrontation Clause, this Court's pre-trial *in limine* ruling, and

2:24-CR-00456-VAP
DEFENDANT ANDREW LEFT'S RENEWED MOTION FOR A MISTRIAL

*Davenport*'s good-faith requirement, while knowingly misrepresenting the sworn record of Mr. Choi's testimony in the government's own possession. The prejudice is substantial, for all the reasons set forth above. And no lesser remedy will do: a mistrial without prejudice would "advantage the government, … allowing it to … try out its case, identify any problem areas, and then correct those problems in a retrial." *Id.* at 1043 (quoting *Chapman*, 524 F.3d at 1087).

**V.    In the Alternative, the Court Should Order A Factual Stipulation Adopting Mr. Choi's Sworn Testimony and Deliver Ninth Circuit Model Criminal Jury Instruction 4.13**

Even if the Court is disinclined to grant a mistrial, two remedies short of mistrial fit the constitutional and rule violations described above. *First*, the Court should order a factual stipulation, drafted by the defense, be read to the jury by the Court, that summarizes relevant portions of Mr. Choi's SEC testimony. *Second*, the Court should deliver Ninth Circuit Model Criminal Jury Instruction 4.13.

**A.    Mr. Choi's SEC Testimony Is Admissible Under Rules 804(b)(6) and 807.**

The government has rendered Mr. Choi unavailable by withholding use immunity under 18 U.S.C. § 6003, then exploited that unavailability against Mr. Left. Rule 804(b)(6) admits a hearsay statement against "a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result." Fed. R. Evid. 804(b)(6). The Ninth Circuit applied that rule in *Leal-Del Carmen* to admit the statements of a witness the government had made unavailable, reasoning that admission "would prevent it from benefitting from its own wrongdoing." 697 F.3d at 974. Rule 807, the residual exception, provides an independent basis. *See* Fed. R. Evid. 807. The Ninth Circuit has held that sworn statements of an unavailable witness made "voluntarily based on facts within [his] personal knowledge" bear the "same 'circumstantial guarantees of trustworthiness' as the exceptions listed in Rules 803 and 804" and are admissible under the residual

- 15 -

exception. *Leal-Del Carmen*, 697 F.3d at 974 (quoting *United States v. Sanchez-Lima*, 161 F.3d 545, 547 (9th Cir. 1998)). Mr. Choi's SEC testimony was given under oath, based on his personal knowledge as Citron Capital's day-to-day operating principal, and—because Mr. Choi has invoked the Fifth and the government refuses to clear it—the most probative evidence on Mr. Choi's knowledge of Mr. Martel's advice that is reasonably available.

### B. Mr. Choi's SEC Testimony Is Exculpatory on the Advice-of-Counsel Defense.

The point of admitting Mr. Choi's SEC testimony through a stipulation is not academic; his sworn account is exculpatory on the very issue the prosecutor's surprise question put before the jury. Mr. Choi testified that Mr. Left "knew I was talking to counsel in all aspects of the business" (Choi Dep. Vol. III) at 599:5–8); that Mr. Left "knew I was talking to Mr. Martel about the strategy" (*id.* at 599:13–14); and that Mr. Left "generally knew I was talking with counsel all the time."[1] (*Id.* at 600:10–11.) Mr. Choi further testified that he asked Mr. Martel about compliance "on numerous occasions" (*id.* at 596:7–8), "consistently check[ed] in with him" about evolving SEC enforcement (*id.* at 618:7–8), and brought scalping and pump-and-dump cases to Mr. Martel "even before 2018" for analysis. (*Id.* at 618:13–619:2.) Mr. Martel "always told [Mr. Choi] it was completely legal" (*id.* at 614:14), and "never" "flagg[ed] or rais[ed]" that the conduct could potentially be viewed as market manipulation." (*Id.* at 615:3–8.) Asked whether there was "a holding period" or whether "it matter[ed] if we trade in seconds, minutes, hours," Mr. Martel's answer was "No, there is no holding period." (*Id.* at 580:7–11.) That sworn account is directly contrary to the proposition Mr. Roach planted before the jury through his surprise question; and it is corroborated by the contemporaneous emails between Mr.

---

[1] The SEC testimony transcript of Mr. Choi was previously provided to the Court as <u>Exhibit B</u> to the Motion for Defense Witness Immunity. *See* Dkt. 223.

2:24-CR-00456-VAP
DEFENDANT ANDREW LEFT'S RENEWED MOTION FOR A MISTRIAL

Martel and Mr. Choi already in evidence, as well as by Mr. Martel's own direct testimony.

The most appropriate remedy for the harm the government has created is for the Court to read to the jury a factual stipulation, drafted by the defense, relaying relevant and curative portions of Mr. Choi's testimony. The prejudice the defense seeks to cure is that the jury heard a misrepresentation of Mr. Choi's sworn testimony given under the institutional weight of the United States government. Such a weight can only be offset by the voice of the Court, who the jury will credit without qualification.

The need for this testimony to be before the jury is heightened by the fact that Mr. Left is currently on the witness stand. Mr. Left will testify that the prosecutor's rendition of Mr. Choi's testimony was false. The jury will be less likely to credit Mr. Left's testimony knowing that the prosecutor himself, a representative of the United States government, had already informed the jury as to the substance of Mr. Choi's "testimony." The jury must be firmly and fully directed by the Court that the prosecutor's question was inappropriate and rested on false evidence. Without that, Mr. Left will not get a fair trial.

Further, because the need to present Mr. Choi's testimony arises directly from the government's own misconduct, the government should have no say in selecting which portions of testimony are placed before the jury by stipulation. That decision must rest with the defense and the Court. Any other rule would allow the government to benefit from its own wrongdoing by further shaping the evidentiary record to its preferred contours. Such a stipulation must include, at a minimum, the facts:

- (i) that Mr. Choi testified under oath that Mr. Left "knew [Mr. Choi] was talking to counsel in all aspects of the business and asking him if all aspects

- 17 -
2:24-CR-00456-VAP
DEFENDANT ANDREW LEFT'S RENEWED MOTION FOR A MISTRIAL

of the business were fully compliant with securities laws," Choi Dep. Vol. III at 599:5–8;

- (ii) that Mr. Choi testified under oath that Mr. Left "knew [Mr. Choi] was talking to Mr. Martel about the strategy," *id.* at 599:13–14, and "generally knew [Mr. Choi] was talking with counsel all the time," *id.* at 600:10–11;

- (iii) that Mr. Choi testified under oath that he asked Mr. Martel about compliance "on numerous occasions," *id.* at 596:7–8, "consistently check[ed] in with him" about evolving SEC enforcement, *id.* at 618:7–8, and brought scalping and pump-and-dump cases to Mr. Martel for analysis "even before 2018," *id.* at 618:13–619:2;

- (iv) that Mr. Choi testified under oath that Mr. Martel "always told [him] it was completely legal," *id.* at 614:14, and "never" "flagg[ed] or rais[ed] that the conduct could potentially be viewed as market manipulation." (*Id.* at 615:3–8.)

- (v) that Mr. Choi testified under oath that, when asked whether there was "a holding period" or whether "it matter[ed] if we trade in seconds, minutes, hours," Mr. Martel's answer was "No, there is no holding period," *id.* at 580:7–11; and

- (vi) that Mr. Choi did not testify, in any forum or proceeding, that he "never provided [Mr. Martel's] legal advice to Mr. Left," and that the prosecutor's suggestion to the contrary mischaracterized the sworn record.

The Court should read the stipulation to the jury at the earliest opportunity and before Mr. Left concludes his testimony, so that the jury hears the corrected record before it is asked to weigh his credibility on the same subject and should reinforce its substance in the final charge. So administered, a court-read stipulation replaces the

prosecutor's false rendition of Mr. Choi's sworn testimony with the Court's authoritative statement of what that testimony actually was. It does not undo the Confrontation Clause violation—nothing short of a mistrial and dismissal with prejudice can do that—but it anchors the jury's deliberations in the sworn record, and it denies the government the benefit of its own misconduct.

### C.    A Missing-Witness Instruction Is Warranted.

Ordinarily, "the government's failure to grant immunity to a witness who invokes the Fifth Amendment right not to testify does not by itself entitle a defendant to a missing witness instruction." *United States v. Rios*, 636 F.3d 168, 172 (5th Cir. 2011).  But courts have recognized an exception "where there is a substantial showing of an abuse of prosecutorial discretion or where circumstances indicate that the witness would have been exculpatory." *Id.* Both prongs are met here.   The government did not merely decline to immunize Mr. Choi; it used Mr. Choi's resulting unavailability as a sword, putting his purported out-of-court statements and conduct before the jury through Inspector Hallstrom (the May 14 display of Exhibit 102A), and Mr. Martel (the May 22 surprise question and deletion line of questioning).  That is a gross abuse of prosecutorial discretion.  And Mr. Choi's sworn SEC testimony, summarized above, is exculpatory on the advice-of-counsel defense the government attempted to undermine—satisfying the exception's second, independent prong.

Each remedy stands on its own.  Together, they restore at least some of the constitutional ground the government took on May 22.  Neither is an adequate substitute for a mistrial—but each is a step the Court can take to preserve the integrity of the verdict if it is disinclined to discharge the present jury.

### CONCLUSION

This motion presents the question: whether a federal jury that has been told—in the form of a prosecutor's question, never tested by cross-examination, never

- 19 -

spoken under oath in this trial, and premised on falsities—that the defendant's own securities counsel was kept in the dark by the defendant's business partner, can return a fair verdict on the central counts of this Indictment. The answer the Constitution gives is clearly no.

For the foregoing reasons, Mr. Left renews his motion and asks this Court to declare a mistrial, with prejudice. If the Court is disinclined to grant the motion, then at minimum, the Court should: (i) read to the jury, and admit into evidence, a stipulation conveying relevant portions of Mr. Choi's sworn SEC testimony needed to contextualize the testimony the government improperly recited; and (ii) deliver to the jury Ninth Circuit Model Criminal Jury Instruction 4.13. The jury must know that the government attorney's rendition of sworn testimony was false.

Dated: May 25, 2026

Respectfully submitted,

DYNAMIS LLP

/s/ Eric S. Rosen
Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Emily J. Scarisbrick (*pro hac vice*)

AARON KATZ LAW LLC
Aaron Katz (*pro hac vice*)

WEIL, GOTSHAL & MANGES LLP
Adam Fee
Ben Nicholson

*Attorneys for Defendant Andrew Left*

2:24-CR-00456-VAP
DEFENDANT ANDREW LEFT'S RENEWED MOTION FOR A MISTRIAL

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify, as counsel for Defendant Andrew Left, that this memorandum of points and authorities contains 6228 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 25, 2026

*s/ Yusef Al-Jarani*
Yusef Al-Jarani

2:24-CR-00456-VAP
DEFENDANT ANDREW LEFT'S RENEWED MOTION FOR A MISTRIAL