TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division
BENEDETTO L. BALDING (Cal. Bar No. 244508)
ANDREW M. ROACH (Cal. Bar No. 293375)
Assistant United States Attorneys
LORINDA I. LARYEA
Chief, Fraud Section
MATTHEW REILLY
Acting Assistant Chief
Criminal Division, Fraud Section
     1200/1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2274/0306
     E-mail:   benedetto.balding@usdoj.gov
               andrew.roach@usdoj.gov
               matthew.reilly2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

             FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:24-CR-456-VAP |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT ANDREW LEFT'S RULE 29 MOTION |
| v. | |
| ANDREW LEFT, | |
| Defendant. | |

     Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Benedetto L. Balding and Andrew M. Roach, and Acting Assistant Chief Matthew Reilly, hereby files its Opposition to Defendant Andrew Left's Rule 29 Motion.

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 26, 2026                    Respectfully submitted,

                                       TODD BLANCHE
                                       Acting Attorney General

                                       BILAL A. ESSAYLI
                                       First Assistant United States
                                       Attorney

                                       JENNIFER L. WAIER
                                       Chief Assistant United States
                                       Attorney
                                       Chief, Criminal Division


                                            /s/ Andrew M. Roach
                                       BENEDETTO L. BALDING
                                       ANDREW M. ROACH
                                       MATTHEW REILLY

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE


TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION..................................................1

II.   LEGAL STANDARD...............................................2

III.  ARGUMENT.....................................................3

      A.    The Government Presented Sufficient Evidence to Allow
            a Rational Factfinder to Find Defendant's Statements
            and Omitted Facts Were Material..........................3

IV.   CONCLUSION..................................................18

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                 PAGE

Cases

In re Apple Computer Sec. Litig.,
  886 F.2d 1109 (9th Cir. 1989) ............................... 16, 17

In re Diamond Foods, Inc., Sec. Litig.,
  295 F.R.D. 240 (N.D. Cal. 2013) ................................ 11

In re Xerox Corp. Sec. Litig.,
  2009 WL 8556135 (D.Conn. Apr. 22, 2009) ....................... 11

Jackson v. Virginia,
  443 U.S. 307 (1979) ............................................ 2

SEC v. Rana Rsch., Inc.,
  8 F.3d 1358 (9th Cir. 1993) .................................... 8

United States v. Alarcon-Simi,
  300 F.3d 1172 (9th Cir. 2002) .................................. 3

United States v. Alvarez-Valenzuela,
  231 F.3d 1198 (9th Cir. 2000) .................................. 3

United States v. Bilzerian,
  926 F.2d 1285 (2d Cir. 1991) .................................. 17

United States v. Ferguson,
  553 F. Supp. 2d 145 (D. Conn. 2008) ........................... 10

United States v. Gudino,
  432 F.2d 433 (9th Cir. 1970) ................................ 3, 13

United States v. Lucas,
  963 F.2d 243 (9th Cir. 1992) ................................ 2, 15

United States v. Martoma,
  993 F. Supp. 2d 452 (S.D.N.Y. 2014) ........................... 11

United States v. Nevils,
  598 F.3d 1158 (9th Cir. 2010) ............................ 2, 3, 14

United States v. Richter,
  782 F.3d 498 (9th Cir. 2015) ................................... 2

United States v. Rocha,
  598 F.3d 1144 (9th Cir. 2010) .................................. 2

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                           PAGE

Statutes

15 U.S.C. §§ 78j(b), 78ff............................................... 3

18 U.S.C. § 1348(1).................................................... 3

Rules

Federal Rule of Criminal Procedure 29...........................2, 3, 8

Regulations

17 C.F.R. § 240.10b-5..............................................3, 7

Other Authorities

Ninth Circuit Model Criminal Instruction No. 15.47.................. 8

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

The government provides the following in response to the Court's instruction to provide directed briefing on the issue of materiality in opposition to defendant Andrew Left's Rule 29 motion.[1]

Particularly on the minimal Rule 29 standard, the government has introduced sufficient evidence for the jury to find that defendant's statements and omitted facts were material.  Ample evidence supports the materiality of his statements and omitted facts in the form of defendant's own statements and text messages, the statements of others, the testimony of retail investors, company executives, and stock analysts, and, finally, the testimony of the government's materiality expert Dr. Matthew Cain.

Notwithstanding this ample evidence, defendant argues the government failed to show the relevant context for the jury to make a materiality determination.  While this argument would only go to the weight of Dr. Cain's opinions, and not even be the proper subject of a Rule 29 motion, it is still without merit.  Dr. Cain's testimony, as explained further below, went into detail about his methodology for analyzing defendant's tweets along with all other relevant information and confounding information during the time period in question.  Based on his review, he determined that not only did defendant's tweets alter the total mix of information, and therefore were material, but that the omitted information, namely, defendant's

---

[1] The government provides this directed briefing in response to the Court's direction at the May 22, 2026 in-chambers conference. The government reserves the opportunity to submit additional briefing on other issues raised in defendant's motion should the Court desire. The government incorporates its oral arguments from May 22, 2026 on this and other issues as part of its opposition.

inconsistent trading with his public statements, would have been material.  (Cain Testimony, Trial Day 9 (05/21/26) at 62:11-23 ("Q. So at base, would have mattered to the market if the defendant's skin in the game differed from his public statements?  A. Yes, it would."))  Additionally, numerous media articles have been entered into evidence for the jury to have sufficient context about the relevant companies during these narrow intraday windows to properly and fully assess materiality.  All of this is beyond the other evidence of materiality.  This is more than sufficient to submit the issue to the jury on this point.  At bottom, drawing all inferences in favor of the government, the government has presented sufficient evidence on the point of materiality to defeat defendant's motion.

## II.  LEGAL STANDARD

A motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 is governed by the two-step process set forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also United States v. Nevils, 598 F.3d 1158, 1161, 1164 (9th Cir. 2010) (en banc).  First, the court "construe[s] the evidence in the light most favorable to the prosecution."  Nevils, 598 F.3d at 1161 (internal quotations omitted).  In performing this first step, "[t]he government is entitled to all reasonable inferences that [can] be drawn from the evidence."  United States v. Lucas, 963 F.2d 243, 247 (9th Cir. 1992).  Second, the court must evaluate whether the evidence "is adequate to allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt."  United States v. Richter, 782 F.3d 498, 501 (9th Cir. 2015) (citations omitted).  The Ninth Circuit has explained that this is a high hurdle, United States v. Rocha, 598 F.3d 1144, 1153 (9th Cir. 2010),

2

and any conflicts in the evidence [must] be resolved in favor of the prosecution. United States v. Alvarez-Valenzuela, 231 F.3d 1198, 1201-02 (9th Cir. 2000).

A defendant moving for relief under Rule 29 cannot meet his burden by showing that an innocent explanation of the evidence is as likely as the incriminating explanation advanced by the government. Nevils, 598 F.3d at 1167 (rejecting prior cases that required reversal when innocent explanation of evidence "was not 'any less likely than the incriminating explanation advanced by the government'"). Moreover, "[i]t is not the district court's function to determine witness credibility when ruling on a Rule 29 motion." United States v. Alarcon-Simi, 300 F.3d 1172, 1176 (9th Cir. 2002) (affirming denial of Rule 29 motion where defendant's theory was that "the [g]overnment's witnesses were not credible"). The testimony of only a single witness can be sufficient in finding the government met its burden under Rule 29. See, e.g., United States v. Gudino, 432 F.2d 433, 434 (9th Cir. 1970) ("The testimony of the one witness, if believed, was sufficient to support the conviction, and the resolution of any question as to his credibility was properly entrusted to the jury.")

**III. ARGUMENT**

**A. The Government Presented Sufficient Evidence to Allow a Rational Factfinder to Find Defendant's Statements and Omitted Facts Were Material**

Materiality is a common element in all of the counts against defendant. Under both securities fraud, in violation of 18 U.S.C. § 1348(1) (Count One) and securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5 (Counts Two through Seventeen), the government must prove materiality of defendant's

3

statements or facts omitted.  (See Dkt. 355 (Preliminary Jury Instructions) at 11, 19.)  Here, the jury heard ample evidence about the materiality of defendant's statements and the facts he omitted to submit this case to the jury.

As an initial matter, defendant's own statements provide sufficient evidence of the materiality of his affirmative statements as well as his omissions.  Defendant's text messages underscore his knowledge that he could impact the market, see, e.g., GX101A ("I have a hot voice in cannabis . . . Let's take a[d]vantage of it . . . Stop being such a pussy"), and the fact that defendant even told others to trade around his tweets (so that they too could profit from them) shows that he knew his statements and omissions were material because he knew that retail investors would trade based on his tweets, see, e.g., GX114A ("Short Cron . . . Turn on CNBC . . . Did you make money today?").  Other evidence further confirms that defendant knew his statements could move the markets.  Defendant himself touted a newspaper's statement that he could "send a stock tumbling with a single tweet." (GX811 at 6.)  And he even acknowledged to another individual his power to move the markets, and that part of his strategy was to ensure algorithmic trading models picked up his tweets in order to move the market.  (GX116A ("Trying to change narrative momentum and catch some algorithms")).[2]

Defendant's and others' statements further underscore the materiality of defendant's statements and omitted information.  For example, as the Court is aware, defendant publicly criticized Harry

---

[2] The government does not recount all of the evidence that goes to materiality.  It simply provides enough illustrative examples to survive the Rule 29 challenge.

Markopolos's short report on GE (GX12, GX12A, GX12B) and Markopolos's failure to disclose the hedge fund that Markopolos was working with. In doing so, defendant spoke at length about Citron's purported independence, with defendant writing, among other things, that "in 18 years of publishing, [Citron] have never been compensated by a third party to publish research.  More important, compensation tied to the 'success of a trade' would not pass internal compliance nor would it pass compliance of any fund that Citron would collaborate with on ideas," and "Harry [Markopolos] is being paid a % of profits from an unnamed hedge fund that is short GE" and "[n]o credible hedge fund or short seller would ever do this."  (GX12A.)  The jury has now seen evidence that would allow them to find that these statements were false or misleading.  But relevant here, the fact that defendant himself criticized Markopolos for not disclosing Markopolos's work with hedge funds to investors allows a reasonable jury to infer that defendant himself believed such a relationship with a hedge fund and "compensation tied to the 'success of a trade'" was material to investors -- why else criticize Markopolos for failing to disclose? But defendant went further than his public criticism of Markopolos. Private conversations between him and a peer short seller show defendant continuing to criticize Markopolos with defendant stating that "[a] fund came to him with the idea and he put his name on it . . . when you start lying about why you did this . . . the whole thing is off . . . he should disclose the fund."  (GX361.)  Such conduct and statements underscore defendant's own personal view of the materiality of such information -- material information he omitted in his response to Markopolos's GE Report in GX12A. Defendant's admissions, particularly coupled with permissible

inferences drawn in the government's favor, are sufficient to establish materiality.

Similarly, questions asked by the media -- including questions relating to defendant's personal positions -- further prove the materiality of defendant's statements and omitted information, see, e.g., GX29A (CNBC Host Melissa Lee asking defendant, "Here's what's relevant to people watching.  Are you just as short the stock right now as you were at the beginning of the day?").  The fact that defendant was repeatedly asked by the media about his positions -- which he omitted from his commentary -- demonstrates the materiality to reasonable investors of this information and allows the jury to infer based on this and other evidence what was important to the markets.  And again, a jury could also infer that he lied about how much of his position he covered because he (accurately) believed the information was material.  (GX29A.)

The government did not stop there, however.  The government also introduced testimony of retail investors who confirmed the materiality of defendant's statements and omitted information.  Each of the retail investors explained the materiality of defendant's statements and his omitted information for certain tickers.

Adam Gray, for example, explained that defendant was one of the sources he would read to learn about the stock market and cannabis stocks in particular.  (Gray Testimony, Trial Day 4 (5/14/26) at 18:1-3, 24:14-22.)  Gray, who was considering buying CRON at the time, explained that it was "absolutely" important to his consideration if defendant "was trading different than what he was saying in his Tweet and report."  (Gray Testimony, Trial Day 4 (5/14/26) at 33:12-21.)

Billy Banks testified that he recalled defendant publicly stating he was going to "keep on shorting Namaste until it goes to zero." (Banks Testimony, Trial Day 4 (5/14/26) at 105:10-24.) Banks testified that he believed that defendant would, in fact, keep shorting the stock to zero and was "horrified" at the prospect of his investment going to zero. (Id.) He sold his investment at a loss to "exit" the company and "cut his losses" because he could "not justify holding on" any longer. (Id. at 106:3-13.) Defendant, of course, did not short Namaste until it went to zero (or even close to it) and instead he and his Anson trading partner decided to "cover a bunch" of their Namaste stock shortly after his report. (GX101 (Defendant: "should we cover all namaste[][?]". . . . [Individual]: "we should cover a bunch").) Had Banks known the truth of defendant's affirmative statements and omitted information, i.e., that defendant did not intend to short Namaste until zero, Banks testified that he would have "held the stock longer" because he "believed in Namaste." (Id. at 106:14-107:2.) The same was true as to how Banks would have operated if he had known that defendant was working with hedge funds. Banks testified that he would have acted differently had he known that defendant and a hedge fund were "partner[ing] to target and short Namaste." (Id. at 107:2-108:1.) He would have gotten out sooner if he had known what defendant was actually doing. (Id.)

John Noonan similarly confirmed the materiality of defendant's statements regarding Roku. Noonan testified that he would have wanted to know if defendant "was trading opposite of what he was saying" because he "c[ould] react possibly in a different way to how [he] would have reacted if [he] had that information ahead of time." (Noonan Testimony, Trial Day 8 (5/20/26) at 173:8-25.) Noonan

further testified that he believed it was "inconsistent to state that a stock is uninvestable while at the same time buying that stock." (Noonan Testimony, Trial Day 9 (5/21/26) at 30:12-14.)

From these text messages and retail investor testimony alone, a jury can rightfully find the materiality of defendant's statements and omissions with respect to Cronos, Namaste, and Roku -- and from these they can infer the materiality of defendant's statements and omission for every other ticker.[3]

The government went further and offered testimony from company executives and stock analysts that went to the issue of materiality. Cronos CEO Michael Gorenstein testified to the materiality of defendant's statements and omitted information, namely, that defendant's omitted information demonstrated a lack of "conviction" with this commentary and would have affected Gorenstein's specific messaging to retail investors. Among other things, Gorenstein testified that had he known defendant's omitted information, namely, his decision to trade inconsistent with this commentary, it would have impacted what Gorenstein said to retail investors because he would lead with "[defendant]'s already closed out the majority of his

---

[3] Defendant attempts to argue that because these retail investors did not trade in reliance on defendant's statements, there can be no materiality.  But this misconstrues the facts and the law.  On the facts, Banks testified that he did trade in reliance of defendant's commentary on Namaste.  He sold it based on defendant's claims he would short it to zero.  On the law, defendant misconstrues reliance, which as the court recognized is not a required element for criminal securities fraud, with materiality, which is required.  See SEC v. Rana Rsch., Inc., 8 F.3d 1358, 1364 (9th Cir. 1993) (reliance is an element of a private claim under Rule 10b-5 but not in enforcement or criminal actions brought by government); Ninth Circuit Model Criminal Instructions 15.47 (Securities Fraud) (containing neither reliance nor loss causation as elements of securities fraud).  Failure to establish non-elements cannot form the basis of a Rule 29 motion.

position . . .  [and] the fact that if you believe it's gonna go to [$}3.50 and it was at $8 . . . [but] if the majority of your position was being closed out when you had conviction it would go from $8 to [$]3.50, that would suggest that actually you didn't have that conviction."  (Gorenstein Testimony, Trial Day 2 (5/12/26) at 125:12-126:4.)  Similarly, Grand Canyon Education Company CFO Dan Bachus testified that if he had been aware of the defendant's omitted information, namely, that "on January 28, 2020 that Mr. Left was closing out his short position" at the "[$]82, $83 dollar range, well above the zero target price" for Grand Canyon Education (LOPE), he thought "investors might have considered differently how they viewed the report."  (Bachus Testimony, Trial Day 8 (5/20/26) at 85:18-86:3.)

The stock analysts also provided testimony on the materiality of defendant's statements and omissions.  For example, JP Morgan stock analyst Douglas Anmuth testified that "changing a rating on a stock" is "a big deal" and "it sometimes influence[s] the stock price." (Anmuth Testimony, Trial Day 3 (5/13/2026) at 214:23-215:2.)  Stiefel stock analyst Martin Landry also testified that defendant's Cronos report did not state "that he intended to close out a substantial portion of [defendant's] [CRON] position that day" and that information would have been "important" to him.  (Landry Testimony, Trial Day 3 (5/13/26) at 75:10-24.)  Landry further testified that it would be "very important" to "investors" and "myself" if "the issuer of the report would" "close its short position" because it help them "understand where he's [the author] coming from and what's his bias." (Id. at 75:20-76:2.)  A rational juror could infer the materiality of defendant's statements and omissions from the testimony of these

company executives and stock analysts as well.  See United States v. Ferguson, 553 F. Supp. 2d 145, 154-55 (D. Conn. 2008) (denying Rule 29 motion where testimony of two industry analysts explained materiality of information along with statements of company management).

Finally, the government's case ended with the testimony of the government's materiality expert Dr. Matthew Cain.  The thrust of Dr. Cain's testimony was that defendant's trading, statements, and omitted information were material.  He provided specific testimony on price impact, broader financial economic testimony on the importance of skin in the game, and close analysis of the media environment following tweets to establish whether defendant's statements altered the total mix of information.  Dr. Cain explained he was asked to "evaluate whether the defendant's Tweets changed the total mix of information," i.e., "information that's important to investors, when they're looking at a given company assessing the potential for new information, whether that information might move the stock price around."  (Cain Testimony, Trial Day 9 (5/21/26) at 41:18-42:2.)

Dr. Cain specifically testified that his analysis of the 19 or 20 tickers revealed that defendant's tweets and his statements about his "skin in the game" trading "altered the total mix of information about the stocks in question in this case" and had a "price impact" on stocks in question to a "stastical[ly] significan[t]" level.  (Id. at 42:8-43:2; see also id. at 50-51 ("Q. Do investors find it relevant to know whether an activist investor is providing recommendations while they have a financial stake in the stock in question?  A. Yes.").)  Exhibit 1037 shows that using three different levels of analysis -- all tickers, long tickers, short tickers --

each time Dr. Cain's event study found price impact at an either 98% or 99% level of statistical significance.  Critically, event studies are a well-accepted means of proving materiality.  See United States v. Martoma, 993 F. Supp. 2d 452, 457 (S.D.N.Y. 2014)("Expert testimony concerning materiality often takes the form of an 'event study,' which 'refers to a regression analysis that examines the effect of an event on some dependent variable, such as a corporation's stock price.'"); In re Diamond Foods, Inc., Sec. Litig., 295 F.R.D. 240, 250-51 (N.D. Cal. 2013) (similar); In re Xerox Corp. Sec. Litig., 2009 WL 8556135, at *4 (D.Conn. Apr. 22, 2009) (similar).

Dr. Cain's testimony went into detail about his statistical methodology to determine materiality, including his review of the relevant price impact window and other relevant information that could affect the stock.  (Id. at 68-72; GX1037.)  Dr. Cain specifically testified to how he excluded "confounding information," that is, "information that is separate and apart from what I'm trying to measure the price impact of."  (Id. at 74:23-76:8.)  This ensured his event windows only measured the scheme conduct (defendant's statements and associated trading) in determining price impact.  He also explained the process he used for each ticker, including "pick[ing] a roughly two-week window starting about a week before, going through a week after the day of the Tweet itself" and "collect[ing] SEC filings, analyst reports, financial media articles, company press releases so that [he could] evaluate[] the total mix of information in the marketplace."  (Id. at 79.)  Dr. Cain "reviewed all of that information" and gave "examples and a few bullet[] points of some example quotes that are representative of sort of that

11

information environment and how the total mix of information shifted as a result of the defendant's Tweet." (Id. at 74.)

Dr. Cain's testimony systematically distilled and summarized for the jury the relevant information environment as it related to the question before them: did defendant's conduct have price impact and alter the total mix of information? His conclusions on this topics -- with testimony provided for the ticker associated with every substantive count -- are direct evidence that meet the very issue defendant raises. Dr. Cain testified regarding each of his charts that demonstrated the effect of defendant's tweets on the market, along with some of the press articles that Dr. Cain reviewed that amplified defendant's tweets, see, e.g., GX1038. His conclusion was that defendant's statements altered the total mix of information for each and every stock analyzed. (Id. at 99.) In this regard, he specifically testified that an activist investor's "skin in the game" affects the overall total mix of information because when "an investor sees an opinion or something is stated by activist investor, and they can say see well, this activist investor has a lot of money at stake with what they're saying, then they've got skin in the game; right? They've got money on the line. And if what they're saying is wrong, they stand to lose money. And that's – that's meaningful in how you interpret and place additional weight and additional credibility on what someone is saying, when you know that they have money that's invested and on the line with what they're saying." (Id. at 50-51.)

Dr. Cain's testimony specifically refutes the central premise of defendant's Rule 29 materiality argument, that is, whether it would have mattered to the market if defendant's actual trading

12

differed from his statements.  Dr. Cain's testimony was unequivocal in this regard: it would.  Dr. Cain testified on this point as follows:

> Q.   So at base, would have mattered to the market if the defendant's skin in the game differed from his public statements?
>
> A.   Yes, it would.
>
> Q.   Why?
>
> A.   Uh, because that would undermine that whole credibility that we're talking about.  If investors and financial media were able to see that actually there's information that's contrary to what was stated in the Tweets about the defendant's skin in the game, they would see oh, well, the skin in the game is not as we've been told, and that also further undermines, calls into question the credibility of what's being said.

(Cain Testimony, Trial Day 9 (05/21/26) at 62:11-23.)  Such testimony is alone sufficient to rebut defendant's Rule 29 motion.  See Gudino, 432 F.2d at 434 ("The testimony of the one witness, if believed, was sufficient to support the conviction . . . .")

Defendant tried to make this same point when cross examining Dr. Cain and was rebuffed.  When asked "if there's an omission that is alleged that wouldn't necessarily reflect directly in the stock price at the time of the event; right[?]"  (Cain Testimony, Trial Day 9 (05/21/26) at 135:7-10.)  Dr. Cain told counsel he disagreed and that "you can observe price impacts because investors don't understand, they don't have a complete financial picture.  Some important piece of information is omitted and therefore, the stock price can become inflated by virtue of the omission itself."  (Id. at 135:11-19.)  Dr. Cain went on to testify that defendant did not issue corrective disclosures following his misstatements so there was no data to measure and he found other evidence of price impact based on

13

the statements made.  (Id. at 136-137.)  Ultimately, Dr. Cain noted that there was evidence supporting price impact of the omissions in the limited instances where defendant reversed position from a prior tweet.  (Id. at 138:13-17 (Dr. Cain: "One of the things I would say is that some of the Tweets do report on a reversed position from previously.  And so we do see price impact from him reversing those positions which might be sort of along the lines of what you're talking about."))

Dr. Cain's testimony on other aspects of defendant's trading further confirmed the materiality of defendant's statements and omitted information because the use of short-dated options and limit orders inconsistent with defendant's public statements would "not really [be] consistent with a statement about skin in the game in terms of having a vested financial interest in what's being said" and is "very contrary to saying that you've got a long position cause it's actually intended to be closed out very quickly, and it's not going to, in fact, maintain that skin in the game that's been publicly stated."  (Cain Testimony, Trial Day 9 (05/21/26) at 63:23-65:12.)  This, paired with the price impact and total  mix of information testimony as well as the background testimony of the importance of an activists' skin in the game to investors, could also provide a stand alone basis to deny defendant's motion with regard to materiality.

Collectively, the record in the government's case-in-chief is more than sufficient to demonstrate materiality for each and every ticker.  "[C]onstru[ing] the evidence in the light most favorable to the prosecution," Nevils, 598 F.3d at 1161 (cleaned up), and granting the government "all reasonable inferences that can be drawn

14

from the evidence" as it "is entitled," United States v. Lucas, 963 F.2d 243, 247 (9th Cir. 1992), there is more than adequate evidence to submit this case to the jury.

Defendant's remaining challenges to Dr. Cain's testimony are insufficient to overcome his high burden for Rule 29 motion.  The jury need not learn about every facet or detail of a company in order to determine whether the information is material.  (Trial Day 10 (05/22/26) at 115-116 (Mr. Katz: "The jury literally knows nothing about these companies.  They don't know what the companies do.").)  That is not the law for good reason.  That is what the expert testimony of the financial economist Dr. Cain is designed to do.  But in any event, this argument also ignores the dozens of full news articles admitted by both parties during the government's case that provide substantial evidence for the jury to base a fulsome understanding of the relevant issues and events for each company during the narrow windows surrounding defendant's targeting of each company.

Elsewhere, defendant makes passing credibility challenges to this expert testimony, calling Dr. Cain "a hired gun who speculated in exchange for compensation."  (Dkt. 379 at 28.)  While the same can be said of defendant's witnesses, namely, Professor Andrew Verstein, the fact remains that credibility is an issue for the jury, not Rule 29.  Defendant's other argument that Dr. Cain's comment about "investors" does not speak about the "objectively reasonable investor" standard is also without merit.  Dr. Cain spoke about what is important to investors based on his expertise as a financial economist.  His testimony about how investors view things is relevant to determining the objective reasonable investor standard.  Dr. Cain

does not need to use the magic words "objectively reasonable investor" for the jury to credit his testimony and expertise regarding how investors would react if they knew defendant's trading was opposite to his public statements.  Defendant's final argument in his brief that Dr. Cain ignored any analysis of what other information was part of the "total mix" of information for each of the stocks, Dkt. 379 at 30, is just plain wrong.  Dr. Cain testified that he looked at the other information within two weeks of the tweet to exclude confounding information, see supra.

Finally, defendant's repeated reliance In re Apple Computer Sec. Litig., 886 F.2d 1109, 1114 (9th Cir. 1989), at the Rule 29 hearing does not aid him.  Apple Computers dealt with a civil securities fraud-on-the-market claim in which the Ninth Circuit found that a "defendant's failure to disclose material information may be excused where that information has been made credibly available to the market by other sources."  Id. at 1115.  There, the court affirmed a district court's grant of summary judgment for defendants because it found that the press's extensive documentation of the risks of Apple's then-forthcoming products rendered any omission relating to the company's optimistic statements about its productions immaterial. Id. at 1114.  The rule of Apple Computers is a very limited one, that "[i]n avoid Rule 10b-5 liability, any material information which insiders fail to disclose must be transmitted to the public with a degree of intensity and credibility sufficient to effectively counter-balance any misleading impression created by the insiders' one-sided representations."  Id. at 1116.

This case clearly has little relevance here.  Defendant's omissions were not reported by the press; indeed, no one knew of his

concealed intent to trade in the opposite direction of his public recommendations or that he had staked out short-term option positions rather than long-term ones.  Defendant's other reliance on Apple Computers for his argument that a stock's "'[d]ramatic price movements in response to an optimistic statement' is not evidence that the information omitted from that optimistic statement was material" misses the mark and ignores the unique posture of that case.  (Dkt. 379 at 17-18 (emphasis added); Cf. United States v. Bilzerian, 926 F.2d 1285, 1298 (2d Cir. 1991) ("stock movement is a factor the jury may consider relevant" in establishing materiality)). The Ninth Circuit made this comment in context of finding that evidence of the price movement in Apple Computers did not raise a genuine issue of fact because it insufficient to show "material information tending to undermine the statement has not been made available to the market."  Id. at 1116.  As a result, plaintiffs could not meet their burden to avoid summary judgment because they could not show that the information executives omitted had not already been priced into the market, because "[a]n entirely plausible explanation would be that the market was persuaded by Apple's optimism notwithstanding the known risks."  (Id.)  But this statement has little relevance beyond the unique theory and facts of Apple Computers.  That case is about the market already knowing the purportedly omitted information, which are simply not the facts of this case.  Here, there is no evidence that defendant's omissions were already available in the market from other sources.  Thus, Apple Computers is simply not relevant.

In short, drawing all inferences in favor of the government's case, the government has presented sufficient evidence on the issue of materiality to submit this case to the jury.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's Rule 29 motion or, in the alternative, grant the government leave to brief further issues should the Court desire.

## **Certificate of Compliance**

The undersigned, counsel of record for the government, certifies that this brief contains 4,932 words, which complies with the word limit of L.R. 11-6.1.


Dated: May 26, 2026                    Respectfully submitted,

                                       TODD BLANCHE
                                       Acting Attorney General

                                       BILAL A. ESSAYLI
                                       First Assistant United States
                                       Attorney

                                       JENNIFER L. WAIER
                                       Chief Assistant United States
                                       Attorney
                                       Chief, Criminal Division


                                          */s/ Andrew M. Roach*
                                       ANDREW M. ROACH
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA