**DYNAMIS LLP**
ERIC S. ROSEN (*pro hac vice*)
erosen@dynamisllp.com
MICHAEL B. HOMER (*pro hac vice*)
mhomer@dynamisllp.com
EMILY J. SCARISBRICK (*pro hac vice*)
escarisbrick@dynamisllp.com
175 Federal Street, Suite 1200
Boston, Massachusetts 02110
(617) 802-9157

YUSEF AL-JARANI (Cal. Bar No. 351575)
yaljarani@dynamisllp.com
1100 Glendon Ave., 17th Floor
Los Angeles, California 90024
(213) 283-0685

**AARON KATZ LAW LLC**
AARON KATZ (*pro hac vice*)
akatz@aaronkatzlaw.com
399 Boylston Street, 6th Floor
Boston, MA 02116
(617) 915-6305

**WEIL, GOTSHAL & MANGES LLP**
ADAM FEE (Cal. Bar No. 345075)
adamfee@weil.com
BEN NICHOLSON (Cal. Bar No. 317970)
ben.nicholson@weil.com
1999 Avenue of the Stars, Suite 1800
Los Angeles, CA 90067
(213) 667-5100

*Attorneys for Defendant Andrew Left*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA

v.

ANDREW LEFT,

Defendant.

Case No. 2:24-cr-00456-VAP

**DEFENDANT ANDREW LEFT'S MOTION TO COMPEL DISCLOSURE OF *BRADY* MATERIAL, FOR ISSUANCE OF RULE 17(c) SUBPOENAS *DUCES TECUM*, FOR AN EVIDENTIARY HEARING, AND TO HOLD THE POST-TRIAL MOTION AND SENTENCING SCHEDULE IN ABEYANCE**

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL.**

Date: October 5, 2026
Time: 9:00 a.m.
Ctrm: 6B
Judge: Hon. Virginia A. Phillips

# NOTICE OF MOTION AND MOTION

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 5, 2026, at 9:00 a.m., or as soon after as the matter may be heard, in Courtroom 6B of the above-captioned Court, located at 350 West 1st Street, Los Angeles, CA 90012, Defendant Andrew Left will and hereby does move for an Order: (1) directing the government to disclose, as *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), require, (a) the report and notes of the [redacted]; (b) the summary of the [redacted] investigation that [redacted] provided to the prosecution team, and the prosecution team's communications with [redacted]; (c) the [redacted] records concerning the [redacted] in the possession of [redacted], including any record of what [redacted] told him and when; (d) the date on which [redacted] opened its investigation [redacted] and the date on which any [redacted] personnel assigned to the Left investigation first learned of it; and (e) the identity of the third party whose trading is under investigation, that party's relationship to Mr. Bachus, and the trading records at issue, all subject to the Protective Order (Dkt. 28); (2) authorizing the issuance of the three subpoenas *duces tecum* under Federal Rule of Criminal Procedure 17(c) attached as Exhibits F through H to the accompanying Declaration of Eric S. Rosen, directed to Daniel Bachus, [redacted] and Grand Canyon Education, Inc. ("GCE" or "LOPE"); (3) setting an evidentiary hearing, after the subpoena returns and the government's production, at which Mr. Left may examine Daniel Bachus; and (4) holding the deadline for post-trial motions, the briefing schedule on those motions, and the sentencing hearing in abeyance pending resolution of this Motion.

The Motion is based on this Notice of Motion and Motion, the incorporated Memorandum of Points and Authorities, the accompanying Declaration of Eric S. Rosen and the exhibits to it, the records and files in this action, and any other evidence or argument the Court may consider at the hearing.

On August 31, 2026, the government sent counsel for Mr. Left a letter disclosing information concerning Daniel Bachus. On September 1, 2026, counsel wrote to the government requesting the categories of information described in this Motion, advising that Mr. Left may move for subpoenas and to examine Mr. Bachus, and asking to confer by telephone. On September 2, 2026, the government responded, answering several of the requests in part and declining the rest. Counsel conferred by telephone on September 4, 2026. The government advised that it opposes this Motion. Declaration of Eric S. Rosen ("Rosen Decl.") ¶ 2.

Dated: September 8, 2026

Respectfully submitted,

DYNAMIS LLP

*/s/ Eric S. Rosen*
Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Emily J. Scarisbrick (*pro hac vice*)

AARON KATZ LAW LLC
Aaron Katz (*pro hac vice*)

WEIL, GOTSHAL & MANGES LLP
Adam Fee
Ben Nicholson

*Attorneys for Defendant Andrew Left*

# TABLE OF CONTENTS


INTRODUCTION ..... 1

RELEVANT BACKGROUND ..... 3

I. Mr. Bachus Was the Only Witness Who Testified That Mr. Left Said Anything False. ..... 3

II. The Government's August 31 and September 2, 2026 Disclosures. ..... 5

ARGUMENT ..... 7

I. The Court Should Compel Production of the Materials Bearing on Mr. Bachus's Undisclosed Exposure. ..... 7

A. The Facts Show Newly Discovered Evidence That Would Support a New Trial. ..... 8

1. The Evidence Is Material to the Issues at Trial. ..... 8

2. The Evidence Is Neither Cumulative Nor Merely Impeaching. ..... 9

3. A New Trial Would Probably Result in Acquittal. ..... 10

B. The Facts Show the Government Holds Brady Material Bearing on a Sentence Not Yet Imposed. ..... 11

1. The Information Is Favorable Because It Impeaches the Government's Only LOPE Witness. ..... 12

2. The Government Has the Information Now, and Its Duty Runs Through Sentencing. ..... 13

3. The Information Is Material to the Sentence. ..... 17

II. The Requested Records Satisfy Each Requirement for a Post-Trial Rule 17(c) Subpoena. ..... 17

A. The Records Are Evidentiary and Relevant. ..... 18

B. The Records Are Not Otherwise Procurable, Mr. Left Cannot Prepare Without Them, and This Is Not a Fishing Expedition. ..... 18

III. The Court Should Set an Evidentiary Hearing at Which Mr. Left May Examine Mr. Bachus. ..... 19

IV. The Post-Trial and Sentencing Schedule Should Be Held in Abeyance. ..... 20

CONCLUSION ..... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Brady v. Maryland*, 373 U.S. 83 (1963) .................... i, 11, 16

*Carriger v. Stewart*, 132 F.3d 463 (9th Cir. 1997) .................... 10

*Cone v. Bell*, 556 U.S. 449 (2009) .................... 9, 11, 16

*Davis v. Alaska*, 415 U.S. 308 (1974) .................... 12

*Giglio v. United States*, 405 U.S. 150 (1972) .................... i

*Glossip v. Oklahoma*, 604 U.S. 226 (2025) .................... 9

*Gonzalez v. Wong*, 667 F.3d 965 (9th Cir. 2011) .................... 9

*Kyles v. Whitley*, 514 U.S. 419 (1995) .................... 13, 16

*Mellen v. Winn*, 900 F.3d 1085 (9th Cir. 2018) .................... 10

*Milke v. Ryan*, 711 F.3d 998 (9th Cir. 2013) .................... 11

*Silva v. Brown*, 416 F.3d 980 (9th Cir. 2005) .................... 8

*Thomas v. Goldsmith*, 979 F.2d 746 (9th Cir. 1992) .................... 13

*United States v. Bernal-Obeso*, 989 F.2d 331 (9th Cir. 1993) .................... 19

*United States v. Blanco*, 392 F.3d 382 (9th Cir. 2004) .................... 13, 14, 15

*United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989) .................... 15

*United States v. Bundy*,
968 F.3d 1019 (9th Cir. 2020) ........ 15

*United States v. Cerna*,
633 F. Supp. 2d 1053 (N.D. Cal. 2009) ........ 16, 19

*United States v. Daniel*,
2021 WL 2808706 (E.D. Cal. 2021) ........ 7

*United States v. Davis*,
960 F.2d 820 (9th Cir. 1992) ........ 9

*United States v. Doe*,
705 F.3d 1134 (9th Cir. 2013) ........ 7, 19

*United States v. Drollinger*,
80 F.3d 389 (9th Cir. 1996) ........ 20

*United States v. Feathers*,
2016 WL 7337518 (N.D. Cal. 2016) ........ 15

*United States v. Gupta*,
848 F. Supp. 2d 491 (S.D.N.Y. 2012) ........ 16

*United States v. Harrington*,
410 F.3d 598 (9th Cir. 2005) ........ 8

*United States v. Johnson*,
557 F. Supp. 2d 1066 (N.D. Cal. 2008) ........ 13

*United States v. Kabilafkas*,
No. 2:24-cr-00270-MRA, ECF No. 139 (C.D. Cal. May 13, 2025) ........ 15

*United States v. Kohring*,
637 F.3d 895 (9th Cir. 2011) ........ 9, 12

*United States v. Krane*,
625 F.3d 568 (9th Cir. 2010) ........ 17

*United States v. Mazzarella*,
784 F.3d 532 (9th Cir. 2015) ........ 7, 16, 19

*United States v. Mendez*,
619 F. App'x 644 (9th Cir. 2015) ........ 8

*United States v. Price*,
566 F.3d 900 (9th Cir. 2009) ........ 10, 13

*United States v. Reyes*,
239 F.R.D. 591 (N.D. Cal. 2006) ........ 19

*United States v. Santiago*,
46 F.3d 885 (9th Cir. 1995) ........ 14

*United States v. Sedaghaty*,
728 F.3d 885 (9th Cir. 2013) ........ 9, 10, 11

*United States v. W.R. Grace*,
401 F. Supp. 2d 1069 (D. Mont. 2005) ........ 13

*United States v. Wilmore*,
381 F.3d 868 (9th Cir. 2004) ........ 20

*United States v. Winner*,
641 F.2d 825 (10th Cir. 1981) ........ 17, 20

*United States v. Wood*,
57 F.3d 733 (9th Cir. 1995) ........ 15

*Wearry v. Cain*,
577 U.S. 385 (2016) ........ 11

**Statutes**

18 U.S.C. § 3553(a) ........ 17

**Rules**

Fed. R. Crim. P. 1(a)(1) ........ 19

Fed. R. Crim. P. 17(a) ........ 19

Fed. R. Crim. P. 17(c) ........ i, 3, 17

Fed. R. Crim. P. 17(e)(1) ........ 19

Fed. R. Crim. P. 32(b)(2) ........ 21

Fed. R. Crim. P. 33 ........ 2, 7, 13

Fed. R. Crim. P. 33(a) ........ 7

Fed. R. Crim. P. 33(b)(1) ........ 7, 21

Fed. R. Crim. P. 45(b)(1) ........ 21

Fed. R. Evid. 608 ........ 18

Fed. R. Evid. 613 ........ 18

Fed. R. Evid. 803(6) ........ 18

**Other Authorities**

U.S.S.G. §§ 1B1.3, 2B1.1 ........ 17

# INTRODUCTION

At trial, only a single witness, Daniel Bachus (the Chief Financial Officer of Grand Canyon Education), told the jury that Andrew Left said something false about any of the companies at issue. He told the jury that Citron's January 28, 2020 report on LOPE was wrong, and he swore he had never violated the securities laws. Tr. 73:16–17, 80:10–16 (May 20, 2026).

The government built its case around Mr. Bachus. He was on the stand for a full trial day. Tr. 3 (May 20, 2026) (index). Cross-examination of Mr. Left opened with "Let's talk about Lope, Grand Canyon" and stayed there for ninety minutes, more than twice as long as any other stock. Tr. 7:13–18 (May 27, 2026). In rebuttal, the government said the LOPE report "is important" and made Mr. Bachus's credibility the measure of Mr. Left's: "Then when he found out from Mr. Bachus that they actually were filed, he got up there and told you Mr. Bachus made that up and lied." Tr. 161:2–10 (May 28, 2026). The jury convicted.

On August 24, 2026, Grand Canyon filed a Form 8-K announcing that its board had "unanimously determined to place Daniel E. Bachus, the Company's Chief Financial Officer, on paid administrative leave, effective August 21, 2026," and that the leave was "in connection with an ongoing governmental investigation involving a non-employee third party's trades in Company stock." Rosen Decl. Ex. A. Put simply, the government's key witness is [redacted].

As the government has disclosed, [redacted]

[redacted] Rosen Decl. Ex. B at 2.

The investigation, [redacted] all preceded Mr. Bachus's testimony. What the government has not disclosed is what he knew when he testified and what he has said since. [redacted] Rosen Decl. Exs. C–E. Five weeks after that, he told the jury he had committed no "other violations of law," that there had never been "a finding" against him, and that Mr. Left's report was false. Tr. 80:10–16 (May 20, 2026).

Mr. Left's post-trial motions are due October 6, 2026, and sentencing is set for December 1, 2026. Dkt. 431. He intends to move for a new trial under Federal Rule of Criminal Procedure 33 on several grounds, including that this evidence would have destroyed the credibility of the government's only false-statements witness. He cannot brief that motion on the present record: a three-page letter the government itself calls "preliminary" and incomplete. Rosen Decl. Ex. B at 1, 3. And the Court cannot sentence him on a LOPE component that rests on that witness without knowing what the government now knows.

Mr. Left therefore asks for four things: an order compelling the disclosures described above; the three Rule 17(c) subpoenas to Mr. Bachus, [redacted] and LOPE, Rosen Decl. Exs. F–H; an evidentiary hearing once the returns are in, at which his counsel may examine Mr. Bachus about what he knew and when he knew it; and an order holding the post-trial and sentencing schedule in abeyance until that record is complete.

## RELEVANT BACKGROUND

### I. Mr. Bachus Was the Only Witness Who Testified That Mr. Left Said Anything False.

The government called twelve witnesses over thirteen trial days. Dkt. 407; Dkt. 426 ¶ 1. It pursued a half-truth theory about Mr. Left's own trading: that he told the market one thing about his positions and did the opposite. It proved that theory with trading data and expert analysis, not with any witness who said a factual statement in his research was untrue. The LOPE allegation, folded into Count One three months before trial (Dkt. 176), was the one place the government charged an affirmatively false statement of fact: that Mr. Left's report accused Grand Canyon University of "hiding" financial statements that were publicly available. To prove it, the government relied, solely, on Mr. Bachus, who testified for a full trial day. Tr. 3 (May 20, 2026) (index).

Mr. Bachus testified that the report falsely accused LOPE of "Enron like fraud," *id.* at 73:16–17; that he disagreed with its description of Grand Canyon University as a "captive subsidiary," *id.* at 74:9–17; and that the company's responses to the Department of Education, which the report called "outright lies and diversions," were accurate, *id.* at 78:22–79:5, 79:11–14. Critically, the report challenged management to release Grand Canyon University's audited financial statements "if Lope management disagrees with any of our factually supported allegations." *Id.* at 84:8–14. Mr. Bachus testified that, in fact, those statements were "already publicly

available at the time of this report." *Id.* at 84:15–18. On the government's telling, that testimony made Mr. Left's challenge a lie: he had accused the company of hiding what was already public.

The audited statements were not admitted at trial and were not produced in discovery. Dkt. 407. Mr. Left made the point from the stand. Asked, "[d]id the government attorney present to you that audited financial statement?," he answered "No." Asked "Did Mr. Bachus offer into evidence the audited financial statement?," he answered "No." Tr. 171:23–172:3 (May 27, 2026). The jury had Mr. Bachus's word.[1]

The government knew his word carried the charge and protected it. On direct, it elicited that he had committed no securities fraud at Apollo Group and no "other violations of law," and that there had never been "a finding" against him. Tr. 80:10–16 (May 20, 2026). On redirect, it returned to the financials: "At the time it released that report, were the Grand Canyon University financial statements publicly available?" "Yes." *Id.* at 121:22–24.

The government returned to LOPE, and to Mr. Bachus, throughout the trial. Cross-examination of Mr. Left opened with "Let's talk about Lope, Grand Canyon" and stayed there for ninety minutes, more than twice as long as any other stock. Tr. 7:13–18 (May 27, 2026). In closing, the government told the jury to believe Mr. Bachus over Mr. Left. Tr. 90:20–23 (May 28, 2026). In rebuttal, it said the LOPE report "is important," that the issue was "not just a matter of financial statements being

---

[1] The government relied on just three exhibits, each of which postdates the January 28, 2020 report. Exhibit 1220, Grand Canyon Education's January 29, 2020 response, was admitted over a hearsay objection for effect on the listener, not for its truth. Tr. 30:9–15 (May 27, 2026). Exhibit 1218 is a January 30, 2020 exchange in which Adam Ramada, not Mr. Left, supplied the method for locating the audit. *Id.* at 32:17–20. Exhibit 1219 begins February 11, 2020. *Id.* at 59:2–9. None shows the statements were public on January 28, 2020, or that Mr. Left knew it.

available," and that Mr. Left had "told you Mr. Bachus made that up and lied" even though "[i]t was proven in the case." *Id.* at 161:2–10.

[redacted]

**II. The Government's August 31 and September 2, 2026 Disclosures.**

On August 25, 2026, the government forwarded LOPE's Form 8-K and said it had "only recently learned about the referenced investigation." Rosen Decl. Ex. I at 4. On August 31, it sent a three-page letter. Rosen Decl. Ex. B. The letter states that [redacted]

The letter is a summary of a summary: [redacted] That summary has not been produced.

On September 2, 2026, the government disclosed that [redacted]

The government has also limited what its letter means. [redacted]

The sequence matters. [redacted] then Mr. Bachus's testimony on May 20, [redacted]

[redacted]. Counsel for Mr. Bachus has not responded to defense counsel's written inquiry. Rosen Decl. ¶ 12.

## ARGUMENT

Given the centrality of Mr. Bachus's testimony at trial—he provided the glue to connect Mr. Left to the sole false statement about a company alleged by the government—for the reasons set forth below, Mr. Left submits he is entitled to discovery concerning, primarily, what Mr. Bachus and the government knew about the [redacted] [redacted] and investigation, and when.

### I. The Court Should Compel Production of the Materials Bearing on Mr. Bachus's Undisclosed Exposure.

A defendant has a "right to discovery" when he presents "facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Doe*, 705 F.3d 1134, 1139, 1150 (9th Cir. 2013) (citation omitted) (vacating conviction). Once he has made that showing, a district court "abuse[s] its discretion in denying an evidentiary hearing and not permitting any discovery on these issues." *United States v. Mazzarella*, 784 F.3d 532, 541 (9th Cir. 2015) (vacating denial of Rule 33 motion and remanding for discovery and a hearing).

The materials sought are critical to two issues. They would support a motion for a new trial under Rule 33 on newly discovered evidence, and they are *Brady* material the government must disclose before the Court imposes sentence. *See Doe*, 705 F.3d at 1152–53 (remanding for discovery on both issues). The test at this stage is whether the facts "tend to show" the government has information that would be "helpful" to the defense, not whether Mr. Left will win. *Id.* at 1150; *see United States v. Daniel*, 2021 WL 2808706, at *5, *7 (E.D. Cal. 2021). The facts show just that.

### A. The Facts Show Newly Discovered Evidence That Would Support a New Trial.

Rule 33 permits the Court to "vacate any judgment and grant a new trial if the interest of justice so requires," including on "newly discovered evidence." Fed. R. Crim. P. 33(a), (b)(1). The movant must show that "(1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal." *United States v. Mendez*, 619 F. App'x 644, 645 (9th Cir. 2015) (citation omitted); *accord United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005).

The first two elements are met. The government disclosed the evidence three months after the verdict. Rosen Decl. Ex. B at 1–2. Mr. Left could not have discovered a non-public investigation [redacted], and the prosecution team says it did not know of it either. *Id.* at 1. The remaining three elements turn on what Mr. Bachus knew and when. Those facts sit in records the government holds and in the files of three third parties.

#### 1. <u>The Evidence Is Material to the Issues at Trial.</u>

The evidence bears on two issues the government put to the jury. The first is falsity. Mr. Bachus was the only witness who testified that any statement in Mr. Left's research about any company was untrue, and "[i]mpeachment evidence is especially likely to be material when it impugns the testimony of a witness who is critical to the prosecution's case." *Silva v. Brown*, 416 F.3d 980, 987 (9th Cir. 2005). The second is intent. Mr. Left's defense was that he was a short seller exposing real problems at Grand Canyon. That the company's own CFO is the [redacted]

[redacted] is evidence that his suspicion had a basis in fact. It corroborates his good faith and cuts against an intent to deceive.

2. The Evidence Is Neither Cumulative Nor Merely Impeaching.

Newly discovered impeachment evidence is not excluded as a category. It "may be so powerful that, if it were to be believed by the trier of fact, it could render the witness' testimony totally incredible," and if that testimony "were uncorroborated and provided the only evidence of an essential element of the government's case, the impeachment evidence would be 'material.'" *United States v. Davis*, 960 F.2d 820, 825 (9th Cir. 1992). That is this case. No document proved the LOPE falsity. Only Mr. Bachus' testimony did.

Nor is the evidence cumulative. "The fact that [a witness] might have had a motive to testify against [the defendant] in order to gain leniency . . . does not mean that evidence of a different bias or motive would be cumulative." *United States v. Kohring*, 637 F.3d 895, 904 (9th Cir. 2011). Undisclosed misconduct "would have added an entirely new dimension to [the witness's] possible motives for cooperating with the government." *Id.* at 912. "Where the withheld evidence opens up new avenues for impeachment, [even if significant impeachment evidence was already introduced] it can be argued that it is still material." *United States v. Sedaghaty*, 728 F.3d 885, 900 (9th Cir. 2013) (alteration in original) (quoting *Gonzalez v. Wong*, 667 F.3d 965, 982 (9th Cir. 2011)). Mr. Bachus was cross-examined about Apollo Group and the Department of Education letter. He was not cross-examined about [redacted]

The evidence also shows a bias the jury never heard. A CFO whose [redacted] has a powerful reason to defend the company's integrity, to deny any wrongdoing at it, and to be useful to federal prosecutors. Evidence of a witness's own related misconduct

is "highly probative of his 'character for truthfulness,'" *Kohring*, 637 F.3d at 904, and there is a reasonable probability that evidence of this kind "would have altered at least one juror's assessment," *id.* at 906 (quoting *Cone v. Bell*, 556 U.S. 449, 475 (2009)).

3. A New Trial Would Probably Result in Acquittal.

Courts treat uncorroborated testimony that supplied the only direct evidence of an element as decisive. *See Glossip v. Oklahoma*, 604 U.S. 226, 248 (2025) (ordering new trial where the prosecution failed to correct testimony that "was the only direct evidence of [the defendant]'s guilt" and "the jury could convict [the defendant] only if it believed [the witness]"); *Mellen v. Winn*, 900 F.3d 1085, 1097 (9th Cir. 2018) (suppressed impeachment evidence material where the witness "provided the only 'direct' evidence that connected [the plaintiff] to the crime"); *Sedaghaty*, 728 F.3d at 900, 902 (reversing where the government withheld impeachment material on the witness whose testimony "provided the only direct evidence" on the mental-state element); *United States v. Price*, 566 F.3d 900, 914 (9th Cir. 2009) (remanded for new trial where government failed to disclose the fraud history of a witness who was "indisputably 'the prosecution's star witness'" and whose testimony "provided direct evidence of [the defendant's] guilt" (quoting *Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir. 1997) (*en banc*))).

Mr. Bachus was the only witness on LOPE, and the government did not rest that allegation on documents. Dkt. 407. In rebuttal, it told the jury the report was "not just a matter of financial statements being available," and asked the jury to choose between his account and Mr. Left's. Tr. 161:2–10 (May 28, 2026). The government now says LOPE "was but one execution in furtherance of Count One." Rosen Decl. Ex. I at 1. But that is not how it tried the case. A verdict the government framed as a credibility contest cannot be insulated from evidence about the credibility of the witness it chose. Had the government known its only LOPE witness was

himself [redacted], it is hard to see that it would have called him at all.

Mr. Bachus [redacted] Rosen Decl. Exs. C–E; Tr. 80:10–16 (May 20, 2026). The government says it [redacted] Rosen Decl. Ex. I at 3. The government is mistaken: a witness asked about [redacted] has withheld the one fact those questions were designed to surface.

What the government has done since the verdict confirms the need for discovery. [redacted], the prosecution team has not spoken with him, and says it "ha[s] not approached him or his counsel about the [redacted] investigation." Rosen Decl. Ex. I at 2. His counsel has not responded to defense counsel. Rosen Decl. ¶ 12. Neither route will produce the answer. An order and a hearing will.

### B. The Facts Show the Government Holds *Brady* Material Bearing on a Sentence Not Yet Imposed.

*Brady* and *Giglio* require the government to disclose evidence that is "favorable to the accused, either because it is exculpatory or because it is impeaching"; "suppressed by the government, regardless of whether the suppression was willful or inadvertent"; and "material to the guilt or innocence of the defendant." *Sedaghaty*, 728 F.3d at 899. Materiality is not confined to the verdict. The duty reaches evidence "material either to guilt or to punishment," *Brady v. Maryland*, 373 U.S. 83, 87

(1963), and the two are assessed separately, *Cone*, 556 U.S. at 473. Each element is met here, and the materiality that matters most now runs to the sentence.

1. <u>The Information Is Favorable Because It Impeaches the Government's Only LOPE Witness.</u>

Favorable evidence includes "[a]ny evidence that would tend to call the government's case into doubt," *Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013), including evidence that "undermin[es] witness credibility," *Wearry v. Cain*, 577 U.S. 385, 392 (2016). This information impeaches on its face. Mr. Bachus was not, and could not have been, cross-examined about [redacted] Rosen Decl. Ex. D at 3.

The government's answer is that Mr. Bachus may have done nothing wrong: [redacted] Rosen Decl. Ex. B at 2; Rosen Decl. Ex. I at 2. The impeachment value of a witness's exposure does not depend on his guilt. *Davis v. Alaska*, 415 U.S. 308, 310–11, 317–18 (1974) (defense entitled to expose the witness's "possible concern that he might be a suspect in the investigation"). Withheld material about misconduct for which a central witness was never charged is material because it "would have shed light on the magnitude of [the witness's] incentive to cooperate with authorities and would have revealed that he had much more at stake than was already known to the jury." *Kohring*, 637 F.3d at 904–05.

Nor does Mr. Bachus's motive turn on whether he knew of [redacted] investigation. A witness who has [redacted] does not need to be told what he did. And he knew two things without being told: [redacted]

[redacted]. Rosen Decl. Ex. B at 2. He understood his exposure. [redacted]. *Id.*; Rosen Decl. Ex. I at 2. What he told them bears directly on the motive he carried to the stand.

2. <u>The Government Has the Information Now, and Its Duty Runs Through Sentencing.</u>

That interview sits in one place. Whether Mr. Bachus [redacted] either answer bears on the credibility of a witness who [redacted]. Both sit in the report and notes of [redacted], which have not been produced. Rosen Decl. Ex. I at 2.

The government's position is that it is "not aware of any basis on which [it] would be required to obtain and provide this information." Rosen Decl. Ex. I at 2. The obligation has never been limited to what has reached the trial prosecutor's desk. The prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case," *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), and "may not simply ask for information it wants while leaving behind other, potentially exculpatory information within agency files," and that is so "regardless of whether the agency holding the information participated in the investigation," *United States v. W.R. Grace*, 401 F. Supp. 2d 1069, 1078–79 (D. Mont. 2005). The duty "continues through post-trial proceedings," including where "the information could [] be[] used by the defense to support a new trial motion under Fed. R. Crim. P. 33." *United States v. Johnson*, 557 F. Supp. 2d 1066, 1072 (N.D. Cal. 2008); *see Thomas v. Goldsmith*, 979 F.2d 746, 749–50 (9th Cir. 1992) (ordering post-conviction disclosure of evidence "relevant to the instant . . . proceeding").

Good faith is no defense. "[S]ins of omission are equally within *Brady*'s scope," and "an 'innocent' failure to disclose favorable evidence constitutes a *Brady* violation nonetheless." *Price*, 566 F.3d at 907–08. And the duty belongs to the

government, not to the trial team alone: "The obligation under *Brady* and *Giglio* is the obligation of the government, not merely the obligation of the prosecutor." *United States v. Blanco*, 392 F.3d 382, 393 (9th Cir. 2004). Three categories of material are in the government's hands today.

*First*, the trial team's own files. The August 31 letter recites facts [redacted] Rosen Decl. Ex. B at 2. That summary is a document, and the trial team has it. The letter also recounts when [redacted] opened its investigation, the conduct under review, the third party's relationship to [redacted] Rosen Decl. Exs. B, I. A prosecution that can relay those details can produce the documents behind them.

*Second*, the files of another Department of Justice component. [redacted] and the trial team answer to the same Attorney General. "[F]ederal prosecutors, through the Department of Justice, have 'possession, custody or control'" of another Department component's files. *United States v. Santiago*, 46 F.3d 885, 894–95 (9th Cir. 1995). "Exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does." *Blanco*, 392 F.3d at 393–94 (citation omitted). If that component balks, the remedy is an order. *See id.* at 392, 394 (directing the district court "to order the government to produce all files and other information pertaining to [the witness] in the possession of the DEA and the INS," even though DEA had refused to release them to the prosecutor). The report of the [redacted] and the trading records that define the investigation are all in Department files.

*Third*, [redacted]. The government's letter is careful about knowledge: it says the prosecution team did not know of the [redacted] investigation before August 2026,

and that [redacted]. Rosen Decl. Ex. B at 1. It says nothing about [redacted] beyond reporting [redacted] the government says it cannot date. *Id.* at 2; Rosen Decl. Ex. I at 2. [redacted] The Left investigation was conducted jointly with the SEC; the SEC, not the Department, took Mr. Left's investigative testimony, which the government used at trial; the SEC filed its parallel civil action the day the indictment was returned; the prosecution team obtained SEC materials through a granted-access request and produced SEC-derived material in discovery, *see* Dkt. 96 at 6–7; and SEC attorneys assigned to this matter attended the trial, Rosen Decl. ¶ 13. That places the SEC inside the prosecution team for these purposes.

The prosecution is "deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant," and that duty does not "stop at the border of the district." *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989) (vacating and remanding). Where the government's discovery is "largely composed of files obtained from the SEC," the "SEC's 'possession, custody, or control' is imputed to the" prosecutor, who is then "under a continuing obligation to review these documents." *United States v. Feathers*, 2016 WL 7337518, at *15 (N.D. Cal. 2016). So too where the SEC produced records in response to the Department's "granted access request": "materials held by the SEC fall within the scope of the government's Rule 16 and *Brady* obligations," and the government's contrary "view of its Rule 16 and *Brady* obligations is impermissibly narrow." *United States v. Kabilafkas*, No. 2:24-cr-00270-MRA, ECF No. 139, at 15–16 (C.D. Cal. May 13, 2025). "[U]nder *Brady* the agency charged with administration of the statute, which has consulted with the prosecutor in the steps leading to prosecution, is to be considered as part of the prosecution in determining what information must be made available to the defendant

charged with violation of the statute." *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995) (holding the agency "failed to discharge its obligation of disclosure" and remanding). "The government cannot with its right hand say it has nothing while its left hand holds what is of value." *Id.*

Nor may an agency defeat the obligation by keeping favorable material away from the prosecutor. *Blanco*, 392 F.3d at 393–94; *United States v. Bundy*, 968 F.3d 1019, 1039 (9th Cir. 2020) ("Whether the withholding of the document was the fault of the FBI or the prosecution team, someone decided to withhold it."); *see also United States v. Gupta*, 848 F. Supp. 2d 491, 494 (S.D.N.Y. 2012) ("joint fact-gathering is part of what is often referred to as 'joint investigation,' triggering a *Brady* obligation, even if it is not a 'joint prosecution'"). [redacted] before May 20, 2026, and anyone on the joint investigation knew of it, the evidence was suppressed within the meaning of *Brady* whether or not anyone intended it, and disclosure was owed before or during trial. If it opened later, the duty runs to the sentencing still to come. The government says it does not know which. Rosen Decl. Ex. I at 2. *Kyles* requires it to find out and to tell the Court. And if the Court is not prepared to decide imputation on this record, the answer is discovery and a hearing, not denial. *Mazzarella*, 784 F.3d at 541; *see United States v. Cerna*, 633 F. Supp. 2d 1053, 1059–62 (N.D. Cal. 2009) (ordering a *Brady* review of the files of four federal agencies and setting an evidentiary hearing, limited to agency and access, on whether a further agency belonged to the prosecution team).

Sensitivity of the investigation is no answer. A protective order is in place and the government has already produced the substance of the investigation under it. On its own account, Mr. Bachus knows of the investigation, [redacted], and has been placed on leave in a public filing. Rosen Decl. Exs. A, B. There is no one left to tip.

3. The Information Is Material to the Sentence.

Mr. Left has not been sentenced, so the duty to disclose continues. *Brady* itself concerned punishment: the relief was a new sentencing. 373 U.S. at 86–87. In *Cone*, the Supreme Court found it "significant" that the lower court "did not distinguish between the materiality of the evidence with respect to guilt and the materiality of the evidence with respect to punishment," because evidence too weak to disturb a verdict "may well have been material to the jury's assessment of the proper punishment." 556 U.S. at 472, 475. A ruling that this evidence is "merely impeaching" for Rule 33 purposes would not resolve its materiality to the sentence.

The disclosure bears directly on how the Court weighs LOPE. Under U.S.S.G. §§ 1B1.3 and 2B.1.1, the offense level, including the loss figures that drive a fraud sentence, turns on the defendant's acts and the harm that resulted from acts within the same course of conduct or common scheme. Whether the LOPE statements were fraudulent at all, and so properly counted as relevant conduct under Count One, rests on Mr. Bachus. So does "the nature and circumstances of the offense" and a sentence that reflects "the seriousness of the offense." 18 U.S.C. § 3553(a). Because he was the uncorroborated witness on that component and the audited financials were never admitted, new evidence impeaching him can change the Court's findings at sentencing.

## II. The Requested Records Satisfy Each Requirement for a Post-Trial Rule 17(c) Subpoena.

A defendant may obtain Rule 17(c) subpoenas in aid of post-trial motions or sentencing on showing "(1) that the information is evidentiary and relevant; (2) that it is not otherwise procurable in advance through the exercise of due diligence; (3) that the party seeking production cannot properly prepare for post-trial motions or sentencing without advance inspection; and (4) that the application is made in good faith and is not simply intended as a general 'fishing expedition.'" *United States v.*

*Krane*, 625 F.3d 568, 574 (9th Cir. 2010) (quoting *United States v. Winner*, 641 F.2d 825, 833 (10th Cir. 1981)). Each is met.

**A. The Records Are Evidentiary and Relevant.**

The [redacted] records will show what Mr. Bachus was told and when. That is the fact on which his state of mind at the [redacted] and at trial turns. His communications with [redacted], and with Grand Canyon about the closure, the investigations, and his leave, will show what he understood and what he chose to tell the company. His director and officer questionnaires and compliance certifications will show the same in a form he signed. And each recipient's communications with the [redacted] will show when each investigating component learned what.

These are evidence, not leads. Account records, account-review memoranda, and surveillance and exception reports are records of a regularly conducted activity. Fed. R. Evid. 803(6). His communications with [redacted] and Grand Canyon are his own statements, admissible to impeach and to show bias. Fed. R. Evid. 608, 613. His questionnaires and certifications serve the same purpose, and any omission impeaches on its own.

**B. The Records Are Not Otherwise Procurable, Mr. Left Cannot Prepare Without Them, and This Is Not a Fishing Expedition.**

None of the records is otherwise procurable. The trial team does not possess the [redacted] materials, Rosen Decl. Ex. B at 1, and Mr. Left has no other route to a third party's brokerage records, to Mr. Bachus's own files, or to what he told his employer and when. He could not have sought them earlier: he learned of the investigation from the August 24 8-K and August 31 letter, and filed within days.

Both the Rule 33 motion and sentencing turn on what Mr. Bachus understood when he testified and on when each component of the government learned of it.

Neither question can be briefed from an incomplete three-page summary of another office's file. Rosen Decl. Ex. B at 1, 3.

And the subpoenas are narrow. They ask a named broker-dealer for the records of identified accounts and the decision to [redacted]; a named individual for his side of identified communications over a defined period; and a named issuer for identified categories of corporate records since January 1, 2025. Each excludes privileged material and asks for a log in its place. A proponent "cannot be expected to identify the materials he seeks in exacting detail" but need only "provide details sufficient to establish that [he] has made a good-faith effort to obtain evidentiary material and is not engaged in the proverbial 'fishing expedition.'" *United States v. Reyes*, 239 F.R.D. 591, 599 (N.D. Cal. 2006). These do.

## III. The Court Should Set an Evidentiary Hearing at Which Mr. Left May Examine Mr. Bachus.

The subpoenas will produce documents. They will not produce Mr. Bachus. The question at the center of both the Rule 33 motion and sentencing—what he understood about his own exposure when he prepared to testify and when he testified—is one only he can answer. Rosen Decl. Ex. I at 2. Mr. Left asks the Court to set a hearing once the returns and the government's production are complete, at which he will call Mr. Bachus.

If the record cannot answer the question a new-trial motion presents, the record must be developed. "[M]ore findings, which will require reasonable discovery and an evidentiary hearing, are needed." *Mazzarella*, 784 F.3d at 541. The same is true where the credibility of a government witness is the question and the facts lie beyond the defendant's reach: "information casting a shadow on a government witness's credibility" means "resolution of this matter is best served by the light of a hearing, not the darkness of an assumption on appeal." *United States v. Bernal-Obeso*, 989 F.2d 331, 333–34 (9th Cir. 1993) (remanding "for an evidentiary hearing to determine

what happened and why"); *accord Doe*, 705 F.3d at 1139 (remanding for "either an evidentiary hearing or *in camera* review"); *see, e.g.*, *Cerna*, 633 F. Supp. 2d at 1059–60.

No separate authority is needed to compel his attendance. Rule 17(a) directs that a subpoena "command the witness to attend and testify at the time and place the subpoena specifies." Fed. R. Crim. P. 17(a). It is not confined to trial. The criminal rules govern "all criminal proceedings," Fed. R. Crim. P. 1(a)(1), and the service provision reaches "[a] subpoena requiring a witness to attend a hearing or trial," Fed. R. Crim. P. 17(e)(1); *see also Winner*, 641 F.2d at 834 (witness's appearance at post-conviction hearing "may be ordered").

That Mr. Bachus may invoke the Fifth Amendment is no reason to deny the hearing. "[T]he only way the Fifth Amendment can be asserted as to testimony is on a question-by-question basis." *United States v. Drollinger*, 80 F.3d 389, 392 (9th Cir. 1996) (citation omitted). He must "present himself for questioning, and as to each question elect to raise or not to raise the defense." *Id.* (same). An invocation would carry consequences of its own: "where a government witness invokes the Fifth Amendment on cross-examination . . . the district court must strike the witness's direct testimony unless the refusal to answer only concerns collateral matters," and a matter is not collateral where "[n]o other witness testified" about it. *United States v. Wilmore*, 381 F.3d 868, 873 (9th Cir. 2004) (reversing for a new trial). Whether he answers or declines, the record made will bear on the motion and the sentence.

## IV. <u>The Post-Trial and Sentencing Schedule Should Be Held in Abeyance.</u>

The current schedule sets post-trial motions for October 6, 2026, and sentencing for December 1. Dkt. 431. The Court set it in July, before the disclosure, and it leaves no room for subpoena returns, new discovery, or a hearing. Because the time needed depends on the returns, Mr. Left asks that the post-trial motion deadline,

briefing schedule, and sentencing hearing be held in abeyance until the record is complete, with a status conference thirty days after the Court rules on this Motion.

Sequencing also spares the Court extra work. A Rule 33 motion decided before sentencing avoids a loss determination and a sentencing that must be redone if the motion is granted. That was the premise on which the parties sought, and the Court set, the current order of proceedings. Dkt. 426 ¶ 3. Nothing is lost by waiting: a new-trial motion on newly discovered evidence may be filed within three years of the verdict, Fed. R. Crim. P. 33(b)(1), and Mr. Left remains on the conditions of release the Court imposed.

The Court may "for good cause . . . change any time limits" prescribed for sentencing, Fed. R. Crim. P. 32(b)(2), and may for good cause extend other deadlines, Fed. R. Crim. P. 45(b)(1). This is good cause.

**CONCLUSION**

The government put one witness on the stand to prove that Mr. Left said something false about any company, then asked the jury to convict by believing that witness over Mr. Left. Three months after the verdict, it disclosed that the witness is [redacted] Mr. Left does not ask the Court to decide today what that means. He asks for the discovery needed to find out, before he is sentenced on a verdict that rests on that witness.

Dated: September 8, 2026

Respectfully submitted,

DYNAMIS LLP

*/s/ Eric S. Rosen*
Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Emily J. Scarisbrick (*pro hac vice*)

AARON KATZ LAW LLC
Aaron Katz (*pro hac vice*)

WEIL, GOTSHAL & MANGES LLP
Adam Fee
Ben Nicholson

*Attorneys for Defendant Andrew Left*

**CERTIFICATE OF COMPLIANCE**

I certify, as counsel for Defendant Andrew Left, that this memorandum of points and authorities contains 6,953 words, which complies with L.R. 11-6.1.

Dated: September 8, 2026

*/s/ Yusef Al-Jarani*
Yusef Al-Jarani