TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division
ANDREW M. ROACH (Cal. Bar No. 293375)
Assistant United States Attorney
Major Frauds Section
LORINDA I. LARYEA
Chief
White Collar and Corporate Enforcement Section
MATTHEW REILLY
Criminal Division
White Collar and Corporate Enforcement Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-0306
E-mail: andrew.roach@usdoj.gov
matthew.reilly2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ANDREW LEFT,<br>Defendant. | No. 2:24-CR-00456-VAP<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT ANDREW LEFT'S MOTION TO COMPEL DISCLOSURE OF *BRADY* MATERIAL, FOR ISSUANCE OF RULE 17(c) SUBPOENAS *DUCES TECUM*, FOR AN EVIDENTIARY HEARING, AND TO HOLD THE POST-TRIAL MOTION AND SENTENCING SCHEDULE IN ABEYANCE<br><br>**[REDACTED PUBLIC FILING OF DOCUMENT FILED UNDER SEAL]** |

Plaintiff United States of America, by and through its counsel of record, the Attorney General, the First Assistant United States Attorney for the Central District of California, and Assistant United States Attorney Andrew M. Roach, and Matthew Reilly, hereby files

this Opposition to Defendant Andrew Left's Motion to Compel Disclosure of Brady Material, for Issuance of Rule 17(c) Subpoenas Duces Tecum, for an Evidentiary Hearing, and to Hold the Post-Trial Motion and Sentencing Schedule in Abeyance.

The government's opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 21, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant
United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division

LORINDA I. LARYEA
Chief, White Collar and Corporate
Enforcement Section
Criminal Division

/s/
MATTHEW REILLY
ANDREW M. ROACH

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS


DESCRIPTION PAGE

MEMORANDUM OF POINTS AND AUTHORITIES....................................1

I. INTRODUCTION....................................................1

II. FACTUAL BACKGROUND..............................................5

A. LOPE is One of Twenty Tickers Charged in Count One........5

B. The Prosecution Meets with Bachus Before Trial and Calls Him as a Witness at Trial.............................5

C. [redacted]..................................8

1. [redacted].....................8

2. [redacted]..................................9

3. [redacted]........................................10

III. ARGUMENT.......................................................11

A. There is Nothing to Left to Compel, But Even if There Were, Defendant is Not Entitled to Further Discovery.....11

1. Defendant Has Not Made A Showing That Newly Discovered Evidence Would Support A New Trial.......11

2. The Information is Not Brady or Giglio..............16

B. Defendant's Request for Post-trial Rule 17(c) Subpoenas Should Be Denied..............................20

C. An Evidentiary Hearing is Unnecessary....................22

IV. CONCLUSION.....................................................24

# Table of Authorities

Page(s)

Cases

Brady v. Maryland,
373 U.S. 83 (1963) .......... 16

Davis v. Alaska,
415 U.S. 308 (1974) .......... 18

Downs v. Hoyt,
232 F.3d 1031 (9th Cir. 2000) .......... 17

Gibson v. Sec'y Pennsylvania Dep't of Corr.,
718 F. App'x 126 (3d Cir. 2017) .......... 17, 18

Giglio v. United States,
405 U.S. 150 (1972) .......... 16

Giles v. Maryland,
386 U.S. 66 (1967) .......... 17

Kyles v. Whitley,
514 U.S. 419 (1995) .......... 18

Morgan v. Gonzales,
495 F.3d 1084 (9th Cir. 2007) .......... 23

Morris v. California,
966 F.2d 448 (9th Cir. 1991) .......... 23

Ochoa v. Davis,
16 F.4th 1314 (9th Cir. 2021) .......... 18

Rich v. Calderon,
187 F.3d 1064 (9th Cir. 1999) .......... 23

Sanchez v. United States,
50 F.3d 1448 (9th Cir. 1995) .......... 16

United States v. Agurs,
427 U.S. 97 (1976) .......... 17

United States v. Alahmedalabdaloklah,
94 F.4th 782 (9th Cir. 2024) .......... 16

United States v. Bagley,
473 U.S. 667 (1985) .......... 18, 19

United States v. Bryan,
868 F.2d 1032 (9th Cir. 1989) .................................... 16

United States v. Cano,
934 F.3d 1002 (9th Cir. 2019) .................................... 16

United States v. Castillo,
181 F.3d 1129 (9th Cir. 1999) .................................... 21

United States v. Connolly,
504 F.3d 206 (1st Cir. 2007) ..................................... 22

United States v. Davis,
960 F.2d 820 (9th Cir. 1992) ............................ 12, 13, 14

United States v. Del Muro,
87 F.3d 1078 (9th Cir. 1996) ..................................... 22

United States v. Gardner,
611 F.2d 770 (9th Cir. 1980) ..................................... 16

United States v. Harrington,
410 F.3d 598 (9th Cir. 2005) ..................................... 11

United States v. Jackson,
209 F.3d 1103 (9th Cir. 2000) .................................... 11

United States v. Johnson,
360 F. App'x 840 (9th Cir. 2009) ............................ 19, 21

United States v. Kohring,
637 F.3d 895 (9th Cir. 2011) ..................................... 18

United States v. Krane,
625 F.3d 568 (9th Cir. 2010) ................................ 20, 21

United States v. Kulczyk,
931 F.2d 542 (9th Cir. 1991) ..................................... 12

United States v. Lucas,
841 F.3d 796 (9th Cir. 2016) ..................................... 22

United States v. Mitchell,
2009 WL 5201853 (W.D.N.C. 2009) ................................. 17

United States v. Nace,
561 F.2d 763 (9th Cir. 1977) ..................................... 22

United States v. Noriega,
764 F. Supp. 1480 (S.D. Fla. 1991) ............................... 22

United States v. Parker,
790 F.3d 550 (4th Cir. 2015) .................................... 18

United States v. Raymundi-Hernandez,
984 F.3d 127 (1st Cir. 2020) .................................... 22

United States v. Veksler,
62 F.3d 544 (3d Cir. 1995) ...................................... 18

United States v. Veras,
860 F. Supp. 471 (N.D. Ill. 1994) ............................... 18

Woods v. Sinclair,
764 F.3d 1109 (9th Cir. 2014) ................................... 23

Rules

Fed. R. Evid. 608(b) ............................................ 21

U.S.S.G. § 2B1.1 ................................................ 20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In June 2026, after a three-week trial involving sixteen witnesses and hundreds of exhibits, Defendant Andrew Left was convicted on 13 of 17 counts of securities fraud. At trial, one of the government's witnesses was Grand Canyon Education, Inc.'s (LOPE) Chief Financial Officer Daniel Bachus. Bachus was one of four witnesses on the eighth day of trial and testified for approximately two hours. Bachus was principally a stand-in corporate representative and, according to defendant, his importance was testimony on an uncontroverted fact that was not even explored on cross examination: that Grand Canyon University's financials were in fact openly available online when defendant falsely stated they were hidden from the public. See, e.g., Exhibit 23B at 1, 46 (Defendant's LOPE Short Report calling on LOPE to release university financials). The veracity of this fact did not turn on Bachus's credibility; it was corroborated in defendant's own text messages and testimony.

Two months after the trial, in early August 2026, the prosecution team learned – for the first time – of a separate insider trading investigation [redacted][1] [redacted]

[1] [redacted]

[redacted].

On August 24, 2026, LOPE disclosed in a Form 8-K SEC filing that it had placed Bachus on paid administrative leave in connection with an ongoing governmental investigation concerning a non-employee's trading in LOPE, [redacted]. The government promptly notified defense counsel of this and later provided a letter, on August 31, 2026, disclosing the key information learned to date [redacted]. The government has since answered numerous requests from defendant following this disclosure. Defendant nonetheless filed the instant motion to compel seeking (1) five specific sets of materials, (2) three Rule 17 subpoenas for documents from Bachus, [redacted] and LOPE, (3) a deposition of Bachus, and (4) to hold all of the post-trial deadlines in abeyance.

The parties have negotiated a voluntary resolution on the five specific sets of materials thereby mooting that aspect of the motion.[2] Accordingly, there is nothing more to compel from the government and no further discovery should be ordered. Separately, the Court has already rejected the request to hold the deadlines in abeyance. ECF No. 439.

The Court should similarly deny the remaining requested [redacted] standard and can be summarily denied. Defendant articulates no basis beyond a transparent fishing expedition for his requests. Any remaining possible relevance is extinguished by the government's voluntary disclosures. Rule 17 subpoenas are narrowly circumscribed for instances when they will reveal evidence and this attempt for defendant to use them as a discovery tool should not be permitted.

---

[2] The government has voluntarily provided nearly all of the materials that defendant requested and defendant has agreed that the government need not provide the remaining materials. While the government adamantly disagrees that the existence of [redacted] with regards to Bachus was Giglio material, it nonetheless voluntarily provided a number of records [redacted] to resolve this aspect of the motion to compel, including [redacted]. Since the filing of the this motion and the parties' reaching of this agreement, the defense has agreed that the government need not provide the remaining information without prejudice to future requests defendant may make. Defendant's motion is still ripe as to his Rule 17(c) subpoena issue and request for an evidentiary hearing.

Lastly, the proposed open court deposition of Bachus is an invitation for an unnecessary sideshow. Defendant has the answers he needs [redacted]. As the record does not support the remedy that defendant seeks, he instead seeks a post-trial deposition of a trial witness in an effort to try a new avenue of impeachment. The federal rules do not enable this approach and the Court should deny this motion as well.

In the end, as much as defendant now wants to make trial about LOPE, or again argue that this is a case only about false statements (as extensive pre-trial briefing resolved: it is not), the reality is that LOPE was just of one of twenty tickers of execution in furtherance of the Count One scheme and the case did not hinge on testimony that defendant made false statements about LOPE. LOPE was not charged as an independent securities fraud count and, dispositively for these purposes, the jury also convicted defendant on Count One for 15 other tickers. Bachus's testimony was not the linchpin of the government's case and his evidence centered on an uncontroverted fact in furtherance of one ticker that was part of the scheme count. He was thoroughly cross-examined including on purported credibility issues raised by defendant. The existence [redacted] would have assuredly been prohibited at trial under Rule 403 grounds, fails at nearly every step of the Rule 33 analysis and is not <u>Brady</u> or <u>Giglio</u>.

Defendant's motion to compel rests on speculation, conjecture, and his desire to conduct his own shadow investigation into Bachus. But the law does not permit fishing expeditions in search of a claim. [redacted]

For these reasons, defendant's motion to compel should be denied in its entirety and this matter should proceed to sentencing as scheduled.

## II. FACTUAL BACKGROUND

### A. LOPE is One of Twenty Tickers Charged in Count One

In February 2026, the government superseded its indictment and added LOPE as a ticker in furtherance of the Count One scheme, along with 19 other tickers. ECF No. 176 (Superseding Indictment). LOPE was never a standalone count.

### B. The Prosecution Meets with Bachus Before Trial and Calls Him as a Witness at Trial

In early March 2026, the government identified Bachus as a potential trial witness. On four occasions, the government met with Bachus in the presence of his counsel – sophisticated counsel from the law firm Alston & Bird – and interviewed him in preparation for trial. Neither Bachus nor his counsel ever mentioned the possibility

that he was under investigation [redacted].

At trial, on May 20, 2026, the government called Bachus in its case-in-chief and he testified exclusively related to LOPE. Bachus was one of four witnesses to testify that day and he testified for approximately two hours, with nearly an hour of extensive cross-examination. See Trial Day 8 (5/20/26) Tr. at 45-124.

Bachus primarily testified about the falsity of the allegations in defendant's short report about LOPE, including that Grand Canyon University's (which is not the same as the public company LOPE) financials were publicly available. As defendant has acknowledged, numerous other pieces of evidence - include defendant's texts - corroborated this uncontroverted fact. Mot. at fn. 1.

At trial, Bachus testified — without objection — that LOPE immediately highlighted the fact that university's financials were publicly available to the investing public in an SEC Form 8-K filing in response to defendant's LOPE short report. See Trial Day 8 (5/20/26) Tr. 74:22-75:6. The testimony was flat and direct and required no specialized interpretation by Bachus:

> Q. And what, if anything, did [LOPE's] response do with respect to that issue?
>
> A. We made it clear including putting the link in [the 8-K press release] that those financial statements were publicly available, that anyone could get those online.

Trial Day 8 (5/20/26) Tr. 64:6-10.

Bachus reiterated the same point while testifying about the LOPE report, id. 74:22-75:6, and also testified that other investors had reached out to inquire about the financials and he had directed them to the public website. Bachus added that defendant had not done so,

but Bachus would have directed defendant to the public website with the financials if he had. Id. 75:8-24. On redirect, Bachus again stated that the university financials were publicly available. Id. 121:13-24, 124:4-14.

Tellingly, defendant did not even approach this topic on cross-examination. This only further reiterates the uncontroverted nature of this plain factual testimony.

Bachus's testimony also touched upon the fact that he and others at LOPE were previously accused of fraud. On direct, for example, Bachus was asked about defendant's allegations of fraud concerning Bachus's time at a prior company, Apollo. When he was asked about securities violations, it was in the context of historical events prior to defendant's LOPE report and Bachus's time at Apollo. See Trial Day 8 (5/20/26) Tr. 79:18-80:23. On the testimony about securities laws violations, it squarely concerned Bachus's time at Apollo. Id. 80:3-24 ("Q. Did you commit any securities fraud at Apollo Group? A. No. Q. Any other violations of law? A. No."). Bachus also discussed a settlement in a securities class action lawsuit he was involved in, making clear that it was a business decision for LOPE and there was no admission of liability. Id. 83-84.

Defendant thoroughly cross-examined Bachus regarding these assorted allegations. The defense cross examined Bachus at length on his time at Apollo and association with for-profit universities, an FTC lawsuit and DOE fine against the university (both of which were subsequently appealed and dropped), and the settled shareholder securities fraud action against both LOPE, the CEO, and Bachus personally (which was settled without admitting liability).

In closing, the government only referenced Bachus's testimony on two occasions. See Trial Day 14 (5/28/26) Tr. 90:21-23, 161:5-11 (also citing documentary exhibits regarding the university's financials). And the defense also only mentioned Bachus twice in another attack on his credibility. See id. at 134:5-11. It was hardly anyone's focus.

The jury convicted defendant on 13 counts, including Count One. Of the possible securities fraud executions under Count One, the jury found the scheme executed in connection with 15 securities. ECF No. 416 at 3. Counts Two through Seventeen did not concern LOPE.

**C.** [redacted]

1. [redacted]

[redacted]

---

[3] [redacted]

[redacted].

2. [redacted].

[redacted]

[redacted].

3. [redacted]

[redacted]

**III. ARGUMENT**

**A. There is Nothing Left to Compel, But Even if There Were, Defendant is Not Entitled to Further Discovery**

The parties have resolved the motion to compel largely through the government's voluntary production of materials. See n. 3 supra. But even if there were more, defendant is not entitled to further discovery, because the information he seeks is plainly not discoverable. The information will not support a new trial under Rule 33 and it is not Brady or Gigilo.

1. Defendant Has Not Made A Showing That Newly Discovered Evidence Would Support A New Trial

In the Ninth Circuit, to prevail on a Rule 33 motion based on newly discovered evidence, a defendant must show that "(1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendant's part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal." See United States v. Harrington, 410 F.3d 598, 601 (9th Cir. 2005). Defendant must meet all the requirements for a new trial. See United States v. Jackson, 209 F.3d 1103, 1106 (9th Cir. 2000). Even conceding the first two requirements, defendant fails to show that this information is material, not merely cumulative and impeaching, and would likely result in a new trial.

First, the new "evidence" – [redacted] – is not material to the issues at this trial. Defendant claims that Bachus was the only witness who testified that defendant's statements about the underlying company were untrue, namely, whether LOPE was hiding relevant financial statements. But [redacted] has nothing to do with Grand Canyon University's financial statements. Nor does this evidence go to defendant's intent or make his overbroad and hyperbolic claims of fraud in his LOPE short report any more accurate. [redacted] deals with conduct wholly post-dating and unrelated to defendant's LOPE report. The new evidence has nothing to do with the question of defendant's intent to commit securities fraud that was on trial. In short, this new evidence bears no materiality on the substance of Bachus's testimony or defendant's intent.

Second, [redacted] is, at best, merely impeaching. And "evidence that would merely impeach a witness cannot support a motion for a new trial." United States v. Kulczyk, 931 F.2d 542, 549 (9th Cir. 1991). The rare instances where impeachment evidence implicate the interests of justice and are relevant for Rule 33 are extreme. As defendant's authorities acknowledge: on some occasions "newly-discovered impeachment evidence may be so powerful that, if it were to be believed by the trier of fact, it could render the witness' testimony totally incredible. In such a case, if the witness' testimony were uncorroborated and provided the only evidence of an essential element of the government's case, the impeachment evidence would be 'material' under [the Harrington test]." United States v. Davis, 960 F.2d 820, 825 (9th Cir. 1992). But defendant's

authorities bear no resemblance to this case especially when the impeachment information against Bachus was still preliminary and unresolved, Bachus was a rather inconsequential witness, and his main testimony was readily verifiable by other evidence. Compare Davis, 960 F.2d at 824 (assuming that newly discovered evidence that a key testifying undercover officer in a drug sting had been involved in stealing confiscated drug money, signing a false tax return, and illegally structuring a currency transaction, and was then subsequently indicted for conspiring to obstruct justice, perjury, signing a false tax return, and making a false statement in a loan application, was "so powerful that a jury would find his testimony totally incredible.").

Nothing about the current state of [redacted] renders Bachus totally incredible. As it stands, [redacted] Critically, unlike in Davis where the parties learned the witness had taken funds and subsequently been indicted for that and a slew of other crimes, [redacted] that could even come close to supporting the high standard for converting mere impeachment into an interest of justice concern.

Even if it did have impeachment value, it would not undermine Bachus's recitation of a basic fact: LOPE's responsive 8-K press release made clear that the university's financials were publicly available, free online. This is a plain fact and was corroborated by two separate exhibits. Exhibits 1218 (defendant's text with Adam

Ramada discussing that the university's financials are available on a "legit" online database) and 1220 (LOPE press release including the link to the freely available website). Moreover, in cross-examination, defendant himself conceded that the link sent to him by Ramada was the same as the link to the financials in the LOPE press release and that he had "no doubt" that the university financials were available on the public website. See Trial Day 12 (5/27/26) Tr. 33:2-19. This was hardly a controversial point given that the defense at trial did not even cross-examine Bachus about it. Simply put, Bachus's testimony on this issue was corroborated by documents, defendant's own admissions on the stand, and not a topic on cross-examination.[4]

Finally, and fatally for defendant's not-all-impeachment-evidence-is-excluded argument, defendant's false statement about LOPE failing to disclose the university's financials was not "the only evidence of an essential element of the government's case[.]" Davis, 960 F.2d at 825. Indeed, the falsity of defendant's LOPE report was not a necessary element of any count and LOPE was not even a standalone count, but merely one of the many executions under Count One.

Third, defendant fails to show that information about [redacted] would result in an acquittal. Defendant cites

---

[4] To the extent defendant casts [redacted] as the pertinent impeachment evidence, the record indicates that Bachus did not view [redacted] was, at most, merely impeaching and cumulative of other impeachment on potential securities law violations, there is no basis for a new trial based on it.

repeatedly to cases where the witness in question had the only direct evidence of guilt and served as the government's star witness. Mot. at 10. These cases are clearly not the same as Bachus's role at this trial. He was just one of twelve government witnesses and he testified for about two hours, including a break. He was called near the end of the government's case-in-chief and testified only about one ticker that was in the furtherance of the Count One scheme. Moreover, he was not the only witness who even testified about LOPE. Two other government witnesses (Anna Hallstrom and Ross Waller), as well as defendant, testified directly about LOPE and provided evidence in furtherance of the jury's finding that he executed his securities fraud scheme through this ticker. This is hardly a star witness. It belies any reasonable analysis of the trial record to state that Bachus had any outsize role at this trial.

Moreover, as laid out above, defendant's reinvention of the university financial statement evidence as the sole false statement about an underlying company is both untrue to the record and inconsistent with the theory presented at trial. As closing argument showed: the false statements centered on defendant's misstatements about his trading intentions and positions – not about individual companies. See Trial Day 13 (5/28/26) Tr. 109:15-22. Even if defendant was correct and the false statement about the university's financials were essential to the verdict, that does not recast the minimal impeachment value of [redacted] as similarly important because the false statement was independently proved by documentary evidence and admissions by defendant. No amount of impeachment of Bachus could have changed the fact that defendant wrongly claimed in the LOPE report that the university was

hiding its financials when in fact those financials were publicly available.

None of this supports a new trial based on the disclosure of [redacted] and any further discovery requests on this theory and this record should be denied.

2. The Information is Not Brady or Giglio

Nor is this preliminary and unsubstantiated information about Bachus Brady or Giglio. "[T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980). Under Brady, the government is required to produce all evidence that is (1) favorable to the accused, either because exculpatory or impeaching, (2) within the possession of the prosecution team; and (3) material. Brady v. Maryland, 373 U.S. 83, 87 (1963); Giglio v. United States, 405 U.S. 150, 154 (1972). Defendant fails to establish the first and third prongs, and this Court does not even need to address the second.[5]

---

[5] The government does not concede this information was within the possession of the prosecution team at trial. Under both Brady and Rule 16, the government 'has no obligation to produce information which it does not possess or of which it is unaware.'" United States v. Cano, 934 F.3d 1002, 1023 (9th Cir. 2019) (quoting Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995)). The prosecution is presumed to possess documents held by another government agency only if the prosecutor has "knowledge of and access to" those documents. Id. The Ninth Circuit presumes such "knowledge and access" if "the agency participate[d] in the investigation of the defendant," Cano at 1023-24 (quoting United States v. Bryan, 868 F.2d 1032, 1036 (9th Cir. 1989), but cautions that the breadth of the prosecutor's imputed knowledge about and possession of that agency's records must be assessed on a "case-by-case" basis. Id. at 1025. See also United States v. Alahmedalabdaloklah, 94 F.4th 782, 844-45

*(footnote cont'd on next page)*

Defendant argues that the information he seeks is Brady because it would have impeached Bachus, the government's only LOPE witness, and therefore been favorable to him. But Brady does not impose "an obligation to communicate preliminary, challenged, or speculative information." United States v. Agurs, 427 U.S. 97, 109 n.16 (1976) (quoting Giles v. Maryland, 386 U.S. 66, 98 (1967) (Fortas, J., concurring)). "Brady does not require a prosecutor to turn over files reflecting leads and ongoing investigations where no exonerating or impeaching evidence has turned up." Downs v. Hoyt, 232 F.3d 1031, 1037 (9th Cir. 2000).

For this reason, courts generally exclude unproven claims and allegations as Brady material in cases like this, when there is no proof that the witness engaged in any misconduct. The only notable exception is when allegations are relevant to show a witness's bias and motive to curry favor with the prosecutors. But that exception does not apply here, because Bachus and his counsel appear to have been unaware of any investigation at the time he testified and the prosecution team was certainly unaware of any investigation touching upon Bachus. There can be no impeachment or claim that a witness is "cooperating with the prosecution to avoid criminal charges" when the witness and prosecutor "d[o] not know he was facing" any charges. Gibson v. Sec'y Pennsylvania Dep't of Corr., 718 F. App'x 126, 133-135 (3d Cir. 2017) (if the witness was unaware of the investigation, it could not be impeachment or Brady material); United States v. Mitchell, 2009 WL 5201853 (W.D.N.C. 2009) (if witness unaware of

---

(9th Cir. 2024) (holding that defendant's "suggestion that DoD, as a whole, was a 'participating agency' cannot be squared with our conclusion in Cano" because it "conflate[s] the DoD components that participated in the investigation with the entirety of DoD.").

potential suspicions or investigations, no reason to believe he had reason to shade his testimony to curry favor); United States v. Veras, 860 F. Supp. 471, 478 (N.D. Ill. 1994), aff'd, 51 F.3d 1365 (7th Cir. 1995); United States v. Veksler, 62 F.3d 544, 550 (3d Cir. 1995).

Defendant argues that the impeachment value of the information does not depend on a witness's guilt or knowledge of the investigation. The authorities that defendant cites, Davis v. Alaska, 415 U.S. 308 (1974) and United States v. Kohring, 637 F.3d 895 (9th Cir. 2011), do not stand for such a broad proposition. In both cases, defendants were aware of the investigation. Kohring, 637 F.3d at 903-04; Davis, 415 U.S. at 314. That is not this case. See Gibson, 718 F. App'x at 133 (distinguishing "various cases that [defendant] says establish that failure to disclose information about a pending investigation would violate Brady . . . [because] none of those cases involved a situation where the witness was unaware of the investigation"); accord United States v. Parker, 790 F.3d 550, 558 (4th Cir. 2015) (evidence of SEC ongoing investigation into witness was Brady because it would have "demonstrated [witness]'s potential bias in testifying as a government witness when he knew that a significant federal investigation was pending against him").

Defendant has not established the materiality of this information either. Evidence is material for Brady "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Ochoa v. Davis, 16 F.4th 1314, 1327 (9th Cir. 2021) (emphasis added) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985) (opinion of Blackmun, J.)); Kyles v. Whitley, 514 U.S. 419, 434–35 (1995)

(recognizing a Brady violation if undisclosed favorable evidence "undermines confidence in the outcome of the trial" (quoting Bagley, 473 U.S. at 678)).

This new information does not "undermine[] confidence in the outcome" of trial, nor is it material to sentencing. Bagley, 473 U.S. at 678. As discussed above, there is no "reasonable probability" that there would have been a different result at trial if defendant had had this information. At the time he testified, Bachus appears to have not been aware of any investigation and he certainly had not been charged or convicted of any fraud (and he may never be). Therefore, he most likely would have denied any accusation of misconduct [redacted] or invoked his right to remain silent. See United States v. Johnson, 360 F. App'x 840, 841 (9th Cir. 2009) (no reasonable probability of different result, because at the time, witness "had not been convicted—much less charged—of any crime and did not know he was under investigation" and therefore would have denied his guilt or invoked his right to remain silent).

The information is not material to defendant's sentencing exposure under the U.S. Sentencing Guidelines. LOPE was just a single execution of a scheme involving multiple companies. And while the government has not fully determined the loss amount yet, LOPE, on its own, is hardly material to the overall loss amount. As the evidence at trial showed, defendant made over $21.8 million in gains on the tickers he was convicted on, and LOPE only represents $2.6 million, a small percentage of the overall loss amount. Ex. 1020. Even if the Court were to fully exclude the LOPE losses as unreliable based on this information, this is unlikely to change defendant's

guidelines calculation under U.S.S.G. § 2B1.1 because the loss amount, if appropriately measured by defendant's gain, is still comfortably within the $9.5 million to $25 million range for a 20-level enhancement under U.S.S.G. § 2B1.1.[6] Because this information is not material, whether in the past (for trial) or in the future (for sentencing), it is not Brady.

**B. Defendant's Request for Post-trial Rule 17(c) Subpoenas Should Be Denied**

Defendant seeks broad Rule 17(c) to [redacted], LOPE, and Bachus, covering a wide category, including, among other things, "all communications" between Bachus and [redacted], when Bachus learned of [redacted], and "all communications" between Bachus and LOPE regarding [redacted], any investigation into LOPE trading, and "his placement on administrative leave" (Mot., Ex. H.) This is just a fishing expedition dressed up with a subpoena.

A defendant may seek a Rule 17(c) criminal subpoena for sentencing, but that "right is not unfettered." United States v. Krane, 625 F.3d 568, 574 (9th Cir. 2010). In considering the request, the defendant must show that "(1) that the information is evidentiary and relevant; (2) that it is not otherwise procurable in advance through the exercise of due diligence; (3) that the party seeking production cannot properly prepare for post-trial motions or sentencing without advance inspection; and (4) that the application

---

[6] Even under the Sentencing Commission's new loss figures for U.S.S.G. § 2B1.1, effective November 1, 2026, the result is the same. A loss of $15 million to $35 million still qualifies for a 20-level enhancement, and even with LOPE, defendant's gain exceeded $15 million even under a conservative calculation.

is made in good faith and is not simply intended as a general 'fishing expedition.'" Id. Defendant cannot meet this standard, particularly now that the government has produced most of the relevant information.

First, the additional information defendant seeks by way Rule 17(c) subpoenas is neither relevant nor admissible. The government has now produced information that shows when [redacted]. This answers most of the defendant's questions and allows defendant to understand what Bachus knew (or may have known) when he testified. Defendant's remaining requests appeared aimed at what and when Bachus told LOPE about the investigation and his placement on administrative leave, all of which occurred after he testified at trial and have little relevance on what Bachus knew when he testified.

Moreover, none of this information is admissible. Even if defendant had this information at trial, the most he could have done with this information would have been to ask Bachus about the allegation during cross-examination. Defendant would have been bound by his answer, because extrinsic evidence may not be admitted to impeach testimony invited by questions posed during cross-examination. United States v. Castillo, 181 F.3d 1129, 1133 (9th Cir. 1999); see Fed. R. Evid. 608(b). [redacted] there is no reason to believe he would have testified any differently at trial. See Johnson, 360 F. App'x at 841.

Second, the records are not necessary for defendant to make any post-trial motion or prepare for sentencing and, in reality, appear to just be a fishing expedition. As explained above, this newly discovered information is not a valid basis for a Rule 33 motion and is unlikely to affect sentencing. In any event, the government has already produced records that answer most, if not all, of defendant's questions and will allow him to prepare any motions and for sentencing. The additional information sought in defendant's requested Rule 17(c) subpoenas are "merely hopes that something useful will turn up" which "is a sure sign that the subpoena is being misused." United States v. Noriega, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991).

**C. An Evidentiary Hearing is Unnecessary**

Defendant has not demonstrated a need for an evidentiary hearing. The decision to hold an evidentiary hearing is within the discretion of the court and "not every motion for new trial requires an evidentiary hearing." United States v. Del Muro, 87 F.3d 1078, 1080 n.3 (9th Cir. 1996) (citing United States v. Nace, 561 F.2d 763, 772 (9th Cir. 1977)) (decision whether to hold hearing on motion for new trial is "within the sound discretion of the trial court."). "In the Brady context, evidentiary hearings 'are the exception rather than the rule.'" United States v. Raymundi-Hernandez, 984 F.3d 127, 160 (1st Cir. 2020) (quoting United States v. Connolly, 504 F.3d 206, 216 (1st Cir. 2007)).

A hearing is warranted only where the defendant identifies a genuine factual dispute whose resolution could establish a Brady violation or some other relief; speculation that favorable evidence might exist is insufficient. See United States v. Lucas, 841 F.3d

796, 809-10 (9th Cir. 2016). "Evidentiary hearings" "are not meant to be 'fishing expeditions'" for "[defendants] to explore their case in search of [a claim's] existence." Morgan v. Gonzales, 495 F.3d 1084, 1091 (9th Cir. 2007) (quoting Rich v. Calderon, 187 F.3d 1064, 1067 (9th Cir. 1999)).

Here, defendant has not identified any material facts that are in doubt or dispute that would necessitate an evidentiary hearing. The newly produced evidence establishes that Bachus knew [redacted]. Individual A then told Bachus that it could be related to Individual A's buying and selling of LOPE that occurred months earlier. Other than this, there is nothing to suggest that Bachus knew [redacted]. Defendant offers nothing more than speculation that Bachus "must have known" he was under investigation, but defense speculation does not create an evidentiary dispute to entitle defendant to an evidentiary hearing. Woods v. Sinclair, 764 F.3d 1109, 1128 n.10 (9th Cir. 2014) ("Bare allegation[s], speculation, and wishful suggestions" do not entitle a petitioner to an evidentiary hearing.") (quoting Morris v. California, 966 F.2d 448, 455-56 (9th Cir. 1991) (rejecting Brady hearing where the defendant alleged no supporting facts beyond a suspicion).

But more importantly, even if Bachus knew of any investigation or had some inkling that was one was possible, that would not change the outcome or necessitate an evidentiary hearing. As explained

above, Bachus's testimony was not critical and was otherwise heavily corroborated by external evidence, and [redacted]. Because the questioned testimony was immaterial to the ultimate verdict, easily verifiable, and there is no risk that he was attempting to shade his testimony for prosecutors [redacted], whether he knew about any investigation or not is immaterial in the end. Accordingly, the request for an evidentiary hearing should be denied.

**IV. CONCLUSION**

For the foregoing reasons, the Court should deny defendant's motion to compel as to the government as moot and deny defendant's request for Rule 17(c) subpoenas and an evidentiary hearing.

CERTIFICATE OF COMPLIANCE

The undersigned, counsel for the United States, certifies this memorandum of points and authorities contains 6,730 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 21, 2026

*/s/ Andrew M. Roach*
ANDREW M. ROACH
Assistant United States Attorney