**DYNAMIS LLP**
ERIC S. ROSEN (*pro hac vice*)
erosen@dynamisllp.com
MICHAEL B. HOMER (*pro hac vice*)
mhomer@dynamisllp.com
EMILY J. SCARISBRICK (*pro hac vice*)
escarisbrick@dynamisllp.com
175 Federal Street, Suite 1200
Boston, Massachusetts 02110
(617) 802-9157

YUSEF AL-JARANI (Cal. Bar No. 351575)
yaljarani@dynamisllp.com
1100 Glendon Ave., 17th Floor
Los Angeles, California 90024
(213) 283-0685

**WEIL, GOTSHAL & MANGES LLP**
ADAM FEE (Cal. Bar No. 345075)
adamfee@weil.com
BEN NICHOLSON (Cal. Bar No. 317970)
ben.nicholson@weil.com
1999 Avenue of the Stars, Suite 1800
Los Angeles, CA 90067
(213) 667-5100

*Attorneys for Defendant Andrew Left*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA

v.

ANDREW LEFT,

Defendant.

Case No. 2:24-cr-00456-VAP

**DEFENDANT ANDREW LEFT'S MOTION FOR A NEW TRIAL UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 33**

Hr'g: November 17, 2026
Time: 10:00 a.m.
Ctrm: 8C
Judge: Hon. Virginia A. Phillips

# NOTICE OF MOTION AND MOTION

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 17, 2026 at 10:00 a.m., or as soon after as the matter may be heard, in Courtroom 8C of the First Street United States Courthouse, 350 West 1st Street, Los Angeles, California 90012, before the Honorable Virginia A. Phillips, Defendant Andrew Left moves this Court under Federal Rule of Criminal Procedure 33 for a new trial on every count of conviction (Count One and Counts Two, Four through Nine, Eleven, and Fourteen through Seventeen). The Motion is based on this Notice of Motion and Motion, the incorporated Memorandum of Points and Authorities, the complete trial record, the exhibits and docket entries cited herein, and any other evidence or argument that the Court may consider at the hearing on this motion. Counsel also renews and incorporates the objections and the mistrial motions preserved on the record. By separate motions filed the same day, Mr. Left moves for a judgment of acquittal under Rule 29(c) and for a new trial based on newly discovered evidence concerning a government witness.

The Motion is made on the following grounds, each of which is addressed in the incorporated Memorandum.

*First*, the instructions and the Government's closing argument permitted the jury to convict on the nondisclosure theory this Court held is not a crime, and the general verdict cannot be traced to a valid theory.

*Second*, the Count One instructions omitted the money-or-property object of the scheme.

*Third*, the Court refused the single-scheme and limitations instructions, and the resulting variance prejudiced Mr. Left; at a minimum, the Count One findings as to Chegg, FleetCor, and Grand Canyon Education must be vacated as time-barred.

*Fourth*, the Court refused Mr. Left's theory-of-defense instruction on opinion statements.

*Fifth*, the jury returned a guilty verdict on dismissed Count Eighteen, on which it received no instruction, and was sent back to deliberate on an "identical" form without a curative instruction.

*Sixth*, after refusing to immunize Ryan Choi, the Government put Choi's unconfronted out-of-court statement before the jury through Mr. Martel, in violation of the Confrontation Clause, and the jury had that testimony read back hours before the verdict.

Each ground independently requires a new trial. Together, they leave no confidence that Mr. Left received a fair trial. Fed. R. Crim. P. 33(a).

Dated: October 6, 2026

Respectfully submitted,

DYNAMIS LLP

*/s/ Eric S. Rosen*
Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Emily J. Scarisbrick (*pro hac vice*)

AARON KATZ LAW LLC
Aaron Katz (*pro hac vice*)

WEIL, GOTSHAL & MANGES LLP
Adam Fee
Ben Nicholson

*Attorneys for Defendant Andrew Left*

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION .......... i
INTRODUCTION .......... 1
BACKGROUND .......... 2
I. THE CHARGE AND THE PRETRIAL RULINGS .......... 2
II. THE CHARGE CONFERENCE AND THE INSTRUCTIONS .......... 2
III. THE CLOSING ARGUMENTS .......... 3
IV. THE VERDICT AND COUNT EIGHTEEN .......... 3
ARGUMENT .......... 4
I. RULE 33 REQUIRES A NEW TRIAL. .......... 4
II. THE JURY WAS PERMITTED TO CONVICT ON THE NONDISCLOSURE THEORY THIS COURT HELD IS NOT A CRIME. .......... 5
A. Securities Fraud Requires Deception, and Nondisclosure Without a Duty Is Not Deception. .......... 5
B. The Instructions Permitted Conviction Without Any False or Misleading Statement or Deceptive Conduct. .......... 6
C. The Government Took Advantage of the Erroneous Instructions in Its Closing Arguments. .......... 7
D. The Verdict Cannot Be Traced to a Valid Theory, and the Error Was Not Harmless. .......... 10
III. COUNT ONE OMITTED THE MONEY-OR-PROPERTY OBJECT CIMINELLI REQUIRES. .......... 12
IV. THE COURT REFUSED THE SINGLE-SCHEME INSTRUCTIONS, AND THE RESULTING VARIANCE PREJUDICED MR. LEFT. .......... 13
V. THE COURT REFUSED THE OPINION INSTRUCTION IT HAD CALLED "NECESSARY." .......... 14
VI. THE JURY'S RETURN OF A GUILTY VERDICT ON DISMISSED COUNT EIGHTEEN REQUIRES A NEW TRIAL. .......... 15
A. This Was a Structural Error; No Instruction Existed for the Jury to Follow. .......... 16
B. The Phantom Count Prejudiced Counts One Through Seventeen. .......... 17

VII. THE GOVERNMENT PUT RYAN CHOI'S UNCONFRONTED STATEMENT BEFORE THE JURY, AFTER REFUSING TO IMMUNIZE HIM, AND THAT TESTIMONY WAS READ BACK HOURS BEFORE THE VERDICT. ..... 18

A. The Advice-of-Counsel Defense Ran Through Choi. ..... 18

B. The Government Elicited Choi's Out-of-Court Statement Through Martel. ..... 19

C. The Question Violated the Confrontation Clause. ..... 19

D. The Violation Was Not Harmless. ..... 20

E. The Government Used Choi's Unavailability as Sword and Shield. ..... 21

CONCLUSION ..... 22

CERTIFICATE OF COMPLIANCE ..... 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Chapman v. California*,
386 U.S. 18 (1967) ....... 16

*Chiarella v. United States*,
445 U.S. 222 (1980) ....... 5, 10

*Ciminelli v. United States*,
598 U.S. 306 (2023) ....... 12

*Crawford v. Washington*,
541 U.S. 36 (2004) ....... 19, 20

*Delaware v. Van Arsdall*,
475 U.S. 673 (1986) ....... 20

*Douglas v. Alabama*,
380 U.S. 415 (1965) ....... 20

*Hedgpeth v. Pulido*,
555 U.S. 57 (2008) ....... 11

*In re Salomon Analyst Level 3 Litig.*,
350 F. Supp. 2d 477 (S.D.N.Y. 2004) ....... 14

*Kotteakos v. United States*,
328 U.S. 750 (1946) ....... 14, 17

*Kousisis v. United States*,
605 U.S. 114 (2025) ....... 6, 12

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024) ....... 5

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008) ....... 9

*Neder v. United States*,
527 U.S. 1 (1999) ....... 5, 7, 10

*Ocampo v. Vail*,
649 F.3d 1098 (9th Cir. 2011) ....... 20

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) ....... 5, 15

*Remmer v. United States*,
347 U.S. 227 (1954) ....... 17

*Richardson v. Marsh*,
481 U.S. 200 (1987) .......... 16

*Ryan v. Miller*,
303 F.3d 231 (2d Cir. 2002) .......... 20

*Santa Fe Indus., Inc. v. Green*,
430 U.S. 462 (1977) .......... 5

*United States v. Adamson*,
291 F.3d 606 (9th Cir. 2002) .......... 14

*United States v. Alston*,
974 F.2d 1206 (9th Cir. 1992) .......... 4

*United States v. Arreola*,
467 F.3d 1153 (9th Cir. 2006) .......... 16

*United States v. Escobar de Bright*,
742 F.2d 1196 (9th Cir. 1984) .......... 15

*United States v. Espino*,
892 F.3d 1048 (9th Cir. 2018) .......... 16

*United States v. Evanston*,
651 F.3d 1080 (9th Cir. 2011) .......... 17

*United States v. Frederick*,
78 F.3d 1370 (9th Cir. 1996) .......... 22

*United States v. Frega*,
179 F.3d 793 (9th Cir. 1999) .......... 14

*United States v. Gaudin*,
515 U.S. 506 (1995) .......... 10, 11

*United States v. Laurienti*,
611 F.3d 530 (9th Cir. 2010) .......... 12

*United States v. Lazarenko*,
564 F.3d 1026 (9th Cir. 2009) .......... 17

*United States v. Marguet-Pillado*,
648 F.3d 1001 (9th Cir. 2011) .......... 14

*United States v. Prime*,
431 F.3d 1147 (9th Cir. 2005) .......... 17

*United States v. Ramos-Torres*,
187 F.3d 909 (8th Cir. 1999) .......... 16

*United States v. Skelly*,
442 F.3d 94 (2d Cir. 2006) .......... 12

*United States v. Straub*,
538 F.3d 1147 (9th Cir. 2008) .......... 21

*United States v. Westerdahl*,
945 F.2d 1083 (9th Cir. 1991) .......... 21

*United States v. Whitson*,
587 F.2d 948 (9th Cir. 1978) .......... 9

*United States v. Yates*,
16 F.4th 256 (9th Cir. 2021) .......... 11

*Yates v. United States*,
354 U.S. 298 (1957) .......... 11

**Statutes**

15 U.S.C. § 78j(b) .......... 2

18 U.S.C. § 1001 .......... 2

18 U.S.C. § 1348(1) .......... 2, 5, 7

18 U.S.C. § 3301 .......... 14

**Rules**

Fed. R. Crim. P. 33(a) .......... 1, 2, 4

Fed. R. Evid. 103(b) .......... 9

# INTRODUCTION

Andrew Left was tried and convicted on a theory this Court held, before trial, is not a crime: that he published opinions about public companies without disclosing that he planned to trade against them. ECF No. 274 at 5, 9–10; ECF No. 328 at 19. The instructions let that happen. They never defined "scheme to defraud" and allowed conviction on a "scheme" or "course of business" with no false or misleading statement found. The Government then told the jury that nothing required it to "prove some specific false statement," and that the literal truth of Mr. Left's statements "is not the issue." Tr. 67:22–24, 157:12–13 (May 28, 2026).[1] The verdict cannot be traced to a valid theory.

Other errors compound it. The Count One charge omitted the money-or-property object *Ciminelli* requires. The jury convicted on Count One without being required to find the single scheme the grand jury charged—the only allegation that made three of the securities it selected timely. The Court refused an opinion instruction it had called "necessary." The jury convicted Mr. Left on Count Eighteen, a dismissed charge on which it received no instruction. And after refusing to immunize Ryan Choi, the Government put his unconfronted statement before the jury through Mr. Martel, and the jury had that testimony read back hours before convicting.

Each error independently warrants relief. Together, on a split verdict, the errors leave no confidence that Mr. Left received a fair trial. Short of the acquittal his separately filed Rule 29 motion requires, the interest of justice requires a new trial. Fed. R. Crim. P. 33(a).[2]

[1] Citations to "Tr." are to the certified trial transcripts.

[2] Mr. Left preserves all his appellate rights with respect to all other objections raised before and during trial.

## BACKGROUND

### I. The Charge and the Pretrial Rulings

The First Superseding Indictment ("FSI") charged false statements and half-truths, not silence. FSI ¶ 7. Count One charged a single scheme under 18 U.S.C. § 1348(1); Counts Two through Seventeen charged sixteen violations of 15 U.S.C. § 78j(b) and Rule 10b-5, each tied to a security and a dated statement. Count Eighteen, a false-statement charge under 18 U.S.C. § 1001, was dismissed for lack of venue before trial. ECF No. 326. The Court held that a scheme to defraud requires a false statement, a material misrepresentation, or the concealment of a material fact, and that an omission is actionable only on breach of an independent duty. ECF No. 274 at 5, 9–10. On the eve of trial, it ruled that the "absence of securities position disclosures alone is insufficient to form the basis of a securities fraud charge." ECF No. 328 at 19.

### II. The Charge Conference and the Instructions

Mr. Left asked, repeatedly, for instructions embodying the Court's pretrial rulings: that a scheme to defraud and a Rule 10b-5 device both require deception; that an omission is actionable only on proof of a duty; that an opinion is actionable only if disbelieved; that the jury must find the single scheme charged; that money or property must be the object of the scheme; and that good faith is a complete defense. *See* Ex. A (Joint Jury Instructions). The Court declined a supplemental no-holding-period instruction, ECF Nos. 336, 356, and, after the Government rested, the theory-of-defense instruction on opinion. ECF No. 386 at 1–2.

The final charge, ECF No. 399, did not define "scheme to defraud" or "cheat," did not mention money or property, and did not require a false or misleading statement for Count One. *Id.* at 17 (Instruction No. 15). It offered four disjunctive routes to conviction on Counts Two through Seventeen, *id.* at 23 (Instruction No. 20), and told

the jury that "[i]t is not necessary that the defendant made a profit or that anyone actually suffered a loss." *Id.* at 25. No instruction addressed opinion, good faith, or a holding period. The duty instruction stated that "[h]alf-truths require identifying affirmative assertions before determining if other missing information is needed to make those statements not misleading." *Id.* at 27 (Instruction No. 22); Tr. 59:24–60:8 (May 28, 2026).

## III. <u>The Closing Arguments</u>

Minutes after the Court read the charge, the Government told the jury that nothing required it to "prove some specific false statement about an underlying company." Tr. 67:20–25 (May 28, 2026). It told the jury that the parties had stipulated to elements they had not, *id.* at 75:4–13, and that the jury had "met" the case's "victims." *Id.* at 63:17–19.

## IV. <u>The Verdict and Count Eighteen</u>

Count Eighteen had been dismissed before trial. ECF No. 326. The Court told the jury there were "17 counts for you to consider." Tr. 46:14 (May 28, 2026). The verdict form nonetheless listed Count Eighteen, "False Statement to a Federal Officer." ECF No. 412.



COUNT EIGHTEEN

(False Statement to a Federal Officer)

We, the jury, unanimously find the defendant, Andrew Left (*check one*):

✓ GUILTY

___ NOT GUILTY

of Count Eighteen of the First Superseding Indictment.

The jury deliberated with that form from May 28 through June 1, when it returned a signed verdict finding Mr. Left guilty on Count Eighteen. ECF No. 412;

Tr. 8:11–9:3 (June 1, 2026). Over objection and a motion for mistrial because a verdict on "the most prejudicial outcome" had "infected the deliberations," *id.* at 9:4–20, the Court sent the jury back. *Id.* at 10:2–6. The Government itself proposed "a curative instruction that you're to consider this verdict form anew." *Id.* at 9:21–24. The Court gave none. It told the jury the form "had a count in it which was not before you, Count 18," that the new form "will be identical," and that "[i]t's up to you to decide if you want—if that changes your deliberations, if you want to deliberate further." *Id.* at 10:11–22.

The jury convicted on Count One and twelve substantive counts—Cronos, PolarityTE, Tesla, Nvidia, Twitter, Facebook, Roku, Invitae, Novavax, American Airlines, Palantir, and XL Fleet—and acquitted on Namaste, Beyond Meat, General Electric, and Luckin Coffee. *Id.* at 11:17–15:17; ECF No. 416. On Count One, it selected fifteen securities, including Chegg, FleetCor, and Grand Canyon Education. Tr. 11:21–12:13 (June 1, 2026).

## ARGUMENT

### I. Rule 33 Requires a New Trial.

Rule 33 authorizes the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Court's power under Rule 33 "is much broader than its power" under Rule 29. *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992). A new trial is warranted where a defendant is denied a fair trial, or where "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *Id.* at 1211–12 (citation omitted). The errors below, individually and together, denied Mr. Left a fair trial.

## II. The Jury Was Permitted to Convict on the Nondisclosure Theory This Court Held Is Not a Crime.

Prior to trial, this Court held that a "scheme to defraud" requires the "making of a false statement or material misrepresentation, or the concealment of a material fact," and that an omission unconnected to a half-truth or other affirmative misrepresentation—such as a defendant who "failed to disclose that his securities trading was contrary to his public commentary"—commits no crime under Section 1348(1) absent an independent duty to disclose. ECF No. 274 at 5, 10. In its closing, the Government told the jury that the scheme was "recommending stocks to the market and then trading counter to what that recommendation was for a quick profit." Tr. 67:25–68:2 (May 28, 2026). That is the conduct this Court gave as its example of what is *not* a crime. With a general verdict, the Court cannot know whether the jury convicted on a valid theory or on that one, and the Government cannot show beyond a reasonable doubt that it did not.

### A. Securities Fraud Requires Deception, and Nondisclosure Without a Duty Is Not Deception.

This Court construed § 1348(1) through the bank-fraud statute, ECF No. 274 at 4 & n.4, under which "scheme to defraud" carries its common-law meaning and requires a misrepresentation or the concealment of a material fact. *Neder v. United States*, 527 U.S. 1, 22–25 (1999). Section 10(b) reaches only "manipulation or deception," *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 473–77 (1977); a sincere opinion is not deceptive even if wrong, *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183–86 (2015); and "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5," so a half-truth theory "require[s] identifying affirmative assertions." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 264–65 (2024) (citation omitted); *Chiarella v. United States*, 445 U.S. 222, 235 (1980). This Court so held, ECF No. 274 at 5, 9–10, and denied dismissal because the Government represented that Count One alleged

"affirmative false and misleading statements and half-truths," *id.* at 9, and because an instruction to that effect would "adequately address any concern that Defendant may be convicted solely based on an omissions theory." *Id.* at 10.

### B. The Instructions Permitted Conviction Without Any False or Misleading Statement or Deceptive Conduct.

Both parties built their Count One instructions on the bank-fraud model, and both proposed the model definition: "A 'scheme to defraud' means any deliberate plan of action or course of conduct by which someone intends to deceive and cheat, in other words to deprive the victim of money or property by means of deception." Gov't Proposed Instr. No. 1 (Ex. A at 47); Def. Proposed Instr. No. 2 (*id.* at 99). The Government also proposed that "[i]t is not necessary for the government to prove any false representations or material omissions"; the defense objected that this contradicted ECF No. 274. *Id.* at 47–48.

The Court included none of this, and Instruction No. 15 omitted the falsity requirement. It required only a "scheme or artifice to defraud," materiality of "the statements made or facts omitted," "intent to deceive and cheat," and a connection to a covered security. ECF No. 399 at 17. "Scheme or artifice to defraud" is not defined there or anywhere else in the charge. Nothing in it requires a false or misleading statement, or deception of any kind. *See Kousisis v. United States*, 605 U.S. 114, 121 (2025).

Instruction No. 20 repeated the defect for Counts Two through Seventeen. It offered four disjunctive routes to conviction: a "device or scheme to defraud," an "untrue statement of material fact," a failure "to disclose a material fact" that made statements misleading, or "any act, practice, or course of business that operates or would operate as a fraud or deceit." ECF No. 399 at 23. "Device or scheme to defraud" is undefined. Three of the four prongs require no false statement, and two

carry no materiality requirement, because "material" modifies only the untrue-statement and failure-to-disclose prongs. *Id.*

These omissions removed the "scheme to defraud" element—a "legal term of art," ECF No. 274 at 5—from the instructions. A jury cannot supply a term of art from ordinary usage; "defraud" carries its common-law meaning, not a layperson's. *Neder*, 527 U.S. at 21–23. In ordinary usage, a scheme is a plan, and a plan to publish research and trade around the publication is a plan. No other instruction filled the hole. "Intent to deceive and cheat" describes a mental state; the charge never said what the deceit had to consist of. The materiality element presupposed that statements were made or facts omitted and asked only whether they were important, and its reference to "facts omitted" put the omission theory back before the jury with no instruction that an omission counts only where a duty is breached.

Nor did the duty instruction cure the defect. It told the jury that "[t]he law does not impose a freestanding duty" on a commentator to disclose "his trading positions or trading intentions," and that half-truths require identifying affirmative assertions. ECF No. 399 at 27. The jury learned that Mr. Left had no duty to disclose his trading, but was *not* told that an omission of that kind "is insufficient for criminal liability under Section 1348(1)." ECF No. 274 at 10. Mr. Left requested an instruction that nondisclosure of his trading "does not, standing alone," suffice. ECF No. 336 at 1.

### C. The Government Took Advantage of the Erroneous Instructions in Its Closing Arguments.

The Government knew there was a gap in the instructions, Tr. 225:14–21 (May 26, 2026), and filled it—first with a definition of "scalping" derived from an unadmitted letter, then by arguing that no falsity or deception was required at all.

*The "scalping" definition*. Before trial, the Government moved to exclude the 2020 rulemaking petition containing the scalping discussion, arguing that its introduction "would be a brazen usurpation of the Court's role to instruct on the law."

ECF No. 221 at 14. The Court agreed, finding the petition "irrelevant and thus inadmissible." ECF No. 328 at 9. At trial, when the defense raised the petition on direct, the Government invoked that ruling, and the Court struck the answer. Tr. 179:14–21 (May 21, 2026). The next day, over objection, the Government cross-examined Professor Verstein on the petition's text, representing that "[w]e're not introducing it" but asking "questions about it … [f]or purposes of impeachment." Tr. 71:22–23, 72:17–19 (May 22, 2026). On that basis, the Court permitted the "reading [of] the letter into the record." *Id*. at 72:22–23, 83:15–17. The petition was never offered or received. *See* ECF No. 407.

Before closing, the Government withdrew its proposed scalping instruction, *see* ECF Nos. 390, 392, and asked instead to "argue [scalping] from the evidence that was elicited at trial." Tr. 238:20–239:3 (May 27, 2026). But the actual evidence cut against the Government. Professor Verstein testified that the letter's scalping definition "is not accurate. It's missing elements," Tr. 80:5–6 (May 22, 2026); that the letter's premise was that this conduct was "*not* prohibited by 10b-5," *id*. at 79:5–6; and that the SEC, in "dozens of pages" responding to the petition, "did not respond to that proposal." *Id*. at 86:24–87:3. And when asked whether *Zweig* "involve[d] an over-the-counter penny stock scheme," he answered affirmatively and stated that there are "no scalping cases involving large public companies with an active market." *Id*. at 90:13–18. On the Government's objection, the Court struck that answer and instructed the jury to disregard it. *Id*. at 90:19–24.

In summation, the Government relied on the unadmitted petition, calling it "one of the most notable things that happened at this trial." Tr. 69:8–10 (May 28, 2026). The Government read its footnote definition of "illegal scalping" as though it were the governing standard, *id*. at 69:11–14; recited the letter's description of "negative activists" who disseminate opinion "just short of factual falsehoods," "induce a

panic," and "rapidly close[] out," *id*. at 69:15–21, a passage that had reached the jury only as a prosecutor's question, Tr. 73:19–74:9 (May 22, 2026); asked "What case does this sound like?", Tr. 69:24 (May 28, 2026); and then tied the letter's definition to "the Judge's instruction" about "intent." *Id*. at 70:2–5. The scalping "evidence" the Government argued from was the prosecutor's own question and an excluded document; the testimony about what scalping cases *actually* involve was the one the jury was told to disregard. See ECF No. 379 at 28–33.[3]

Instructing the jury on the law "is the distinct and exclusive province of the court." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (citation omitted); *see* ECF No. 399 at 9 (Instruction No. 8). Material used only to impeach may not be used to decide guilt. *United States v. Whitson*, 587 F.2d 948, 953 (9th Cir. 1978). Having withdrawn its own definition, the Government supplied the jury with one taken from a document it had persuaded the Court to exclude, and used it for the very purpose it had called "a brazen usurpation of the Court's role to instruct on the law."

*No falsity or deception.* The Government also told the jury that falsity or deception was not needed: "You see nothing in this element of Count 1, and there is nothing required for it that the government prove some specific false statement about an underlying company…. The scheme was about recommending stocks to the market and then trading counter to what that recommendation was for a quick profit[.]" Tr. 67:21–68:2 (May 28, 2026). No statement is identified—a "recommendation" is a category, not the specific statement *Macquarie* requires. See ECF No. 379 at 20–22.

[3] The *in limine* ruling was definitive. Fed. R. Evid. 103(b). The defense predicted this exact argument at the charge conference, Tr. 228:16–21 (May 26, 2026), and was told that objections to the scalping argument in closing would be deemed preserved. Tr. 240:14–19 (May 27, 2026).

The Government defined the crime as *undisclosed* intent: "It's a crime because before the defendant published these tweets, he already knew, he had the pre-existing plan to trade against his recommendations. He knew it before he hit publish. That's the deceit." *Id.* at 65:15–19. It conceded that "many of the statements in this case, they may not be outright falsehoods," and fell back on "half-truths." *Id.* at 68:20–22, 106:17–22. But it never identified the affirmative assertion that a half-truth required. Breaching its promise not to characterize silence as evidence of intent or scheme, ECF No. 248 at 19, the Government called the crime an omission: a trading plan Mr. Left kept to himself ("that's the deceit"). That omission is not a crime. *Chiarella*, 445 U.S. at 235; ECF No. 274 at 10.

*The rebuttal.* The Government repeated that truth did not matter: "[T]he literal truth of some of the statements in his Tweets and his reports is not the issue. The reports were window dressing." Tr. 157:12–14 (May 28, 2026). The Government asked the jury to "pull up page 17 of the jury instructions.… The scheme is what's unlawful, not any individual particular statement." *Id.* at 158:25–159:5. And last: "the best kind of scheme really is one based on half-truths because you're less likely to get caught. There's not some clear, easily disprovable, single statement, right, but it's still a scheme." *Id.* at 160:12–16. The Court told the jury a half-truth theory requires identifying an affirmative assertion, while the Government argued the *absence* of any false statement is what made the scheme succeed.

### D. The Verdict Cannot Be Traced to a Valid Theory, and the Error Was Not Harmless.

*First*, the omission of an offense element is constitutional error, harmless only where the element was "uncontested and supported by overwhelming evidence." *Neder*, 527 U.S. at 15–17; *United States v. Gaudin*, 515 U.S. 506, 522–23 (1995). Deception was *the* most contested issue in the case. The defense tried every count on the proposition that Mr. Left told the truth, Tr. 115:11–116:1 (May 28, 2026); *see*

ECF No. 379 at 4–5, 17, and the Government's answer was not that the statements were lies, but that truth "is not the issue." Tr. 157:12–13 (May 28, 2026).

The Government also took a contested element away from the jury. The parties stipulated only to covered securities and use of a national exchange. ECF No. 354 ¶¶ 1–3. They did *not* stipulate that any statement or omission was made "in connection with" the purchase or sale of a charged security—the second element of Instruction No. 20. ECF No. 399 at 23. The Government told the jury otherwise: "For Counts 2 and then 4 through 17, you have Box 3 and Box 2 checked off. You don't have to worry about those." Tr. 75:4–13 (May 28, 2026). Telling the jury the defense had conceded a disputed element was a directed finding, *Gaudin*, 515 U.S. at 522–23, and an element the jury was told not to consider cannot be harmless.

*Second*, where a case is submitted on alternative theories, one legally invalid, and the verdict is general, the conviction cannot stand unless it is clear the jury rested on a valid theory. *Yates v. United States*, 354 U.S. 298, 312 (1957); *Hedgpeth v. Pulido*, 555 U.S. 57, 60 (2008) (*per curiam*). The jury was urged to convict on an undefined "scheme or artifice to defraud" comprising truthful publications followed by non-manipulative trading. *See* ECF No. 379 at 4–8. The same defect infects Counts Two through Seventeen, where the jury was told that any one of four prongs was "independently sufficient." Tr. 68:4–7 (May 28, 2026).

A comparable error was held not harmless where the invalid theory was "the focus of the entire prosecution" and the trial was "permeated with the prohibited … theor[ies]." *United States v. Yates*, 16 F.4th 256, 269 (9th Cir. 2021) (citation omitted). So too here. The absence of position disclosure was the organizing fact of the Government's case: the definition of the scheme in its opening, Tr. 36:1–8 (May 12, 2026); the subject of its direct examinations, Tr. 176:24–177:2 (May 14, 2026); the premise of its cross-examinations, Tr. 210:25–212:10 (May 21, 2026);

Tr. 126:12–16 (May 27, 2026); and the crime it described in summation. The Government identified three affirmative false statements—Cronos, Namaste, and Invitae. Tr. 109:16–21 (May 28, 2026). The jury convicted on Cronos and Invitae, but acquitted on Namaste and on Beyond Meat, which the Government called "the epitome of a half-truth." *Id.* at 94:14. And it convicted on American Airlines, Twitter, Novavax, and Roku, for which the Government identified no "affirmative assertion" about Mr. Left's position and argued only that a target price implied one, or, for Roku, that he traded against his view that the stock was "uninvestable." Tr. 223:21–225:13 (May 26, 2026); Tr. 89:13–21, 111:5–112:3 (May 28, 2026); ECF No. 379 at 10, 22 & n.2. For those counts there was no affirmative statement for any omission to render misleading, *United States v. Skelly*, 442 F.3d 94, 97 (2d Cir. 2006); *United States v. Laurienti*, 611 F.3d 530, 540–41 (9th Cir. 2010), so the undefined "scheme" and "course of business" prongs were the only route to conviction. The Government's "additions"—pre-existing intent, speed, and target prices—supply an undisclosed fact, a holding period, and an opinion, not a deceptive statement. *See* ECF No. 379 at 5–6, 23–24. A target price cannot be an "affirmative assertion" about the speaker's own position; regardless, the jury was told it did not have to find one. Tr. 67:20–25, 158:23–159:5 (May 28, 2026). A new trial is required on every count.

## III. Count One Omitted the Money-or-Property Object *Ciminelli* Requires.

The federal fraud statutes "criminalize only schemes to deprive people of traditional property interests"; the right to "valuable economic information needed to make discretionary economic decisions" is not one. *Ciminelli v. United States*, 598 U.S. 306, 309, 316 (2023); *Kousisis*, 605 U.S. at 121. The Government proposed the model definition of "intent to deceive and cheat" as the intent "to deprive a victim of money or property," Ex. A at 46; the defense proposed the same, *id.* at 120 (Def. Proposed No. 7), and asked also that the jury be told that money or property "must be

the object of the scheme, not an incidental byproduct." *Id.* at 99 (Def. Proposed No. 2). The Government objected that this sentence and the *Ciminelli* sentence that followed it were "unnecessary and inappropriate." *Id.* at 101. The final charge contains neither: Instruction No. 15 requires only "intent to deceive and cheat"; "cheat" is never defined and "property" appears nowhere. ECF No. 399 at 17, 25.

The omission of this hotly contested element was not harmless beyond a reasonable doubt. No witness testified that he was induced to part with money or property because of anything Mr. Left said; the three "victims" the Government named in summation, Tr. 63:17–19 (May 28, 2026), were not. *See* ECF No. 379 at 10–11, 20, 26. The Government told the jury there was "no requirement that the government needed to prove that there was a specific person who actually suffered a loss." Tr. 69:4–7 (May 28, 2026). The defense argued the missing element: "Cheating is a taking … from a victim." *Id.* at 145:9–12. A jury that heard from no induced investor, and was never told that money or property had to be the scheme's object, may well have convicted on the deprivation of information alone.

## IV. The Court Refused the Single-Scheme Instructions, and the Resulting Variance Prejudiced Mr. Left.

The Court upheld Count One as a single scheme, relying on the availability of an instruction requiring the jury to find "the single scheme to defraud … as charged in the FSI," and admitted four otherwise time-barred securities on the condition that the single scheme be proven. ECF No. 274 at 5–8 & n.5. The defense requested that instruction: "You may not convict the defendant of executing a different or narrower scheme than the one charged in Count One." Def. Proposed Instr. No. 8 (Ex. A at 123). It also requested a limitations instruction requiring an execution on or after February 4, 2020. Def. Proposed Instr. No. 11 (Ex. A at 137). The Court gave neither. It gave instead the Government's unanimity instruction, which required agreement only that the scheme "was executed in connection with the same security" and allowed

the jury to "select more than one security." ECF No. 399 at 21 (Instruction No. 19). The verdict asked fifteen separate questions and never the one on which timeliness depended. *See United States v. Frega*, 179 F.3d 793, 804 (9th Cir. 1999).

The Government then proved, and conceded, a "side scheme" of separate executions. Tr. 158:7–11 (May 28, 2026). The variance affected substantial rights, *United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002), three ways. Mr. Left tried and defeated a case about a coordinated enterprise, but was convicted on a "side scheme" theory the indictment did not disclose. The Count One verdict rests in part on findings as to Chegg, FleetCor, and Grand Canyon, Tr. 12:11–13 (June 1, 2026), each time-barred without a single scheme, 18 U.S.C. § 3301. And the single-scheme allegation carried Hedge Fund A, the invoices, and "the lies to the Postal Inspector, the lies in the SEC testimony" onto every count, Tr. 91:24–92:21 (May 28, 2026); ECF No. 185 at 4–5, 10, 14, producing the "transference of guilt" *Kotteakos v. United States*, 328 U.S. 750, 774 (1946), condemned. A new trial on Count One is required; at a minimum, the findings as to Chegg, FleetCor, and Grand Canyon Education must be vacated.

## V. The Court Refused the Opinion Instruction It Had Called "Necessary."

A defendant has the right to an instruction on his theory of the case if it is "supported by law" and "has some foundation in the evidence," and refusal "warrants per se reversal" unless "other instructions, in their entirety, adequately cover that defense theory." *United States v. Marguet-Pillado*, 648 F.3d 1001, 1006 (9th Cir. 2011) (citations omitted).

Nearly every charged statement was an opinion—from the "target prices" to Mr. Left's Cronos commentary. ECF No. 379 at 5–6, 17–19; *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 493 (S.D.N.Y. 2004). And Mr. Left's defense was that he believed what he wrote. He asked for an instruction that an honestly held

opinion is not false or misleading even if wrong. ECF No. 386 at 1–2. That is the law. *Omnicare*, 575 U.S. at 186 ("a sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless whether an investor can ultimately prove the belief wrong"). Even the Government's alternative would have required proof "that the defendant did not hold the belief he professed." Ex. A at 72. And the Court recognized that "some instruction on that is necessary." Tr. 230:3–5 (May 26, 2026). None was given.

The theory had more than "some foundation in the evidence"; it *was* the defense. Mr. Left testified that he believed each of his opinions. Tr. 31:13–15, 57:6–13, 85:8–10, 175:1–9 (May 26, 2026). The Government's own witnesses corroborated him: Citron's editor described Mr. Left's insistence on accuracy, ECF No. 379 at 12–13; and its trading expert conceded that every charged tweet matched Mr. Left's position when he published it. Tr. 137:6–18 (May 19, 2026).

The jury thus had no standard for deciding whether a price target not reached, or a position not held, turned a sincere view into fraud—the Government's argument when it said an unmet target "tells you everything you need to know about the deceptive device that the target prices were in this scheme." Tr. 78:18–20 (May 28, 2026).

The Court was right that an opinion instruction was "necessary," and the failure to instruct on a supported defense theory "can never be considered harmless error." *United States v. Escobar de Bright,* 742 F.2d 1196, 1201–02 (9th Cir. 1984). That failure requires a new trial.

## VI. <u>The Jury's Return of a Guilty Verdict on Dismissed Count Eighteen Requires a New Trial.</u>

The jury convicted Mr. Left of a charge that had been dismissed, and on which it received no instruction or argument. Twelve jurors deliberated that phantom charge to verdict "beyond a reasonable doubt," and the finding they returned—that Mr. Left

lied to a federal officer—went to the element the defense contested most on Counts One through Seventeen: intent to deceive.

### A. This Was a Structural Error; No Instruction Existed for the Jury to Follow.

Some errors are so basic to a fair trial that they can never be treated as harmless. *Chapman v. California*, 386 U.S. 18, 23–24 (1967). Supplying the jury with a verdict form that guided it to an unexplained and undefended false-statement charge, of which it then *convicted* Mr. Left, is such an error. In *United States v. Ramos-Torres*, 187 F.3d 909, 913 (8th Cir. 1999), a dismissed forfeiture instruction—beginning "you have reached a verdict that defendant … is guilty"—was inadvertently sent to the jury. Although the Government argued that the evidence of guilt was overwhelming, the Eighth Circuit held that the error "rose to the level of 'structural' error." *Id.* at 914. Here, the jury did not need to infer guilt; it found Mr. Left guilty without any instruction from this Court, and no curative instruction followed.

In denying a mistrial, the Court found that the jurors "were not misled by the clerical error." ECF No. 423 at 2 (citing *United States v. Arreola*, 467 F.3d 1153, 1161–62 (9th Cir. 2006); *United States v. Espino*, 892 F.3d 1048, 1051 (9th Cir. 2018)). *Arreola* and *Espino* read a flawed verdict form "together" with the instructions on the same offense. *Espino*, 892 F.3d at 1051. There were no instructions on Count Eighteen to read with the form. The Court told the jury there were "17 counts for you to consider." Tr. 46:14 (May 28, 2026). The form showed eighteen. The jury resolved that conflict by convicting on the eighteenth. The presumption that juries follow instructions is rebuttable, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and it was clearly rebutted here. Not told the elements of the crime, what the false statements were, or to whom they were made, the jury simply marked GUILTY.

**B. The Phantom Count Prejudiced Counts One Through Seventeen.**

Even if not a structural error, a defendant is entitled to a new trial because extrinsic material reaching a deliberating jury is "presumptively prejudicial." *Remmer v. United States*, 347 U.S. 227, 229 (1954). To rebut that presumption, the Government must prove beyond a reasonable doubt that the material did not contribute to the verdict. *United States v. Prime*, 431 F.3d 1147, 1157 (9th Cir. 2005). It cannot.

Courts weigh how the material reached the jury, how long it was available, and the extent to which the jury considered it, *Prime*, 431 F.3d at *1157*, and, for dismissed-count spillover, whether it was "inflammatory" and the degree of overlap. *United States v. Lazarenko*, 564 F.3d 1026, 1043–44 (9th Cir. 2009). Every factor favors Mr. Left.

*Nature.* The form told the jury, with the Court's imprimatur, that Mr. Left stood charged with lying to a federal officer. The trial judge's "lightest word or intimation is received with deference, and may prove controlling." *United States v. Evanston*, 651 F.3d 1080, 1084 (9th Cir. 2011) (citation omitted).

*Inflammatory character and overlap.* A § 1001 charge is a formal determination that the defendant lied to law enforcement. In a fraud prosecution where the contested element was intent to deceive, that is precisely the conclusion whose "transference … by psychological effect, in spite of instructions," *Kotteakos* guards against. 328 U.S. at 767. And the overlap is total: the Government argued the alleged lies to investigators as its intent evidence on the fraud counts, telling the jury to consider "the lies on cable television, the lies to the Postal Inspector, the lies in the SEC testimony"; that Mr. Left gave Inspector Hallstrom an "unwavering answer and a false answer"; and that "he doubled down on these same lies with the SEC." Tr. 91:23–92:21 (May 28, 2026). The phantom count asked the jury to return a formal finding on exactly that accusation, and it did.

*Duration.* The form was with the jury throughout three days of deliberations. The jury did not merely see Count Eighteen; it deliberated on it and returned a unanimous guilty finding, so no inference is needed about whether it considered the material. Only after a verdict had been reached was a corrected form sent in, and the jury returned a second verdict forty minutes later with not a single decision changed. Tr. 10:22–11:5 (June 1, 2026); ECF Nos. 412, 416.

No curative instruction was given, though the Government proposed one. Tr. 9:21–24 (June 1, 2026). The Court instead told the jury that Count 18 "was not before you." *Id.* at 10:13–14. Leaving it to the jury "to decide if you want … to deliberate further" on an "identical" form, *id.* at 10:16–19, invited the jury to copy its prior answers forward, and the forty minutes that followed confirm it did.

A jury that declares guilt on a crime it was never instructed on has convicted on something other than the law. The interest of justice requires a new trial.

## VII. <u>The Government Put Ryan Choi's Unconfronted Statement Before the Jury, After Refusing to Immunize Him, and That Testimony Was Read Back Hours Before the Verdict.</u>

### A. The Advice-of-Counsel Defense Ran Through Choi.

Mr. Left and Ryan Choi retained Jack Martel as counsel to Citron Capital. Martel reviewed the trading strategy and advised that "it was legal." Tr. 101:13–23 (May 22, 2026). Choi was "the contact person for Mr. Martel." Tr. 117:13–14 (May 26, 2026); DX 2305; DX 2310. Mr. Left testified that he spoke with Choi fifteen to twenty times a day and understood Choi was relaying Martel's advice. Tr. 149:6–18 (May 26, 2026). Choi's SEC testimony corroborated the conduit: Mr. Left "generally knew I was talking with counsel all the time." ECF No. 223, Ex. B (Choi SEC Tr. Vol. III at 600). Choi invoked the Fifth Amendment. The Court denied Mr. Left's motion to compel use immunity or admit Choi's SEC testimony, finding no

"deliberate intent to distort the fact-finding process." ECF No. 223; ECF No. 328 at 14–15. The advice-of-counsel defense therefore rested on Mr. Left and Mr. Martel.

### B. The Government Elicited Choi's Out-of-Court Statement Through Martel.

Mr. Martel testified that he had reviewed the trading strategy, determined it was lawful, and informed Citron. On cross-examination, the Government asked: "Sir, would it surprise you to know Mr. Choi said he never provided your legal advice to Mr. Left?" Tr. 135:24–25 (May 22, 2026). The defense objected; the Court overruled. *Id.* at 136:1–3. Martel answered, "That would surprise me," and volunteered that "Mr. Choi told me that he discussed these matters with Mr. Left." *Id.* at 136:4, 136:14–15. The defense objected again; the Court overruled again. *Id.* at 136:7–10. At sidebar, the Court barred further reference to what Choi "said out of court," *id.* at 138:12–139:2, but never struck the question or answer or instructed the jury to disregard them. Mr. Left renewed the objection in a written mistrial motion, ECF No. 384, which the Court denied. Tr. 4:9–5:12 (May 26, 2026).

When the jury asked to hear all of Mr. Martel's testimony read back, the defense asked that it not re-hear the Choi question and answer. Tr. 5:8–6:8, 6:22–7:12 (June 1, 2026). That too was denied.

### C. The Question Violated the Confrontation Clause.

Testimonial statements of an absent witness are admissible only where the declarant is unavailable and the defendant had a prior opportunity to cross-examine. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Choi's SEC testimony is testimonial by definition, Choi was unavailable due to the Government's actions, and the defense never cross-examined him.

In denying the mistrial motion, this Court observed that Choi had "said that he did not communicate the legal advice that Martel gave to Mr. Left." Tr. 4:14–5:12 (May 26, 2026). But the Clause "commands, not that evidence be reliable, but that

reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford*, 541 U.S. at 61. Whether the question tracked the transcript is a question *Crawford* deems irrelevant. And the transcript cuts both ways. ECF No. 384 at 6–7, 16; ECF No. 213-3 at 793:4–13 ("[D]id you ever tell Andrew Left that 'Mr. Martel drafted these for us'?" A: "Yes.").

Nor does it matter that the statement came in through a question rather than an exhibit. In *Douglas v. Alabama*, 380 U.S. 415, 419 (1965), the prosecutor conveyed an absent declarant's statement through his questions; the Clause was violated though the questions were "not technically testimony," because the jury "might improperly infer both that the statement had been made and that it was true." *See* ECF No. 384 at 4–6; *Ryan v. Miller*, 303 F.3d 231, 248–50 (2d Cir. 2002).

The Ninth Circuit applies the same rule: the "critical substance" of an absent declarant's statement may not be conveyed through another witness, and cross-examining the relaying witness "is no substitute for the direct confrontation guaranteed by the Sixth Amendment." *Ocampo v. Vail*, 649 F.3d 1098, 1108–13 (9th Cir. 2011).

**D. The Violation Was Not Harmless.**

The Government must show the error harmless beyond a reasonable doubt, considering the importance of the tainted evidence, whether it was cumulative, and whether it contradicted the defense. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). Every factor favors Mr. Left.

The Choi "statement" went to the single fact on which the advice-of-counsel defense depended—whether Martel's advice reached Mr. Left through Choi. It was not cumulative; no other evidence had Choi denying the conduit. It contradicted both Martel and Mr. Left. And the jury heard the Choi statement on May 22, and then heard Mr. Left, over the next two days, testify to the conduit the Government had just told

them Choi denied. The statement pre-loaded the jury to hear Mr. Left's account as fabrication, and Mr. Left could not call Choi to prove otherwise, because the Government had ensured he would not testify. No limiting instruction was given.

On the morning of the verdict, at the jury's request, the Court read back "all the testimony of the witness Mr. Martel." Tr. 6:24–7:12 (June 1, 2026). That readback put the unconfronted statement before the jury a second time, with the Court's endorsement, hours before it convicted—and confirmed that the advice-of-counsel defense was the live question in the jury room.

Every finding the advice-of-counsel instruction required, ECF No. 399 at 28, depends on the advice having reached Mr. Left. The Government built its closing on that dependency: "Mr. Choi is the one who spoke to Mr. Martel. … The defendant never told Choi anything specific to tell Martel"; the defense "fails on each and every box." Tr. 101:23–103:15 (May 28, 2026). The unconfronted Choi statement was the only evidence in the record that Martel's advice never reached Mr. Left.

### E. The Government Used Choi's Unavailability as Sword and Shield.

The Court found no deliberate distortion of the fact-finding process on the pretrial record. ECF No. 328 at 15. The trial record is different. When the Government elicited on May 14 that Choi had deleted Telegram messages, the defense objected that Choi "has now been made a witness against Mr. Left" after the Government refused to immunize him. Tr. 159:8–14 (May 14, 2026); *see* ECF No. 384 at 9–12. Eight days later came the "would it surprise you" question. Declining immunity and then arguing from the resulting silence—extracting an impeachment inference against Martel and Mr. Left from the absence the Government created—is the distortion *United States v. Straub*, 538 F.3d 1147, 1161 (9th Cir. 2008), and *United States v. Westerdahl*, 945 F.2d 1083, 1087 (9th Cir. 1991), exist to prevent. *See* ECF No. 384 at 12–14; ECF No. 223 at 18–19. The interest of justice requires a new trial.

## **CONCLUSION**

A new trial is required on every count of conviction. Each error identified above independently warrants relief; their cumulative effect, on a split verdict, removes any confidence that Mr. Left received the fair trial the Constitution and Rule 33 guarantee. *See United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). Mr. Left also renews each additional ground preserved at trial, including the exclusion of the June 2017 *New York Times Magazine* profile. ECF No. 391; Tr. 4:10–17 (May 27, 2026).

Dated: October 6, 2026

Respectfully submitted,

DYNAMIS LLP

*/s/ Eric S. Rosen*
Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Emily J. Scarisbrick (*pro hac vice*)

AARON KATZ LAW LLC
Aaron Katz (*pro hac vice*)

WEIL, GOTSHAL & MANGES LLP
Adam Fee
Ben Nicholson

*Attorneys for Defendant Andrew Left*

**CERTIFICATE OF COMPLIANCE**

I certify, as counsel for Defendant Andrew Left, that this memorandum of points and authorities contains 6,988 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 6, 2026

*/s/ Yusef Al-Jarani*
Yusef Al-Jarani