**DYNAMIS LLP**
ERIC S. ROSEN (*pro hac vice*)
erosen@dynamisllp.com
MICHAEL B. HOMER (*pro hac vice*)
mhomer@dynamisllp.com
EMILY J. SCARISBRICK (*pro hac vice*)
escarisbrick@dynamisllp.com
175 Federal Street, Suite 1200
Boston, Massachusetts 02110
(617) 802-9157

YUSEF AL-JARANI (Cal. Bar No. 351575)
yaljarani@dynamisllp.com
1100 Glendon Ave., 17th Floor
Los Angeles, California 90024
(213) 283-0685

**WEIL, GOTSHAL & MANGES LLP**
ADAM FEE (Cal. Bar No. 345075)
adamfee@weil.com
BEN NICHOLSON (Cal. Bar No. 317970)
ben.nicholson@weil.com
1999 Avenue of the Stars, Suite 1800
Los Angeles, CA 90067
(213) 667-5100

*Attorneys for Defendant Andrew Left*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA

v.

ANDREW LEFT,

Defendant.

Case No. 2:24-cr-00456-VAP

**DEFENDANT ANDREW LEFT'S MOTION FOR A NEW TRIAL UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 33**

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL.**

Hr'g: November 17, 2026
Time: 10:00 a.m.
Ctrm: 8C
Judge: Hon. Virginia A. Phillips

## NOTICE OF MOTION AND MOTION

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 17, 2026 at 10:00 a.m., or as soon after as the matter may be heard, in Courtroom 8C of the First Street United States Courthouse, 350 West 1st Street, Los Angeles, California 90012, before the Honorable Virginia A. Phillips, Defendant Andrew Left moves this Court under Federal Rule of Criminal Procedure 33 for a new trial on every count of conviction (Count One and Counts Two, Four through Nine, Eleven, and Fourteen through Seventeen). Pursuant to the Court's October 8, 2026 Order (ECF No. 464), this single motion states all grounds for relief under Rule 33, including newly discovered evidence under Rule 33(b)(1). The Motion is based on this Notice of Motion and Motion, the incorporated Memorandum of Points and Authorities, the Declaration of Eric S. Rosen and exhibits filed herewith, the complete trial record, the exhibits and docket entries cited herein, and any other evidence or argument that the Court may consider at the hearing on this motion. Counsel also renews and incorporates the objections and the mistrial motions preserved on the record. Mr. Left's motion for a judgment of acquittal under Rule 29(c), filed October 6, 2026, remains pending.

The Motion is made on the following grounds, each of which is addressed in the incorporated Memorandum.

*First*, the instructions and the Government's closing argument permitted the jury to convict on the nondisclosure theory this Court held is not a crime, and the general verdict cannot be traced to a valid theory.

*Second*, the Count One instructions omitted the money-or-property object of the scheme.

*Third*, the Court refused the single-scheme and limitations instructions, and the resulting variance prejudiced Mr. Left; at a minimum, the Count One findings as to Chegg, FleetCor, and Grand Canyon Education must be vacated as time-barred.

*Fourth*, the Court refused Mr. Left's theory-of-defense instruction on opinion statements.

*Fifth*, the jury returned a guilty verdict on dismissed Count Eighteen, on which it received no instruction, and was sent back to deliberate on an "identical" form without a curative instruction.

*Sixth*, after refusing to immunize Ryan Choi, the Government put Choi's unconfronted out-of-court statement before the jury through another witness, in violation of the Confrontation Clause, and the jury had that testimony read back hours before the verdict.

*Seventh*, newly discovered evidence concerning Government witness Daniel Bachus, unknown to the defense at trial, would probably produce an acquittal.

Each ground independently requires a new trial. Together, they leave no confidence that Mr. Left received a fair trial. Fed. R. Crim. P. 33(a).

Dated: October 9, 2026

Respectfully submitted,

DYNAMIS LLP

/s/ Eric S. Rosen
Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Emily J. Scarisbrick (*pro hac vice*)

WEIL, GOTSHAL & MANGES LLP
Adam Fee
Ben Nicholson

*Attorneys for Defendant Andrew Left*

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION .......... I
INTRODUCTION .......... 1
BACKGROUND .......... 2
I. THE CHARGE AND THE PRETRIAL RULINGS .......... 2
II. THE CHARGE CONFERENCE AND THE INSTRUCTIONS .......... 2
III. THE CLOSING ARGUMENTS .......... 3
IV. THE VERDICT AND COUNT EIGHTEEN .......... 3
ARGUMENT .......... 4
I. RULE 33 REQUIRES A NEW TRIAL. .......... 4
II. THE JURY WAS PERMITTED TO CONVICT ON THE NONDISCLOSURE THEORY THIS COURT HELD IS NOT A CRIME. .......... 4
*A. Securities Fraud Requires Deception, and Nondisclosure Without a Duty Is Not Deception. .......... 5*
*B. The Instructions Permitted Conviction Without Any False or Misleading Statement or Deceptive Conduct. .......... 5*
*C. The Government Took Advantage of the Erroneous Instructions in Its Closing Arguments. .......... 7*
*D. The Verdict Cannot Be Traced to a Valid Theory, and the Error Was Not Harmless. .......... 10*
III. COUNT ONE OMITTED THE MONEY-OR-PROPERTY OBJECT *CIMINELLI* REQUIRES. .......... 11
IV. THE COURT REFUSED THE SINGLE-SCHEME INSTRUCTIONS, AND THE RESULTING VARIANCE PREJUDICED MR. LEFT. .......... 12
V. THE COURT REFUSED THE OPINION INSTRUCTION IT HAD CALLED "NECESSARY." .......... 13
VI. THE JURY'S RETURN OF A GUILTY VERDICT ON DISMISSED COUNT EIGHTEEN REQUIRES A NEW TRIAL. .......... 14
*A. This Was a Structural Error; No Instruction Existed for the Jury to Follow. .......... 14*
*B. The Phantom Count Prejudiced Counts One Through Seventeen. .......... 15*

VII. THE GOVERNMENT USED RYAN CHOI'S UNCONFRONTED STATEMENT AFTER REFUSING TO IMMUNIZE HIM, VIOLATING MR. LEFT'S SIXTH AMENDMENT RIGHTS. ....... 16

*A. The Advice-of-Counsel Defense Ran Through Choi. ....... 16*

*B. The Government Elicited Choi's Out-of-Court Statement Through Martel. ....... 17*

*C. The Question Violated the Confrontation Clause. ....... 17*

*D. The Violation Was Prejudicial. ....... 18*

*E. The Government Used Choi's Unavailability as Sword and Shield..... 19*

VIII. NEWLY DISCOVERED EVIDENCE CONCERNING DANIEL BACHUS REQUIRES A NEW TRIAL. ....... 19

CONCLUSION ....... 22

CERTIFICATE OF COMPLIANCE ....... 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Chapman v. California*, 386 U.S. 18 (1967) .......... 14

*Chiarella v. United States*, 445 U.S. 222 (1980) .......... 5, 9

*Ciminelli v. United States*, 598 U.S. 306 (2023) .......... 11

*Crawford v. Washington*, 541 U.S. 36 (2004) .......... 17

*Davis v. Alaska*, 415 U.S. 308 (1974) .......... 21

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986) .......... 18

*Douglas v. Alabama*, 380 U.S. 415 (1965) .......... 17

*Hedgpeth v. Pulido*, 555 U.S. 57 (2008) .......... 10

*In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477 (S.D.N.Y. 2004) .......... 13

*Kotteakos v. United States*, 328 U.S. 750 (1946) .......... 13, 16

*Kousisis v. United States*, 605 U.S. 114 (2025) .......... 6, 11

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024) .......... 5

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051 (9th Cir. 2008) .......... 8

*Neder v. United States*, 527 U.S. 1 (1999) .......... 5, 6, 10

*Ocampo v. Vail*, 649 F.3d 1098 (9th Cir. 2011) .......... 18

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015) .......... 5, 13

*Remmer v. United States*,
347 U.S. 227 (1954) .......... 15

*Santa Fe Indus., Inc. v. Green*,
430 U.S. 462 (1977) .......... 5

*United States v. Abel*,
469 U.S. 45 (1984) .......... 21

*United States v. Adamson*,
291 F.3d 606 (9th Cir. 2002) .......... 12

*United States v. Alston*,
974 F.2d 1206 (9th Cir. 1992) .......... 4

*United States v. Arreola*,
467 F.3d 1153 (9th Cir. 2006) .......... 14

*United States v. Davis*,
960 F.2d 820 (9th Cir. 1992) .......... 21

*United States v. Escobar de Bright*,
742 F.2d 1196 (9th Cir. 1984) .......... 14

*United States v. Espino*,
892 F.3d 1048 (9th Cir. 2018) .......... 15

*United States v. Evanston*,
651 F.3d 1080 (9th Cir. 2011) .......... 15

*United States v. Frederick*,
78 F.3d 1370 (9th Cir. 1996) .......... 22

*United States v. Frega*,
179 F.3d 793 (9th Cir. 1999) .......... 12

*United States v. Gaudin*,
515 U.S. 506 (1995) .......... 10

*United States v. Hinkson*,
585 F.3d 1247 (9th Cir. 2009) (*en banc*) .......... 21

*United States v. Kohring*,
637 F.3d 895 (9th Cir. 2011) .......... 21

*United States v. Krasny*,
607 F.2d 840 (9th Cir. 1979) .......... 20

*United States v. Laurienti*,
611 F.3d 530 (9th Cir. 2010) .......... 11

*United States v. Lazarenko*,
564 F.3d 1026 (9th Cir. 2009) .......... 15

*United States v. Marguet-Pillado*,
648 F.3d 1001 (9th Cir. 2011) .......... 13

*United States v. Parker*,
790 F.3d 550 (4th Cir. 2015) .......... 22

*United States v. Prime*,
431 F.3d 1147 (9th Cir. 2005) .......... 15

*United States v. Ramos-Torres*,
187 F.3d 909 (8th Cir. 1999) .......... 14

*United States v. Shaffer*,
789 F.2d 682 (9th Cir. 1986) .......... 21

*United States v. Skelly*,
442 F.3d 94 (2d Cir. 2006) .......... 11

*United States v. Straub*,
538 F.3d 1147 (9th Cir. 2008) .......... 19

*United States v. Westerdahl*,
945 F.2d 1083 (9th Cir. 1991) .......... 19

*United States v. Whitson*,
587 F.2d 948 (9th Cir. 1978) .......... 8

*United States v. Yates*,
16 F.4th 256 (9th Cir. 2021) .......... 10

*Yates v. United States*,
354 U.S. 298 (1957) .......... 10

*Zweig v. Hearst Corp.*,
594 F.2d 1261 (9th Cir. 1979) .......... 7

**Statutes**

15 U.S.C. § 78j(b) .......... 2

18 U.S.C. § 1001 .......... 2, 15

18 U.S.C. § 1348(1) .......... 2, 4, 5, 7

18 U.S.C. § 3301 .......... 12

## Rules

Fed. R. Crim. P. 33(a) .......... 1, 4
Fed. R. Crim. P. 33(b)(1) .......... 20
Fed. R. Evid. 103(b) .......... 8

## INTRODUCTION

Andrew Left was tried and convicted on a theory this Court held, before trial, is not a crime: that he published opinions about public companies without disclosing that he planned to trade against them. ECF No. 274 at 10; ECF No. 328 at 19. The instructions never defined "scheme to defraud" and allowed conviction with no false or misleading statement found. The Government then told the jury nothing required it to "prove some specific false statement," and the literal truth of Mr. Left's statements "is not the issue." Tr. 67:22–24, 157:12–13 (May 28, 2026).[1] The verdict cannot be traced to a valid theory.

Other errors compound it. The Count One charge omitted the money-or-property object *Ciminelli* requires. The jury convicted on Count One without being required to find the single scheme the grand jury charged—the only allegation that made three of the securities it selected timely. The Court refused an opinion instruction it had called "necessary." The jury convicted Mr. Left on Count Eighteen, a dismissed charge on which it received no instruction. After refusing to immunize Ryan Choi, the Government put his unconfronted statement before the jury through another witness—which the jury had read back hours before convicting. And the Government's only witness to a company-related falsehood testified while concealing that [redacted]—facts disclosed only after the verdict.

Each error independently warrants relief. Together, on a split verdict, they leave no confidence that Mr. Left received a fair trial. Short of the acquittal his separately filed Rule 29 motion requires, the interest of justice requires a new trial. Fed. R. Crim.

[1] Citations to "Tr." are to the certified trial transcripts.

P. 33(a). Newly discovered evidence that would have impeached a key government witness independently requires a new trial under Rule 33(b).[2]

## BACKGROUND

### I. The Charge and the Pretrial Rulings

The First Superseding Indictment ("FSI") charged false statements and half-truths, not silence. FSI ¶ 7. Count One charged a single scheme under 18 U.S.C. § 1348(1); Counts Two through Seventeen charged sixteen violations of 15 U.S.C. § 78j(b) and Rule 10b-5, each tied to a security and a dated statement. Count Eighteen, a false-statement charge under 18 U.S.C. § 1001, was dismissed before trial. ECF No. 326.

The Court held a scheme to defraud requires a false statement, a material misrepresentation, or the concealment of a material fact, and an omission is actionable only on breach of an independent duty. ECF No. 274 at 5, 9–10. On the eve of trial, it ruled that the "absence of securities position disclosures alone is insufficient to form the basis of a securities fraud charge." ECF No. 328 at 19.

### II. The Charge Conference and the Instructions

Mr. Left asked, repeatedly, for instructions embodying the Court's pretrial rulings on deception, duty, opinion, the single scheme charged, money or property, and good faith. *See* Ex. A (Joint Jury Instructions). The Court declined a supplemental no-holding-period instruction, ECF Nos. 336, 356, and, after the Government rested, the theory-of-defense instruction on opinion. ECF No. 386 at 1–2.

The final charge, ECF No. 399, did not define "scheme to defraud" or "cheat," did not mention money or property, and did not require a false or misleading statement for Count One. *Id.* at 17 (Instruction No. 15). It offered four disjunctive routes to

[2] Although Mr. Left is raising specific arguments in support of his request for a new trial pursuant to Federal Rule of Criminal Procedure 33, he preserves all his appellate rights with respect to other objections raised before and during trial.

conviction on Counts Two through Seventeen, *id.* at 23 (Instruction No. 20), and told the jury "[i]t is not necessary that the defendant made a profit or that anyone actually suffered a loss." *Id.* at 25. No instruction addressed opinion, good faith, or a holding period. The duty instruction stated: "[h]alf-truths require identifying affirmative assertions before determining if other missing information is needed to make those statements not misleading." *Id.* at 27 (Instruction No. 22); Tr. 59:24–60:8 (May 28, 2026).

## III. The Closing Arguments

Minutes after the Court read the charge, the Government told the jury that nothing required it to "prove some specific false statement about an underlying company." Tr. 67:20–25 (May 28, 2026). It told the jury that the parties had stipulated to elements they had not, *id.* at 75:4–13, and that the jury had "met" the case's "victims." *Id.* at 63:17–19.

## IV. The Verdict and Count Eighteen

Count Eighteen was dismissed before trial. ECF No. 326. The Court told the jury there were "17 counts for you to consider." Tr. 46:14 (May 28, 2026). The verdict form nonetheless listed Count Eighteen, "False Statement to a Federal Officer." ECF No. 412.



COUNT EIGHTEEN

(False Statement to a Federal Officer)

We, the jury, unanimously find the defendant, Andrew Left (*check one*):

✓ GUILTY

___ NOT GUILTY

of Count Eighteen of the First Superseding Indictment.

The jury deliberated with that form for three days, and then returned a signed verdict finding Mr. Left guilty on Count Eighteen. ECF No. 412; Tr. 8:11–9:3 (June 1, 2026). Over objection and a motion for mistrial because a verdict on "the most prejudicial outcome" had "infected the deliberations," *id.* at 9:4–20, the Court sent the jury back. *Id.* at 10:2–6. It told the jury the form "had a count in it which was not before you, Count 18," and "[i]t's up to you to decide if you want—if that changes your deliberations, if you want to deliberate further." *Id.* at 10:11–22. No curative instruction was given.

The jury convicted on Count One and twelve substantive counts, and acquitted on Namaste, Beyond Meat, General Electric, and Luckin Coffee. *Id.* at 11:17–15:17; ECF No. 416. On Count One, it selected fifteen securities, including Chegg, FleetCor, and Grand Canyon Education, but not the hedge-fund-related securities this Court held were the core of the charged single scheme. Tr. 11:21–12:13 (June 1, 2026).

## ARGUMENT

### I. Rule 33 Requires a New Trial.

Rule 33 authorizes the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A new trial is warranted where a defendant is denied a fair trial, or where "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *United States v. Alston*, 974 F.2d 1206, 1211–12 (9th Cir. 1992) (citation omitted). The errors below, individually and together, denied Mr. Left a fair trial.

### II. The Jury Was Permitted to Convict on the Nondisclosure Theory This Court Held Is Not a Crime.

Before trial, this Court held that an omission unconnected to a half-truth or other affirmative misrepresentation—such as a defendant who "failed to disclose that his securities trading was contrary to his public commentary"—commits no crime under Section 1348(1) absent an independent duty to disclose. ECF No. 274 at 5, 10.

In its closing, the Government told the jury the scheme was "recommending stocks to the market and then trading counter to what that recommendation was for a quick profit." Tr. 67:25–68:2 (May 28, 2026). That is the conduct this Court gave as its example of what is *not* a crime. With a general verdict, the Government cannot show beyond a reasonable doubt that the jury did not convict on that theory.

### A. Securities Fraud Requires Deception, and Nondisclosure Without a Duty Is Not Deception.

This Court construed § 1348(1) through the bank-fraud statute, ECF No. 274 at 4 & n.4, under which "scheme to defraud" carries its common-law meaning and requires a misrepresentation or the concealment of a material fact. *Neder v. United States*, 527 U.S. 1, 22–25 (1999). Section 10(b) reaches only "manipulation or deception," *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 473–77 (1977); a sincere opinion is not deceptive even if wrong, *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183–86 (2015); and "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5," so a half-truth theory "require[s] identifying affirmative assertions." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 264–65 (2024) (citation omitted); *Chiarella v. United States*, 445 U.S. 222, 235 (1980). This Court so held, ECF No. 274 at 5, 9–10, and denied dismissal because the Government represented that Count One alleged "affirmative false and misleading statements and half-truths," *id.* at 9, and because an instruction to that effect would "adequately address any concern that Defendant may be convicted solely based on an omissions theory." *Id.* at 10.

### B. The Instructions Permitted Conviction Without Any False or Misleading Statement or Deceptive Conduct.

Both parties built their Count One instructions on the bank-fraud model, and both proposed the model definition: "A 'scheme to defraud' means any deliberate plan of action or course of conduct by which someone intends to deceive and cheat,

in other words to deprive the victim of money or property by means of deception." Gov't Instr. No. 1 (Ex. A at 47); Def. Instr. No. 2 (*id.* at 99). The Government also proposed that "[i]t is not necessary for the government to prove any false representations or material omissions"; the defense objected that this contradicted the Court's prior ruling (ECF No. 274). *Id.* at 47–48.

The Court included none of this, and Instruction No. 15 omitted the falsity requirement entirely. It required only a "scheme or artifice to defraud," materiality of "the statements made or facts omitted," "intent to deceive and cheat," and a connection to a covered security. ECF No. 399 at 17. "Scheme or artifice to defraud" is not defined anywhere in the charge, and nothing therein requires a false or misleading statement. *See Kousisis v. United States*, 605 U.S. 114, 121 (2025).

Instruction No. 20 repeated the defect for Counts Two through Seventeen. It offered four disjunctive routes to conviction: a "device or scheme to defraud," an "untrue statement of material fact," a failure "to disclose a material fact" that made statements misleading, or "any act, practice, or course of business that operates or would operate as a fraud or deceit." ECF No. 399 at 23. "Device or scheme to defraud" remains undefined. Three of the four prongs require no false statement, and two carry no materiality requirement. *Id.*

These omissions removed the "scheme to defraud" element—a "legal term of art," ECF No. 274 at 5—from the instructions. A jury cannot supply a term of art from ordinary usage; "defraud" carries its common-law meaning, not a layperson's. *Neder*, 527 U.S. at 21–23. In ordinary usage, a scheme is a plan, and a plan to publish research and trade around the publication is a plan. No other instruction filled the hole: "Intent to deceive and cheat" describes a mental state; the charge never said what the deceit had to consist of. The materiality element's reference to "facts omitted" put the

omission theory back before the jury with no instruction that an omission counts only where a duty is breached.

Nor did the duty instruction cure the defect. It told the jury "[t]he law does not impose a freestanding duty" on a commentator to disclose "his trading positions or trading intentions," and half-truths require identifying affirmative assertions. ECF No. 399 at 27. The jury learned Mr. Left had no duty to disclose his trading, but was *not* told that an omission of that kind "is insufficient for criminal liability under Section 1348(1)." ECF No. 274 at 10. Mr. Left requested an instruction that nondisclosure of his trading "does not, standing alone," suffice, ECF No. 336 at 1; that charge, too, was not given.

### C. The Government Took Advantage of the Erroneous Instructions in Its Closing Arguments.

The Government knew of the gap, Tr. 225:14–21 (May 26, 2026), and filled it—first with a definition of "scalping" derived from an unadmitted letter, then by arguing that no falsity or deception was required at all.

*The "scalping" definition*. Before trial, the Government moved to exclude a 2020 rulemaking petition describing scalping, arguing its introduction "would be a brazen usurpation of the Court's role to instruct on the law." ECF No. 221 at 14. The Court agreed, finding the petition "irrelevant and thus inadmissible." ECF No. 328 at 9. At trial, however, the Government cross-examined Professor Verstein on the petition's text, representing that "[w]e're not introducing it" but asking "questions about it…[f]or purposes of impeachment." Tr. 71:22–23, 72:17–19 (May 22, 2026). The petition was never offered or received. *See* ECF No. 407.

Before closing, the Government withdrew its proposed scalping instruction, *see* ECF Nos. 390, 392, and asked instead to "argue [scalping] from the evidence that was elicited at trial." Tr. 238:20–239:3 (May 27, 2026). But the evidence cut against the Government. Professor Verstein testified that the petition's scalping definition "is not

accurate. It's missing elements," Tr. 80:5–6 (May 22, 2026); and that the petition's premise was that this conduct was "*not* prohibited by 10b-5." *Id*. at 79:5–6. And when asked whether *Zweig v. Hearst Corp.*, 594 F.2d 1261 (9th Cir. 1979), "involve[d] an over-the-counter penny stock scheme," he answered affirmatively and stated there are "no scalping cases involving large public companies with an active market." *Id*. at 90:13–18. On the Government's objection, the Court struck that answer and instructed the jury to disregard it. *Id*. at 90:19–24.

In summation, the Government relied on the unadmitted petition, calling it "one of the most notable things that happened at this trial." Tr. 69:8–10 (May 28, 2026). The Government read its footnote definition of "illegal scalping" as though it were the governing standard, *id*. at 69:11–14; recited the petition's description of "negative activists" who disseminate opinions "just short of factual falsehoods," "induce a panic," and "rapidly close[] out," *id*. at 69:15–21, a passage that reached the jury only through a prosecutor's question, Tr. 73:19–74:9 (May 22, 2026); and then tied the petition's definition to "the Judge's instruction" about "intent." Tr. 70:2–5 (May 28, 2026). *See* ECF No. 379 at 28–33.[3]

Instructing the jury on the law "is the distinct and exclusive province of the court." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (citation omitted). Material used only to impeach may not be used to decide guilt. *United States v. Whitson*, 587 F.2d 948, 953 (9th Cir. 1978). Having withdrawn its own definition, the Government supplied the jury with one taken from a document it had persuaded the Court to exclude, and used it for the very purpose it had called "a brazen usurpation of the Court's role to instruct on the law."

---

[3] The *in limine* ruling was definitive. Fed. R. Evid. 103(b). The defense predicted this argument at the charge conference, Tr. 228:16–21 (May 26, 2026), and was told that objections to it in closing were preserved. Tr. 240:14–19 (May 27, 2026).

*No falsity or deception.* The Government also told the jury falsity or deception was not needed: "You see nothing in this element of Count 1, and there is nothing required for it that the government prove some specific false statement about an underlying company…. The scheme was about recommending stocks to the market and then trading counter to what that recommendation was for a quick profit[.]" Tr. 67:21–68:2 (May 28, 2026). No statement is identified—a "recommendation" is a category, not the specific statement *Macquarie* requires. See ECF No. 379 at 20–22.

The Government defined the crime as *undisclosed* intent: "It's a crime because before the defendant published these tweets, he already knew, he had the pre-existing plan to trade against his recommendations. He knew it before he hit publish. That's the deceit." Tr. 65:15–19 (May 28, 2026). It fell back on "half-truths," *id.* at 68:20–22, 106:17–22, but never identified the affirmative assertion a half-truth requires. Breaching its promise not to characterize silence as evidence of intent or scheme, ECF No. 248 at 19, the Government called the crime an omission: a trading plan Mr. Left kept to himself. That omission is not a crime. *Chiarella*, 445 U.S. at 235; ECF No. 274 at 10.

*The rebuttal.* The Government repeated that truth did not matter: "[T]he literal truth of some of the statements in his Tweets and his reports is not the issue." Tr. 157:12–13 (May 28, 2026). Last: "the best kind of scheme really is one based on half-truths because you're less likely to get caught. There's not some clear, easily disprovable, single statement, right, but it's still a scheme." *Id.* at 160:12–16. The Court told the jury a half-truth theory requires identifying an affirmative assertion, while the Government argued the *absence* of any false statement is what made the scheme succeed.

### D. The Verdict Cannot Be Traced to a Valid Theory, and the Error Was Not Harmless.

*First*, the omission of an offense element is constitutional error, harmless only where the element was "uncontested and supported by overwhelming evidence." *Neder*, 527 U.S. at 15–17; *United States v. Gaudin*, 515 U.S. 506, 522–23 (1995). The defense tried every count on the proposition that Mr. Left told the truth, Tr. 115:11–116:1 (May 28, 2026); *see* ECF No. 379 at 4–5, 17, and the Government's answer was not that the statements were lies, but that truth "is not the issue." Tr. 157:12–13 (May 28, 2026).

The Government also took a contested element away from the jury. The parties stipulated only to covered securities and use of a national exchange. ECF No. 354 ¶¶ 1–3. They did *not* stipulate that any statement or omission was made "in connection with" the purchase or sale of a charged security—the second element of Instruction No. 20. ECF No. 399 at 23. The Government told the jury otherwise: "For Counts 2 and then 4 through 17, you have Box 3 and Box 2 checked off. You don't have to worry about those." Tr. 75:4–13 (May 28, 2026). That was a directed finding on a disputed element. *Gaudin*, 515 U.S. at 522–23.

*Second*, where a case is submitted on alternative theories, one legally invalid, and the verdict is general, the conviction cannot stand unless it is clear the jury rested on a valid theory. *Yates v. United States*, 354 U.S. 298, 312 (1957); *Hedgpeth v. Pulido*, 555 U.S. 57, 60 (2008) (*per curiam*). The jury was urged to convict on an undefined "scheme or artifice to defraud" comprising truthful publications followed by non-manipulative trading. The same defect infects Counts Two through Seventeen, where the jury was told that any one of four prongs was "independently sufficient." Tr. 68:4–7 (May 28, 2026).

A comparable error was held not harmless where the invalid theory was "the focus of the entire prosecution" and the trial was "permeated with the

prohibited…theor[ies].” *United States v. Yates*, 16 F.4th 256, 269 (9th Cir. 2021) (citation omitted). The absence of position disclosure was the organizing fact of the Government’s case from opening to rebuttal. Tr. 36:1–8 (May 12, 2026); Tr. 210:25–212:10 (May 21, 2026). The Government identified three purported affirmative false statements—Cronos, Namaste, and Invitae. Tr. 109:16–21 (May 28, 2026). The jury convicted on Cronos and Invitae, but acquitted on Namaste and on Beyond Meat, which the Government called “the epitome of a half-truth.” *Id.* at 94:14. And it convicted on American Airlines, Twitter, Novavax, and Roku, for which the Government identified no “affirmative assertion” about Mr. Left’s position and argued only that a target price implied one, or, for Roku, that he traded against his view that the stock was “uninvestable.” Tr. 223:21–225:13 (May 26, 2026); Tr. 89:13–21, 111:5–112:3 (May 28, 2026); ECF No. 379 at 10, 22 & n.2. For those counts there was no affirmative statement for any omission to render misleading, *United States v. Skelly*, 442 F.3d 94, 97 (2d Cir. 2006); *United States v. Laurienti*, 611 F.3d 530, 540–41 (9th Cir. 2010), so the undefined “scheme” and “course of business” prongs were the only route to conviction. Whether or not a target price can be an “affirmative assertion” about the speaker’s own position, *see* ECF No. 379 at 5–6, 23–24, the jury was told it did not have to find one. Tr. 67:20–25, 158:23–159:5 (May 28, 2026). A new trial is required on every count.

## III. <u>Count One Omitted the Money-or-Property Object *Ciminelli* Requires.</u>

The federal fraud statutes “criminalize only schemes to deprive people of traditional property interests”; the right to “valuable economic information needed to make discretionary economic decisions” is not one. *Ciminelli v. United States*, 598 U.S. 306, 309, 316 (2023); *Kousisis*, 605 U.S. at 121. Both sides proposed the model definition of “intent to deceive and cheat” as the intent “to deprive a victim of money or property,” Ex. A at 46, 120, and the defense asked also that the jury be told that

money or property "must be the object of the scheme, not an incidental byproduct." *Id.* at 99 (Def. Instr. No. 2). The Government objected. *Id.* at 101. The final charge contains neither: Instruction No. 15 requires only "intent to deceive and cheat"; "cheat" is never defined and "property" appears nowhere. ECF No. 399 at 17, 25.

The omission of this hotly contested element was not harmless beyond a reasonable doubt. No witness testified that he was induced to part with money or property because of anything Mr. Left said; the three "victims" the Government named in summation, Tr. 63:17–19 (May 28, 2026), were not. *See* ECF No. 379 at 10–11, 20, 26. The Government told the jury there was "no requirement that the government needed to prove that there was a specific person who actually suffered a loss." Tr. 69:4–7 (May 28, 2026). A jury that heard from no induced investor, and was never told that money or property had to be the scheme's object, may well have convicted on the deprivation of information alone.

## IV. <u>The Court Refused the Single-Scheme Instructions, and the Resulting Variance Prejudiced Mr. Left.</u>

The Court upheld Count One as a single scheme, relying on the availability of an instruction requiring the jury to find "the single scheme to defraud…as charged in the FSI," and admitted four otherwise time-barred securities on the condition that the single scheme be proven. ECF No. 274 at 5–8 & n.5. The defense requested that instruction: "You may not convict the defendant of executing a different or narrower scheme than the one charged in Count One." Def. Instr. No. 8 (Ex. A at 123). It also requested a limitations instruction requiring an execution on or after February 4, 2020. Def. Instr. No. 11 (Ex. A at 137). The Court gave neither. It gave instead the Government's unanimity instruction, ECF No. 399 at 21 (Instruction No. 19), and a verdict form that asked fifteen separate questions for Count One but omitted the issue of timeliness altogether. *See United States v. Frega*, 179 F.3d 793, 804 (9th Cir. 1999).

The Government then proved, and conceded, a "side scheme" of separate executions. Tr. 158:7–11 (May 28, 2026). The variance affected substantial rights, *United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002), three ways. Mr. Left was convicted on a "side scheme" theory the indictment did not disclose. The Count One verdict rests in part on findings as to Chegg, FleetCor, and Grand Canyon, Tr. 12:11–13 (June 1, 2026), each time-barred without a single scheme, 18 U.S.C. § 3301. And the single-scheme allegation carried Hedge Fund A, the invoices, and "the lies to the Postal Inspector, the lies in the SEC testimony" onto every count, Tr. 91:24–92:21 (May 28, 2026); ECF No. 185 at 4–5, 10, 14, producing the "transference of guilt" *Kotteakos v. United States*, 328 U.S. 750, 774 (1946), condemned. A new trial on Count One is required; at a minimum, the findings as to Chegg, FleetCor, and Grand Canyon Education must be vacated.

## V. **<u>The Court Refused the Opinion Instruction It Had Called "Necessary."</u>**

A defendant has the right to an instruction on his theory of the case if it is "supported by law" and "has some foundation in the evidence," and refusal "warrants per se reversal" unless "other instructions, in their entirety, adequately cover that defense theory." *United States v. Marguet-Pillado*, 648 F.3d 1001, 1006 (9th Cir. 2011) (citations omitted).

Nearly every charged statement was an opinion—from the "target prices" to Mr. Left's Cronos commentary. ECF No. 379 at 5–6, 17–19; *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 493 (S.D.N.Y. 2004). And Mr. Left's defense was that he believed what he wrote. He asked for an instruction that an honestly held opinion is not false or misleading even if wrong. ECF No. 386 at 1–2. *Omnicare*, 575 U.S. at 186 ("a sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless whether an investor can ultimately prove the belief wrong").

The Court recognized that "some instruction on that is necessary." Tr. 230:3–5 (May 26, 2026).

Mr. Left's theory was amply supported by the evidence. Indeed, that theory *was* the defense. Mr. Left testified that he believed each of his opinions. Tr. 31:13–15, 57:6–13, 85:8–10, 175:1–9 (May 26, 2026). The Government's own witnesses corroborated him: Citron's editor described Mr. Left's insistence on accuracy, ECF No. 379 at 12–13; and its trading expert conceded every charged tweet matched Mr. Left's position when he published it. Tr. 137:6–18 (May 19, 2026).

But the Court ultimately refused to give the "necessary" instruction. The jury thus had no standard for deciding whether a price target not reached, or a position not held, turned a sincere view into fraud—the Government seized on that, arguing an unmet target "tells you everything you need to know about the deceptive device that the target prices were in this scheme." Tr. 78:18–20 (May 28, 2026). The failure to instruct on a supported defense theory "can never be considered harmless error." *United States v. Escobar de Bright,* 742 F.2d 1196, 1201–02 (9th Cir. 1984). That failure requires a new trial.

## VI. <u>The Jury's Return of a Guilty Verdict on Dismissed Count Eighteen Requires a New Trial.</u>

The jury convicted Mr. Left of a charge that had been dismissed, and on which it received no instruction or argument. The finding the jury returned—that Mr. Left lied to a federal officer—went to the core contested element of Counts One through Seventeen: intent to deceive.

### A. This Was a Structural Error; No Instruction Existed for the Jury to Follow.

Some errors are so basic to a fair trial that they can never be treated as harmless. *Chapman v. California*, 386 U.S. 18, 23–24 (1967). In *United States v. Ramos-Torres*, 187 F.3d 909, 913 (8th Cir. 1999), a dismissed forfeiture instruction—beginning "you

have reached a verdict that defendant … is guilty"—was inadvertently sent to the jury. The Eighth Circuit held that was "'structural' error." *Id.* at 914. Here, the jury did not need to infer guilt; it found Mr. Left guilty without *any* instruction from this Court, and no curative instruction followed.

In denying a mistrial, the Court found that the jurors "were not misled by the clerical error." ECF No. 423 at 2 (citing *United States v. Arreola*, 467 F.3d 1153, 1161–62 (9th Cir. 2006); *United States v. Espino*, 892 F.3d 1048, 1051 (9th Cir. 2018)). *Arreola* and *Espino* read a flawed verdict form "together" with the instructions on the same offense. *Espino*, 892 F.3d at 1051. Here, however, there were no instructions on Count Eighteen to read with the form. The Court told the jury there were "17 counts for you to consider." Tr. 46:14 (May 28, 2026). The form showed eighteen. The jury resolved that conflict by convicting on the eighteenth. Not told the elements of the crime, what the false statements were, or to whom they were made, the jury marked GUILTY.

**B. The Phantom Count Prejudiced Counts One Through Seventeen.**

Even if not a structural error, a defendant is entitled to a new trial because extrinsic material reaching a deliberating jury is "presumptively prejudicial." *Remmer v. United States*, 347 U.S. 227, 229 (1954). To rebut that presumption, the Government must prove beyond a reasonable doubt the material did not contribute to the verdict. *United States v. Prime*, 431 F.3d 1147, 1157 (9th Cir. 2005). It cannot.

*Nature.* The form told the jury, with the Court's imprimatur, that Mr. Left stood charged with lying to a federal officer. *See United States v. Evanston*, 651 F.3d 1080, 1084 (9th Cir. 2011); *United States v. Lazarenko*, 564 F.3d 1026, 1043–44 (9th Cir. 2009).

*Inflammatory character and overlap.* A § 1001 charge is a formal determination that the defendant lied to law enforcement. In a fraud prosecution where

the contested element was intent to deceive, that is precisely the conclusion whose "transference…by psychological effect, in spite of instructions," *Kotteakos* guards against. 328 U.S. at 767. And the overlap is total: the Government argued the alleged lies to investigators as its intent evidence on the fraud counts, telling the jury to consider "the lies on cable television, the lies to the Postal Inspector, the lies in the SEC testimony." Tr. 91:23–92:21 (May 28, 2026). The phantom count asked the jury to return a formal finding on exactly that accusation, and it did.

*Duration.* The form was with the jury throughout three days of deliberations. The jury deliberated on it and returned a unanimous guilty finding, so no inference about its consideration is needed.

Finally, no curative instruction was given, though even the Government proposed one. Tr. 9:21–24 (June 1, 2026). The Court instead told the jury Count 18 "was not before you." *Id.* at 10:13–14. Leaving it to the jury "to decide if you want…to deliberate further" on an "identical" form, *id.* at 10:16–19, invited the jury to copy its prior answers forward, and forty minutes later it returned a second verdict with not a single decision changed. Tr. 10:22–11:5 (June 1, 2026); ECF Nos. 412, 416.

## VII. <u>The Government Used Ryan Choi's Unconfronted Statement After Refusing to Immunize Him, Violating Mr. Left's Sixth Amendment Rights.</u>

### A. The Advice-of-Counsel Defense Ran Through Choi.

Mr. Left and Ryan Choi retained Jack Martel as counsel to Citron Capital. Martel reviewed their trading strategy and advised that "it was legal." Tr. 101:13–23 (May 22, 2026). Choi was "the contact person for Mr. Martel." Tr. 117:13–14 (May 26, 2026). Mr. Left testified that he spoke with Choi fifteen to twenty times a day and understood Choi was relaying Martel's advice. Tr. 149:6–18 (May 26, 2026). Choi's

SEC testimony corroborated the conduit: Mr. Left "generally knew I was talking with counsel all the time." ECF No. 223, Ex. B (Choi SEC Tr. Vol. III at 600).

Choi invoked the Fifth Amendment. The Court denied Mr. Left's motion to compel use immunity or admit Choi's SEC testimony, finding no "deliberate intent to distort the fact-finding process." ECF No. 223; ECF No. 328 at 14–15.

### B. The Government Elicited Choi's Out-of-Court Statement Through Martel.

On cross-examination of Martel, the Government asked: "Sir, would it surprise you to know Mr. Choi said he never provided your legal advice to Mr. Left?" Tr. 135:24–25 (May 22, 2026). The defense objected; the Court overruled. *Id.* at 136:1–3. Martel answered, "That would surprise me," and volunteered that "Mr. Choi told me that he discussed these matters with Mr. Left." *Id.* at 136:4, 136:14–15. The Court overruled a renewed objection. *Id.* at 136:7–10. At sidebar, the Court barred further reference to what Choi "said out of court," *id.* at 138:12–139:2, but never struck the question or answer or instructed the jury to disregard them. Mr. Left renewed the objection in a written mistrial motion, ECF No. 384, which the Court denied. Tr. 4:9–5:12 (May 26, 2026).

When the jury asked to hear all of Martel's testimony read back, the defense asked that it not re-hear the Choi question and answer. Tr. 5:8–6:8, 6:22–7:12 (June 1, 2026). That too was denied.

### C. The Question Violated the Confrontation Clause.

Testimonial statements of an absent witness are admissible only where the declarant is unavailable and the defendant had a prior opportunity to cross-examine. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Choi's SEC testimony is testimonial by definition, Choi was unavailable due to the Government's actions, and the defense never cross-examined him.

In denying the mistrial motion, this Court observed Choi had "said that he did not communicate the legal advice that Martel gave to Mr. Left." Tr. 4:14–5:12 (May 26, 2026). But the Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford*, 541 U.S. at 61. Whether the question tracked the transcript is irrelevant. And the transcript cuts both ways. ECF No. 384 at 6–7, 16; ECF No. 213-3 at 793:4–13 ("[D]id you ever tell Andrew Left that 'Mr. Martel drafted these for us'?" A: "Yes.").

Nor does it matter that the statement came in through a question rather than an exhibit. In *Douglas v. Alabama*, 380 U.S. 415, 419 (1965), the prosecutor conveyed an absent declarant's statement through his questions; the Clause was violated though the questions were "not technically testimony," because the jury "might improperly infer both that the statement had been made and that it was true." *See* ECF No. 384 at 4–6. The Ninth Circuit applies the same rule. *Ocampo v. Vail*, 649 F.3d 1098, 1108–13 (9th Cir. 2011).

**D. The Violation Was Prejudicial.**

The Government cannot carry its burden to show the error harmless beyond a reasonable doubt, an inquiry that considers the importance of the tainted evidence, whether it was cumulative, and whether it contradicted the defense. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

The Choi "statement" went to the single fact on which the advice-of-counsel defense depended—whether Martel's advice reached Mr. Left through Choi. It was not cumulative; no other evidence had Choi denying the conduit. It contradicted both Martel and Mr. Left. The statement pre-loaded the jury to hear Mr. Left's testimony over the next two days as fabrication, and Mr. Left could not call Choi to prove

otherwise, because the Government had ensured he would not testify. No limiting instruction was given.

On the morning of the verdict, at the jury's request, the Court read back "all the testimony of the witness Mr. Martel." Tr. 6:24–7:12 (June 1, 2026). That readback put the unconfronted statement before the jury a second time, with the Court's endorsement, hours before it convicted.

Every finding the advice-of-counsel instruction required, ECF No. 399 at 28, depends on the advice having reached Mr. Left. The Government built its closing on that dependency, Tr. 101:23–103:15 (May 28, 2026), and the unconfronted Choi statement was the only evidence in the record that Martel's advice never reached Mr. Left.

**E. The Government Used Choi's Unavailability as Sword and Shield.**

The Court found no deliberate distortion on the pretrial record, ECF No. 328 at 15, but the trial record is different: the defense objected on May 14 that Choi "has now been made a witness against Mr. Left" after the Government refused to immunize him, Tr. 159:8–14 (May 14, 2026); *see* ECF No. 384 at 9–12, and eight days later came the "would it surprise you" question. Declining immunity and then arguing from the resulting silence is the distortion *United States v. Straub*, 538 F.3d 1147, 1161 (9th Cir. 2008), and *United States v. Westerdahl*, 945 F.2d 1083, 1087 (9th Cir. 1991), exist to prevent. *See* ECF No. 384 at 12–14; ECF No. 223 at 18–19. The interest of justice requires a new trial.

## VIII. <u>Newly Discovered Evidence Concerning Daniel Bachus Requires a New Trial.</u>

Daniel Bachus, Grand Canyon Education's ("LOPE") CFO, was the only witness who told the jury Mr. Left said something false about a company: that Citron's January 2020 report accused LOPE of hiding audited financial statements that were "already publicly available." Tr. 84:8–18 (May 20, 2026). The Government

made him the measure of Mr. Left's credibility: it opened its cross-examination of Mr. Left with LOPE and stayed there for sixty-three pages, Tr. 7:13–69:24 (May 27, 2026), and told the jury in rebuttal that Mr. Left, having learned the truth "from Mr. Bachus," "got up there and told you Mr. Bachus made that up and lied." Tr. 161:6–9 (May 28, 2026). No document stood behind Bachus; the Government never offered the audited statements. Tr. 171:20–172:3 (May 27, 2026). Instead, it bolstered his credibility by eliciting that he never committed "[a]ny other violations of law." Tr. 80:10–13 (May 20, 2026). The trial record and the Government's post-verdict disclosures are set out in Mr. Left's motion to compel. ECF No. 434 at 1–7.

*What the defense and jury did not know.* [redacted]

[redacted]

A new trial is warranted where evidence is newly discovered, the movant was diligent, the evidence is material and "not merely cumulative or impeaching," and it "would probably produce an acquittal." *United States v. Krasny*, 607 F.2d 840, 843 (9th Cir. 1979). The motion is timely, Fed. R. Crim. P. 33(b)(1), and the Government does not contest that the evidence is new or Mr. Left diligent. ECF No. 442 at 17.

*The evidence is material and not merely impeaching.* It shows motive and bias. A public-company CFO whose [redacted] had every reason to stand well with federal prosecutors. He did just that, testifying for the United States that his company's disclosures were clean and the short seller a liar. The Sixth Amendment entitled Mr. Left to expose Bachus's "possible concern that he might be a suspect in the investigation," whether or not he had been told so directly. *Davis v. Alaska*, 415 U.S. 308, 312, 318 (1974). "Evidence of a different bias or motive" is not cumulative of impeachment actually offered, *United States v. Kohring*, 637 F.3d 895, 904–05 (9th Cir. 2011); and bias may be shown by extrinsic evidence. *United States v. Abel*, 469 U.S. 45, 52 (1984). Even if merely impeaching, "newly-discovered impeachment evidence" that "totally" discredits "uncorroborated" testimony that is "the only evidence of an essential element" can "support a new trial." *United States v. Davis*, 960 F.2d 820, 825 (9th Cir. 1992). *United States v. Hinkson*, 585 F.3d 1247, 1266–67 (9th Cir. 2009) (*en banc*), concerned a collateral lie about military decorations; this evidence concerns the witness's own LOPE shares and reason to defend his company. He was never cross-examined about any of it, because the defense did not know.

*A new trial would probably produce an acquittal.* Undisclosed impeachment of the witness who supplied the only evidence on a disputed point is decisive. *United States v. Shaffer*, 789 F.2d 682, 688–91 (9th Cir. 1986); *United States v. Parker*, 790 F.3d 550, 560–61 (4th Cir. 2015) (Government "did not offer into evidence the actual tax returns"; witness's "testimony was the only evidence"). The Government tried LOPE as a contest between Bachus and Mr. Left, and the Court identified his testimony as the proof the report was "wrong." Tr. 30:7–11 (May 22, 2026). The effect goes beyond LOPE: the Government's answer on every count was that Mr. Left's testimony "was not credible from the start." Tr. 108:13–18 (May 28, 2026). It tested that credibility first and longest on LOPE. At minimum, the Count One verdict, which the jury rested in part on LOPE under an instruction requiring unanimity "as to each security," ECF No. 399 at 21, cannot stand. A single juror's doubt about Bachus would have removed it. *Cf. Parker*, 790 F.3d at 560.

## CONCLUSION

A new trial is required on every count of conviction. Each error identified above independently warrants relief; their cumulative effect, on a split verdict, removes any confidence that Mr. Left received a fair trial. *See United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). At a minimum, the LOPE finding should be set aside and LOPE excluded from any determination of loss, gain, forfeiture, or restitution.

Dated: October 9, 2026

Respectfully submitted,

DYNAMIS LLP

*/s/ Eric S. Rosen*
Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Emily J. Scarisbrick (*pro hac vice*)

WEIL, GOTSHAL & MANGES LLP
Adam Fee
Ben Nicholson

*Attorneys for Defendant Andrew Left*

**CERTIFICATE OF COMPLIANCE**

I certify, as counsel for Defendant Andrew Left, that this memorandum of points and authorities contains 7,000 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 9, 2026

*/s/ Yusef Al-Jarani*
Yusef Al-Jarani